**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTSQUARED INC., *et al.*, | ) Case No. 12-12080 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## SPECIFIC DISCLOSURE STATEMENT FOR
## DEBTORS' JOINT PLAN PURSUANT TO CHAPTER 11 OF BANKRUPTCY CODE

- Voting Record Date:  September 30, 2013
- Plan Objection Deadline:  November 26, 2013 at 4:00 p.m. (prevailing Eastern time)
- Voting Deadline:  November 29, 2013 at 4:00 p.m. (prevailing Pacific time)
- Confirmation Hearing:  December 10, 2013 at 10:00 a.m. (prevailing Eastern time)

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS
SPECIFIC DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE
BANKRUPTCY COURT.  THIS SPECIFIC DISCLOSURE STATEMENT IS BEING
SUBMITTED FOR APPROVAL TO THE BANKRUPTCY COURT AND HAS NOT
BEEN APPROVED BY THE BANKRUPTCY COURT AT THIS TIME.

Matthew S. Barr
Steven Z. Szanzer
Karen Gartenberg
MILBANK, TWEED, HADLEY & M[C]CLOY LLP
One Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

Counsel to Debtors and Debtors in Possession

Dated:  New York, New York
        August 30, 2013

---

[1]    The Debtors in these Chapter 11 Cases (as defined below), along with the last four digits of each debtor's federal or foreign tax or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040).  The location of LightSquared's corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

**THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS NOVEMBER 29, 2013 AT 4:00 P.M. (PREVAILING PACIFIC TIME) (THE "VOTING DEADLINE"), UNLESS LIGHTSQUARED, IN ITS SOLE DISCRETION, EXTENDS THE VOTING DEADLINE ON ONE OR MORE OCCASION. TO BE COUNTED, BALLOTS MUST BE RECEIVED BY KURTZMAN CARSON CONSULTANTS LLC, LIGHTSQUARED'S NOTICE, CLAIMS, SOLICITATION, AND BALLOTING AGENT ("KCC" OR THE "CLAIMS AND SOLICITATION AGENT"), NO LATER THAN THE VOTING DEADLINE.**

THE STATEMENTS CONTAINED IN THIS SPECIFIC DISCLOSURE STATEMENT (THE "DEBTORS' SPECIFIC DISCLOSURE STATEMENT") FOR THE JOINT PLAN PURSUANT TO CHAPTER 11 OF BANKRUPTCY CODE (ATTACHED HERETO AS EXHIBIT A, AND AS THE SAME MAY BE AMENDED FROM TIME TO TIME, THE "PLAN") OF LIGHTSQUARED INC. AND CERTAIN OF ITS AFFILIATES, AS DEBTORS AND DEBTORS IN POSSESSION (COLLECTIVELY, "LIGHTSQUARED" OR THE "DEBTORS") IN THE ABOVE-CAPTIONED CHAPTER 11 CASES (THE "CHAPTER 11 CASES"), ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. THE DELIVERY OF THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT AFTER THE DATE HEREOF DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN INFORMATION SET FORTH HEREIN. LIGHTSQUARED HAS NO DUTY TO UPDATE THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT UNLESS OTHERWISE ORDERED TO DO SO BY THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK HAVING JURISDICTION OVER THE CHAPTER 11 CASES (THE "BANKRUPTCY COURT").

THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE. THE PURPOSE OF THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT, TAKEN TOGETHER WITH THE GENERAL DISCLOSURE STATEMENT [DOCKET NO. 815] (THE "GENERAL DISCLOSURE STATEMENT" AND, TOGETHER WITH THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT, THE "DISCLOSURE STATEMENT"), IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF LIGHTSQUARED AND THE CONDITION OF LIGHTSQUARED'S BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL, REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS OR EQUITY INTERESTS OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN. SEE 11 U.S.C. § 1125(A).

THE PURPOSE OF THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT IS TO PROVIDE (A) INFORMATION CONCERNING THE PLAN, (B) INFORMATION FOR HOLDERS OF CLAIMS OR EQUITY INTERESTS REGARDING THEIR TREATMENT UNDER THE PLAN, AND (C) INFORMATION TO ASSIST THE BANKRUPTCY COURT

IN DETERMINING WHETHER THE PLAN COMPLIES WITH THE PROVISIONS OF CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§ 101–1532 (AS AMENDED, THE "BANKRUPTCY CODE") AND SHOULD BE CONFIRMED.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS OR EQUITY INTERESTS, THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS ATTACHED TO THE PLAN, AND THE PLAN SUPPLEMENT (AS DEFINED IN THE PLAN).  IF ANY INCONSISTENCY EXISTS AMONG THE PLAN, THE GENERAL DISCLOSURE STATEMENT, AND THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.

HOLDERS OF CLAIMS OR EQUITY INTERESTS SHOULD REFER TO THE GENERAL DISCLOSURE STATEMENT FOR RELEVANT INFORMATION REGARDING THE HISTORY OF LIGHTSQUARED, ITS BUSINESSES, EVENTS IN THE RESTRUCTURING OF LIGHTSQUARED, PROCEDURES REGARDING THE SOLICITATION AND CONFIRMATION OF THE PLAN, AND THE CHAPTER 11 CASES.

NO REPRESENTATIONS CONCERNING LIGHTSQUARED'S FINANCIAL CONDITION OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY LIGHTSQUARED OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS).  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS) SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE GENERAL AND DEBTORS' SPECIFIC DISCLOSURE STATEMENTS (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS) AND THE PLAN IN THEIR ENTIRETY.  ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS SHOULD READ CAREFULLY AND CONSIDER FULLY THE "PLAN-RELATED RISK FACTORS TO CONFIRMING AND CONSUMMATING PLAN" SECTION HEREOF BEFORE VOTING FOR OR AGAINST THE PLAN.  **SEE ARTICLE IV HEREOF, "PLAN-RELATED RISK FACTORS TO CONFIRMING AND CONSUMMATING PLAN."**

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN, OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES OF LIGHTSQUARED, IF ANY, SHOULD NOT RELY UPON THE DISCLOSURE STATEMENT FOR SUCH PURPOSES AND SHOULD

EVALUATE THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

THE DISCLOSURE STATEMENT HAS NOT BEEN REVIEWED, APPROVED, OR DISAPPROVED BY THE U.S. SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), AND THE SEC HAS NOT PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  ANY REPRESENTATION TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.  NEITHER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN NOR THE DISCLOSURE STATEMENT CONSTITUTES AN OFFER TO SELL, OR THE SOLICITATION OF AN OFFER TO BUY, SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, AND FINANCIAL INFORMATION.  ALTHOUGH LIGHTSQUARED BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS.  FACTUAL INFORMATION CONTAINED IN THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT HAS BEEN PROVIDED BY LIGHTSQUARED'S MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. LIGHTSQUARED IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT INACCURACY OR OMISSION.

THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS.  **SEE ARTICLE II.G HEREOF, "SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS."**

THE INFORMATION CONTAINED IN THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES, AND CONFIRMATION, OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY OTHER PURPOSE THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  HOLDERS OF CLAIMS OR EQUITY INTERESTS ENTITLED TO VOTE MUST RELY ON THEIR OWN EVALUATIONS OF LIGHTSQUARED AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.  THE DESCRIPTIONS SET FORTH HEREIN OF THE ACTIONS, CONCLUSIONS, OR RECOMMENDATIONS OF LIGHTSQUARED OR ANY OTHER PARTY IN INTEREST HAVE BEEN SUBMITTED TO, OR APPROVED BY, SUCH PARTY, BUT NO SUCH PARTY MAKES ANY REPRESENTATION REGARDING SUCH DESCRIPTIONS. NOTHING CONTAINED IN THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS) SHALL CONSTITUTE, OR BE CONSTRUED AS, AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, AND FOR PURPOSES OF ANY CONTESTED MATTER, ADVERSARY PROCEEDING, OR OTHER PENDING OR

THREATENED ACTION, THE CONTENTS HEREOF SHALL CONSTITUTE STATEMENTS MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS AND SHALL BE SUBJECT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY SIMILAR RULE OR STATUTE.  THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS) SHALL NOT BE ADMISSIBLE IN ANY PROCEEDING (OTHER THAN THE CHAPTER 11 CASES) INVOLVING LIGHTSQUARED OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, LIGHTSQUARED.  EACH HOLDER OF A CLAIM OR EQUITY INTEREST SHOULD CONSULT ITS OWN COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS OR EQUITY INTERESTS.

**IRS CIRCULAR 230 DISCLOSURE**:  TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, ANY TAX ADVICE CONTAINED IN THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE TAX CODE.  TAX ADVICE CONTAINED IN THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS, ATTACHMENTS, AND OTHER ACCOMPANYING DOCUMENTS) IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DEBTORS' SPECIFIC DISCLOSURE STATEMENT.  EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

LIGHTSQUARED PRESENTLY INTENDS TO CONSUMMATE THE PLAN AS PROMPTLY AS POSSIBLE.  THERE CAN BE NO ASSURANCE, HOWEVER, AS TO WHEN AND WHETHER CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE OF THE PLAN ACTUALLY WILL OCCUR.  PROCEDURES FOR DISTRIBUTIONS UNDER THE PLAN, INCLUDING MATTERS THAT ARE EXPECTED TO AFFECT THE TIMING OF THE RECEIPT OF DISTRIBUTIONS BY HOLDERS OF CLAIMS OR EQUITY INTERESTS IN CERTAIN CLASSES AND THAT COULD AFFECT THE AMOUNT OF DISTRIBUTIONS ULTIMATELY RECEIVED BY SUCH HOLDERS, ARE DESCRIBED IN ARTICLE II HEREOF, "**SUMMARY OF PLAN**."

**LIGHTSQUARED URGES ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**

## TABLE OF CONTENTS

**Page**

**ARTICLE I INTRODUCTION**................................................................................1

    **A.**    **OVERVIEW OF PLAN** ................................................................1

            1.    Classes and Treatment ................................................3

    **B.**    **SOLICITATION PROCESS AND VOTING PROCEDURES**........................6

    **C.**    **CONFIRMATION PROCEDURES** ................................................6

    **D.**    **RISK FACTORS**................................................................6

    **E.**    **IDENTITY OF PERSONS TO CONTACT FOR MORE INFORMATION**........6

    **F.**    **DISCLAIMER**................................................................6

    **G.**    **RULES OF INTERPRETATION** ................................................7

**ARTICLE II SUMMARY OF PLAN** ................................................................8

    **A.**    **ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL COMPENSATION CLAIMS, DIP INC. FACILITY CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES**................................8

            1.    Administrative Claims ................................................8

            2.    Accrued Professional Compensation Claims................................9

            3.    DIP Inc. Facility Claims ................................................11

            4.    Priority Tax Claims................................................11

            5.    Payment of Statutory Fees ................................................11

    **B.**    **CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ................................................11

            1.    Summary................................................11

            2.    Classification and Treatment of Claims and Equity Interests................12

            3.    Special Provision Governing Unimpaired Claims and Equity Interests................................................20

            4.    Acceptance or Rejection of Plan................................20

            5.    Elimination of Vacant Classes ................................................21

            6.    Confirmation Pursuant to Section 1129(b) of Bankruptcy Code................21

            7.    Controversy Concerning Impairment ................................................21

    **C.**    **MEANS FOR IMPLEMENTATION OF PLAN** ................................................21

            1.    Overview of Plan ................................................21

            2.    Plan Transactions ................................................22

            3.    Sources of Consideration for Plan Distributions ................................22

            4.    Confirmation Order and Asset Purchase Agreement(s)................................22

            5.    Assumed Liabilities ................................................23

6.      Wind Down Debtors ......................................................................23
7.      Additional Implementation Provisions Regarding Plan ...........................27

**D.**     **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................................................................................31**

1.      Assumption and Rejection of Executory Contracts and Unexpired Leases ................................................................................................31
2.      Claims Based on Rejection of Executory Contracts or Unexpired Leases ................................................................................................32
3.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to Plan ..........................................................................33
4.      Pre-existing Obligations to Debtors Under Executory Contracts and Unexpired Leases ...................................................................................34
5.      Intercompany Contracts, Contracts, and Leases Entered into After Petition Date, Assumed Executory Contracts, and Unexpired Leases ................................................................................................34
6.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ..............................................................................................34
7.      Reservation of Rights .................................................................................34
8.      Nonoccurrence of Effective Date ...............................................................35

**E.**     **PROVISIONS GOVERNING DISTRIBUTIONS ............................................35**

1.      Distribution Record Date ............................................................................35
2.      Timing and Calculation of Amounts To Be Distributed...........................35
3.      Disbursing Agent ........................................................................................36
4.      Rights and Powers of Disbursing Agent....................................................36
5.      Plan Distributions on Account of Claims and Equity Interests Allowed After Effective Date ..........................................................................37
6.      Delivery of Plan Distributions and Undeliverable or Unclaimed Plan Distributions......................................................................................37
7.      Compliance with Tax Requirements/Allocations ......................................39
8.      Setoffs ........................................................................................................39
9.      Recoupment ................................................................................................40
10.     Claims Paid or Payable by Third Parties ...................................................40

**F.**     **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,  AND DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS .....................................................................................41**

1.      Allowance of Claims and Equity Interests.................................................41
2.      Claims and Equity Interests Administration Responsibilities ...................41
3.      Estimation of Claims...................................................................................41
4.      Expungement or Adjustment to Claims Without Objection .......................42
5.      No Interest...................................................................................................42
6.      Deadline To File Objections to Claims.......................................................43
7.      Disallowance of Claims or Equity Interests...............................................43
8.      Amendments to Claims...............................................................................43

G.  **SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** .................................................................**43**

1.  Discharge of Claims and Termination of Equity Interests ........................43
2.  Subordinated Claims .............................................................................44
3.  Compromise and Settlement of Claims and Controversies .......................44
4.  Releases by Debtors ..............................................................................45
5.  Exculpation ..........................................................................................45
6.  Third-Party Releases by Holders of Claims or Equity Interests ...............45
7.  Injunction ............................................................................................46
8.  Release of Liens ...................................................................................47

H.  **CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN** ...............**47**

1.  Conditions Precedent to Effective Date .................................................47
2.  Waiver of Conditions ...........................................................................48

I.  **MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN** ..........**48**

1.  Modification and Amendments ..............................................................48
2.  Effect of Confirmation on Modifications ...............................................49
3.  Revocation or Withdrawal of Plan ........................................................49

J.  **RETENTION OF JURISDICTION** ........................................................**49**

**ARTICLE III CERTAIN PLAN REQUIREMENTS** ...........................................**51**

A.  **BEST INTERESTS OF CREDITORS TEST** ..........................................**52**

B.  **FEASIBILITY** ....................................................................................**53**

**ARTICLE IV PLAN-RELATED RISK FACTORS TO CONFIRMING AND CONSUMMATING PLAN** .................................................................**53**

A.  **CERTAIN BANKRUPTCY LAW CONSIDERATIONS** ...............................**53**

1.  Parties in Interest May Object to LightSquared's Classification of Claims and Equity Interests ..................................................................53
2.  Plan May Not Receive Requisite Acceptances .......................................54
3.  LightSquared May Not Be Able To Obtain Confirmation of Plan .............54
4.  LightSquared May Not Obtain Recognition from Canadian Court ...........54
5.  LightSquared May Not Be Able To Consummate Plan ............................54
6.  LightSquared May Object to Amount or Classification of Claim .............55
7.  Contingencies Not To Affect Votes of Impaired Classes To Accept Plan ...................................................................................................55

B.  **RISKS RELATED TO SALE** ................................................................**55**

C.  **LITIGATION RISKS** ...........................................................................**55**

D.  **CERTAIN TAX MATTERS** ..................................................................**56**

**ARTICLE V CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES** ...........................................................................**56**

**A.      CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS** ......................................................................**57**

    1.    Consequences to Holders of Claims ..........................................57

    2.    Consequences to Holders of Existing LP Preferred Units Equity Interests ...............................................................................58

    3.    Consequences to Holders of Existing Inc. Preferred Stock Equity Interests ...............................................................................58

    4.    Consequences to Holders of Existing Inc. Common Stock Equity Interests ...............................................................................59

    5.    Information Reporting and Backup Withholding ......................................59

**B.      CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO LIGHTSQUARED** ......................................................**60**

    1.    Treatment of Asset Sales Under Plan ..........................................60

    2.    Cancellation of Debt and Reduction of Tax Attributes ..............................60

    3.    Alternative Minimum Tax ....................................................60

**ARTICLE VI CONCLUSION AND RECOMMENDATION** ...................................................**61**

**EXHIBITS**

**Exhibit A**                Debtors' Joint Plan Pursuant to Chapter 11 of Bankruptcy Code

# ARTICLE I
# INTRODUCTION

LightSquared Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, "LightSquared" or the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), submit this Specific Disclosure Statement (the "Debtors' Specific Disclosure Statement") in connection with the (i) solicitation of votes to accept or reject their joint chapter 11 plan (attached hereto as Exhibit A, and as may be amended from time to time, the "Plan"),[2] and (ii) hearing to consider confirmation of such Plan.

The purpose of the Debtors' Specific Disclosure Statement is to set forth certain information specific to the Plan concerning, among other things, the (i) terms, provisions, and implications of the Plan and (ii) holders of Claims against, and Equity Interests in, LightSquared (collectively, the "Holders") and their rights under the Plan. The Debtors' Specific Disclosure Statement does not contain disclosures that are by their nature generally applicable to any chapter 11 plan that may be proposed in the Chapter 11 Cases. Such generally applicable disclosures are set forth in the General Disclosure Statement [Docket No. 815] (the "General Disclosure Statement" and, together with the Debtors' Specific Disclosure Statement, the "Disclosure Statement"), which provides, among other things, information concerning the history of LightSquared, a description of its businesses, operations, and capital structure, events leading up to the Chapter 11 Cases and the Canadian Proceedings, and significant events occurring in the Chapter 11 Cases.

Altogether, the Disclosure Statement provides certain information, as required under section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), to the Holders who will have the right to vote on the Plan, so that such Holders can make informed decisions in doing so. While the Disclosure Statement includes a summary of the terms of the Plan for the convenience of the Holders, such summary is qualified in its entirety by reference to the Plan.[3]

Accordingly, for a complete understanding of the Plan, the Holders who have the right to vote on the Plan are advised and encouraged to read, **in their entirety**, the Plan, the Debtors' Specific Disclosure Statement, and the General Disclosure Statement.

## A.    OVERVIEW OF PLAN

LightSquared continues to believe that resolution of the pending FCC proceedings will maximize the value of its assets and, accordingly, will continue its efforts with the FCC and other federal agencies in seeking approval of its pending license modification applications and related proceedings before the FCC. LightSquared has always believed, continues to believe, and operates on the premise that concluding discussions with the FCC and interested government agencies regarding the terrestrial deployment of its wireless spectrum significantly increases the value of its Estates and most likely leads to a value-maximizing solution, whether through a sale

---

[2]       Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

[3]       If any inconsistency exists between (a) the Plan, on the one hand, and (b) the Debtors' Specific Disclosure Statement or the General Disclosure Statement (or both), on the other hand, the terms of the Plan control.

process or an alternative transaction. A detailed description of LightSquared's restructuring efforts, including its attempts to resolve the pending FCC proceedings, is provided in Article III.F of the General Disclosure Statement, entitled "**Restructuring Efforts**." A detailed description of the current status of the FCC process is provided in Article III.F.1 of the General Disclosure Statement, entitled "**Current Status of FCC Process**."

Given the continuing nature of the FCC process and the facts and circumstances of these Chapter 11 Cases, LightSquared believes that it is necessary to take action to protect its Estates and the current value of its assets through the filing of a chapter 11 plan that contemplates a sale of the Estates' assets. Accordingly, the Plan contemplates the (1) sale or sales of LightSquared's assets (the "Sale"), (2) distribution of the proceeds of the Sale(s) to satisfy Allowed Claims and Allowed Equity Interests, if applicable, in accordance with the Plan, (3) potential prosecution of certain causes of action, and (4) wind down of LightSquared and its Estates. In the event LightSquared's regulatory solution is approved in connection with its pending FCC proceedings, it likely will find itself in a position where a sale process or an alternative transaction premised on such solution results in substantially greater value for LightSquared's Estates and stakeholders.

LightSquared will conduct the Sale Process (as defined below) in accordance with bid procedures approved by the Bankruptcy Court (the "Bid Procedures") intended to maximize the value of LightSquared's Estates in connection with any such Sale(s). LightSquared anticipates that the Bid Procedures will permit one or more bidders to submit an asset purchase agreement prior to the commencement of a Bankruptcy Court-sanctioned auction and serve as a Stalking Horse Bidder for the Sale. The winning bidder following such auction (whether the Stalking Horse Bidder or another entity) will execute an asset purchase agreement (the "Asset Purchase Agreement"), which LightSquared intends to submit to the Bankruptcy Court for approval at the Confirmation Hearing. Proceeds from the Sale will be distributed pursuant to the terms of the Plan.

Given the facts and circumstances described above, LightSquared believes that undertaking the sale process contemplated by the Plan (the "Sale Process") is currently in the best interests of its Estates and its stakeholders for two primary reasons. *First*, LightSquared's Sale Process is the only process designed to give LightSquared and its stakeholders the flexibility and optionality to sell all of the assets of LightSquared's Estates. Other proposed plan(s) provide for the parallel, but not combined, sale of the Prepetition Inc. Facility Collateral and the Prepetition LP Facility Collateral, which LightSquared believes might not dispose of all of the assets of the Estates and may likely depress, rather than maximize, the value realizable for the benefit of all stakeholders. *Second*, LightSquared's Plan and Sale Process essentially subsume the sale processes envisioned by the other proposed plan(s). Unfortunately, however, such proposed plan(s) merely seek to liquidate their respective collateral packages to recover their outstanding debts. LightSquared, on the other hand, seeks to conduct a Sale Process that allows flexibility in assets purchased, which should maximize the value for the benefit of all stakeholders and the Estates. LightSquared believes it is important that it – the sole fiduciary in the Chapter 11 Cases and the one party that is objectively interested in, and entrusted with, maximizing value for all stakeholders – propose and conduct the Sale Process. In that regard, LightSquared is in the process of forming a special board committee (which will include at least two (2) independent board members that will represent a majority of such committee) to oversee,

among other things, the Sale Process.  For these reasons, LightSquared believes that Confirmation of the Plan is in the best interest of all Holders of Claims and Equity Interests and recommends that all such Holders entitled to vote on the Plan vote to accept the Plan.

LightSquared recognizes that other parties in interest have filed, or may file, competing chapter 11 plans that may contemplate alternative transactions.  LightSquared intends to review any such competing plans and, based on the facts and circumstances surrounding each such plan, may determine it is in the best interests of its Estates to modify or supplement the Plan.

For a more detailed description of the Plan, refer to Article II hereof, entitled "Summary of Plan," and the Plan itself.

### 1.    Classes and Treatment

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims (including Accrued Professional Compensation Claims, DIP Inc. Facility Claims, KEIP Payments, and Priority Tax Claims and U.S. Trustee Fees) have not been classified, and the Holders thereof are not entitled to vote on the Plan.  All other Claims and Equity Interests are classified under the Plan.  Pursuant to the Bankruptcy Code, not all Classes are entitled to vote on the Plan.  For example, Holders in Classes that are Unimpaired by the Plan are deemed to accept the Plan under section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

The chart below summarizes the Classes of Claims and Equity Interests, the treatment of such Classes (except to the extent a Holder agrees to other treatment, and provided that in no event will any Plan Distribution to a Holder be in excess of 100% of the amount of such Holder's Allowed Claim or Equity Interest), whether they are Impaired or Unimpaired, and the entitlement of such Classes to vote.  This chart and its content are subject to change based upon changes in the amount of Allowed Claims and Allowed Equity Interests and the amounts available for distribution.  Unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim or Equity Interest under the Plan will be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Claim or Equity Interest.

Reference should be made to the entirety of the Debtors' Specific Disclosure Statement and the Plan for a complete understanding of the classification and treatment of Allowed Claims and Allowed Equity Interests.

| Class | Claims or Equity Interests | Treatment | Impairment Status | Entitlement to Vote |
|-------|----------------------------|-----------|-------------------|---------------------|
| 1 | Inc. Other Priority Claims | Each Holder of an Allowed Inc. Other Priority Claim against an individual Inc. Debtor shall receive Inc. Plan Consideration attributed to such Inc. Debtor in the form of Cash in an amount equal to such Allowed Inc. Other Priority Claim. | Unimpaired | No (Deemed to Accept) |

| Class | Claims or Equity Interests | Treatment | Impairment Status | Entitlement to Vote |
|---|---|---|---|---|
| 2 | LP Other Priority Claims | Each Holder of an Allowed LP Other Priority Claim against an individual LP Debtor shall receive LP Plan Consideration attributed to such LP Debtor in the form of Cash in an amount equal to such Allowed LP Other Priority Claim. | Unimpaired | No (Deemed to Accept) |
| 3 | Inc. Other Secured Claims | Each Holder of an Allowed Inc. Other Secured Claim against an individual Inc. Debtor shall receive one of the following treatments, in the sole discretion of LightSquared or the Wind Down Debtors, as applicable:  (i) Inc. Plan Consideration attributed to such Inc. Debtor in the form of Cash in an amount equal to such Allowed Inc. Other Secured Claim; (ii) delivery of the Collateral securing such Allowed Inc. Other Secured Claim and payment of interest required to be paid under section 506(b) of the Bankruptcy Code, if any; or (iii) treatment of such Allowed Inc. Other Secured Claim in any other manner such that the Allowed Inc. Other Secured Claim shall be rendered Unimpaired. | Unimpaired | No (Deemed to Accept) |
| 4 | LP Other Secured Claims | Each Holder of an Allowed LP Other Secured Claim against an individual LP Debtor shall receive one of the following treatments, in the sole discretion of LightSquared or the Wind Down Debtors, as applicable:  (i) LP Plan Consideration attributed to such LP Debtor in the form of Cash in an amount equal to such Allowed LP Other Secured Claim; (ii) delivery of the Collateral securing such Allowed LP Other Secured Claim and payment of interest required to be paid under section 506(b) of the Bankruptcy Code, if any; or (iii) treatment of such Allowed LP Other Secured Claim in any other manner such that the Allowed LP Other Secured Claim shall be rendered Unimpaired. | Unimpaired | No (Deemed to Accept) |
| 5 | Prepetition Inc. Non-Subordinated Facility Claims | Each Holder of an Allowed Prepetition Inc. Non-Subordinated Facility Claim shall receive its Pro Rata share of the remaining portion of Inc. Plan Consideration solely attributable to the Prepetition Inc. Facility Collateral Proceeds after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, and Inc. Other Secured Claims. | Impaired | Yes |
| 6 | Prepetition Inc. Subordinated Facility Claims | Each Holder of an Allowed Prepetition Inc. Subordinated Facility Claim shall receive its Pro Rata share of the remaining portion of Inc. Plan Consideration solely attributable to the Prepetition Inc. Facility Collateral Proceeds after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, and Prepetition Inc. Non-Subordinated Facility Claims. | Impaired | Yes |

| Class | Claims or Equity Interests | Treatment | Impairment Status | Entitlement to Vote |
|---|---|---|---|---|
| 7 | Prepetition LP Facility Claims | Each Holder of an Allowed Prepetition LP Facility Claim shall receive its Pro Rata share of the remaining portion of the LP Plan Consideration solely attributable to the Prepetition LP Facility Collateral Proceeds after satisfaction in full of all Allowed LP Administrative Claims, LP Priority Tax Claims, LP Other Priority Claims, and LP Other Secured Claims. | Impaired | Yes |
| 8 | Inc. General Unsecured Claims | Each Holder of an Allowed Inc. General Unsecured Claim against an individual Inc. Debtor shall receive its Pro Rata share of the remaining Inc. Plan Consideration attributed to such Inc. Debtor after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, and Prepetition Inc. Facility Claims; provided, however, any Deficiency Claims of the Holders of Allowed Inc. Other Secured Claims or Prepetition Inc. Facility Claims shall be treated and satisfied *pari passu* with all Allowed Inc. General Unsecured Claims (subject to the terms of the Prepetition Inc. Facility Lender Subordination Agreement). | Impaired | Yes |
| 9 | LP General Unsecured Claims | Each Holder of an Allowed LP General Unsecured Claim against an individual LP Debtor shall receive its Pro Rata share of the remaining LP Plan Consideration attributed to such LP Debtor after satisfaction in full of all Allowed LP Administrative Claims, LP Priority Tax Claims, LP Other Priority Claims, LP Other Secured Claims, and Prepetition LP Facility Claims; provided, however, any Deficiency Claims of the Holders of Allowed LP Other Secured Claims or Prepetition LP Facility Claims shall be treated and satisfied *pari passu* with all Allowed LP General Unsecured Claims. | Impaired | Yes |
| 10 | Existing LP Preferred Units Equity Interests | Each Allowed Existing LP Preferred Units Equity Interest shall receive its Pro Rata share of the remaining LP Plan Consideration after satisfaction in full of all Allowed LP Administrative Claims, LP Priority Tax Claims, LP Other Priority Claims, LP Other Secured Claims, Prepetition LP Facility Claims, and LP General Unsecured Claims. | Impaired | Yes |
| 11 | Existing Inc. Preferred Stock Equity Interests | Each Allowed Existing Inc. Preferred Stock Equity Interest shall receive its Pro Rata share of the remaining Inc. Plan Consideration after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, Prepetition Inc. Facility Claims, and Inc. General Unsecured Claims. | Impaired | Yes |

| Class | Claims or Equity Interests | Treatment | Impairment Status | Entitlement to Vote |
|-------|---------------------------|-----------|-------------------|---------------------|
| 12 | Existing Inc. Common Stock Equity Interests | Each Holder of an Allowed Existing Inc. Common Stock Equity Interest shall receive its Pro Rata share of the remaining Inc. Plan Consideration after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, Prepetition Inc. Facility Claims, Inc. General Unsecured Claims, and Existing Inc. Preferred Stock Equity Interests. | Impaired | Yes |
| 13 | Intercompany Interests | Each Allowed Intercompany Interest shall be Reinstated for the benefit of the Holder thereof. | Unimpaired | No (Deemed to Accept) |

## B.    SOLICITATION PROCESS AND VOTING PROCEDURES

A description of the solicitation process and voting procedures is provided in Article I.C of the General Disclosure Statement, entitled "**Solicitation Process and Voting Procedures**." Detailed instructions for completing the Ballot for voting on the Plan are set forth in such Ballot included in the package containing the Debtors' Specific Disclosure Statement.

## C.    CONFIRMATION PROCEDURES

A description of the procedures and requirements to achieve Confirmation of the Plan is provided in Article IV of the General Disclosure Statement, entitled "**Confirmation Procedures**."

## D.    RISK FACTORS

Prior to deciding whether and how to vote on the Plan, Holders of Claims or Equity Interests in a Voting Class should read and consider carefully all of the information in the Plan, the General Disclosure Statement, including the risk factors described in Article V thereof, entitled "**General Risk Factors**," and the Debtors' Specific Disclosure Statement, including the risk factors described in Article IV, entitled "**Plan-Related Risk Factors to Confirming and Consummating Plan**."

## E.    IDENTITY OF PERSONS TO CONTACT FOR MORE INFORMATION

Any interested party desiring further information about the Plan should contact: Kurtzman Carson Consultants LLC, Attn: LightSquared, 2335 Alaska Avenue, El Segundo, CA 90245, via electronic mail at LightSquaredInfo@kccllc.com, or by phone at (877) 499-4509.

## F.    DISCLAIMER

In formulating the Plan, LightSquared has relied on financial data derived from its books and records. LightSquared, therefore, represents that everything stated in the Debtors' Specific Disclosure Statement is true to the best of its knowledge. LightSquared nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in the Debtors' Specific Disclosure Statement. Moreover, the Bankruptcy Court has not yet determined whether the Plan

is confirmable, and the Bankruptcy Court does not recommend whether you should vote to accept or reject the Plan.

Although the attorneys, accountants, advisors, and other professionals employed by LightSquared have assisted in preparing the Disclosure Statement based upon factual information and assumptions respecting financial, business, and accounting data found in the books and records of LightSquared, they have not independently verified such information and make no representations as to the accuracy thereof.  The attorneys, accountants, advisors, and other professionals employed by LightSquared shall have no liability for the information in the Disclosure Statement.

LightSquared and its professionals also have made a diligent effort to identify the pending litigation claims and projected objections to Claims and Equity Interests.  However, no reliance should be placed on the fact that a particular litigation claim or projected objection to a claim and interest is, or is not, identified in the Disclosure Statement.

## G.    RULES OF INTERPRETATION

The following rules for interpretation and construction shall apply to the Debtors' Specific Disclosure Statement:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in such form or substantially on such terms and conditions; (3) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit (as it may thereafter be amended, modified, or supplemented); (4) unless otherwise stated, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (5) any reference herein to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "**Articles**" are references to Articles hereof or hereto; (7) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Debtors' Specific Disclosure Statement in its entirety rather than to a particular portion of the Debtors' Specific Disclosure Statement; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation hereof; (9) unless otherwise stated, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined herein shall have the meaning ascribed to that term in the Plan; (11) any term used in capitalized form herein that is not otherwise defined herein or in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (12) in computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply, and if the date on which a transaction may occur pursuant to the Debtors' Specific Disclosure Statement shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day; and (13) unless otherwise specified, all references in the Debtors' Specific Disclosure Statement to monetary figures shall refer to currency of the United States of America.

## ARTICLE II
## SUMMARY OF PLAN

This section provides a summary of the structure and means for implementation of the Plan, and the classification and treatment of Claims and Equity Interests under the Plan, and is qualified in its entirety by reference to the Plan (as well as the exhibits thereto and definitions therein).

The statements contained in the Debtors' Specific Disclosure Statement include summaries of the provisions contained in the Plan and in the documents referred to therein. The statements contained in the Debtors' Specific Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions of the Plan or documents referred to therein.

**The Plan itself and the documents therein control the actual treatment of Claims against, and Equity Interests in, LightSquared under the Plan and will, upon the occurrence of the Effective Date, be binding upon all Holders of Claims against, and Equity Interests in, LightSquared, LightSquared's Estates, the Wind Down Debtors, all parties receiving property under the Plan, and other parties in interest. In the event of any conflict between the Debtors' Specific Disclosure Statement, the General Disclosure Statement, and the Plan or any other operative document, the terms of the Plan and/or such other operative document shall control.**

A. **ADMINISTRATIVE CLAIMS, ACCRUED PROFESSIONAL COMPENSATION CLAIMS, DIP INC. FACILITY CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES**

All Claims and Equity Interests (except Administrative Claims, Accrued Professional Compensation Claims, DIP Inc. Facility Claims, Priority Tax Claims, and U.S. Trustee Fees) are placed in the Classes set forth in Article III of the Plan. In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Accrued Professional Compensation Claims, DIP Inc. Facility Claims, Priority Tax Claims, and U.S. Trustee Fees have not been classified, and the Holders thereof are not entitled to vote on the Plan. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.

1. **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, each Holder of an Allowed Administrative Claim (other than of an Accrued Professional Compensation Claim, DIP Inc. Facility Claim, and KEIP Payment) shall receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Administrative Claim, Plan Consideration in the form of Cash in an amount equal to such Allowed Administrative Claim either: (a) on the Effective Date or as soon thereafter as reasonably practicable, or, if not then due, when such Allowed Administrative Claim is due or as

soon thereafter as reasonably practicable; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable or, if not then due, when such Allowed Administrative Claim is due or as soon thereafter as reasonably practicable; (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims; (d) at such other time that is agreed to by the Debtors or the Wind Down Debtors and the Holders of such Allowed Administrative Claim; or (e) at such other time and on such other terms set forth in an order of the Bankruptcy Court.  For the avoidance of doubt, LP Allowed Administrative Claims shall be paid solely from LP Plan Consideration and Inc. Allowed Administrative Claims shall be paid solely from Inc. Plan Consideration.

Except for Claims of Professionals, DIP Inc. Facility Claims, U.S. Trustee Fees, and KEIP Payments, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Wind Down Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Confirmation Date.  Objections to such requests must be Filed and served on the Wind Down Debtors and the requesting party by the later of (a) one hundred and eighty (180) days after the Effective Date and (b) one hundred and eighty (180) days after the Filing of the applicable request for payment of Administrative Claims, if applicable.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Wind Down Debtors or any action by the Bankruptcy Court.

Notwithstanding anything in the Plan to the contrary, (a) any claim by a Stalking Horse Bidder for any Break-Up Fee or Expense Reimbursement shall be deemed an Allowed Administrative Claim in accordance with the Bid Procedures Order, (b) a Stalking Horse Bidder shall not be required to File any request for payment of such Administrative Claim, and (c) any Break-Up Fee or Expense Reimbursement shall be paid in accordance with the terms of the relevant Stalking Horse Agreement and the Bid Procedures Order.

### 2.    Accrued Professional Compensation Claims

#### a.    Final Fee Applications

All final requests for payment of Claims of a Professional shall be Filed no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed

amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court and satisfied in accordance with an order of the Bankruptcy Court.

### b.    Professional Fee Escrow Account

In accordance with Article II.B.3 of the Plan, on the Effective Date, the Wind Down Debtors shall establish and fund the Professional Fee Escrow Account from the Plan Consideration Carve-Out in the form of Cash in an amount equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Wind Down Debtors' Estates. The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order. When all Allowed Professional Compensation Claims are paid in full in Cash, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Wind Down Debtors for distribution in accordance with the Plan. For the avoidance of doubt, the Inc. Debtors shall fund 15% of the Professional Fee Escrow Account from the Inc. Plan Consideration Carve-Out and the LP Debtors shall fund 85% of the Professional Fee Escrow Account from the LP Plan Consideration Carve-Out.

### c.    Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days prior to the anticipated Confirmation Date; provided, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

### d.    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Debtors or Wind Down Debtors (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, Professional, or other fees and expenses related to the Consummation and implementation of the Plan incurred by the Debtors or Wind Down Debtors (as applicable) on or after the Confirmation Date. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Wind Down Debtors (as applicable) may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

### 3.    DIP Inc. Facility Claims

In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each DIP Inc. Facility Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of a DIP Inc. Facility Claim agrees to a less favorable or other treatment, each Holder of a DIP Inc. Facility Claim shall receive Inc. Plan Consideration in the form of Cash in an amount equal to such DIP Inc. Facility Claim.

### 4.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable or other treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive on the Effective Date or as soon thereafter as reasonably practicable:  (a) Plan Consideration in the form of Cash in an amount equal to such Allowed Priority Tax Claim; (b) Plan Consideration in the form of Cash in an amount agreed to by such Holder and the Wind Down Debtors; or (c) at the option of the Wind Down Debtors, Plan Consideration in the form of Cash in an aggregate amount equal to such Allowed Priority Tax Claim payable in installment payments over a period of not more than five (5) years after the Petition Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, the Holder of such Claim shall receive Plan Consideration in the form of Cash in accordance with the terms of any agreement between the Wind Down Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.  For the avoidance of doubt, LP Priority Tax Claims shall be paid solely from LP Plan Consideration and Inc. Priority Tax Claims shall be paid solely from Inc. Plan Consideration.

### 5.    Payment of Statutory Fees

On the Effective Date or as soon thereafter as reasonably practicable, the Wind Down Debtors shall pay all U.S. Trustee Fees that are due and owing on the Effective Date.  Following the Effective Date, the Wind Down Debtors shall pay the U.S. Trustee Fees for each quarter (including any fraction thereof) until the first to occur of the Chapter 11 Cases being converted, dismissed, or closed.

## B.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 1.    Summary

The categories listed in Article III.B of the Plan classify Claims against, and Equity Interests in, each of the Debtors for all purposes, including voting, Confirmation, and distribution pursuant thereto and pursuant to sections 1122 and 1123(a)(l) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving Plan Distributions pursuant to the Plan only to the extent that such Claim or Equity

Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**2.      Classification and Treatment of Claims and Equity Interests**

To the extent a Class contains Allowed Claims or Allowed Equity Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

a.      <u>**Class 1 – Inc. Other Priority Claims**</u>

*(i)*      Classification:  Class 1 consists of all Inc. Other Priority Claims.

*(ii)*      Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Inc. Other Priority Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Inc. Other Priority Claim agrees to any other treatment, each Holder of an Allowed Inc. Other Priority Claim against an individual Inc. Debtor shall receive Inc. Plan Consideration attributed to such Inc. Debtor in the form of Cash in an amount equal to such Allowed Inc. Other Priority Claim.

*(iii)*      Voting:  Class 1 is Unimpaired by the Plan.  Each Holder of a Class 1 Inc. Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Class 1 Inc. Other Priority Claim is entitled to vote to accept or reject the Plan.

b.      <u>**Class 2 – LP Other Priority Claims**</u>

*(i)*      Classification:  Class 2 consists of all LP Other Priority Claims.

*(ii)*      Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed LP Other Priority Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed LP Other Priority Claim agrees to any other treatment, each Holder of an Allowed LP Other Priority Claim against an individual LP Debtor shall receive LP Plan Consideration attributed to such LP Debtor in the form of Cash in an amount equal to such Allowed LP Other Priority Claim.

*(iii)*     Voting:  Class 2 is Unimpaired by the Plan.  Each Holder of a Class 2 LP Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Class 2 LP Other Priority Claim is entitled to vote to accept or reject the Plan.

**c.**     **Class 3 – Inc. Other Secured Claims**

*(i)*     Classification:  Class 3 consists of all Inc. Other Secured Claims.

*(ii)*     Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Inc. Other Secured Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Inc. Other Secured Claim agrees to any other treatment, each Holder of an Allowed Inc. Other Secured Claim against an individual Inc. Debtor shall receive one of the following treatments, in the sole discretion of the Debtors or the Wind Down Debtors, as applicable:  (a) Inc. Plan Consideration attributed to such Inc. Debtor in the form of Cash in an amount equal to such Allowed Inc. Other Secured Claim; (b) delivery of the Collateral securing such Allowed Inc. Other Secured Claim and payment of interest required to be paid under section 506(b) of the Bankruptcy Code, if any; or (c) treatment of such Allowed Inc. Other Secured Claim in any other manner such that the Allowed Inc. Other Secured Claim shall be rendered Unimpaired.

*(iii)*     Voting:  Class 3 is Unimpaired by the Plan.  Each Holder of a Class 3 Inc. Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Class 3 Inc. Other Secured Claim is entitled to vote to accept or reject the Plan.

*(iv)*     Deficiency Claims:  Deficiency Claims of the Holders of Allowed Inc. Other Secured Claims shall be treated for all purposes under the Plan as Allowed Inc. General Unsecured Claims and classified as Class 8 Inc. General Unsecured Claims.

   d.     **Class 4 – LP Other Secured Claims**

   *(i)*     Classification:  Class 4 consists of all LP Other
   Secured Claims.

   *(ii)*     Treatment:  In full and final satisfaction, settlement,
   release, and discharge of, and in exchange for, each
   Allowed LP Other Secured Claim, on the Effective Date or
   as soon thereafter as reasonably practicable, except to the
   extent that a Holder of an Allowed LP Other Secured Claim
   agrees to any other treatment, each Holder of an Allowed
   LP Other Secured Claim against an individual LP Debtor
   shall receive one of the following treatments, in the sole
   discretion of the Debtors or the Wind Down Debtors, as
   applicable:  (a) LP Plan Consideration attributed to such LP
   Debtor in the form of Cash in an amount equal to such
   Allowed LP Other Secured Claim; (b) delivery of the
   Collateral securing such Allowed LP Other Secured Claim
   and payment of interest required to be paid under
   section 506(b) of the Bankruptcy Code, if any; or
   (c) treatment of such Allowed LP Other Secured Claim in
   any other manner such that the Allowed LP Other Secured
   Claim shall be rendered Unimpaired.

   *(iii)*     Voting:  Class 4 is Unimpaired by the Plan.  Each
   Holder of a Class 4 LP Other Secured Claim is
   conclusively presumed to have accepted the Plan pursuant
   to section 1126(f) of the Bankruptcy Code.  No Holder of a
   Class 4 LP Other Secured Claim is entitled to vote to
   accept or reject the Plan.

   *(iv)*     Deficiency Claims:  Deficiency Claims of the
   Holders of Allowed LP Other Secured Claims shall be
   treated for all purposes under the Plan as Allowed LP
   General Unsecured Claims and classified as Class 9 LP
   General Unsecured Claims.

   e.     **Class 5 – Prepetition Inc. Non-Subordinated Facility Claims**

   *(i)*     Classification:  Class 5 consists of all Prepetition
   Inc. Non-Subordinated Facility Claims.

   *(ii)*     Treatment:  In full and final satisfaction, settlement,
   release, and discharge of, and in exchange for, each
   Allowed Prepetition Inc. Non-Subordinated Facility Claim,
   on the Effective Date or as soon thereafter as reasonably
   practicable, except to the extent that a Holder of an

Allowed Prepetition Inc. Non-Subordinated Facility Claim agrees to any other treatment, each Holder of an Allowed Prepetition Inc. Non-Subordinated Facility Claim shall receive its Pro Rata share of the remaining portion of the Inc. Plan Consideration solely attributable to the Prepetition Inc. Facility Collateral Proceeds after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, and Inc. Other Secured Claims; provided, however, in no event shall any Plan Distribution to a Holder of an Allowed Prepetition Inc. Non-Subordinated Facility Claim pursuant to the Plan be in excess of 100% of the amount of such Holder's Allowed Prepetition Inc. Non-Subordinated Facility Claim.

*(iii)*    Voting:  Class 5 is Impaired by the Plan.  Each Holder of a Class 5 Prepetition Inc. Non-Subordinated Facility Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

*(iv)*    Deficiency Claims:  Deficiency Claims of the Holders of Allowed Prepetition Inc. Non-Subordinated Facility Claims shall be treated for all purposes under the Plan as Allowed Inc. General Unsecured Claims and classified as Class 8 Inc. General Unsecured Claims.

**f.**    **Class 6 – Prepetition Inc. Subordinated Facility Claims**

*(i)*    Classification:  Class 6 consists of all Prepetition Inc. Subordinated Facility Claims.

*(ii)*    Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition Inc. Subordinated Facility Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Prepetition Inc. Subordinated Facility Claim agrees to any other treatment, each Holder of an Allowed Prepetition Inc. Subordinated Facility Claim shall receive its Pro Rata share of the remaining portion of the Inc. Plan Consideration solely attributable to the Prepetition Inc. Facility Collateral Proceeds after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, and Prepetition Inc. Subordinated Facility Claims; provided, however, in no event shall any Plan Distribution to a Holder of an Allowed Prepetition Inc. Subordinated Facility Claim pursuant to the Plan be in excess of 100% of

the amount of such Holder's Allowed Prepetition Inc. Subordinated Facility Claim.

*(iii)*     Voting:  Class 6 is Impaired by the Plan.  Each Holder of a Class 6 Prepetition Inc. Subordinated Facility Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

*(iv)*     Deficiency Claims:  Deficiency Claims of the Holders of Allowed Prepetition Inc. Subordinated Facility Claims shall be treated for all purposes under the Plan as Allowed Inc. General Unsecured Claims and classified as Class 8 Inc. General Unsecured Claims.

g.     **Class 7 – Prepetition LP Facility Claims**

*(i)*     Classification:  Class 7 consists of all Prepetition LP Facility Claims.

*(ii)*     Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition LP Facility Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Prepetition LP Facility Claim agrees to any other treatment, each Holder of an Allowed Prepetition LP Facility Claim shall receive its Pro Rata share of the remaining portion of the LP Plan Consideration solely attributable to the Prepetition LP Facility Collateral Proceeds after satisfaction in full of all Allowed LP Administrative Claims, LP Priority Tax Claims, LP Other Priority Claims, and LP Other Secured Claims; provided, however, in no event shall any Plan Distribution to a Holder of an Allowed Prepetition LP Facility Claim pursuant to the Plan be in excess of 100% of the amount of such Holder's Allowed Prepetition LP Facility Claim.

*(iii)*     Voting:  Class 7 is Impaired by the Plan.  Each Holder of a Class 7 Prepetition LP Facility Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

*(iv)*     Deficiency Claims:  Deficiency Claims of the Holders of Allowed Prepetition LP Facility Claims shall be treated for all purposes under the Plan as Allowed LP General Unsecured Claims and classified as Class 9 LP General Unsecured Claims.

h.      **Class 8 – Inc. General Unsecured Claims**

*(i)*      Classification:  Class 8 consists of all Inc. General Unsecured Claims.

*(ii)*      Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Inc. General Unsecured Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Inc. General Unsecured Claim agrees to any other treatment, each Holder of an Allowed Inc. General Unsecured Claim against an individual Inc. Debtor shall receive its Pro Rata share of the remaining Inc. Plan Consideration attributed to such Inc. Debtor after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, and Prepetition Inc. Facility Claims; provided, however, any Deficiency Claims of the Holders of Allowed Inc. Other Secured Claims or Prepetition Inc. Facility Claims shall be treated and satisfied *pari passu* with all Allowed Inc. General Unsecured Claims (subject to the terms of the Prepetition Inc. Facility Lender Subordination Agreement); provided, further, in no event shall any Plan Distribution to a Holder of an Allowed Inc. General Unsecured Claim pursuant to the Plan be in excess of 100% of the amount of such Holder's Allowed Inc. General Unsecured Claim.

*(iii)*      Voting:  Class 8 is Impaired by the Plan.  Each Holder of a Class 8 Inc. General Unsecured Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

i.      **Class 9 – LP General Unsecured Claims**

*(i)*      Classification:  Class 9 consists of all LP General Unsecured Claims.

*(ii)*      Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed LP General Unsecured Claim, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed LP General Unsecured Claim agrees to any other treatment, each Holder of an Allowed LP General Unsecured Claim against an individual LP Debtor shall receive its Pro Rata share of

the remaining LP Plan Consideration attributed to such LP Debtor after satisfaction in full of all Allowed LP Administrative Claims, LP Priority Tax Claims, LP Other Priority Claims, LP Other Secured Claims, and Prepetition LP Facility Claims; provided, however, any Deficiency Claims of the Holders of Allowed LP Other Secured Claims or Prepetition LP Facility Claims shall be treated and satisfied *pari passu* with all Allowed LP General Unsecured Claims; provided, further, in no event shall any Plan Distribution to a Holder of an Allowed LP General Unsecured Claim pursuant to the Plan be in excess of 100% of the amount of such Holder's Allowed LP General Unsecured Claim.

*(iii)*   Voting:  Class 9 is Impaired by the Plan.  Each Holder of a Class 9 LP General Unsecured Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

**j.**      **Class 10 – Existing LP Preferred Units Equity Interests**

*(i)*   Classification:  Class 10 consists of all Existing LP Preferred Units Equity Interests.

*(ii)*   Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Existing LP Preferred Units Equity Interest, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Existing LP Preferred Units Equity Interest agrees to any other treatment, each Allowed Existing LP Preferred Units Equity Interest shall receive its Pro Rata share of the remaining LP Plan Consideration after satisfaction in full of all Allowed LP Administrative Claims, LP Priority Tax Claims, LP Other Priority Claims, LP Other Secured Claims, Prepetition LP Facility Claims, and LP General Unsecured Claims; provided, however, in no event shall any Plan Distribution to a Holder of an Allowed Existing LP Preferred Units Equity Interest pursuant to the Plan be in excess of 100% of the amount of such Holder's Allowed Existing LP Preferred Units Equity Interest.

*(iii)*   Voting:  Class 10 is Impaired by the Plan.  Each Holder of a Class 10 Existing LP Preferred Units Equity Interest as of the Voting Record Date is entitled to vote to accept or reject the Plan.

    **k.**    <u>**Class 11 – Existing Inc. Preferred Stock Equity Interests**</u>

*(i)*    Classification:  Class 11 consists of all Existing Inc. Preferred Stock Equity Interests.

*(ii)*    Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Existing Inc. Preferred Stock Equity Interest, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Existing Inc. Preferred Stock Equity Interest agrees to any other treatment, each Allowed Existing Inc. Preferred Stock Equity Interest shall receive its Pro Rata share of the remaining Inc. Plan Consideration after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, Prepetition Inc. Facility Claims, and Inc. General Unsecured Claims; <u>provided</u>, <u>however</u>, in no event shall any Plan Distribution to a Holder of an Allowed Existing Inc. Preferred Stock Equity Interest pursuant to the Plan be in excess of 100% of the amount of such Holder's Allowed Existing Inc. Preferred Stock Equity Interest.

*(iii)*    Voting:  Class 11 is Impaired by the Plan.  Each Holder of a Class 11 Existing Inc. Preferred Stock Equity Interest as of the Voting Record Date is entitled to vote to accept or reject the Plan.

    **l.**    <u>**Class 12 – Existing Inc. Common Stock Equity Interests**</u>

*(i)*    Classification:  Class 12 consists of all Existing Inc. Common Stock Equity Interests.

*(ii)*    Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Existing Inc. Common Stock Equity Interest, on the Effective Date or as soon thereafter as reasonably practicable, except to the extent that a Holder of an Allowed Existing Inc. Common Stock Equity Interest agrees to any other treatment, each Holder of an Allowed Existing Inc. Common Stock Equity Interest shall receive its Pro Rata share of the remaining Inc. Plan Consideration after satisfaction in full of all Allowed Inc. Administrative Claims, Inc. Priority Tax Claims, Inc. Other Priority Claims, Inc. Other Secured Claims, Prepetition Inc. Facility

Claims, Inc. General Unsecured Claims, and Existing Inc.
Preferred Stock Equity Interests.

*(iii)* Voting: Class 12 is Impaired by the Plan. Each
Holder of a Class 12 Existing Inc. Common Stock Equity
Interests as of the Voting Record Date is entitled to vote to
accept or reject the Plan.

m.    **Class 13 – Intercompany Interests**

*(i)* Classification: Class 13 consists of all
Intercompany Interests.

*(ii)* Treatment: On the Effective Date or as soon
thereafter as reasonably practicable, each Allowed
Intercompany Interest shall be Reinstated for the benefit of
the Holder thereof.

*(iii)* Voting: Class 13 is Unimpaired by the Plan. Each
Holder of a Class 13 Intercompany Interest is conclusively
presumed to have accepted the Plan pursuant to
section 1126(f) of the Bankruptcy Code. No Holder of a
Class 13 Intercompany Interests is entitled to vote to accept
or reject the Plan.

3.    **Special Provision Governing Unimpaired Claims and Equity Interests**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors'
rights in respect of any Unimpaired Claims or Equity Interests, including, without limitation, all
rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such
Unimpaired Claims or Equity Interests.

4.    **Acceptance or Rejection of Plan**

a.    **Voting Classes Under Plan**

Under the Plan, Classes 5, 6, 7, 8, 9, 10, 11, and 12 are Impaired, and each Holder of a
Claim or Equity Interest as of the Voting Record Date in such Classes is entitled to vote to accept
or reject the Plan; provided, however, to the extent that any Class of Claims or Equity Interests is
satisfied in full, in Cash, from Plan Consideration, the Debtors reserve the right to (i) deem such
Class as Unimpaired and (ii) treat the Holders in such Class as conclusively presumed to have
accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

b.    **Presumed Acceptance Under Plan**

Under the Plan, (i) Classes 1, 2, 3, 4, and 13 are Unimpaired, (ii) the Holders of Claims in
such Classes are conclusively presumed to have accepted the Plan, and (iii) such Holders are not
entitled to vote to accept or reject the Plan.

20

### c.    Acceptance by Impaired Classes of Claims or Equity Interests

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

Pursuant to section 1126(d) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Equity Interests has accepted the Plan if the Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests in such Class actually voting have voted to accept the Plan.

### d.    Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Equity Interests in such Class.

### 5.    Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest, or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the Confirmation Hearing Date, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 6.    Confirmation Pursuant to Section 1129(b) of Bankruptcy Code

To the extent that any Impaired Class votes to reject the Plan, the Debtors may request Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any document in the Plan Supplement, including amending or modifying it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### 7.    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## C.    MEANS FOR IMPLEMENTATION OF PLAN

### 1.    Overview of Plan

Pursuant to the Bid Procedures Order, the Debtors shall commence and continue a process to consummate the Sale in connection with the Confirmation of the Plan.  Upon Consummation of the Plan, the Sale Proceeds and other Plan Consideration shall be distributed to the Holders of Allowed Claims against, and Equity Interests in, the Debtors in accordance

with the Plan.  The Chief Wind Down Officer shall, among other things, (a) administer the wind down of the Wind Down Debtors and dispose of the Retained Assets, (b) distribute the proceeds thereof as Plan Distributions in accordance with the terms of the Plan, and (c) prosecute the preserved Causes of Action of the Estates.

### 2.    Plan Transactions

The Confirmation Order shall be deemed to authorize, among other things, the Plan Transactions.  On the Effective Date or as soon thereafter as reasonably practicable, the Wind Down Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, reorganization, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates of incorporation, certificates of partnership, merger, amalgamation, consolidation, or dissolution with the appropriate governmental authorities pursuant to applicable law; and (d) all other actions that the Wind Down Debtors determine are necessary or appropriate.

### 3.    Sources of Consideration for Plan Distributions

All consideration necessary for the Wind Down Debtors or Disbursing Agent to make Plan Distributions shall be obtained from the Plan Consideration and the Plan Consideration Carve-Out.  Upon the Consummation of the Plan, the LP Plan Consideration shall be used solely for Plan Distributions made to Holders of Allowed Claims against, and Equity Interests in, the LP Debtors, and the Inc. Plan Consideration shall be used solely for Plan Distributions made to Holders of Allowed Claims against, and Equity Interest in, the Inc. Debtors; provided, however, any LP Plan Consideration remaining after the satisfaction in full of all Allowed Claims against, and Equity Interests in, the LP Debtors shall be deemed Inc. Plan Consideration for distribution to Holders of Allowed Claims against, and Equity Interests in, the Inc. Debtors in accordance with the Plan given the Inc. Debtors' equity ownership interests in the LP Debtors.

### 4.    Confirmation Order and Asset Purchase Agreement(s)

On or before the Effective Date, the Debtors and the other relevant Entities shall have entered into the Asset Purchase Agreement(s).  The Wind Down Debtors shall use the Sale Proceeds for the purposes specified in the Plan and the other governing documents.

Confirmation of the Plan shall constitute (a) approval of the Sale, the Asset Purchase Agreement(s), and all transactions contemplated thereby, including any and all actions to be taken, undertakings to be made, and obligations to be incurred by the Wind Down Debtors in connection therewith, (b) authorization for the Wind Down Debtors to enter into and execute the Asset Purchase Agreement(s) and such other documents as may be required or appropriate, and to perform their obligations under the Asset Purchase Agreement(s) and all of the transactions contemplated thereunder, and such agreement(s) shall be valid, binding, and enforceable in

accordance with its (their) terms, and each party thereto shall be bound thereby without the need for any further actions, and (c) authorization to sell, assume, assign, and/or transfer the Acquired Assets, subject to applicable law and the terms and conditions of the Asset Purchase Agreement(s) (including, without limitation, receipt of the Specified Regulatory Approvals to the extent applicable), and take any and all actions necessary to consummate the Sale.

The Confirmation Order shall approve the Sale of the Acquired Assets under sections 105(a), 1123(a)(5), 1123(b)(4), 1129(b)(2)(A), 1141, 1142(b), 1145, and 1146(a) of the Bankruptcy Code free and clear of any Claims, Liens, interests, or encumbrances pursuant to the Sale process governed by the terms and conditions of the Asset Purchase Agreement(s), the Bid Procedures Order, and the Plan. The Sale Proceeds shall include a Cash component in an amount sufficient (a) for the Disbursing Agent to make all Plan Distributions required to be in the form of Cash, (b) for the Debtors to fund the Wind Down Reserve (including the Professional Fee Reserve and the Disputed Claims and Equity Interests Reserve), and (c) to pay all amounts due to be paid to any Stalking Horse Bidder pursuant to the terms of the Bid Procedures Order in the event such Stalking Horse Bidder is not a Purchaser, including any Break-Up Fee or Expense Reimbursement.

## 5. Assumed Liabilities

In accordance with the terms of the Asset Purchase Agreement(s), the relevant Purchaser shall be responsible for payment and satisfaction of all Assumed Liabilities. All Persons holding Claims or Equity Interests arising out of or concerning an Assumed Liability shall be forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Wind Down Debtors, or any of their property, such Claims or Equity Interests (as applicable) in accordance with the terms of the Asset Purchase Agreement(s).

## 6. Wind Down Debtors

### a. Principal Purpose and Corporate Existence

The principal purpose of the Wind Down Debtors shall be to dispose of, collect, and maximize the Cash value of the Assets of the Debtors remaining after the Sale Closing pursuant to the Asset Purchase Agreement(s) and make Plan Distributions in accordance with the terms of the Plan. Except as otherwise provided in the Plan or as contemplated by the Plan Transactions, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as applicable, with all the powers of a corporation, limited liability company, unlimited liability company, partnership, or other form, as applicable, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

Without limiting the foregoing, the Debtors shall continue to exist after the Effective Date as separate corporate entities, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, for the purposes of satisfying any obligations under the Asset Purchase Agreement(s) and the Plan, including (i) making or assisting the Disbursing Agent in making Plan Distributions as required under the Plan, (ii) maintaining the Retained Assets and the Debtors' business, (iii) effectuating the Wind Down, (iv) preserving and prosecuting all retained Causes of Action of the Estates, (v) serving as the foreign representative in the Canadian Proceedings, and (vi) taking any other steps in furtherance thereof or as may be reasonably necessary or appropriate to wind down the affairs of the Estates and the Wind Down Debtors and implement the terms of the Plan; provided however, on or after the Effective Date, each Wind Down Debtor, in its sole and exclusive discretion, but subject to, and in accordance with, the terms and conditions of the Asset Purchase Agreement(s), and subject to receipt of any required governmental or regulatory approvals (if any), may take such action as permitted by applicable law as such Wind Down Debtor may determine is reasonable and appropriate, including, but not limited to, causing (i) a Wind Down Debtor to be merged into another Wind Down Debtor, its subsidiary, or Affiliate, (ii) a Wind Down Debtor to be dissolved without the necessity for any other or further actions to be taken by or on behalf of such dissolving Wind Down Debtor, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities, (iii) the legal name of a Wind Down Debtor to be changed, or (iv) the closing of a Wind Down Debtor's Chapter 11 Case and the Canadian Proceedings.

### b.      Assets of Wind Down Debtors

On or after the Effective Date, the Retained Assets, including all Assets of the Debtors or their Estates which are neither distributed nor abandoned by the Debtors on the Effective Date, shall be deemed transferred, dividended, or assigned to such Wind Down Debtor(s) as they deem appropriate.  On the Effective Date or as soon thereafter as reasonably practicable, the Wind Down Debtors shall dispose of the Retained Assets to the extent practicable and distribute the proceeds thereof as Plan Distributions in accordance with the terms of the Plan.

### c.      Wind Down Reserve

The activities and operations of the Wind Down Debtors and the Chief Wind Down Officer shall be funded through a reserve to be established on the Effective Date, in accordance with the terms of the Wind Down Budget, to fund the winding down of the affairs of the Debtors and the Wind Down Debtors and the other items reflected in the Wind Down Budget (the "Wind Down Reserve").  The Wind Down Reserve shall be funded as of the Effective Date from the Plan Consideration Carve-Out, and thereafter from time to time from any additional Plan Consideration, in an amount sufficient to fund the Wind Down Budget.  Upon the closing of the Chapter 11 Cases and the dissolution of the Wind Down Debtors, or such earlier time as it appears, in the reasonable view of the Chief Wind Down Officer, that the Wind Down Reserve is overfunded, the Chief Wind Down Officer shall make any excess funds available for funding of the other reserves and Plan Distributions in accordance with the terms of the Plan.  For the avoidance of doubt, the Inc. Debtors shall fund 15% of the Wind Down Reserve from the Inc. Plan Consideration Carve-Out and the LP Debtors shall fund 85% of the Wind Down Reserve from the LP Plan Consideration Carve-Out.

### d.    Selection, Removal, and Replacement of Chief Wind Down Officer

The identity of the Chief Wind Down Officer shall be disclosed in the Plan Supplement and is subject to the approval of the Bankruptcy Court in the Confirmation Order.  After the Effective Date, the Chief Wind Down Officer may be removed or replaced by a successor in accordance with the terms of the Chief Wind Down Officer Agreement.

### e.    Powers and Duties of Chief Wind Down Officer

The Chief Wind Down Officer shall be deemed the representative of the Wind Down Debtors' Estates under section 1123(b)(3)(B) of the Bankruptcy Code, and shall have all rights associated therewith.  Pursuant to the terms of the Chief Wind Down Officer Agreement, the Chief Wind Down Officer shall have all duties, powers, and standing authority necessary to implement the Plan and to administer and liquidate the Assets of the Wind Down Debtors for the benefit of the Holders of Allowed Claims or Equity Interests.  These powers shall include, without limitation, the following:

> *(i)*    administering the Plan Distributions (in coordination with any Disbursing Agent that is not the Chief Wind Down Officer) and maintaining the Disputed Claims and Equity Interests Reserve;

> *(ii)*    investing any Cash of the Wind Down Debtors;

> *(iii)*    selling or otherwise transferring for value any non-Cash Assets of the Wind Down Debtors;

> *(iv)*    Filing with the Bankruptcy Court or Canadian Court reports and other documents required by the Plan or otherwise required to close the Chapter 11 Cases or Canadian Proceedings;

> *(v)*    preparing and filing tax and informational returns for the Debtors and as required by the Wind Down Debtors;

> *(vi)*    retaining such professionals as the Chief Wind Down Officer may in his or her discretion deem necessary for the operation and management of the Wind Down Debtors, including entering into contingent fee arrangements with respect to the prosecution of the Debtors' Causes of Action;

> *(vii)*    litigating or settling any Claims or Causes of Action asserted against the Debtors or the Wind Down Debtors and using all commercially reasonable efforts to cooperate with other parties in litigation;

> *(viii)*    prosecuting objections to Claims;

*(ix)* evaluating, filing, litigating, prosecuting, settling, or abandoning the Causes of Action of the Debtors;

*(x)* setting off amounts owed to the Debtors or the Wind Down Debtors against any amounts otherwise due to be distributed to the Holder of an Allowed Claim or Equity Interest;

*(xi)* abandoning any property of the Wind Down Debtors that cannot be sold or otherwise disposed of for value and whose distribution to Holders of Allowed Claims or Equity Interests would not be feasible or cost-effective in the reasonable judgment of the Chief Wind Down Officer;

*(xii)* administering the Wind Down Reserve (including the Disputed Claims and Equity Interests Reserve and the Professional Fee Reserve); <u>provided</u>, the Wind Down Debtors shall indemnify the Chief Wind Down Officer for his or her actions as administrator of the Disputed Claims and Equity Interests Reserve;

*(xiii)* making interim and final distributions of the Wind Down Debtors' Assets;

*(xiv)* winding up the affairs of the Wind Down Debtors and dissolving them under applicable law as appropriate;

*(xv)* providing for storage and disposal of records;

*(xvi)* incurring such charges, costs, and fees as are necessary to wind down or sell any remaining Assets of the Wind Down Debtors; and

*(xvii)* taking any other actions that the Chief Wind Down Officer, in his or her reasonable discretion, determines to be in the best interest of the Debtors' Estates or the Wind Down Debtors.

### f.    <u>Exculpation and Indemnification of Chief Wind Down Officer</u>

The Chief Wind Down Officer Agreement shall provide for and govern the exculpation and indemnification of the Chief Wind Down Officer.

### g.    <u>Plan Distributions by Wind Down Debtors</u>

The Wind Down Debtors are authorized to make all Plan Distributions required under the Plan in accordance with Article VI of the Plan.

26

### h.    Wind Down and Dissolution of Debtors

The Chief Wind Down Officer shall be responsible for winding up the affairs of the Wind Down Debtors' Estates and liquidating the Assets held by, or transferred to, the Wind Down Debtors on or after the Effective Date, including, without limitation, preparing and filing final tax returns, filing dissolution documents pursuant to applicable law, paying any franchise taxes and other fees that are due in connection with such dissolution, and taking any other actions that are necessary to wind down the affairs of the Wind Down Debtors.

### i.    Compensation of Wind Down Officer

The compensation of the Chief Wind Down Officer shall be as specified in the Chief Wind Down Officer Agreement and shall be paid by the Wind Down Debtors, subject to, and consistent with, the Wind Down Budget.  The Chief Wind Down Officer shall also be entitled to reimbursement of reasonable expenses, which expenses shall include the reasonable fees and expenses of any attorneys, accountants, and other professionals retained by the Chief Wind Down Officer, as more fully described in the Chief Wind Down Officer Agreement.

### j.    Termination of Wind Down Debtors; Discharge of Chief Wind Down Officer

As soon as reasonably practicable after final Plan Distributions under the Plan, the Chief Wind Down Officer shall wind up the affairs of the Wind Down Debtors, file final tax returns, arrange for storage of its records, and dissolve the Wind Down Debtors pursuant to applicable law.  As soon as reasonably practicable thereafter, the Chief Wind Down Officer shall file with the Bankruptcy Court a final report of Plan Distributions and perform such other duties as are specified in the Plan, whereupon the Chief Wind Down Officer shall have no further duties under the Plan.

### 7.    Additional Implementation Provisions Regarding Plan

### a.    Vesting of Assets in Wind Down Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Wind Down Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for the rights of any Purchaser with respect to the Acquired Assets and any Liens, charges, or other encumbrances created under the Asset Purchase Agreement(s) or the Plan) without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

### b.    Cancellation of Securities and Agreements

On the Effective Date, except as otherwise specifically provided for in the Plan:  (i) the obligations of the Debtors under the DIP Inc. Facility, the Prepetition Inc. Loan Documents, the Prepetition LP Loan Documents, the Existing Shares, and any other Certificate, share, note,

bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors giving rise to any Claim or Equity Interest (except such Certificates, Equity Interests, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that may be Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors, and the Wind Down Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, any agreement that governs the rights of the Holder of a Claim or Equity Interest shall continue in effect solely for the purposes of allowing such Holders to receive Plan Distributions under the Plan; provided, further, the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Wind Down Debtors.

## c.    **Corporate Action**

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, directors, managers, or officers of the Debtors, the Wind Down Debtors, or any other Entity or Person, including the following:  (i) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (ii) execution of, and entry into, the Asset Purchase Agreement(s) and such other documents as may be required or appropriate; (iii) consummation of the Sale and performance of all actions and transactions contemplated thereby; (iv) consummation of the Wind Down; and (v) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

On or (as applicable) prior to the Effective Date, the appropriate officers, managers, or authorized person of the Debtors (including, any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute, and deliver the agreements, documents, certificates, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name, and on behalf, of the Debtors, including, as appropriate:  (i) the Asset Purchase Agreement(s); (ii) the Chief Wind Down Officer Agreement; and (iii) any and all other agreements, documents, and instruments related thereto.  The authorizations and approvals described in Article IV.G.3 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

### d.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Wind Down Debtors and the officers and members of the boards of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name, and on behalf, of the Wind Down Debtors, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### e.    Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Wind Down Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Sale or the Plan or pursuant to (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind Down Debtors, (ii) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means, (iii) the making, assignment, or recording of any lease or sublease, or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, FCC filing or recording fee, Industry Canada filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Without limiting the foregoing, the Sale, as approved in connection with the Confirmation of the Plan, shall constitute a "transfer under a plan" to the fullest extent permitted by applicable law pursuant to section 1146(a) of the Bankruptcy Code.

### f.    Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Wind Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any Causes of Actions that may be described in the Plan Supplement, and the Wind Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Wind Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind Down Debtors.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Debtors' Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Wind Down Debtors, as applicable, shall not pursue any and all available Causes of Action against them.  The Debtors or the Wind Down Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except

as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Wind Down Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Wind Down Debtors, as applicable. The applicable Wind Down Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Wind Down Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. The Wind Down Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.

### g.    Assumption of D&O Liability Insurance Policies

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, then, notwithstanding anything in the Plan to the contrary, the Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

In addition, after the Effective Date, none of the Wind Down Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date. As of the Effective Date, the Debtors anticipate purchasing and maintaining continuing director and officer insurance coverage for a tail period of six (6) years.

### h.    Employee and Retiree Benefits

The Purchaser(s) or the Debtors may designate for assumption, or assumption and assignment, certain contracts, agreements, policies, programs, and plans, in each case to the extent disclosed in the Debtors' Disclosure Statement or the First Day Pleadings, for, among other things, compensation and wages (including equity based and bonus compensation), health

care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance or termination benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity at any time (the "Employee and Retiree Benefits").

Such designations shall be set forth in the Plan, Asset Purchase Agreement, or the Schedule of Assumed Agreements.  Except as may be provided in such documents, on and after the Effective Date, the Wind Down Debtors shall have no obligation to (i) honor, in the ordinary course of business, any Employee and Retiree Benefits or (ii) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date.  In addition, the Debtors' or Wind Down Debtors' performance of any employment agreement shall not entitle any Person or Entity to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan.  For the avoidance of doubt, upon Confirmation of the Plan, the contracts, agreements, policies, programs, plans, and obligations referred to in the foregoing subsections (i) and (ii) shall be dishonored, rejected, denied, and discontinued unless otherwise listed in any Asset Purchase Agreement or the Schedule of Assumed Agreements.

Nothing in the Plan shall limit, diminish, or otherwise alter the Wind Down Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid to the extent required by applicable law.  As of the Effective Date, any equity award, stock option, or similar plans shall be cancelled, including any such plans incorporated into any existing employment agreement.

## D.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 1.    Assumption and Rejection of Executory Contracts and Unexpired Leases

#### a.    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:  (i) is listed on the Schedule of Assumed Agreements in the Plan Supplement; (ii) has been previously assumed, assumed and assigned, or rejected by the Debtors by Final Order of the Bankruptcy Court or has been assumed, assumed and assigned, or rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume, assume and assign, or reject pending as of the Effective Date; (iv) is an Intercompany Contract; or (v) is otherwise assumed, or assumed and assigned, pursuant to the terms of the Plan.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Non-Debtor parties to Executory Contracts or Unexpired Leases that are rejected as of the Effective Date shall have the right to assert a Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 502(g) of the Bankruptcy Code; provided, however, the non-Debtor parties must comply with Article V.B of the Plan, described in Article II.D.2 hereof.

Any Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, and not listed on the Schedule of Assumed Agreements in the Plan Supplement, shall be rejected on the Effective Date.

### b.    Assumption of Executory Contracts and Unexpired Leases

The Debtors and each Purchaser shall designate the Executory Contracts and Unexpired Leases to be assumed and assigned to each Purchaser pursuant to, and in accordance with, the respective Asset Purchase Agreement(s).  On the Effective Date, the Debtors shall assume, or assume and assign, all of the Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Agreements in the Plan Supplement.

With respect to each such Executory Contract and Unexpired Lease listed on the Schedule of Assumed Agreements in the Plan Supplement, the Debtors shall have designated a proposed amount of the Cure Costs, and the assumption, or assumption and assignment, of such Executory Contract and Unexpired Lease may be conditioned upon the disposition of all issues with respect to such Cure Costs.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions, or assumptions and assignments, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed, or assumed and assigned, in the Chapter 11 Cases, including under the Plan, except Proofs of Claim asserting Cure Costs pursuant to the order approving such assumption, or assumption and assignment, including the Confirmation Order, shall be deemed disallowed and expunged from the Claims Register as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court.

### 2.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Notwithstanding anything in the Claims Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease, including pursuant to the Plan, gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, their respective successors, or their respective property unless a Proof of Claim is Filed and served on the Wind Down Debtors no later than thirty (30) days after the Effective Date.  All Allowed Claims arising from the rejection of the Inc. Debtors' Executory Contracts and Unexpired Leases shall be classified as Inc. General Unsecured Claims and shall be treated in accordance with Article III.B.8 of the Plan, and all Allowed Claims arising from the rejection of the LP Debtors' Executory Contracts and Unexpired Leases shall be classified as LP General Unsecured Claims and shall be treated in

accordance with Article III.B.9 of the Plan; provided, any subsequently rejected Designated Contracts shall be paid in accordance with the terms of the applicable Asset Purchase Agreement.

### 3.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to Plan

With respect to any Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan, all Cure Costs shall be satisfied at the option of the Debtors or their assignee, if any (including any Purchaser), (a) by payment of the Cure Costs in Cash on the Effective Date or as soon thereafter as reasonably practicable or (b) on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.  Cure Costs in respect of Designated Contracts shall be funded in accordance with the terms of the applicable Asset Purchase Agreement(s).

No later than seven (7) calendar days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, the Debtors shall File with the Bankruptcy Court and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, or assumption and assignment, which shall (a) list the applicable Cure Costs, if any, (b) describe the procedures for filing objections to the proposed assumption, assumption and assignment, or Cure Costs, and (c) explain the process by which related disputes shall be resolved by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, assumption and assignment, or Cure Costs must be Filed, served, and actually received by the Debtors (and the relevant Purchaser, if any) no later than the Voting Deadline.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or Cure Costs shall be deemed to have assented to such assumption, assumption and assignment, or Cure Costs, as applicable.

In the event of a dispute regarding (a) the amount of any Cure Costs, (b) the ability of the Wind Down Debtors or any assignee, as applicable, to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under such Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (c) any other matter pertaining to assumption, or assumption and assignment, of such Executory Contract or Unexpired Lease, the payment of any Cure Costs shall be made following the entry of a Final Order resolving the dispute and approving the assumption, or assumption and assignment, of such Executory Contract or Unexpired Lease; provided, however, the Wind Down Debtors or any assignee, as applicable (including any Purchaser), may settle any dispute regarding the amount of any Cure Costs without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; provided, further, notwithstanding anything in the Plan to the contrary, prior to the Effective Date or such other date as determined by the Bankruptcy Court and prior to the entry of a Final Order resolving any dispute and approving the assumption, or assumption and assignment, of such Executory Contract or Unexpired Lease, the Debtors reserve the right, subject to any Asset Purchase Agreement, to reject any Executory Contract or Unexpired Lease which is subject to dispute.

33

Assumption, or assumption and assignment, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption, or assumption and assignment.

### 4.    Pre-existing Obligations to Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors or Wind Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or the Wind Down Debtors, as applicable, from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

### 5.    Intercompany Contracts, Contracts, and Leases Entered into After Petition Date, Assumed Executory Contracts, and Unexpired Leases

Any (a) Intercompany Contracts, (b) contracts and leases entered into after the Petition Date by any Debtor to the extent not rejected prior to the Effective Date, and (c) any Executory Contracts and Unexpired Leases assumed, or assumed and assigned, by any Debtor and not rejected prior to the Effective Date, may be performed by the applicable Wind Down Debtor in the ordinary course of business.

### 6.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed, or assumed and assigned, shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 7.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit to the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the

Debtors that any such contract or lease is or is not, in fact, an Executory Contract or Unexpired Lease or that the Debtors, or their respective Affiliates, have any liability thereunder.

The Debtors and the Wind Down Debtors, with the consent of the Purchaser(s) (if any), reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Agreements until and including the Effective Date or as otherwise provided by Bankruptcy Court order; provided, however, if there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, or assumption and assignment, or with respect to asserted Cure Costs, then the Wind Down Debtors shall have thirty (30) days following the entry of a Final Order resolving such dispute to amend their decision to assume, or assume and assign, such Executory Contract or Unexpired Lease.

### 8.    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming, assuming and assigning, or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### E.    PROVISIONS GOVERNING DISTRIBUTIONS

### 1.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, the DIP Inc. Agent, the Prepetition Inc. Agent, or the Prepetition LP Agent, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Equity Interests.  The Debtors shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date.  The Debtors shall be entitled to recognize and deal for all purposes under the Plan only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 2.    Timing and Calculation of Amounts To Be Distributed

Unless otherwise provided in the Plan, on the Effective Date or as soon thereafter as reasonably practicable (or if a Claim or an Equity Interest is not Allowed on the Effective Date, on the date that such a Claim or an Equity Interest is Allowed, or as soon thereafter as reasonably practicable), each Holder of an Allowed Claim or an Allowed Equity Interest shall receive the full amount of the Plan Distribution that such Holder is entitled to pursuant to the Plan; provided, however, Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases, or assumed by the Debtors prior to the Effective Date, shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; provided, further, the Debtors reserve the right to make Plan Distributions prior to the Effective Date in the event of a Sale Closing that occurs prior to the Effective Date in accordance with the terms of the relevant Asset Purchase Agreement.

The Wind Down Debtors are authorized to make periodic Plan Distributions on account of Allowed Claims and Allowed Equity Interests and, if such periodic Plan Distributions are made, the Wind Down Debtors shall reserve Cash from Plan Distributions to applicable Holders equal to the Plan Distributions to which Holders of Disputed Claims or Disputed Equity Interests would be entitled if such Disputed Claims or Disputed Equity Interests become Allowed.

**3.    Disbursing Agent**

All Plan Distributions shall be made by the Wind Down Debtors as Disbursing Agent or such other Entity designated by the Wind Down Debtors as a Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be as agreed by and between the Wind Down Debtors and such Disbursing Agent.

Plan Distributions of Cash to the Holders of Allowed Claims and Allowed Equity Interests shall be made by the Debtors or the Wind Down Debtors to the Disbursing Agent for the benefit of the Holders of such Allowed Claims and Allowed Equity Interests. All Plan Distributions by the Disbursing Agent shall be at the discretion of the Wind Down Debtors, and the Disbursing Agent shall not have any liability to any Entity for Plan Distributions made by them under the Plan.

**4.    Rights and Powers of Disbursing Agent**

**a.    <u>Powers of Disbursing Agent</u>**

The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all Plan Distributions contemplated by the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

**b.    <u>Expenses Incurred on or After Effective Date</u>**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorneys' fees and expenses) made by the Disbursing Agent, shall be paid in Cash by the Wind Down Debtors.

5.    **Plan Distributions on Account of Claims and Equity Interests Allowed After Effective Date**

a.    **Payments and Plan Distributions on Disputed Claims and Disputed Equity Interests**

Plan Distributions made after the Effective Date to Holders of Claims or Equity Interests that are not Allowed as of the Effective Date, but which later become Allowed Claims or Allowed Equity Interests, shall be deemed to have been made on the Effective Date.

b.    **Special Rules for Plan Distributions to Holders of Disputed Claims and Disputed Equity Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties:  (i) no partial payments and no partial Plan Distributions shall be made with respect to a Disputed Claim or Disputed Equity Interest until all such disputes in connection with such Disputed Claim or Disputed Equity Interest, respectively, have been resolved by settlement or Final Order and (ii) any Entity that holds both (A) an Allowed Claim or an Allowed Equity Interest and (B) a Disputed Claim or a Disputed Equity Interest shall not receive any Plan Distribution on the Allowed Claim or Allowed Equity Interest unless and until all objections to the Disputed Claim or Disputed Equity Interest, respectively, have been resolved by settlement or Final Order and the Disputed Claims or Disputed Equity Interests have been Allowed.

6.    **Delivery of Plan Distributions and Undeliverable or Unclaimed Plan Distributions**

a.    **Delivery of Plan Distributions in General**

Except as otherwise provided in the Plan, the Disbursing Agent shall make Plan Distributions to Holders of Allowed Claims and Allowed Equity Interests at the address for each such Holder as indicated on the Wind Down Debtors' records as of the date of any such Plan Distribution; provided, however, the manner of such Plan Distributions shall be determined at the discretion of the Wind Down Debtors; provided, further, the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent by check or by wire transfer.

Except as set forth in Articles VI.F.3 and VI.F.4 of the Plan, each Plan Distribution described in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such Plan Distribution and by the terms and conditions of the instruments evidencing or relating to such Plan Distribution, which terms and conditions shall bind each Entity receiving such Plan Distribution.

b.    **Delivery of Plan Distributions to Holders of Allowed DIP Inc. Facility Claims**

The Plan Distributions provided for Allowed DIP Inc. Facility Claims pursuant to Article II.C of the Plan shall be made to the DIP Inc. Agent.  To the extent possible, the Wind Down Debtors and the Disbursing Agent shall provide that the applicable Cash is eligible to be distributed to the DIP Inc. Lenders at the direction of the DIP Inc. Agent.

c.    **Delivery of Plan Distributions to Holders of Allowed Prepetition Inc. Facility Claims**

The Plan Distribution provided by Article III.B.5 and Article III.B.6 (and, to the extent applicable, Article III.B.8) of the Plan shall be made to the Prepetition Inc. Agent.  To the extent possible, the Debtors and the Disbursing Agent shall provide that the applicable Inc. Plan Consideration is eligible to be distributed to the Prepetition Inc. Lenders at the direction of the Prepetition Inc. Agent.  Notwithstanding anything in the Plan to the contrary, any Holder of a Disputed Prepetition Inc. Facility Claim shall not (i) receive any Plan Distribution or (ii) be entitled to invoke any rights or remedies under the applicable Sharing Provision, until any such Disputed Prepetition Inc. Facility Claim is Allowed in accordance with the Plan.

d.    **Delivery of Plan Distributions to Holders of Allowed Prepetition LP Facility Claims**

The Plan Distribution provided by Article III.B.7 (and, to the extent applicable, Article III.B.9) of the Plan shall be made to the Prepetition LP Agent.  To the extent possible, the Debtors and the Disbursing Agent shall provide that the applicable LP Plan Consideration is eligible to be distributed to Prepetition LP Lenders at the direction of the Prepetition LP Agent. Notwithstanding anything in the Plan to the contrary, any Holder of a Disputed Prepetition LP Facility Claim shall not (i) receive any Plan Distribution or (ii) be entitled to invoke any rights or remedies under the applicable Sharing Provision, until any such Disputed Prepetition LP Facility Claim is Allowed in accordance with Article VII of the Plan.

e.    **Minimum Plan Distributions**

Notwithstanding anything in the Plan to the contrary, the Disbursing Agent shall not be required to make Plan Distributions or payments of Cash of less than the amount of $100 and shall not be required to make partial Plan Distributions or payments of fractions of dollars. Whenever any payment or Plan Distributions of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or Plan Distribution shall reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.  The Wind Down Debtors shall not be required to make partial or fractional Plan Distributions and such fractions shall be deemed to be zero.

f.    **Undeliverable Plan Distributions and Unclaimed Property**

In the event that any Plan Distribution to any Holder is returned as undeliverable, no Plan Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Plan Distribution shall be made to

such Holder without interest; provided, however, such Plan Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Wind Down Debtors (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Equity Interest in such property shall be discharged and forever barred.

### 7.    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Wind Down Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Wind Down Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plan Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Plan Distributions pending receipt of information necessary to facilitate such Plan Distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Wind Down Debtors reserve the right to allocate all Plan Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Plan Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent that the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

### 8.    Setoffs

Except as otherwise expressly provided for in the Plan, each Wind Down Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may set off against any Allowed Claim or Allowed Equity Interest and the Plan Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Plan Distribution is made on account of such Allowed Claim or Equity Interest) any claims, rights, and Causes of Action of any nature that such Debtor or Wind Down Debtor, as applicable, may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by such Wind Down Debtor of any such claims, rights, or Causes of Action that such Wind Down Debtor may possess against such Holder.  In no event shall any Holder of Claims or Equity Interests be entitled to set off any Claim or Equity Interest against any claim, right, or Cause of Action of the Debtor or Wind Down Debtor, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or proof of Equity Interest or otherwise

that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

### 9.    Recoupment

In no event shall any Holder of Claims against, or Equity Interests in, the Debtors be entitled to recoup any such Claim or Equity Interest against any claim, right, or Cause of Action of the Debtors or the Wind Down Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or proof of Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 10.    Claims Paid or Payable by Third Parties

#### a.    <u>Claims Paid by Third Parties</u>

The Debtors or the Wind Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Wind Down Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from an Entity that is not a Debtor or a Wind Down Debtor on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the Plan Distribution to the applicable Wind Down Debtor, to the extent that the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Plan Distribution under the Plan.  The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the applicable Wind Down Debtor annualized interest at the Federal Judgment Rate on such amount owed for each calendar day after the two (2)-week grace period specified above until the amount is repaid.

#### b.    <u>Claims Payable by Third Parties</u>

No Plan Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

#### c.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, Plan Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Wind Down Debtors, or any other Entity may hold against any other Entity,

including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## F.    PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS

### 1.    Allowance of Claims and Equity Interests

After the Effective Date, the Wind Down Debtors shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim and Equity Interest immediately prior to the Effective Date, including the Causes of Action referenced in Article IV.G.6 of the Plan.  Except as expressly provided in the Plan, no Claim or Equity Interest shall become Allowed unless and until such Claim or Equity Interest is deemed Allowed under Article I.A.6 of the Plan or the Bankruptcy Code.

### 2.    Claims and Equity Interests Administration Responsibilities

Except as otherwise provided in the Plan, after the Effective Date, the Wind Down Debtors shall have the sole and exclusive authority to (a) File, withdraw, or litigate to judgment, objections to Claims or Equity Interests, (b) settle or compromise any Disputed Claim or Disputed Equity Interest without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

The Wind Down Debtors shall maintain the Disputed Claims and Equity Interests Reserve on account of the Disputed Claims.  The Inc. Debtors (or the Wind Down Debtors, as applicable) shall fund 15% of the Disputed Claims and Equity Interests Reserve from the Inc. Plan Consideration Carve-Out and the LP Debtors (or the Wind Down Debtors, as applicable) shall fund 85% of the Disputed Claims and Equity Interests Reserve from the LP Plan Consideration Carve-Out.  The Disputed Claims and Equity Interests Reserve may be adjusted from time to time, and funds previously held in such reserve on account of Disputed Claims that have subsequently become Disallowed Claims shall be released from such reserve and used to fund the other reserves and Plan Distributions.

### 3.    Estimation of Claims

Before the Effective Date, the Debtors, and after the Effective Date, the Wind Down Debtors, may at any time request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any Entity previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.

The Bankruptcy Court shall retain jurisdiction to estimate any Claim, any group of Claims, or any Class of Claims, at any time during litigation concerning any objection, including, without limitation, during the pendency of any appeal relating to any such objection.  In the

event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute either (a) the Allowed amount of such Disputed Claim, (b) a maximum limitation on such Disputed Claim, or (c) in the event such Disputed Claim is estimated in connection with the estimation of other Claims within the same Class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Disputed Claims so estimated, in each case for all purposes under the Plan (including for purposes of Plan Distributions); provided, however, the Debtors or Wind Down Debtors may elect to pursue supplemental proceedings to object to any ultimate allowance of any Disputed Claim and any ultimate Plan Distributions on such Claim. Notwithstanding any provision in the Plan to the contrary, a Claim that has been disallowed or expunged from the Claims Register, but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.

All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 4.    Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, superseded, or compromised in full may be expunged on the Claims Register by the Wind Down Debtors, and any Claim that has been amended may be adjusted thereon by the Wind Down Debtors, in both cases without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.  Additionally, any Claim that is duplicative or redundant with another Claim against the same Debtor may be adjusted or expunged on the Claims Register by the Wind Down Debtors without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

### 5.    No Interest

Unless otherwise specifically provided for in the Plan or the Confirmation Order, agreed to by the Debtors or Wind Down Debtors, or provided for in a postpetition agreement in writing between the Debtors or Wind Down Debtors and a Holder of a Claim, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Plan Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

6.      **Deadline To File Objections to Claims**

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

7.      **Disallowance of Claims or Equity Interests**

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are transferees of transfers avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code or otherwise, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Equity Interests may not receive any Plan Distributions on account of such Claims or Equity Interests until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid.

EXCEPT AS PROVIDED IN THE PLAN OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF, THE BANKRUPTCY COURT OR ANY OTHER ENTITY, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY PLAN DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

8.      **Amendments to Claims**

On or after the later of the Effective Date or the applicable deadline set by the Bankruptcy Court, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Wind Down Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity.

G.      **SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

1.      **Discharge of Claims and Termination of Equity Interests**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Plan Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Equity Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination

occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim or proof of Equity Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the Holder of such a Claim or Equity Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.

### 2.    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Equity Interests and the respective Plan Distributions and treatments under the Plan shall give effect to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Wind Down Debtors reserve the right to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 3.    Compromise and Settlement of Claims and Controversies

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Plan Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, Causes of Action, and controversies resolved pursuant to the Plan and relating to any contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any Plan Distributions to be made on account of such an Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, Causes of Action, controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims or Equity Interests and is fair, equitable, and reasonable.  Plan Distributions made to Holders of Allowed Claims or Equity Interests are intended to be final.  In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, after the Effective Date, the Wind Down Debtors may compromise and settle Claims against, or Equity Interests in, the Wind Down Debtors, and Causes of Action against other Entities.

4.     **Releases by Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious implementation of the transactions contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors, the Wind Down Debtors, and the Estates from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors, the Wind Down Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the Sale, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and the Debtors' Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.

5.     **Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, Cause of Action, or liability for any exculpated Claim, except for willful misconduct (including fraud) or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the Securities pursuant to the Plan and the Sale, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

6.     **Third-Party Releases by Holders of Claims or Equity Interests**

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Claims, Equity

Interests, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each Releasing Party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the Sale, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims or Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and the Debtors' Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including fraud) or gross negligence.

7.     Injunction

Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims or Equity Interests that have been released pursuant to Article VIII.D of the Plan or Article VIII.F of the Plan, discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.E of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtors or the Wind Down Debtors:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of, in connection with, or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of, in connection with, or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of, in connection with, or with respect to any such Claims or Equity Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Confirmation Date, and notwithstanding an indication in a Proof of Claim or proof of Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Equity Interests released or settled pursuant to the Plan.  Nothing in the Plan or Confirmation Order shall preclude any Entity from pursuing an action against one or more of the Debtors in a nominal capacity to recover insurance proceeds so long as the Debtors or Wind Down Debtors, as applicable, and any such Entity agree in writing that such Entity shall (y) waive all Claims against the Debtors, the Wind Down Debtors, and the

**Estates related to such action and (z) enforce any judgment on account of such Claim solely against applicable insurance proceeds, if any.**

      **8.    Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, (a) on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and (b) in the case of a Secured Claim, upon satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledge, or other security interests against any property of the Estates shall revert to the Wind Down Debtors and their successors and assigns.  The Wind Down Debtors shall be authorized to file any necessary or desirable documents to evidence such release in the name of such Holder of a Secured Claim.

**H.    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN**

      **1.    Conditions Precedent to Effective Date**

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B of the Plan:

        **a.**    The Confirmation Order shall have been entered in a form and in substance reasonably satisfactory to the Debtors.

        **b.**    The Plan Documents, to the extent applicable to the transactions to be consummated pursuant to the Confirmation Order, shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein shall have been waived or satisfied in accordance therewith, including, but not limited to:

          *(i)*    the Asset Purchase Agreement(s), in form(s) and substance acceptable to the Debtors and the Purchaser(s), shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions to each Sale Closing and the consummation of each Sale shall have been waived or satisfied in accordance with the terms thereof;

          *(ii)*    the Chief Wind Down Officer Agreement, in form and substance acceptable to the Debtors, shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation thereof shall have been

waived or satisfied in accordance with the terms
thereof; and

*(iii)*    the Debtors shall have sufficient Cash on hand to
fund the Wind Down Reserve (including the
Professional Fee Reserve and the Disputed Claims
and Equity Interests Reserve).

**c.**    The Bankruptcy Court shall have entered the Disclosure Statement Order
and the Bid Procedures Order, and the Canadian Court shall have entered
the Disclosure Statement Recognition Order, the Bid Procedures
Recognition Order, and the Confirmation Recognition Order.

**d.**    The final version of the Plan Supplement and all of the schedules,
documents, and exhibits contained therein shall have been Filed in form
and substance reasonably acceptable to the Debtors, without prejudice to
the Wind Down Debtors' rights under the Plan to alter, amend, or modify
certain of the schedules, documents, and exhibits contained in the Plan
Supplement; provided, however, each such altered, amended, or modified
schedule, documents, or exhibit shall be in form and substance acceptable
to the Wind Down Debtors.

**e.**    All necessary actions, documents, certificates, and agreements necessary
to implement the Plan shall have been effected or executed and delivered
to the required parties and, to the extent required, Filed with the applicable
governmental units in accordance with applicable laws.

**f.**    All authorizations, consents, and regulatory approvals required by
applicable law in order to effect the transactions to be consummated
pursuant to the Confirmation Order shall have been obtained from the
FCC, Industry Canada, or any other regulatory agency including, without
limitation, any approvals required in connection with the transfer, change
of control, or assignment of FCC and Industry Canada licenses, and no
appeals of such approvals remain outstanding.

**2.**    **Waiver of Conditions**

The conditions to the Effective Date of the Plan set forth above may be waived by the
Debtors without notice to, or action, order, or approval of, the Bankruptcy Court or any other
Entity.

# I.    MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

**1.**    **Modification and Amendments**

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to
modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy
Code. Subject to certain restrictions and requirements set forth in section 1127 of the

Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court or Canadian Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Debtors' Disclosure Statement, the Confirmation Order, or the Confirmation Recognition Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

## 2. Effect of Confirmation on Modifications

Entry of a Confirmation Order or Confirmation Recognition Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## 3. Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if the Confirmation or Consummation does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claims or Equity Interests or Class of Claims or Equity Interests), assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void in all respects; and (c) nothing contained in the Plan or the Debtors' Disclosure Statement shall (i) constitute a waiver or release of any Claims or Equity Interests in any respect, (ii) prejudice in any manner the rights of such Debtor or any other Entity in any respect, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity in any respect.

## J. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(1)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim, of any request for the payment or Plan Distribution on account of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code, and of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(2)     Decide and resolve all matters relating to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(3)     Resolve any matters relating to the following:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed, or assumed and assigned; (c) the Wind Down Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed, or assumed and assigned; and (d) any dispute regarding whether a contract or lease is or was executory or unexpired;

(4)     Ensure that Plan Distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

(5)     Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(6)     Adjudicate, decide, or resolve any and all matters related to Causes of Action;

(7)     Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(8)     Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Debtors' Disclosure Statement;

(9)     To hear and determine any matters relating to the implementation of the Sale, including arising out of, or in connection with, the Asset Purchase Agreement(s), or the Chief Wind Down Officer Agreement, and any ancillary or related agreements thereto, and to enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(10)    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(11)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Consummation or enforcement of the Plan;

50

(12)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect
to the releases, injunctions, and other provisions contained in Article VIII of the
Plan and enter such orders as may be necessary or appropriate to implement such
releases, injunctions, and other provisions;

(13)     Hear and determine all disputes involving the existence, nature, or scope of the
Debtors' discharge, including any dispute relating to any liability arising out of
the termination of employment or the termination of any employee or retiree
benefit program, regardless of whether such termination occurred prior to or after
the Effective Date;

(14)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect
to the repayment or return of Plan Distributions and the recovery of additional
amounts owed by the Holder of a Claim or Equity Interest for amounts not timely
repaid pursuant to Article VI.J of the Plan;

(15)     Enter and implement such orders as are necessary or appropriate if the
Confirmation Order is for any reason modified, stayed, reversed, revoked, or
vacated;

(16)     Determine any other matters that may arise in connection with or relate to the
Plan, the Debtors' Disclosure Statement, the Confirmation Order, or any contract,
instrument, release, indenture, or other agreement or document created in
connection with the Plan or the Debtors' Disclosure Statement;

(17)     Enter an order or final decree concluding or closing the Chapter 11 Cases;

(18)     Adjudicate any and all disputes arising from or relating to Plan Distributions
under the Plan or any transactions contemplated therein;

(19)     Consider any modifications of the Plan, to cure any defect or omission, or to
reconcile any inconsistency in any Bankruptcy Court order, including the
Confirmation Order;

(20)     Hear and determine matters concerning state, local, and federal taxes in
accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(21)     Enforce all orders previously entered by the Bankruptcy Court; and

(22)     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE III
## CERTAIN PLAN REQUIREMENTS

As mentioned, a description of the procedures and requirements to achieve Confirmation
of the Plan is provided in Article IV of the General Disclosure Statement, entitled
"**Confirmation Procedures**."  LightSquared believes that:  (i) the Plan satisfies or will satisfy all
of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) it has complied or will

have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. This section discusses certain specific requirements for confirmation of the Plan, including that the Plan is (i) in the "best interests" of creditors and equity interest holders that are Impaired under the Plan and (ii) feasible.

## A.    BEST INTERESTS OF CREDITORS TEST

Please refer to (1) Article IV.C.2 of the General Disclosure Statement, entitled "**Best Interests of Creditors Test and Liquidation Analysis**" for a description of the confirmation requirement for a chapter 11 plan to be in the "best interests" of holders of claims and equity interests and to (2) <u>Exhibit C</u> attached to the General Disclosure Statement setting forth an analysis of the estimated aggregate amount of liquidation proceeds available to Holders of Claims or Equity Interests in a hypothetical chapter 7 liquidation of LightSquared (the "<u>Liquidation Analysis</u>").

Under the Plan, Prepetition Inc. Non-Subordinated Facility Claims, Prepetition Inc. Subordinated Facility Claims, Prepetition LP Facility Claims, Inc. General Unsecured Claims, LP General Unsecured Claims, Existing LP Preferred Units Equity Interests, Existing Inc. Preferred Stock Equity Interests, and Existing Inc. Common Stock Equity Interests are "Impaired" and are entitled to vote to accept or reject the Plan. Because the Bankruptcy Code requires that Holders of Impaired Claims or Equity Interests either accept the Plan or receive at least as much under the Plan as they would in a hypothetical chapter 7 liquidation, the operative "best interests" inquiry in the context of the Plan is whether in a chapter 7 liquidation (after accounting for recoveries by Holders of Unimpaired or unclassified Claims), the Holders of Impaired Claims or Equity Interests will receive more than under the Plan. The Plan is not in the best interests of Impaired Claims or Equity Interest Holders if the probable distribution to the Impaired Claims or Equity Interest Holders under a hypothetical chapter 7 liquidation is greater than the distributions to be received by such Holders under the Plan.

LightSquared believes that the value of any distributions in a chapter 7 case would be the same or less than the value of distributions under the Plan. In particular, proceeds generated in a chapter 7 liquidation are likely to be significantly discounted due to the distressed nature of the sale. Holders of Impaired Claims or Equity Interests will likely receive at least as much or more of a recovery under the Plan because, among other things, the continued operation of LightSquared as a going concern rather than a chapter 7 liquidation will allow the realization of more value on account of the assets of LightSquared. A chapter 7 liquidation also would give rise to additional costs, expenses, and Administrative Claims, including the fees and expenses of a chapter 7 trustee, further reducing Cash available for distribution. In the event of a chapter 7 liquidation, the aggregate amount of General Unsecured Claims no doubt will increase as a result of rejection of a greater number of LightSquared's Executory Contracts and Unexpired Leases. All of these factors lead to the conclusion that recoveries under the Plan would be greater than the recoveries available in a chapter 7 liquidation.

Accordingly, LightSquared believes that the Plan meets the "best interests" test as set forth in section 1129(a)(7) of the Bankruptcy Code. LightSquared believes that the members of each Class that is Impaired will receive at least as much as they would if LightSquared were liquidated under chapter 7 of the Bankruptcy Code.

**B.**      **FEASIBILITY**

Section 1129(a)(11) of the Bankruptcy Code requires the Bankruptcy Court to find, as a condition to confirmation, that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is contemplated by the plan."  Under the Plan, the Holders of Administrative Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims will be paid in full.  Moreover, LightSquared believes that the Wind Down Debtors will have sufficient liquidity to fund obligations as they arise.  Accordingly, LightSquared believes that the Plan satisfies the financial feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

## ARTICLE IV
## PLAN-RELATED RISK FACTORS TO CONFIRMING AND
## CONSUMMATING PLAN

The following provides a summary of various important considerations and risk factors associated with the Plan; however, it is not exhaustive.  **Prior to deciding whether and how to vote on the Plan, Holders of Claims or Equity Interests in a Voting Class should read and consider carefully all of the information in the Plan, the General Disclosure Statement (including the risk factors set forth therein), and the Debtors' Specific Disclosure Statement (including the risk factors set forth herein), as well as all other information referenced or incorporated by reference into the General Disclosure Statement or the Debtors' Specific Disclosure Statement.**

Please refer to Article V of the General Disclosure Statement, entitled "**General Risk Factors**" for a description of (i) risk factors affecting LightSquared, including business-related risks, regulatory risks, and legal proceedings, (ii) risks that information in the General Disclosure Statement may be inaccurate, and (iii) risks related to liquidation under chapter 7 of the Bankruptcy Code.

**A.**      **CERTAIN BANKRUPTCY LAW CONSIDERATIONS**

      **1.**      **Parties in Interest May Object to LightSquared's Classification of Claims and Equity Interests**

Section 1122 of the Bankruptcy Code provides that a plan may place a class of claims or equity interests in a particular class only if such claim or equity interest is substantially similar to the other claims and equity interests in such class.  LightSquared believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class created by LightSquared contains Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.        Plan May Not Receive Requisite Acceptances

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, LightSquared intends to seek Confirmation of the Plan.  If the Plan does not receive the required support from the Voting Classes, LightSquared may elect to amend the Plan.

### 3.        LightSquared May Not Be Able To Obtain Confirmation of Plan

LightSquared cannot ensure that it will receive the requisite acceptances to confirm the Plan.  Even if LightSquared receives the requisite acceptances, LightSquared cannot ensure that the Bankruptcy Court will confirm the Plan.  A Holder of Claims or Equity Interests might challenge the adequacy of the Disclosure Statement, the procedures for solicitation, and results as not being in compliance with the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determined that the Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met.  As discussed in further detail in the General Disclosure Statement, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things: (a) a finding by a bankruptcy court that the plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) that confirmation "is not likely to be followed by a liquidation, or the need for further financial reorganization"; and (c) the value of distributions to non-accepting holders of Claims or Equity Interests within an impaired class will not be "less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7" of the Bankruptcy Code.  While LightSquared believes that the Plan complies with section 1129 of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

LightSquared, subject to the terms and conditions of the Plan, reserves the right to modify the terms of the Plan as necessary for Confirmation.  Any such modification could result in a less favorable treatment of any non-accepting Class or Classes, as well as of any Classes junior to such non-accepting Classes, than the treatment currently provided in the Plan.  Such a less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

### 4.        LightSquared May Not Obtain Recognition from Canadian Court

The Plan requires that the Canadian Court have entered the Disclosure Statement Recognition Order, the Bid Procedures Recognition Order, and the Confirmation Recognition Order as a condition to the Effective Date.  LightSquared believes that such orders will be approved and entered by the Canadian Court; however, there can be no guarantee that such orders are entered by the Canadian Court.  Accordingly, the Plan could not be consummated unless LightSquared waived such condition.

### 5.        LightSquared May Not Be Able To Consummate Plan

Although LightSquared believes that it will be able to consummate the Plan and the Effective Date will occur, there can be no assurance as to timing or the likelihood of the

occurrence of the Effective Date.  Consummation of the Plan is also subject to certain conditions as described in Article II.H herein and as set forth in the Plan itself.  If the Plan is not consummated, it is unclear what distributions Holders of Claims and Equity Interests ultimately would receive with respect to their Claims and Equity Interests.

### 6.      LightSquared May Object to Amount or Classification of Claim

Except as otherwise provided in the Plan, LightSquared reserves the right to object to the amount or classification of any Claim or Equity Interest.  The estimates set forth in the Debtors' Specific Disclosure Statement cannot be relied on by any Holder of a Claim or Equity Interest where such Claim or Equity Interest is subject to an objection.  Any Holder of a Claim or Equity Interest may not receive its specified share of the estimated distributions described in the Debtors' Specific Disclosure Statement.

### 7.      Contingencies Not To Affect Votes of Impaired Classes To Accept Plan

The distributions available to Holders of Allowed Claims and Equity Interests under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Claims to be subordinated to other Claims.  The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims and Equity Interests under the Plan, however, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require re-solicitation of the Impaired Classes.

## B.      RISKS RELATED TO SALE

At this time, LightSquared does not know if any bids for the Sale will be timely received, or in what amounts such bids may be made.  Accordingly, LightSquared cannot project at this time the estimated recoveries to Holders of Allowed Claims and Equity Interests in the event the Sale is implemented.  Even if a timely bid (or bids) is received and such bidder(s) executes an Asset Purchase Agreement(s), there can be no assurance that the Sale will be ultimately consummated.  The successful bidder(s) could breach or fail to perform under the relevant Asset Purchase Agreement, or the conditions to consummation of the relevant Asset Purchase Agreement could fail to be satisfied.  In that event, there is no guarantee that another Person will express interest in either (1) acquiring the Acquired Assets or (2) acquiring the Acquired Assets in an amount equal to or greater than the proposed purchase price.  Additionally, there can be no assurance that the auction of Acquired Assets will result in a bid that is higher or otherwise better than a stalking horse bid (to the extent applicable).

Recoveries to Holders of Allowed Claims and Equity Interests will depend in part upon the allocation of value of the proceeds of the Sale among the individual LightSquared entities.  Parties in interest in the Chapter 11 Cases may object to these allocations and any changes thereto may result in a material change to the recoveries by Holders pursuant to the Plan.

## C.      LITIGATION RISKS

To the extent that distributions available to Holders of Allowed Claims and Equity Interests under the Plan may be derived, in whole or in part, from recoveries from Causes of

Action asserted by LightSquared or the Wind Down Debtors, there can be no assurance that any such Causes of Action will produce recoveries that will enhance the distributions to be made to Holders of Allowed Claims or Equity Interests under the Plan. Additionally, there may be significant delay before any resolution of such Causes of Action and, therefore, any distributions made on account of such Causes of Action may not occur until much later in time.

## D.   CERTAIN TAX MATTERS

For a discussion of certain United States federal income tax consequences of the Plan to certain Holders of Claims or Equity Interests and to the Wind Down Debtors, see Article V hereof, entitled "**Certain United States Federal Income Tax Consequences**."

This statement does not address the Canadian federal income tax considerations of the Plan (if any) to the Holders of Claims and Equity Interests. Holders to whom the Canadian federal income tax rules may be relevant should consult their own tax advisors.

## ARTICLE V
## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

The following is a discussion of certain United States federal income tax consequences of the Plan to LightSquared and certain Holders of Claims and Equity Interests. This discussion does not address the United States federal income tax consequences to Holders of Claims or Equity Interests who are Unimpaired or Holders who are not entitled to vote because they are deemed to reject the Plan.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE UNITED STATES FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

This discussion is based on the Internal Revenue Code of 1986 (as amended, the "Tax Code"), Treasury Regulations thereunder, and administrative and judicial interpretations and practice, all as in effect on the date of the Disclosure Statement and all of which are subject to change, with possible retroactive effect. Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been obtained, and LightSquared does not intend to seek a ruling from the Internal Revenue Service as to any of the tax consequences of the Plan, including those items discussed below. There can be no assurance that the Internal Revenue Service will not challenge one or more of the tax consequences of the Plan. This discussion does not apply to Holders of Claims or Equity Interests that are not United States persons (as such term is defined in the Tax Code) or that are otherwise subject to special treatment under United States federal income tax law (including, without limitation, banks, governmental authorities or agencies, financial institutions, insurance companies, pass-through entities, tax- exempt organizations, brokers and dealers in securities, mutual funds, small business investment companies, regulated investment companies, partnerships or other pass-through entities (and partners or members in such entities)). The following discussion assumes that Holders of Claims and Equity Interests hold such Claims and Equity Interests as "capital assets" within the meaning of section 1221 of the Tax Code. Moreover, this discussion does not

purport to cover all aspects of United States federal income taxation that may apply to LightSquared and Holders of Claims or Equity Interests based upon their particular circumstances. Additionally, this discussion does not discuss any tax consequences that may arise under any laws other than United States federal income tax law, including under state, local, or foreign tax law and does not address the United States "Medicare" tax on certain net investment income.

THE FOLLOWING DISCUSSION OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR EQUITY INTEREST. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

A.    **CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS**

1.    **Consequences to Holders of Claims**

a.    **Tax Treatment Generally**

Pursuant to the Plan, and in full satisfaction of its Claim, a Holder of an Allowed Claim will receive its Pro Rata share of Cash available to pay its Class of claimholders. The Holder of an Allowed Claim generally will recognize gain or loss in an amount equal to the difference, if any, between (i) the amount of Cash and the fair market value of any other property received in the exchange (other than amounts allocable to accrued but unpaid interest) and (ii) the Holder's adjusted tax basis in the Claim (other than in respect of accrued but unpaid interest). It is possible that any loss, or a portion of any gain, realized by a holder of a Claim may have to be deferred until all of the distributions to such Holder are received.

b.    **Accrued but Untaxed Interest**

A portion of the consideration received by Holders of Claims may be attributable to accrued but unpaid interest on such Claims. Any amounts treated as received for accrued interest should be taxable to that Holder as interest income if such accrued interest has not been previously included in the Holder's gross income for United States federal income tax purposes. If the fair value of the consideration received by a Holder of Claims is not sufficient to fully satisfy all principal and interest on such Claims, the extent to which the consideration will be attributable to accrued interest is unclear. Under the Plan, the aggregate consideration to be distributed to a Holder of Claims will be allocated first to the principal amount of the Holder's Claims, with any excess allocated to accrued but unpaid interest, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for United States federal income tax purposes. The Internal Revenue Service could take the position, however, that the consideration received by the Holder should be allocated in some way other than as provided in the Plan. A Holder of an Allowed Claim should generally recognize a deductible loss to the extent the Holder previously included

accrued interest in its gross income and such interest is not paid in full.  Holders of Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

### c.   Market Discount

Holders of Claims may be affected by the "market discount" provisions of sections 1276 through 1278 of the Tax Code.  Under these provisions, some or all of the gain recognized by a Holder may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on such Claims.

In general, a debt obligation with a fixed maturity of more than one (1) year that is acquired by a holder on the secondary market (or, in certain circumstances, upon original issuance) is considered to be acquired with "market discount" as to that holder if the debt obligation's stated redemption price at maturity (or revised issue price as defined in section 1278 of the Tax Code, in the case of a debt obligation issued with original issue discount) exceeds the tax basis of the debt obligation in the holder's hands immediately after its acquisition.  However, a debt obligation is not a "market discount bond" if the excess is less than a statutory *de minimis* amount (equal to 0.25% of the debt obligation's stated redemption price at maturity, or revised issue price in the case of a debt obligation issued with original issue discount, multiplied by the number of complete years remaining until maturity at the time of the acquisition).

Any gain recognized by a Holder on the taxable disposition of Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Claims were considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).

### 2.   Consequences to Holders of Existing LP Preferred Units Equity Interests

Pursuant to the Plan, Holders of Existing LP Preferred Units Equity Interests may receive Cash in exchange for their Existing LP Preferred Units.  A Holder that receives Cash in complete liquidation of their Existing LP Preferred Units Equity Interests should be treated as exchanging such units in a fully taxable transaction.  Accordingly, the exchanging Holder would recognize gain or loss in an amount equal to the difference, if any, between (a) the amount of Cash received in exchange for its Existing LP Preferred Units Equity Interests and (b) the Holder's adjusted tax basis in the Existing LP Preferred Units Equity Interests (which would generally be increased by any income or gain, or reduced by any deductions or loss, allocated to the Holder of Existing LP Preferred Units Equity Interests as described in Article V.B.1 below. Where gain or loss is recognized by a Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, how long the equity interests have been held, and the character of the underlying assets of LightSquared LP.

### 3.   Consequences to Holders of Existing Inc. Preferred Stock Equity Interests

Pursuant to the Plan, Holders of Existing Inc. Preferred Stock Equity Interests may receive Cash in exchange for their Existing Inc. Preferred Stock Equity Interests.  The

exchanging Holder should recognize gain or loss in an amount equal to the difference, if any, between (a) the amount of Cash received and (b) the Holder's adjusted tax basis in the Existing Inc. Preferred Stock Equity Interests.  Where gain or loss is recognized by a Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder and how long the equity interests have been held.

In the event that there is accrued but unpaid yield on the Existing Inc. Preferred Stock for the year the payments are made and LightSquared Inc. has current or accumulated earnings and profits (as determined for United States federal income tax purposes) at the end of that taxable year, the portion of the consideration received in exchange for the unpaid yield will be treated as dividend income to the extent it is treated as made out of LightSquared Inc.'s earnings and profits.

### 4.      Consequences to Holders of Existing Inc. Common Stock Equity Interests

Pursuant to the Plan, Holders of Existing Inc. Common Stock Equity Interests will receive Cash in exchange for their Existing Inc. Common Stock Equity Interests.  In that case, the exchanging Holder should recognize gain or loss in an amount equal to the difference, if any, between (a) the amount of Cash received and (b) the Holder's adjusted tax basis in the Existing Inc. Common Stock Equity Interests.  Where gain or loss is recognized by a Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder and how long the equity interests have been held.

### 5.      Information Reporting and Backup Withholding

In general, information reporting requirements may apply to distributions or payments under the Plan.  Additionally, under the backup withholding rules, a Holder of a Claim or Equity Interest may be subject to backup withholding (at a rate of 28%) with respect to distributions or payments made pursuant to the Plan unless that Holder:  (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that its taxpayer identification number is correct and that the Holder is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; provided, however, that the required information is provided to the Internal Revenue Service.

THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR EQUITY INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION.  ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTION CONTEMPLATED BY THE RESTRUCTURING, INCLUDING THE APPLICABILITY AND

EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN
APPLICABLE TAX LAWS.

## B.   CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO LIGHTSQUARED

### 1.   Treatment of Asset Sales Under Plan

The Plan provides that all or substantially all of LightSquared's assets will be disposed of
in order to satisfy Claims and, potentially, make payments to Holders of Equity Interests.
Certain assets may be disposed of during the pendency of the Plan that may produce taxable
income.  LightSquared's net operating loss carryforwards ("NOLs") should generally be
available to offset any tax gains or operating income on which LightSquared might otherwise be
subject to tax from its business operations and disposition of assets.  A portion of any income,
gain, deduction, or loss recognized, or treated as recognized by LightSquared LP, may be
allocated to Holders of Existing LP Preferred Units Equity Interests.  A Holder of Existing LP
Preferred Units Equity Interests would be required to pay tax on its share of any income or gain.

### 2.   Cancellation of Debt and Reduction of Tax Attributes

In general, absent an exception, a debtor will realize and recognize cancellation of debt
income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration
less than the amount of such indebtedness.  The amount of COD Income, in general, is the excess
of (a) the adjusted issue price of the indebtedness satisfied, over (b) the sum of (i) the amount of
cash paid and (ii) the fair market value of any other consideration given in satisfaction of such
indebtedness at the time of the exchange.  A debtor will not, however, be required to include any
amount of COD Income in gross income if the debtor is under the jurisdiction of a court in a case
under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that
proceeding.  Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes
by the amount of COD Income that it excluded from gross income pursuant to section 108 of the
Tax Code.  In general, tax attributes will be reduced in the following order:  (w) NOLs; (x) most
tax credits and capital loss carryovers; (y) tax basis in assets; and (z) foreign tax credits.  A
debtor with COD Income may elect first to reduce the basis of its depreciable assets pursuant to
section 108(b)(5) of the Tax Code.

Under the Plan, LightSquared will be selling or disposing of all of its assets and winding
down.  Accordingly, the effects of recognizing COD Income should not be material.

### 3.   Alternative Minimum Tax

In general, an alternative minimum tax ("AMT") is imposed on a corporation's
alternative minimum taxable income ("AMTI") at a 20% rate to the extent such tax exceeds the
corporation's regular federal income tax for the year.  AMTI is generally equal to regular taxable
income with certain adjustments.  For purposes of computing AMTI, certain tax deductions and
other beneficial allowances are modified or eliminated.  For example, only 90% of a
corporation's AMTI generally may be offset by available NOLs.  The effect of this rule could
cause LightSquared to owe taxes in connection with gain on the disposition of their assets.

**ARTICLE VI**
**CONCLUSION AND RECOMMENDATION**

    LightSquared believes that Confirmation of the Plan is in the best interests of its Estates and all stakeholders because it is fairest, most confirmable, and provides the greatest opportunity to maximize value for Holders of Claims against and Equity Interests in the LightSquared entities.  **Accordingly, LightSquared urges all Holders of Claims entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by returning their Ballots so that they are received no later than 4:00 p.m. (prevailing Pacific time) on November 29, 2013.**

New York, New York
Dated:  August 30, 2013

                    LightSquared Inc. (for itself and all other Debtors)

                    /s/ Douglas Smith
                    Douglas Smith
                    Chief Executive Officer, President, and
                    Chairman of the Board of LightSquared Inc.

## **Exhibit A**

Debtors' Joint Plan Pursuant to Chapter 11 of Bankruptcy Code
(TO BE FILED SEPARATELY)