Matthew S. Barr
Karen Gartenberg
MILBANK, TWEED, HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTSQUARED INC., *et al.*, | ) Case No. 12-12080 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## NOTICE OF FURTHER REVISED (I) LP DIP ORDER AND (II) ORDER AMENDING CASH COLLATERAL ORDER

PLEASE TAKE NOTICE that, on January 17, 2014, LightSquared Inc. and

certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively,

"LightSquared" or the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

Cases"), filed *LightSquared's Motion for Order (A) Authorizing LP DIP Obligors To Obtain*

*Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens*

*and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection,*

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

*and (D) Modifying Automatic Stay [Docket No. 1237]* (the "Motion").[2]

   **PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion, as modified by the Response and the Revised LP DIP Order and Revised Order Amending Cash Collateral Order, scheduled to be held before the Honorable Shelley C. Chapman, Judge of the United States Bankruptcy Court for the Southern District of New York, on January 31, 2014 at 10:00 a.m. (prevailing Eastern time) was adjourned to provide the parties with additional time to reach agreement either in connection with the LP DIP Facility or another debtor-in-possession financing facility.

   **PLEASE TAKE FURTHER NOTICE** that clean copies of a further revised LP DIP Order (the "Second Revised LP DIP Order") and Order Amending Cash Collateral Order (the "Second Revised Order Amending Cash Collateral Order") are attached hereto as Exhibit A-1 and Exhibit A-2, respectively, and blacklines of the Second Revised LP DIP Order and the Second Revised Order Amending Cash Collateral Order against the versions filed with the Notice of Revised Orders are attached hereto as Exhibit B-1 and Exhibit B-2, respectively. Parties have not reached agreement with respect to certain provisions, which are footnoted in the Second Revised LP DIP Order and the Second Revised Order Amending Cash Collateral Order accordingly.  LightSquared is hopeful that it will be able to present fully consensual orders at the Hearing (as defined below).  In the event these matters are not resolved, all parties' rights and objections are expressly reserved.

   **PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the Motion, as modified by the Response and the Second Revised LP DIP Order and Second Revised

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, *LightSquared's Response in Connection with Its Motion for Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay* [Docket No. 1280] (the "Response"), or *Notice of (I) Revised LP DIP Order and (II) Revised Order Amending Cash Collateral Order* [Docket No. 1285] (the "Notice of Revised Orders"), as applicable.

Order Amending Cash Collateral Order, shall be held before the Honorable Shelley C. Chapman,

Judge of the United States Bankruptcy Court for the Southern District of New York, on

**February 4, 2014 at 12:00 p.m. (prevailing Eastern time)**.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion, Response,

Notice of Revised Orders, Second Revised LP DIP Order, and Second Revised Order Amending

Cash Collateral Order may be obtained at no charge at http://www.kccllc.net/LightSquared or for

a fee via PACER at http://www.nysb.uscourts.gov.

New York, New York
Dated:  February 3, 2014

Respectfully submitted,

/s/ Matthew S. Barr
Matthew S. Barr
Karen Gartenberg
MILBANK, TWEED, HADLEY & M$^C$CLOY LLP
One Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Counsel to Debtors and Debtors in Possession*

## Exhibit A-1

**Second Revised LP DIP Order**

**DRAFT 2/3/2014**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTSQUARED INC., *et al.,*, | ) Case No. 12-12080 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

_____

### FINAL ORDER (A) AUTHORIZING LP DIP OBLIGORS TO OBTAIN SUPERPRIORITY SENIOR SECURED PRIMING POSTPETITION FINANCING, (B) GRANTING SUPERPRIORITY LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (C) GRANTING ADEQUATE PROTECTION, AND (D) MODIFYING AUTOMATIC STAY

Upon the motion, dated January 17, 2014 [Docket No. 1237] (the "Motion"),[2] of

LightSquared Inc. and certain of its affiliates, as debtors and debtors in possession (collectively,

the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), for entry of an

order pursuant to sections 105, 361, 362, 363(c), 364(d), and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

[2]    Terms used but not otherwise defined herein shall have the meanings given them, as applicable, in (a) Annex A hereto and (b) the *Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 544] (as amended and modified by (i) the *Order Amending Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 1118] (the "First Order Amending First Cash Collateral Order"), and (ii) the *Order Further Amending Amended Agreed Final Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. __] (the "Second Order Amending First Cash Collateral Order"), and, as so amended, the "Final Cash Collateral Order").

9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2

of the Local Rules for the United States Bankruptcy Court for the Southern District of New York

(the "<u>Local Rules</u>"), *inter alia*:

      (i)      authorizing LightSquared LP (the "<u>LP DIP Borrower</u>") to obtain, and each

existing and future, direct or indirect, subsidiary of the LP DIP Borrower (collectively,

the "<u>LP DIP Guarantors</u>" and, together with the LP DIP Borrower, the "<u>LP DIP</u>

<u>Obligors</u>") to unconditionally guarantee, jointly and severally, the LP DIP Borrower's

obligations in respect of senior secured, priming, superpriority postpetition financing (the

"<u>LP DIP Facility</u>" and, the loans made thereunder, the "<u>LP DIP Loans</u>") made available

by certain members of the ad hoc group of Prepetition LP Lenders (the "<u>Ad Hoc LP</u>

<u>Secured Group</u>"), including Capital Research and Management Company, Cyrus Capital

Partners, L.P., Fir Tree Capital Opportunity Master Fund, L.P., and Intermarket Corp., as

well as by Solus Alternative Asset Management LP, Fortress Credit Corp., on behalf of

its affiliates' managed funds and/or accounts[,] [and] fund entities managed by Aurelius

Capital Management, LP [and SP Special Opportunities, LLC] (each of the foregoing, an

"<u>LP DIP Lender</u>" and, collectively, the "<u>LP DIP Lenders</u>"), pursuant to the terms and

conditions of this order (this "<u>Order</u>"), including (i) the terms and conditions set forth

in <u>Annex A</u> hereto, (ii) the budget prepared by the Debtors and annexed hereto as <u>Annex</u>

<u>B</u> (as updated from time to time pursuant to, and in accordance with, the terms of this

Order, the "<u>LP DIP Budget</u>"), and (iii) the other LP DIP Credit Documents (as defined

below);

      (ii)      authorizing and directing the LP DIP Obligors to execute and deliver, and

perform under, (A) the terms of the LP DIP Facility as set forth in this Order, (B) the

related Notes (as defined below), substantially in the form annexed hereto as <u>Annex C</u>, to be issued in favor of each LP DIP Lender by the LP DIP Borrower, each in the original principal amount equal to the LP DIP Loan made by such LP DIP Lender as set forth in the "LP DIP Loan Allocation Schedule" set forth on <u>Schedule 1</u> to <u>Annex A</u>, and (C) the related "LP DIP Obligor Guaranty," substantially in the form annexed hereto as <u>Annex D</u> (this Order, the Notes, and each LP DIP Obligor Guaranty, collectively, the "<u>LP DIP Credit Documents</u>"), and to perform such other acts as may be necessary or desirable in connection with the LP DIP Facility;

(iii)    granting to the LP DIP Lenders allowed superpriority administrative expense claims (the "<u>LP DIP Superpriority Claims</u>") with priority over all other allowed chapter 11 and chapter 7 administrative expense claims, including the expenses of any chapter 7 trustee or chapter 11 trustee and the adequate protection claims and liens granted to the Prepetition LP Secured Parties (as defined below) under the Final Cash Collateral Order, in each of the LP DIP Obligors' Chapter 11 Cases in respect of the LP DIP Obligations;

(iv)    granting to the LP DIP Lenders automatically perfected first priority priming security interests in, and liens on, all of the LP DIP Collateral (as defined below) in accordance with the terms set forth herein;

(v)    authorizing the LP DIP Obligors to pay the principal, interest (including, without limit, interest paid in kind), fees, expenses, and other liabilities and amounts payable, as set forth herein, including, without limitation, under each of the LP DIP Credit Documents, as they become due, all to the extent provided by, and in accordance with, the terms of this Order and the LP DIP Credit Documents, as applicable;

3

(vi)    reaffirming and confirming the adequate protection to the Prepetition LP Secured Parties for any Diminution in Value of their respective interests in the Prepetition LP Collateral (as defined below) through April 15, 2014 as provided in the Final Cash Collateral Order;

(vii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the LP DIP Facility and this Order.

The Court (as defined below) having considered the Motion, the terms of the LP DIP Facility, the Second Order Amending First Cash Collateral Order, and the evidence submitted at the hearing held before this Court on February 4, 2014 (the "Hearing"), and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules, due and proper notice of the Motion and the Hearing having been given; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, and their estates and essential for the continued maintenance and preservation of the Debtors' assets and property; and all objections, if any, to the entry of this Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.  On May 14, 2012 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.      **Debtors in Possession**.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      **Jurisdiction and Venue**.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Chapter 11 Cases and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Committee Formation**.  As of the date hereof, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed a statutory committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

E.      **Notice**.  Notice of the Hearing and the relief requested in the Motion has been provided by the Debtors, by telecopy, email, overnight courier and/or hand delivery, to (a) the U.S. Trustee, (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), (c) counsel to the agents under the Debtors' prepetition credit facilities, (d) counsel to U.S. Bank National Association and MAST Capital Management, LLC, (e) counsel to Harbinger Capital Partners, LLC, (f) the Internal Revenue Service, (g) the United States Attorney for the Southern District of New York, (h) the Federal Communications Commission, (i) Industry Canada, and (j) all parties having filed a request for notice under Bankruptcy Rule 2002.  Under the circumstances, such notice of the Hearing and the relief requested in the Motion constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and the Local Rules.

F.    **Amended Final Cash Collateral Order**.    On February 19, 2013, the Court

entered the Amended Final Cash Collateral Order, and, on December 20, 2013, the Court entered

the First Order Amending First Cash Collateral Order, which together provide for, among other

things, the Debtors' continued use of the Prepetition LP Collateral, including Cash Collateral,

subject to the terms contained therein, through January 31, 2014.    Substantially simultaneously

with entry of this Order, and as a prerequisite to the effectiveness of this Order, the Court will

enter the Second Order Amending Final Cash Collateral Order, which, among other things,

amends the Amended Final Cash Collateral Order by (i) permitting the LP Debtors[3] to continue

to use the Prepetition LP Collateral, including Cash Collateral, through and including April 15,

2014, (ii) permitting the LP Debtors to continue to make the Adequate Protection Payments on

the terms set forth herein, (iii) allowing entry of this Order and approval of the LP DIP Facility,

and (iv) preserving for the benefit of the Prepetition LP Secured Parties the LP Adequate

Protection Liens and the LP Section 507(b) Claims.

G.    **Immediate Need for Postpetition Financing**.    The Debtors have requested

immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).    Good cause

has been shown for entry of this Order.    Since the Petition Date, the Debtors have been funding

their businesses and the Chapter 11 Cases through the use of, among other things, the Prepetition

LP Collateral, including Cash Collateral.    The Prepetition LP Lenders' Cash Collateral is largely

depleted.    In the absence of the availability of the LP DIP Facility in accordance with the terms

hereof, serious and irreparable harm to the LP Debtors and their estates and creditors would

---

[3]    "LP Debtors" means, collectively, LightSquared LP, ATC Technologies, LLC, LightSquared Corp.,
LightSquared Finance Co., LightSquared Network LLC, LightSquared Inc. of Virginia, LightSquared
Subsidiary LLC, SkyTerra Holdings (Canada) Inc., SkyTerra (Canada) Inc., Lightsquared Bermuda Ltd.,
LightSquared Investors Holdings Inc., TMI Communications Delaware, Limited Partnership, and
LightSquared GP Inc.

occur.  Further, any remaining possibility for confirmation of a chapter 11 plan would be at severe risk in the absence of the availability of funds in accordance with the terms of this Order.

H.    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain, on more favorable terms and conditions than those provided in this Order, (a) adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien.  The Debtors are unable to obtain credit for borrowed money without granting the LP DIP Liens and the LP DIP Superpriority Claim to (or for the benefit of) the LP DIP Lenders.

I.    **Use of Proceeds of LP DIP Facility, LP DIP Collateral**.  All proceeds of the LP DIP Facility and the LP DIP Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon (net of any amounts used to pay interest, fees, costs, expenses, and other liabilities payable under this Order or the Final Cash Collateral Order), shall be used and/or applied for the general corporate and working capital purposes of the LP Debtors in accordance with this Order for the types of expenditures set forth in the LP DIP Budget and for no other purpose, and to provide the LP Debtors with sufficient time and liquidity to confirm a chapter 11 plan of reorganization, all in accordance with the terms and conditions of this Order.

J.    **Extension of Financing**.  The LP DIP Lenders have indicated a willingness to provide financing to the LP DIP Obligors in accordance with the terms of this Order and the other LP DIP Credit Documents (as applicable), but only upon (i) the entry of this Order, including, without limitation, approval of the terms of the LP DIP Loans as set forth herein and

7

findings by this Court that the LP DIP Facility is essential to the LP Debtors' estates, that the LP

DIP Lenders are good faith financiers, and that their claims, superpriority claims, security

interests and liens, and other protections granted pursuant to this Order and the LP DIP Facility

(including the LP DIP Superpriority Claim and the LP DIP Liens) will not be affected by any

subsequent reversal, modification, vacatur, or amendment of, as the case may be, this Order, the

Second Order Amending First Cash Collateral Order, or the Amended Final Cash Collateral

Order, as provided in section 364(e) of the Bankruptcy Code, (ii) the entry of the Second Order

Amending First Cash Collateral Order, (iii) the execution and delivery of the Notes and the LP

DIP Obligor Guaranties by each applicable LP DIP Obligor, (iv) delivery of certificates, if any,

evidencing equity ownership in the Additional LP Subsidiary Guarantors (as defined below),

together with undated stock powers therefor, executed in blank, to the Prepetition LP Collateral

Trustee, (v) the payment of LP DIP Professional Fees (as defined below) as and to the extent

provided for herein, and (vi) entry of an order in form and substance acceptable to the LP DIP

Lenders by the Canadian Court in connection with the Canadian Proceedings recognizing the

entry of this Order and authorizing such LP DIP Obligors to enter into the LP DIP Facility and

perform its obligations thereunder (the "<u>Canadian Recognition Order</u>").

        K.        **<u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>**.

        (i)        The terms and conditions of the LP DIP Facility, and the principal, interest

(including, without limit, interest paid in kind), fees, expenses, and other liabilities paid and to be

paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are

supported by reasonably equivalent value and consideration;

(ii)    The LP DIP Facility was negotiated in good faith and at arm's length among the Debtors and the LP DIP Lenders; and

(iii)    The proceeds of the LP DIP Loans shall be so extended in good faith and for valid business purposes and uses, as a consequence of which the LP DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

L.    **Other Findings and Conclusions Regarding LP DIP Lenders**.

(i)    Indemnity.  The LP DIP Lenders have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with, or related in any way to, negotiating, implementing, documenting, or obtaining requisite approvals of the LP DIP Facility, including in respect of the granting of the LP DIP Liens, any challenges or objections to the LP DIP Facility, and all documents related to and all transactions contemplated by the foregoing.  Accordingly, the LP DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto.  No exception or defense in contract, law, or equity exists as to any obligation (contractual or legal) to indemnify and/or hold harmless any of the LP DIP Lenders, and any such defenses are hereby waived, except to the extent resulting from the applicable LP DIP Lender's gross negligence or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction.

(ii)    No Control.  None of the LP DIP Lenders are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the LP DIP Facility and/or the LP DIP Credit Documents.

(iii)    <u>No Claims, Causes of Action</u>.  As of the date hereof, there exist no claims or causes of action against any of the LP DIP Lenders with respect to, in connection with, related to, or arising from the LP DIP Facility that may be asserted by the Debtors or any other person or entity.

(iv)    <u>Release</u>.  The LP DIP Obligors forever and irrevocably release, discharge, and acquit each of the LP DIP Lenders, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, in each case arising out of, in connection with, or relating to the LP DIP Facility and/or the LP DIP Credit Documents, including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses with respect to or relating to the LP DIP Obligations, LP DIP Liens, or LP DIP Facility, as applicable, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims with respect to the validity, priority, perfection, or avoidability of the liens or secured claims of the LP DIP Lenders.

M.    **Relief Essential; Best Interests**.  The relief requested in the Motion (and provided in this Order) is necessary, essential, and appropriate for the continued management and preservation of the Debtors' assets and property and to preserve any remaining possibility of confirming a chapter 11 plan.  It is in the best interest of the Debtors' estates that the LP DIP Obligors be allowed to enter into the LP DIP Facility and incur the LP DIP Obligations.

N. **Adequate Protection for Prepetition LP Secured Parties**. The Prepetition LP Agent and the other Prepetition LP Secured Parties are entitled to adequate protection for the priming of their liens and the other rights granted to the LP DIP Lenders hereunder. The adequate protection provided to the Prepetition LP Secured Parties in the Final Cash Collateral Order is sufficient adequate protection of the interests of the Prepetition LP Secured Parties, and is fair, reasonable, and sufficiently reflects that the Debtors have exercised prudent business judgment in agreeing to this Order and entering into the LP DIP Facility. Nothing in this Order shall be construed as a consent by any Prepetition LP Secured Party that it would be adequately protected in the event of any alternative debtor in possession financing or for any purposes in the Chapter 11 Cases other than entry of this Order.

**NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Hearing, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Order. Any objections to the Motion, to the extent not withdrawn, waived, or otherwise resolved, are hereby denied and overruled.

2. **LP DIP Facility**.

(a) **LP DIP Obligations; Availability and Final Maturity Date, etc.** The LP DIP Obligors are hereby expressly and immediately authorized and directed to enter into the LP DIP Facility, to borrow the LP DIP Loans, and to incur and to perform the LP DIP Obligations in accordance with and subject to this Order and, as applicable, any other LP DIP Credit Documents, to execute and/or deliver any LP DIP Credit Documents and, as provided

herein, all other instruments, certificates, agreements, and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the LP DIP Obligors under the LP DIP Facility, including the creation and perfection of the LP DIP Liens described and provided for herein.  The LP DIP Obligors are hereby authorized and directed to pay all principal of the LP DIP Loans, interest thereon (including, without limitation, accrued but unpaid interest and interest paid in kind), fees and expenses, indemnities, and other amounts described herein and, as applicable, in the other LP DIP Credit Documents, as such shall accrue and become due hereunder or thereunder, including, without limitation, the LP DIP Professional Fees, as and to the extent provided for herein (collectively, all loans, advances, extensions of credit, financial accommodations, interest, fees (including the LP DIP Professional Fees as and to the extent provided for herein), expenses, and other liabilities and obligations (including indemnities and similar obligations) in respect of the LP DIP Facility and the LP DIP Credit Documents, the "LP DIP Obligations").  Interest on the LP DIP Loans shall accrue at the rates and be paid as set forth in Annex A hereto.  The LP DIP Credit Documents and all LP DIP Obligations are hereby, and shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the LP DIP Obligors, enforceable against the LP DIP Obligors, their estates, and any successors thereto in accordance with their terms.  The term of the LP DIP Facility shall commence on the date all of the conditions precedent set forth in subparagraph (c) of this paragraph 2 are satisfied and end on April 15, 2014 or, if sooner, the effective date of any plan of reorganization confirmed in the LP Debtors' Chapter 11 Cases (the "Final Maturity Date"), subject to the terms and conditions set forth herein and in the other LP DIP Credit Documents, including the protections afforded a party acting in good faith under section 364(e) of the Bankruptcy Code.  On the Final Maturity Date, all LP DIP Obligations shall be paid in full

and in cash in U.S. dollars, and to each LP DIP Lender in accordance with their Relevant Percentage in accordance with payment instructions provided by each LP DIP Lender.

(b)    **Authorization To Borrow; Guarantees, etc**.  Subject to the terms and conditions of this Order and the other LP DIP Credit Documents (including the LP DIP Budget), the LP DIP Borrower is hereby authorized and directed to borrow the LP DIP Loans under the LP DIP Facility, and the LP DIP Borrower and such other LP DIP Obligors are authorized and are hereby deemed to, and shall, guarantee repayment of the LP DIP Loans and all other LP DIP Obligations, up to an aggregate principal amount of $33,000,000, plus all interest (including, without limitation, interest paid in kind), fees, expenses, and all other liabilities and obligations constituting LP DIP Obligations under the LP DIP Credit Agreement, in each case, without any right of notice, presentment, setoff, or waiver.

(c)    **Conditions Precedent**.  No LP DIP Lenders shall have any obligation to make its LP DIP Loan or any other financial accommodation hereunder or under the other LP DIP Credit Documents (and the LP DIP Borrower shall not make any request therefor) unless all of the following conditions precedent to making LP DIP Loan have been satisfied: (i) the entry of this Order, including, without limitation, approval of the terms of the LP DIP Loans as set forth herein, (ii) the entry of the Second Order Amending First Cash Collateral Order, (iii) the execution and delivery of the Notes and the LP DIP Obligor Guaranties by each applicable LP DIP Obligor, (iv) the execution of any LP DIP Credit Documents, (v) delivery of certificates, if any, evidencing equity ownership in the Additional LP Subsidiary Guarantors, together with undated stock powers therefor, executed in blank, to the Prepetition LP Collateral Trustee, (vi) the payment of the LP DIP Professional Fees, as and to the extent provided for herein, and (vii) the entry of the Canadian Recognition Order.

13

(d)    **LP DIP Collateral**.  As used herein, "LP DIP Collateral" shall mean all Prepetition LP Collateral (as defined in Annex A), including Cash Collateral of the Prepetition LP Secured Parties, of any LP DIP Obligor together with (i) all equity interests of any LP Debtor in LightSquared Finance Co., LightSquared Network LLC, and Lightsquared Bermuda Ltd. (together, the "Additional LP DIP Subsidiary Guarantors"), and (ii) all now owned or hereafter acquired assets and property, whether real or personal, tangible or intangible, of each of the Additional LP DIP Subsidiary Guarantors; provided, however, that the LP DIP Collateral shall not include any permit or license issued by a Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security interest in such permit, license, or other agreement.

(e)    **LP DIP Liens**.  Effective immediately upon the entry of this Order, and subject only to the LP Carve-Out (as defined in the Final Cash Collateral Order and as set forth more fully in this Order), the LP DIP Lenders are hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected, continuing, enforceable, and non-avoidable (all such liens and security interests granted hereby, the "LP DIP Liens"):

(I)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable first priority liens on and security interests in all LP DIP Collateral that was not encumbered by valid, enforceable, perfected, and non-avoidable liens as of the Petition Date;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable liens on and security interests in

14

(x) all LP DIP Collateral which is unencumbered by the Prepetition LP Liens but on which a third party, i.e., not the Prepetition LP Secured Parties (a "Third Party Lienholder"), had a pre-existing lien on the Petition Date and (y) all LP DIP Collateral encumbered by the Prepetition LP Liens and LP Adequate Protection Liens on which a Third Party Lienholder had a pre-existing lien on the Petition Date that was senior to the Prepetition LP Liens, in each case junior only to any such liens and security interests of Third Party Lienholders, but solely to the extent that such liens and security interests of Third Party Lienholders were in each case valid, enforceable, perfected, and non-avoidable as of the Petition Date and were permitted by the terms of the Prepetition LP Credit Documents (the "Senior Third Party Liens"); and

(III)    pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable liens on and security interests in all Prepetition LP Collateral of the LP DIP Obligors, which liens and security interests shall be senior to and prime the Prepetition LP Liens and any LP Adequate Protection Liens.

(f)    **Other Provisions Relating to LP DIP Liens**.  The LP DIP Liens shall secure all of the LP DIP Obligations.  The LP DIP Liens shall not, without the consent of each of the LP DIP Lenders, be made subject to, or *pari passu* with, any other lien or security interest, other than to the extent expressly provided herein and to the LP Carve-Out, by any court order heretofore or hereafter entered in the Chapter 11 Cases of any of the LP DIP Obligors, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases of any of the LP

15

DIP Obligors, upon the conversion of any of the Chapter 11 Cases of any of the LP DIP Obligors to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any of the Chapter 11 Cases of any of the LP DIP Obligors.  The LP DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code.

      (g)      **Superpriority Administrative Claim Status**.  The LP DIP Obligations shall, pursuant to section 364(c)(1) of the Bankruptcy Code, at all times constitute an LP DIP Superpriority Claim, and be payable from and have recourse to all LP DIP Collateral.  The LP DIP Superpriority Claim shall be subject and subordinate only to the LP Carve-Out.  Other than to the extent expressly provided herein, and with respect to the LP Carve-Out, no costs or expenses of administration, including, without limitation, any LP Section 507(b) Claim granted under the Final Cash Collateral Order or hereunder or any professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or *pari passu* with the LP DIP Superpriority Claim or any of the LP DIP Obligations, or with any other claims of the LP DIP Lenders arising hereunder, under the other LP DIP Credit Documents, or otherwise in connection with the LP DIP Facility.

      3.      **Authorization and Approval To Use Proceeds of LP DIP Facility**.

      (a)      Subject to the terms and conditions of this Order and the other LP DIP Credit Documents, and to the adequate protection granted to or for the benefit of the Prepetition LP Secured Parties as hereinafter set forth, each LP DIP Obligor is authorized to request and use proceeds of the LP DIP Loans, in each case only for the purposes specifically set forth in this

16

Order and for the types of expenditures set forth in the LP DIP Budget, for (a) working capital and other general corporate purposes and (b) permitted payment of costs of administration of the LP Debtors' Chapter 11 Cases in order to provide the LP Debtors with sufficient time and liquidity to confirm a plan of reorganization.

(b)    Notwithstanding anything herein to the contrary, the LP DIP Obligors' right to use proceeds of LP DIP Loans shall terminate on the Final Maturity Date.

(c)    Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

(d)    Except as permitted by the this Order and the LP DIP Budget, the LP DIP Obligors shall not make any payment on any prepetition indebtedness or obligations other than those authorized by the Court in accordance with orders entered into, on, or prior to the date hereof.

4.    **Adequate Protection for Prepetition Secured Parties**.  Pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LP Agent and the Prepetition LP Secured Parties in the Prepetition LP Collateral (including Cash Collateral) against any Diminution in Value, the Prepetition LP Agent, for the benefit of the Prepetition LP Secured Parties, shall continue to receive adequate protection in the form of the LP Adequate Protection Liens, the LP Section 507(b) Claims, and the LP Adequate Protection Payments (including payment of the LP Professional Fees), in each case, pursuant to and as more fully set forth in the Final Cash Collateral Order.

5.    **Monitoring of Collateral**.  The LP DIP Lenders, by their respective consultants and advisors, shall, consistent with past practices, be given reasonable access to the Debtors'

books, records, assets, and properties for purposes of monitoring the LP Debtors' businesses and

the value of the LP DIP Collateral, and shall be granted reasonable access to the Debtors' senior

management.

6.    **Financial and Other Reporting**.

On Wednesday (or in the event such Wednesday is not a business day, the first

business day thereafter) of each week, the LP Debtors will provide Willkie Farr & Gallagaher

LLP, Blackstone, and White & Case LLP (who shall reasonably promptly forward such

information to each of the LP DIP Lenders at substantially the same time) with (a) cash balances

as of the last day of the prior week and (b) a summary of material or key expenditures by

category during the prior week.  On the tenth (10th) day of each month or the first business day

thereafter, the LP Debtors will provide Willkie Farr & Gallagaher LLP, Blackstone, and White &

Case LLP (who shall reasonably promptly forward such information to each of the LP DIP

Lenders at substantially the same time) with (x) a reconciliation of revenues generated and

expenditures made during the prior month and cumulatively during the Chapter 11 Cases,

together with a comparison of such amounts to the amounts projected in the LP DIP Budget and

(y) an update of the LP DIP Budget through April 2014 (for forecasting and informational

purposes only).  In addition, the Debtors shall provide Blackstone and White & Case LLP with

any and all other financial information made available to the Prepetition LP Agent or Ad Hoc LP

Secured Group pursuant to the Final Cash Collateral Order.

7.    **LP DIP Lien Perfection**.  This Order shall be sufficient and conclusive evidence

of the validity, perfection, and priority of the LP DIP Liens without the necessity of filing or

recording any financing statement, deed of trust, mortgage, or other instrument or document

which may otherwise be required under the law of any jurisdiction or the taking of any other

action to validate or perfect the LP DIP Liens or to entitle the LP DIP Liens to the priorities granted herein. To the extent that the Prepetition LP Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any LP DIP Credit Document, the LP DIP Lenders are also deemed to be secured parties under such account control agreements, loss payees under the Debtors' insurance policies, and the secured parties under each such LP DIP Credit Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Order and the other LP DIP Credit Documents. The Prepetition LP Collateral Trustee shall serve as the agent for the LP DIP Lenders for the purpose of perfecting their respective security interests and liens on all LP DIP Collateral that is of a type whereby perfection of a security interest therein may be accomplished only by possession or control by a secured party.

8.    **LP Carve-Out**. Subject to the terms and conditions contained in this paragraph, upon the occurrence of the Final Maturity Date, the LP DIP Liens and the LP DIP Superpriority Claim, which have the relative lien and payment priorities as set forth herein, shall, in any event, be subject and subordinate to the LP Carve-Out, without duplication. No portion of the LP Carve-Out and no proceeds of the LP DIP Facility or LP DIP Loans may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the challenge of, any of the LP DIP Liens or the LP DIP Superpriority Claim.

9.    **Payment of Compensation**. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or shall limit or otherwise affect the right of the LP DIP Lenders and/or the Prepetition LP Secured Parties to

object to the allowance and payment of any such fees and expenses.  The LP Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code and in accordance with the LP DIP Budget, as the same may be due and payable and the same shall not reduce the LP Carve-Out.

10.    **Section 506(c) Claims**.  Except to the extent of the LP Carve-Out, no expenses of the administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the LP DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the LP DIP Lenders, and no such consent shall be implied from any other action or inaction by the LP DIP Lenders.

11.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders**. Without limiting, and subject to, any other provisions of this Order, there shall not be entered in the Chapter 11 Cases of any LP DIP Obligor, or in any Successor Case, any order which authorizes (a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the LP DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Order to or for the benefit of the LP DIP Lenders or the Prepetition LP Secured Parties; (b) the use of Cash Collateral for any purpose other than as set forth in the Final Cash Collateral Order or the LP DIP Budget; (c) any LP DIP Obligor to incur, create, assume, guarantee, or permit to exist, directly or indirectly, any additional indebtedness, except (i) indebtedness incurred under this Order and the other LP DIP Credit Documents, (ii) indebtedness existing on the date of this Order and additional indebtedness accrued thereon in

20

accordance with the terms of such indebtedness, or (iii) indebtedness incurred in the ordinary course and not for borrowed money, which would not be senior in right of payment of security to the LP DIP Obligations; or (d) any LP DIP Obligor to create, incur, assume, or permit to exist, directly or indirectly, any lien on any property now owned or hereafter acquired by it or on any income or revenues or rights in respect of any thereof, except (i) liens granted pursuant to this Order or the other LP DIP Credit Documents, (ii) any lien in existence on the date of this Order, and (iii) liens incurred in the ordinary course and not for borrowed money, which would be junior to the LP DIP Liens.

12.    **Proceeds of Subsequent Financing**.    Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all LP DIP Obligations, the LP DIP Obligors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt in violation of this Order or the other LP DIP Credit Documents, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the LP DIP Lenders for application in accordance with this Order.

13.    **Cash Management**.    Until the payment in full in cash of all LP DIP Obligations, the LP DIP Obligors shall maintain the cash management system as set forth in the *Final Order (A) Authorizing Debtors To (I) Continue Using Existing Cash Management Systems, Bank Accounts and Business Forms and (II) Continue Intercompany Transactions, (B) Providing Postpetition Intercompany Claims Administrative Expense Priority, (C) Authorizing Debtors' Banks To Honor All Related Payment Requests, and (D) Waiving Investment Guidelines of Section 345(b) of Bankruptcy Code* [Docket No. 115] (the "Cash Management Order"), or as otherwise required by the LP DIP Credit Documents.    To the extent the Debtors are required to

21

give notice to any party as set forth in the Cash Management Order, such notice shall also be given to each of counsel to the LP DIP Lenders and the Ad Hoc LP Secured Group. The LP DIP Lenders shall be deemed to have "control" over the LP DIP Obligors' cash management accounts for all purposes of perfection under the Uniform Commercial Code. All amounts collected in the cash collection accounts of the LP DIP Obligors may be used and applied in accordance with this Order.

14.     **Disposition of LP DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the LP DIP Collateral outside of the ordinary course of business unless approved by the Court, subject to the right of any party in interest to object.

15.     **Termination of Automatic Stay; Rights and Remedies Following Final Maturity Date**.

(a)     The authorization of the LP DIP Obligors to use the proceeds of the LP DIP Facility under this Order shall terminate on the Final Maturity Date.

(b)     Any automatic stay otherwise applicable to the LP DIP Lenders in connection with the LP DIP Facility is hereby modified so that, following the Final Maturity Date, the LP DIP Lenders shall be immediately entitled to exercise all of their rights and remedies in respect of the LP DIP Collateral, in accordance with this Order and/or the other LP DIP Credit Documents, as applicable.

(c)     Following the occurrence of the Final Maturity Date, if the LP DIP Obligations have not been indefeasibly paid in full in cash, the LP DIP Lenders are authorized to exercise all remedies and proceed under or pursuant to the applicable LP DIP Credit Documents (which, for the avoidance of doubt, shall be consistent with and incorporate, *mutatis mutandis* to

make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents) or under applicable law, including the Uniform Commercial Code.  All proceeds realized in connection with the exercise of the rights and remedies of the applicable LP DIP Lenders shall be turned over and applied in accordance with this Order.

(d)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the LP DIP Credit Documents as necessary to (i) permit the LP DIP Obligors to grant LP DIP Liens and to incur all LP DIP Obligations and all liabilities and obligations to the LP DIP Lenders hereunder and under the other LP DIP Credit Documents, as the case may be, and (ii) authorize the LP DIP Lenders to retain and apply payments and otherwise enforce their respective rights and remedies hereunder.

(e)     Notwithstanding anything in this Order to the contrary, the Prepetition LP Agent shall not be permitted to exercise any rights or remedies for itself or the Prepetition LP Secured Parties unless and until the LP DIP Obligations are indefeasibly paid and satisfied in full in cash.

16.     **Applications of Proceeds of Collateral, Payments, and Collections**.

Subject to the LP Carve-Out, upon and after the occurrence of the Final Maturity Date, each LP DIP Obligor has agreed that proceeds of any LP DIP Collateral, any amounts held on account of the LP DIP Collateral, and all payments and collections received by the LP DIP Obligors with respect to all proceeds of LP DIP Collateral and all unexpended proceeds of the LP DIP Loans, shall be used and applied to permanently and indefeasibly repay and reduce all LP DIP Obligations then due and owing in accordance with the LP DIP Credit Documents, until paid and satisfied in full in cash.  No asset or property of the LP DIP Obligors may be sold,

leased, or otherwise disposed of by any Debtor outside the ordinary course of business absent an

order of the Court (and subject to the right to object of any party in interest), and in any event, all

proceeds of such sale, lease, or disposition shall be indefeasibly applied to repay the LP DIP

Obligations as provided herein.

17.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No
Modification or Stay of Order**.  Based on the findings set forth in this Order and in accordance

with section 364(e) of the Bankruptcy Code, which is applicable to the LP DIP Facility as

approved by this Order, in the event any or all of the provisions of this Order are hereafter

modified, amended, or vacated by a subsequent order of this Court or any other court, the LP

DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code,

and no such appeal, modification, amendment, or vacatur shall affect the validity and

enforceability of any advances made hereunder or the liens or priority authorized or created

hereby.  Notwithstanding any such modification, amendment, or vacatur, any claim granted to

the LP DIP Lenders hereunder arising prior to the effective date of such modification,

amendment, or vacatur of any LP DIP Liens or of the LP DIP Superpriority Claim granted to or

for the benefit of the LP DIP Lenders shall be governed in all respects by the original provisions

of this Order, and the LP DIP Lenders shall be entitled to all of the rights, remedies, privileges,

and benefits, including the LP DIP Liens and the LP DIP Superpriority Claim granted herein,

with respect to any such claim.  Because the LP DIP Loans are made in reliance on this Order,

the LP DIP Obligations incurred by the LP DIP Obligors or owed the LP DIP Lenders prior to

the effective date of any stay, modification, or vacatur of this Order shall not, as a result of any

subsequent order in the Chapter 11 Cases of any LP DIP Obligor or in any Successor Cases, be

subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the LP DIP Lenders under this Order.

(b)    **Expenses**.[4]   The LP DIP Lenders, and their advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted, if necessary, for privileged, confidential, or otherwise sensitive information) to the Office of the U.S. Trustee and counsel for the Debtors.  Within ten (10) days of presentment of and further statements, if no written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made, the LP DIP Obligors shall promptly pay in cash all such fees and expenses of the LP DIP Lenders and their advisors and professionals, subject to the limitations set forth in this Order.  Any objection to the payment of such fees or expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of

---

[4]    SPSO has requested the insertion of the following language, which is disputed by the Ad Hoc LP Secured Group:  "The LP Debtors shall pay all expenses incurred by the LP DIP Lenders (including, without limitation, the reasonable and documented fees and disbursements of their counsel, any other local or foreign counsel that they shall retain, and any internal or third-party appraisers, consultants, financial, restructuring, or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding, and administration of the LP DIP Credit Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the LP DIP Credit Documents and all court-related fees incurred or sustained in connection with the prosecution of the LP DIP Facility, (ii) the administration of the LP DIP Credit Documents, or (iii) enforcement of any rights or remedies under this Order or the LP DIP Credit Documents, in each case whether or not the transactions contemplated hereby are fully consummated (collectively, the "LP DIP Professional Fees"), which shall not exceed $200,000 in the aggregate; provided, however, that, to the extent the LP DIP Professional Fees exceed $200,000 in the aggregate, such excess amounts shall be paid as LP Professional Fees under, and in accordance with, the Final Cash Collateral Order. Nothing herein shall impact the payment of the LP Professional Fees under, and in accordance with, the Final Cash Collateral Order."

the relevant disputed fees and expenses set forth in the invoice.  This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.  For the avoidance of doubt, and

without limiting any of the foregoing or any other provision of this Order, all fees and expenses

are, upon entry of this Order and irrespective of any subsequent order approving or denying the

LP DIP Facility or any other financing pursuant to section 364 of the Bankruptcy Code, fully

entitled to all protections of section 364(e) of the Bankruptcy Code and are deemed fully earned,

indefeasibly paid, non-refundable, irrevocable, and non-avoidable as of the date of this Order.

(c)    **Binding Effect**.  The provisions of this Order shall be binding upon and

inure to the benefit of the LP DIP Lenders, the Debtors, and their respective successors and

assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of

the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter

11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

(d)    **No Waiver**.  The failure of the LP DIP Lenders to seek relief or otherwise

exercise their rights and remedies under this Order or any other LP DIP Credit Documents or

under applicable law or otherwise, as applicable, shall not constitute a waiver of any of the LP

DIP Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the

entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses, or

remedies of the LP DIP Lenders under the Bankruptcy Code or under non-bankruptcy law

against any other person or entity in any court, including without limitation, the rights of the LP

DIP Lenders to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal

of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose,

subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any

of the rights, claims, or privileges (whether legal, equitable, or otherwise) on behalf of the LP DIP Lenders.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party, or incidental beneficiary.

(f)    **No Marshaling**.  The LP DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the LP DIP Collateral.

(g)    **Section 552(b)**.  The LP DIP Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the LP DIP Lenders or the Prepetition LP Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition LP Collateral or the LP DIP Collateral.

(h)    **Credit Bid Rights.**  The LP DIP Lenders shall have the right to "credit bid" the LP DIP Obligations during any sale of any of the LP DIP Collateral or Prepetition LP Collateral of the LP DIP Obligors, as applicable, including, without limitation, in connection with sales occurring pursuant to Bankruptcy Code section 363 or included as part of any plan subject to confirmation under Bankruptcy Code section 1129.

(i)    **Amendment**.  No provision of the LP DIP Credit Documents may be amended, modified, supplemented, altered, or waived without approval of the Court.

(j)    **Priority of Terms**.  To the extent of any conflict between or among (i) the express terms or provisions of any of the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the express terms and provisions of this Order, on the other

hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" another order of this Court or agreement, the terms and provisions of this Order shall govern.

(k)    **Survival of Order**.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Chapter 11 Cases of any LP DIP Obligor, (ii) converting any of the Chapter 11 Cases of any LP DIP Obligor to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases of any LP DIP Obligor, (iv) withdrawing of the reference of any of the Chapter 11 Cases of any LP DIP Obligor from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases of any LP DIP Obligor in this Court.  The terms and provisions of this Order, including the LP DIP Liens and LP DIP Superpriority Claim granted pursuant to this Order, and any protections granted to or for the benefit of the LP DIP Lenders, shall continue in full force and effect notwithstanding the entry of such order, and such LP DIP Liens and LP DIP Superpriority Claims shall maintain their priority as provided by this Order and the other LP DIP Credit Documents until all of the LP DIP Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

(l)    **Enforceability**.    This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m)    **No Waivers or Modification of Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Order, and no such consent shall be implied by any other action, inaction, or acquiescence of the LP DIP Lenders.

(n)    **<u>Waiver of any Applicable Stay</u>**.  Any applicable stay (including, without

limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Order.

(o)    **<u>Retention of Jurisdiction</u>**.  The Court has and will retain jurisdiction to

enforce this Order according to its terms.


Dated:  February __, 2014
New York, New York

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

<u>ANNEX A</u>

<u>LP DIP FACILITY TERMS AND CONDITIONS</u>

This <u>Annex A</u> is the "<u>Annex A</u>" referenced in the Order to which it is attached and shall constitute, and form a part of, the Order.

**1.** <u>Terms of Borrowing</u>.

(a)    Subject to the terms and conditions of this Order, the LP DIP Lenders agree, severally and not jointly, to make LP DIP Loans to LP DIP Borrower upon the satisfaction of the conditions precedent set forth in paragraph 2(a) of this Order, in an aggregate principal amount not to exceed its Relevant Percentage of $33,000,000; <u>provided</u>, that no LP DIP Lender shall be responsible for the failure of any other LP DIP Lender to make any LP DIP Loan required to be made by such other LP DIP Lender).

(b)    Each LP DIP Lender shall make each LP DIP Loan to be made by it hereunder by wire transfer of immediately available funds to an account directed by LP DIP Borrower in writing.

(c)    The LP DIP Loans shall be prepayable at any time without make-whole or premium.  Amounts paid or prepaid in respect of LP DIP Loans may not be reborrowed.

**2.** <u>Interest on LP DIP Loans</u>.

(a)    Subject to the provisions of <u>Section 2(b)</u> below, the LP DIP Loans shall bear interest at a rate *per annum* equal to 15.0%, payable in kind (the "<u>PIK Interest</u>"), by adding such accrued and unpaid interest to the unpaid principal amount of the LP DIP Loans on a monthly basis (whereupon from and after such date such additional amounts shall also accrue interest pursuant to this <u>Section 2</u>).  All such PIK Interest so added shall be treated as principal of the LP DIP Loans for all purposes of this Order.  The obligation of LP DIP Borrower to pay all such PIK Interest so added shall be automatically evidenced by this Order, and, if applicable, any applicable Notes.

(b)    <u>Default Rate</u>.  Notwithstanding the foregoing, after the Final Maturity Date, the LP DIP Obligations shall, to the extent permitted by applicable law, bear interest, after as well as before judgment, at a rate per annum equal to 2% *plus* the rate otherwise applicable to the LP DIP Loans as provided in <u>Section 2(a)</u>.

(c)    <u>Interest Payment Dates</u>.  Accrued interest on each LP DIP Loan shall be payable on the Final Maturity Date for such LP DIP Loan; <u>provided</u>, that (i) interest accrued pursuant to <u>Section 2(b)</u> shall be payable on demand and (ii) in the event of any repayment or prepayment of any LP DIP Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment.

(d)     Interest Calculation.  All interest hereunder shall be computed on the basis of a year of 360 days and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

(e)     *Interest Act* (Canada).  For the purposes of the *Interest Act* (Canada) and disclosure thereunder, in any case in which an interest or fee rate is stated in this Order to be calculated on the basis of a number of days that is other than the number in a calendar year, the yearly rate to which such interest or fee rate is equivalent is equal to such interest or fee rate multiplied by the actual number of days in the year in which the relevant interest or fee payment accrues and divided by the number of days used as the basis for such calculation.

(f)     No Criminal Rate of Interest.  If any provision of this Order would oblige a Canadian LP DIP Obligor to make any payment of interest or other amount payable to any LP DIP Lender in an amount or calculated at a rate which would be prohibited by any applicable law or would result in a receipt by that LP DIP Lender of "interest" at a "criminal rate" (as such terms are construed under the *Criminal Code* (Canada)), then, notwithstanding such provision, such amount or rate shall be deemed to have been adjusted with retroactive effect to the maximum amount or rate of interest, as the case may be, as would not be so prohibited by applicable law or so result in a receipt by that LP DIP Lender of "interest" at a "criminal rate," such adjustment to be effected, to the extent necessary (but only to the extent necessary), as follows:

   i.     first, by reducing the amount or rate of interest required to be paid to the affected LP DIP Lender; and

   ii.     thereafter, by reducing any fees, commissions, costs, expenses, premiums and other amounts required to be paid to the affected LP DIP Lender which would constitute interest for purposes of section 347 of the *Criminal Code* (Canada).

**3.**  Final Maturity Date.  Following the Final Maturity Date, if the LP DIP Obligations have not been indefeasibly paid in full in cash, the full principal amount of the LP DIP Loans, together with accrued interest thereon and any unpaid accrued fees and all other LP DIP Obligations of LP DIP Obligors accrued hereunder and under any other LP DIP Credit Document, shall become forthwith due and payable, without presentment, demand, protest, or any other notice of any kind, all of which are hereby expressly waived by the LP DIP Obligors, anything contained herein or in any other LP DIP Credit Document to the contrary notwithstanding.  In addition, the automatic stay provided in section 362 of the Bankruptcy Code in connection with the LP DIP Facility shall be deemed automatically vacated without further action or order of the Court, and the LP DIP Lenders, shall be entitled, in their sole discretion, to enforce and exercise all of their respective rights and remedies under this Order and the other LP DIP Credit Documents (which, for the avoidance of doubt, shall be consistent with and incorporate, *mutatis mutandis* to make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents).

**4.** <u>Application of Proceeds</u>.

The proceeds received by the LP DIP Lenders in respect of any sale of, collection from, or other realization upon all or any part of the LP DIP Collateral pursuant to the exercise by such LP DIP Lenders of their remedies in accordance with this Order shall be applied, in full or in part, promptly by such LP DIP Lenders as follows:

(a)     First, to the payment of that portion of the LP DIP Obligations constituting fees, indemnities, costs, expenses (other than principal and interest but including the fees, costs, and disbursements of counsel) payable to the LP DIP Lenders under this Order (including the LP DIP Obligor Guaranty), ratably among them in proportion to the amounts described in this clause (a) payable to them;

(b)     Second, without duplication of amounts applied pursuant to clause (a) above, to the indefeasible payment in full in cash of that portion of the LP DIP Obligations constituting accrued and unpaid interest (excluding, for the avoidance of doubt, any PIK Interest) on the LP DIP Loans,, ratably among the LP DIP Lenders in proportion to the amounts described in this clause (b) payable to them;

(c)     Third, to the indefeasible payment in full in cash of that portion of the LP DIP Obligations constituting unpaid principal of the LP DIP Loans, ratably among the LP DIP Lenders in proportion to the amounts described in this clause (c) payable to them;

(d)     Fourth, to the indefeasible payment in full in cash of all other LP DIP Obligations that are due and payable to the LP DIP Lenders, ratably based upon the respective aggregate amounts of all such LP DIP Obligations owing to the LP DIP Lenders on such date; and

(e)     Fifth, the balance, if any, after all of the LP DIP Obligations then due and payable have been indefeasibly paid in full in cash, to the person lawfully entitled thereto (including the applicable LP DIP Obligor or its successors or assigns) or as a court of competent jurisdiction may direct.

In the event that any such proceeds are insufficient to pay in full the items described in clauses (a) through (d) of this Section 5, the LP DIP Obligors shall remain liable, jointly and severally, for any deficiency.

**5.** <u>Amendments</u>.  The Annexes to this Order and any other LP DIP Credit Documents (including this Order) may not be amended, modified, supplemented, altered, or waived without approval of the Court.

**6.** <u>Assignments</u>.  No LP DIP Lender may assign or otherwise transfer any of its rights or obligations hereunder (including, without limitation, by granting participations in LP DIP Loans). Any attempted assignment or participation in violation of the preceding sentence shall be null and void.  [Notwithstanding the foregoing, any LP DIP Lender may at any time, without the consent of, or notice to, LP DIP Borrower or any other LP DIP Lender, sell participations to any person (other than a natural person, the LP DIP Borrower or any of its Affiliates, or any Disqualified Company or an Affiliate thereof that is not a

financial institution, private equity firm, bona fide debt fund, or hedge fund) (each, a "Participant") in all or a portion of such LP DIP Lender's rights and/or obligations under this Order (including all or a portion of the LP DIP Loans owing to it); provided, that (a) such LP DIP Lender's obligations under this Order shall remain unchanged, (b) such LP DIP Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, and (c) the LP DIP Borrower and the other LP DIP Lenders shall continue to deal solely and directly with such LP DIP Lender in connection with such LP DIP Lender's rights and obligations under this Order. Any agreement or instrument pursuant to which a DIP LP Lender sells such a participation shall provide that the relevant participant shall not be permitted to sell sub-participations to any natural person, the LP DIP Borrower or any of its Affiliates or any Disqualified Company or an Affiliate thereof that is not a financial institution, private equity firm, bona fide debt fund, or hedge fund.]

7. <u>Integration</u>.

This Order, the other LP DIP Credit Documents, and the Amended Final Cash Collateral Order constitute the entire contract among the LP DIP Obligors and the LP DIP Lenders relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

8. <u>Governing Law; Jurisdiction; Venue</u>.

(a)    <u>Governing Law</u>. This Order and each other LP DIP Credit Document, and the transactions contemplated hereby and thereby, and all disputes between the LP DIP Obligors and the LP DIP Lenders under or relating to this Order or any other LP DIP Credit Document or the facts or circumstances leading to its or their execution, whether in contract, tort or otherwise, shall be construed in accordance with, and governed by, the laws (including statutes of limitation) of the State of New York (and, to the extent applicable, the Bankruptcy Code).

(b)    <u>Submission to Jurisdiction</u>. Each LP DIP Obligor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Court, or to the extent that the Court does not have or does not exercise jurisdiction, the Supreme Court of the State of New York sitting in New York County and the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to any LP DIP Credit Document, or for recognition or enforcement of any judgment, and each of the LP DIP Obligors and LP DIP Lenders hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such Federal court. Each of the LP DIP Obligors and LP DIP Lenders agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Order or any other LP DIP Credit Document shall affect any right that any LP DIP Lender may otherwise have to bring any action or proceeding relating to this

Order or any other LP DIP Credit Document against any LP DIP Obligor or its properties in the courts of any jurisdiction.

(c)        Venue.  Subject to the jurisdiction of the Court, each LP DIP Obligor hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable requirements of law, any objection which it may now or hereafter have to the laying of venue of any suit, action, or proceeding arising out of or relating to this Order or any other LP DIP Credit Document in any court referred to in Section 9(b).  Each of the LP DIP Obligors and LP DIP Lenders hereby irrevocably waives, to the fullest extent permitted by applicable requirements of law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

9. Waiver of Jury Trial.

Each LP DIP Obligor hereby waives, to the fullest extent permitted by applicable requirements of law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Order, any other LP DIP Credit Document, or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each LP DIP Obligor and LP DIP Lender (a) certifies that no representative, agent, or attorney of any other such person has represented, expressly or otherwise, that such other person would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and all other such persons have been induced to become bound by this Order and the other LP DIP Credit Documents by, among other things, the mutual waivers and certifications in this Section.

10. Interest Rate Limitation.

Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any LP DIP Loan, together with all fees, charges, and other amounts which are treated as interest on such LP DIP Loan under applicable requirements of law (collectively, the "Charges"), shall exceed the maximum lawful rate (the "Maximum Rate") which may be contracted for, charged, taken, received, or reserved by the LP DIP Lender holding such LP DIP Loan in accordance with applicable requirements of law, the rate of interest payable in respect of such LP DIP Loan hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate, and, to the extent lawful, the interest and Charges that would have been payable in respect of such LP DIP Loan but were not payable as a result of the operation of this Section shall be cumulated and the interest and Charges payable to such LP DIP Lender in respect of other LP DIP Loans or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the weighted average of the rates on overnight federal funds transactions with members of the Federal Reserve System of the United States arranged by federal funds brokers to the date of repayment, shall have been received by such LP DIP Lender.

11. Currency Due.

If, for the purpose of obtaining a judgment in any court in any jurisdiction, it is necessary to convert a sum due under this Order or any other LP DIP Credit Document in on currency into another currency, then such amount shall be converted using the rate of exchange in effect on the

Business Day immediately preceding that on which final judgment is given.  The obligation of the LP DIP Borrower in respect of any amount due from the LP DIP Lenders under this Order or any other LP DIP Credit Document shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than that in which such amount is denominated in accordance with the applicable provisions of this Order (the "Order Currency"), be discharged only to the extent that on the Business Day following receipt by the LP DIP Lenders of any amount adjudged to be so due in the Judgment Currency, the LP DIP Lenders may purchase the Order Currency with the Judgment Currency.  If the amount of the Order Currency so purchased is less than the amount originally due to the LP DIP Lenders from the LP DIP Borrower on the Order Currency, the LP DIP Borrower agrees, as a separate obligation and notwithstanding any such judgment, to indemnify the LP DIP Lenders against such deficiency.  For this purpose "rate of exchange" means the rate published by the Wall Street Journal on the date of such conversion or, if no such rate is published in the Wall Street Journal on such day as the Wall Street ceases to publish such rate for any reason, then the "rate of exchange" shall mean the rate quoted by the Reuters World Company Page at 11:00 a.m. (New York time) on such day (or, in the event such rate does not appear on any Reuters World Currency Page on such day, by reference to such other publicly available service for displaying exchange rates as may be agreed upon by the LP DIP Borrower and the LP DIP Lenders, or, in the absence of such agreement, by reference to such other publicly available service for displaying exchange rates as may be determined by the LP DIP Lenders), the rate published by Bloomberg foreign exchange and world currencies page on the date of such conversion.

**12.** Additional Defined Terms.

"Business Day" shall mean any day other than a Saturday, Sunday, or other day on which banks in New York City are authorized or required by law to close.

 "Notes" shall mean any promissory note(s) evidencing the LP DIP Loans in the form set forth in Annex C hereto.

"Prepetition LP Collateral" shall mean (a) substantially all of the assets of LightSquared LP and the Prepetition LP Subsidiary Guarantors, (b) the equity interests of LightSquared LP and the Prepetition LP Parent Guarantors (except LightSquared Inc.), (c) certain equity interests owned by the Pledgors (as defined in the applicable Prepetition LP Security Agreement (as defined herein)), (d) the Intercompany Notes (as defined in the Prepetition LP Security Agreements) and (e) the rights of LightSquared Inc. under and arising out of the Inmarsat Cooperation Agreement, by and between LightSquared LP, SkyTerra (Canada) Inc., LightSquared Inc., and Inmarsat Global Limited.  For the avoidance of doubt, the Prepetition LP Collateral includes any proceeds, substitutions or replacements of any of the forgoing (unless such proceeds, substitutions or replacements would constitute Excluded Property (as defined in Prepetition LP Credit Documents)).  The Prepetition LP Collateral does not include the following: (a) any permit or license issued by a Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security interest in such permit, license, or other agreement; (b) property subject to any Purchase Money Obligation, Vendor Financing Indebtedness, or Capital Lease Obligations (in each case, as such term is defined in the Prepetition LP Credit Agreement) if the contract or other agreement in which such lien is granted validly prohibits the creation of

any other lien on such property; (c) the SkyTerra-2 satellite, while title remains with BSSI, and those ground segment assets related to the SkyTerra-2 satellite, while title remains with BSSI; (d) any intent-to-use trademark application to the extent and for so long as a security interest therein would result in the loss by the pledgor thereof of any material rights therein; (e) certain deposit and securities accounts securing currency hedging or credit card vendor programs or letters of credit provided to vendors in the ordinary course of business; (f) equity interests in (i) excess of 66% in non-U. S. subsidiaries (other than the Canadian Subsidiaries (as defined in the Prepetition LP Credit Agreement)) held by a US subsidiary, (ii) LightSquared Network LLC, and (iii) any joint venture or similar entity to the extent and for so long as the terms of such investment restrict such security interest; and (g) any consumer goods subject to the Canadian Security Agreement (as defined in the Prepetition LP Credit Agreement).

"Relevant Percentage" shall mean, as to any LP DIP Lender, the percentage set forth opposite such LP DIP Lender's name in the table set forth in Schedule I to this Annex A.

## SCHEDULE I TO ANNEX A

LP DIP Loan Allocation Schedule

| Name of LP DIP Lender: | Amount: | Relevant Percentage: |
| --- | --- | --- |
| SP Special Opportunities LLC | $17,505,590 | 53.0% |
| Capital Research and Management Company | $6,866,469 | 20.8% |
| Fortress Credit Corp., on behalf of its affiliates' managed funds and/or accounts | $3,346,042 | 10.1% |
| Cyrus Capital Partners, L.P. | $2,788,548 | 8.5% |
| Fir Tree Capital Opportunity Master Fund, L.P. | $787,865 | 2.4% |
| SOLA LTD | $575,889 | 1.7% |
| ULTRA MASTER LTD | $133,726 | 0.4% |
| Solus Senior High Income Fund LP | $71,039 | 0.2% |
| Intermarket Corporation | $406,500 | 1.2% |
| Aurelius Capital Master, Ltd. | $267,094 | 0.8% |
| ACP Master, Ltd. | $185,139 | 0.6% |
| Aurelius Convergence Master, Ltd. | $66,099 | 0.2% |
| **Total** | **$33,000,000** | **100.0%** |

## **ANNEX B**

## LP DIP BUDGET

# LightSquared LP Group DIP Budget 1Q 2014 Financial Cash Flow Forecast

Dollars in thousands

| | Quarter | 1Q14 | | |
| | Month | Jan-14 | Feb-14 | Mar-14 |
|---|---|---|---|---|
| | Beginning Cash Balance | 13,490 | 311 | (6,993) |
| | **Sources** | | | |
| | Satellite Revenue | 1,233 | 1,343 | 1,259 |
| | Terrestrial Revenue | - | - | - |
| | Interest Income | 2 | 0 | - |
| | Equity Financing | - | - | - |
| | Debt Financing | - | - | - |
| | Financing Fees | - | - | - |
| | Other | - | - | - |
| | **Total Sources** | **1,235** | **1,343** | **1,259** |
| Uses (OPEX) | In-Orbit / Launch Insurance | - | - | - |
| | ISAT Coop Agmt | - | - | 5,000 |
| | L-Band network infrastructure | 12 | 12 | 12 |
| | ERP | 22 | 88 | 22 |
| | Spectrum Management | - | - | - |
| | Staffing Related (entire company) | 2,137 | 5,777 | 1,766 |
| | Legal / Regulatory / Lobbying / International | 1,248 | 1,508 | 1,015 |
| | Facilities/Telecom | 658 | 658 | 658 |
| | G&A | 336 | 666 | 4,706 |
| | Travel Expenses (entire company) | 50 | 50 | 50 |
| | Other Items | 1,330 | 948 | 1,076 |
| | **Subtotal - USES (OPEX)** | **5,792** | **9,706** | **14,304** |
| Uses (CAPEX) | Boeing Payments | - | - | 2,025 |
| | Qualcomm | - | - | - |
| | Alcatel Lucent S-BTS | - | - | - |
| | Current Network Maintenance/Capex | - | 150 | - |
| | BandRich | - | - | - |
| | **Subtotal - USES (CAPEX)** | **-** | **150** | **2,025** |
| Debt Service | Cash Interest | - | - | - |
| Restructuring Related | Restructuring Prof exclud W&C / Blackstone | 2,372 | 4,000 | 2,104 |
| | LP Adequate Protection Payments | 6,250 | 6,250 | 6,250 |
| | **Total Uses** | **14,414** | **20,106** | **24,683** |
| | **LP Group Ending Cash Balance** | **311** | **-** | **-** |
| | TMI Beginning Cash Balance | 11,459 | 11,459 | - |
| | Use of TMI Cash | - | (11,459) | - |
| | **TMI Ending Cash Balance** | **11,459** | **-** | **-** |
| | **LP Group Ending Cash Balance including Cash at TMI** | **11,770** | **(6,993)** | **(30,417)** |



## ANNEX C

### FORM OF TERM NOTE

$_____                                                    New York, New York
                                                              _____ __, 2014


        FOR VALUE RECEIVED, **LIGHTSQUARED LP**, a Delaware limited partnership, a debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code (the "LP DIP Borrower"), hereby promises to pay to [_____] [or its registered assigns] (the "LP DIP Lender"), in lawful money of the United States of America in immediately available funds the principal sum of _____ DOLLARS ($_____), as such amount may be increased by the addition of interest that has been paid in kind in accordance with the Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay [Docket No. __] (the "LP DIP Order")[1] or, if less, the unpaid principal amount of all LP DIP Loans made by the LP DIP Lender under the LP DIP Facility in accordance with the LP DIP Order, payable at such times and in such amounts as provided for in the LP DIP Order.

        The LP DIP Borrower also promises to pay interest on the unpaid principal amount of each LP DIP Loan made by the LP DIP Lender in kind, from the date hereof until all principal, accrued and unpaid interest, and all other amounts have been indefeasibly paid in full in cash, at the rates and at the times specified in the LP DIP Order.

        This Note is one of the Notes referred to in Annex A to the LP DIP Order and is entitled to the benefits thereof and of the other LP DIP Credit Documents.  This Note is secured by the LP DIP Collateral and is entitled to the benefits of the guaranties from the LP DIP Guarantors.  This Note, and any LP DIP Loans and other obligations (including any accrued and unpaid interest) represented hereby, shall be repaid in full in cash upon the occurrence of the Final Maturity Date as set forth in the LP DIP Order.

        The LP DIP Borrower hereby waives presentment, demand, protest, or notice of any kind in connection with this Note.

        **THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND BE GOVERNED BY, THE LAW OF THE STATE OF NEW YORK AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.**

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the LP DIP Order.

**LIGHTSQUARED LP**


By:_____
    Name:
    Title:

<u>ANNEX D</u>

<u>FORM OF LP DIP OBLIGOR GUARANTY</u>

LP DIP OBLIGOR GUARANTY (as amended, modified, restated, and/or supplemented from time to time, this "<u>Guaranty</u>"), dated as of [_____ __], 201[_], made by and among each of the undersigned guarantors (each, an "<u>LP DIP Guarantor</u>" and, collectively, the "<u>LP DIP Guarantors</u>") in favor of the LP DIP Lenders.  Except as otherwise defined herein, all capitalized terms used herein and defined in the LP DIP Order (as defined below) shall be used herein as therein defined.

<u>W I T N E S S E T H</u> :

WHEREAS, pursuant to that certain Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay [Docket No. __] (including all annexures, exhibits, and schedules thereto, the "<u>LP DIP Order</u>"), the LP DIP Lenders shall make LP DIP Loans to the LP DIP Borrower on the terms and subject to the conditions set forth therein;

WHEREAS, each LP DIP Guarantor is a direct or indirect subsidiary of the LP DIP Borrower;

WHEREAS, the LP DIP Order requires that each LP DIP Guarantor shall have executed and delivered to the LP DIP Lenders this Guaranty; and

WHEREAS, each LP DIP Guarantor will obtain benefits from the incurrence of LP DIP Loans by the LP DIP Borrower and, accordingly, desires to execute this Guaranty in order to satisfy the requirements of the LP DIP Order and to induce the LP DIP Lenders to make LP DIP Loans to the LP DIP Borrower;

NOW, THEREFORE, in consideration of the foregoing and other benefits accruing to each LP DIP Guarantor, the receipt and sufficiency of which are hereby acknowledged, each LP DIP Guarantor hereby covenants and agrees with each other LP DIP Guarantor and the LP DIP Lenders as follows:

1.  <u>GUARANTY</u>.        The LP DIP Guarantors hereby jointly and severally guarantee, as a primary obligor and not as a surety, to each LP DIP Lender and their respective successors and assigns, the prompt payment in full when due (whether at stated maturity, by required prepayment, declaration, demand, acceleration, or otherwise) of all LP DIP Obligations.  The LP DIP Guarantors hereby jointly and severally agree that if LP DIP Borrower or any other LP DIP Guarantor(s) shall fail to pay in full in cash when due (whether at stated maturity, by acceleration, or otherwise) any of the LP DIP

Obligations, the LP DIP Guarantors will promptly pay the same in cash, without any demand or notice whatsoever, and that in the case of any extension of time of payment or renewal of any of the LP DIP Obligations, the same will be promptly paid in full in cash when due (whether at extended maturity, by acceleration, or otherwise) in accordance with the terms of such extension or renewal.OBLIGATIONS UNCONDITIONAL.  The obligations of the LP DIP Guarantors under Section 1 shall constitute a guaranty of payment and, to the fullest extent permitted by applicable requirements of law, are absolute, irrevocable, and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity, or enforceability of the LP DIP Obligations of the LP DIP Borrower under the LP DIP Order, the Notes, if any, or any other LP DIP Credit Documents, or any substitution, release, or exchange of any other guarantee of or security for any of the LP DIP Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or LP DIP Guarantor (except for payment in full).  Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not alter or impair the liability of the LP DIP Guarantors hereunder which shall remain absolute, irrevocable, and unconditional under any and all circumstances as described above:

(a)    at any time or from time to time, without notice to any LP DIP Guarantors, the time for any performance of, or compliance with, any of the LP DIP Obligations shall be extended, or such performance or compliance shall be waived;

(b)    any of the acts mentioned in any of the provisions of the LP DIP Order, the Notes, if any, or any other LP DIP Credit Document shall be done or omitted;

(c)    the maturity of any of the LP DIP Obligations shall be accelerated, or any of the LP DIP Obligations shall be amended in any respect, any right under the LP DIP Credit Documents or any other agreement or instrument referred to herein or therein shall be amended or waived in any respect, or any other guarantee of any of the LP DIP Obligations or any security therefor shall be released or exchanged in whole or in part or otherwise dealt with;

(d)    any lien or security interest granted to, or in favor of, any LP DIP Lender as security for any of the LP DIP Obligations shall fail to be perfected; or

(e)    the release of any other LP DIP Guarantor pursuant to the terms of the LP DIP Order.

The LP DIP Guarantors hereby, to the fullest extent permitted by applicable requirements of law, expressly waive diligence, presentment, demand of payment, protest, and all notices whatsoever, and any requirement that any LP DIP Lender exhaust any right, power, or remedy or proceed against the LP DIP Borrower under the LP DIP Order, the Notes, if any, or any other LP DIP Credit Document, or against any other person under any other guarantee of, or security for, any of the LP DIP Obligations.  The LP DIP Guarantors waive any and all notice of the creation, renewal, extension, waiver,

termination, or accrual of any of the LP DIP Obligations and notice of, or proof of reliance by any LP DIP Lender upon, this Guaranty or acceptance of this Guaranty, and the LP DIP Obligations, and any of them, shall conclusively be deemed to have been created, contracted, or incurred in reliance upon this Guaranty, and all dealings between LP DIP Borrower and the LP DIP Lenders shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guaranty.  This Guaranty shall be construed as a continuing, absolute, irrevocable, and unconditional guarantee of payment without regard to any right of offset with respect to the LP DIP Obligations at any time or from time to time held by LP DIP Lenders, and the obligations and liabilities of the LP DIP Guarantors hereunder shall not be conditioned or contingent upon the pursuit by the LP DIP Lenders or any other person at any time of any right or remedy against LP DIP Borrower or against any other person which may be or become liable in respect of all or any part of the LP DIP Obligations or against any collateral security or guarantee therefor or right of offset with respect thereto.  This Guaranty shall remain in full force and effect and be binding in accordance with, and to the extent of, its terms upon the LP DIP Guarantors and the successors and assigns thereof, and shall inure to the benefit of the LP DIP Lenders, and their respective successors and assigns, notwithstanding that from time to time during the term of the LP DIP Order there may be no LP DIP Obligations outstanding.

3.  <u>REINSTATEMENT</u>.  The obligations of the LP DIP Guarantors under this Guaranty shall be automatically reinstated if and to the extent that for any reason any payment by, or on behalf of, the LP DIP Borrower or other LP DIP Obligors in respect of the LP DIP Obligations is rescinded or must be otherwise restored by any holder of any of the LP DIP Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

4.  <u>SUBROGATION; SUBORDINATION</u>.  Each  LP  DIP  Guarantor hereby agrees that until the indefeasible payment and satisfaction in full in cash of all LP DIP Obligations, it shall waive any claim and shall not exercise any right or remedy, direct or indirect, arising by reason of any performance by it of its guarantee in <u>Section 1</u>, whether by subrogation or otherwise, against the LP DIP Borrower or any other LP DIP Obligor of any of the LP DIP Obligations or any security for any of the LP DIP Obligations.

5.  <u>REMEDIES</u>.  After the Final Maturity Date, the LP DIP Guarantors jointly and severally agree that, as between the LP DIP Guarantors and the LP DIP Lenders, the obligations of LP DIP Borrower under the LP DIP Order and the Notes, if any, may be declared to be forthwith due and payable as provided in the LP DIP Order for purposes of <u>Section 1</u>, notwithstanding any stay, injunction or other prohibition preventing such declaration (or such obligations from becoming automatically due and payable) as against LP DIP Borrower and that, in the event of such declaration (or such obligations being deemed to have become automatically due and payable), such obligations (whether or not due and payable by LP DIP Borrower) shall forthwith become due and payable by the LP DIP Guarantors for purposes of <u>Section 1</u>.

6.  INSTRUMENT FOR THE PAYMENT OF MONEY.  Each LP DIP Guarantor hereby acknowledges that this Guaranty constitutes an instrument for the payment of money, and consents and agrees that any LP DIP Lender, at its sole option, in the event of a dispute by such LP DIP Guarantor in the payment of any moneys due hereunder, shall have the right to bring a motion-action under New York CPLR Section 3213.

7.  CONTINUING GUARANTY. The Guaranty is a continuing guarantee of payment and shall apply to all LP DIP Obligations whenever arising.

8.  GENERAL LIMITATION ON LP DIP OBLIGATIONS.  In any action or proceeding involving any state corporate limited partnership or limited liability company law, or any applicable state, federal, or foreign bankruptcy, insolvency, reorganization, or other law affecting the rights of creditors generally, if the obligations of any LP DIP Guarantor under Section 1 would otherwise be held or determined to be void, voidable, invalid, or unenforceable, or subordinated to the claims of any other creditors, on account of the amount of its liability under Section 1, then, notwithstanding any other provision to the contrary, the amount of such liability shall, without any further action by such LP DIP Guarantor, any other LP DIP Obligor, or any other person, be automatically limited and reduced to the highest amount (after giving effect to the right of contribution established in Section 9) that is valid and enforceable and not subordinated to the claims of other creditors as determined in such action or proceeding.

9.  RIGHT OF CONTRIBUTION.  Each LP DIP Guarantor hereby agrees that to the extent that an LP DIP Guarantor shall have paid more than its proportionate share of any payment made hereunder, such LP DIP Guarantor shall be entitled to seek and receive contribution from and against any other LP DIP Guarantor hereunder which has not paid its proportionate share of such payment.  Each LP DIP Guarantor's right of contribution shall be subject to the terms and conditions of Section 4.  The provisions of this Section 9 shall in no respect limit the obligations and liabilities of any LP DIP Guarantor to the LP DIP Lenders, and each LP DIP Guarantor shall remain liable to the LP DIP Lenders for the full amount guaranteed by such LP DIP Guarantor hereunder.

10.  COUNTERPARTS.  This Guaranty may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.  A set of counterparts executed by all the parties hereto shall be lodged with the LP DIP Borrower and the LP DIP Lenders.

11.  HEADINGS DESCRIPTIVE.  The headings of the several Sections of this Guaranty are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Guaranty.

12.  GOVERNING LAW, ETC.  This Guaranty and the contents hereof are subject to the governing law, jurisdiction, venue, waiver of jury trial, currency indemnity, indemnification, and expense reimbursement provisions set forth in the LP

DIP Order (including <u>Annex A</u> thereto) and such provisions are hereby incorporated herein by reference, *mutatis mutandis*.

\* \* \*

IN WITNESS WHEREOF, each LP DIP Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

Address:

[_____]        [_____],
[_____]           as a LP DIP Guarantor
Tel:[_____]
Fax:[_____]        By:_____,
      Name:
      Title:


[Accepted and Agreed to:

[_____],
as LP DIP Lender


By:_____,
   Name:
   Title:

By:_____,
   Name:
   Title:]

[Signature Page – LightSquared – LP DIP Obligor Guaranty]

**Exhibit A-2**

**Second Revised Order Amending Cash Collateral Order**

DRAFT 2/3/2014

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGHTSQUARED INC., *et al.,* | ) | Case No. 12-12080 (SCC) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

### SECOND ORDER AMENDING AMENDED AGREED FINAL ORDER
### (A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL,
### (B) GRANTING ADEQUATE PROTECTION TO PREPETITION
### SECURED PARTIES, AND (C) MODIFYING AUTOMATIC STAY

Upon the initial motion (the "Initial Motion")[2] of LightSquared Inc. and certain of its

affiliates, as debtors and debtors in possession (collectively, "LightSquared" or the "Debtors") in

the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an interim order and a

final order, under sections 105, 361, 362, 363(c), and 507 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local

Rules"), *inter alia:*

(a)     authorizing the use of Cash Collateral (within the meaning of section 363(a) of
        the Bankruptcy Code) of the Prepetition Secured Parties and providing adequate
        protection to the Prepetition Secured Parties for any diminution in value of their

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax
or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc.
(0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra
Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited
Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC
(3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750),
LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd.
(7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC
Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston,
VA 20191.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Initial
Motion and the Amended Cash Collateral Order (as defined below), as applicable.

interests in the Prepetition Collateral, pursuant to sections 361, 362, and 363 of the Bankruptcy Code;

(b)      vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Initial Cash Collateral Order (as defined below), as limited pursuant thereto;

(c)      scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing to consider the relief requested in the Motion on an interim basis; and

(d)      scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis.

The Court having considered the Initial Motion, the *Declaration of Marc R. Montagner, Chief Financial Officer and Interim Co-Chief Operating Officer of LightSquared Inc., (A) in Support of First Day Pleadings and (B) Pursuant to Rule 1007-2 of Local Bankruptcy Rules for United States Bankruptcy Court for Southern District of New York* [Docket No. 3], the exhibits and schedules attached thereto, and the evidence submitted at the Final Hearing; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b) and (d) and 9014; and the Final Hearing to consider the relief requested in the Initial Motion having been held and concluded; and all objections, if any, to the relief requested in the Initial Motion having been withdrawn, resolved, or overruled by the Court; and the Court having entered the *Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 136] (the "Initial Cash Collateral Order") on June 13, 2012 upon consent of LightSquared, the Prepetition LP Agent, on behalf of the Prepetition LP Lenders, and the Ad Hoc LP Secured Group; and the Prepetition LP Agent, on behalf of the Prepetition LP Lenders, and the Ad Hoc LP Secured Group having agreed to permit LightSquared to amend the Initial Cash Collateral Order to continue to use the Prepetition LP Lenders' Cash Collateral through and including December 31, 2013 on

2

substantially similar terms as currently set forth in the Initial Cash Collateral Order in connection

with that certain *Order Pursuant to 11 U.S.C. § 1121(d) Further Extending LightSquared's*

*Exclusive Periods To File a Plan of Reorganization and Solicit Acceptances Thereof* [Docket

No. 522] (the "Second Exclusivity Extension Order"); and the Court having entered the *Amended*

*Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate*

*Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 544]

(as amended or modified, the "Amended Cash Collateral Order"); and the Prepetition LP Agent,

on behalf of the Prepetition LP Lenders, and the Ad Hoc LP Secured Group having agreed to

permit LightSquared to amend the Amended Cash Collateral Order to, among other things,

continue to use the Prepetition LP Lenders' Cash Collateral through and including January 31,

2014 on substantially similar terms as currently set forth in the Amended Cash Collateral Order;

and the Court having entered the *Order Amending Amended Agreed Final Order (A) Authorizing*

*Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured*

*Parties, and (C) Modifying Automatic Stay* [Docket No. 1118] (the "Cash Collateral Extension

Order"); and the Court having considered the Debtors' subsequent motion, submitted at the

direction, and with the support, of the special committee of the boards of directors for

LightSquared Inc. and LightSquared GP Inc., for an order (a) authorizing the LP DIP Obligors to

obtain superpriority senior secured priming postpetition financing, (b) granting superpriority

liens and providing superpriority administrative expense status, (c) granting adequate protection,

and (d) modifying automatic stay [Docket No. 1237] (the "LP DIP Facility Motion") seeking,

*inter alia*, entry of an order (this "Order") further amending the Amended Cash Collateral Order

to, among other things, permit the LP Debtors to continue to use the Prepetition LP Lenders'

Cash Collateral through and including April 15, 2014 on substantially similar terms as currently

3

set forth in the Amended Cash Collateral Order; and all objections, if any, to the relief requested

in the LP DIP Facility Motion having been withdrawn, resolved, or overruled by the Court; and

the Court having entered on a date even herewith that *Order (A) Authorizing LP DIP Obligors*

*To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting*

*Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting*

*Adequate Protection, and (D) Modifying Automatic Stay* [Docket No. __] (the "LP DIP Order");

and it appearing to the Court that entry of this Order is fair and reasonable and in the best

interests of the Debtors, their estates, and their stakeholders, and is essential for the continued

management of the Debtors' businesses; and after due deliberation and consideration, and for

good and sufficient cause appearing therefor; it is hereby **ORDERED** that:

1.      All of the terms of the Amended Cash Collateral Order shall remain in full

force and effect pursuant to the terms thereof, except to the extent modified or further modified

by this Order.

2.      The last sentence of paragraph F(ii) of the Amended Cash Collateral Order

is hereby amended in its entirety as follows: "Notwithstanding anything to the contrary in this

Amended Final Order, capital expenditure lines totaling $2.805 million may be used on an

aggregate basis at any time until April 15, 2014."

3.      Paragraph 4 of the Amended Cash Collateral Order is hereby amended as

follows:

(a)     The first sentence of paragraph 4 is amended by replacing "ECF" with "Docket"
        and by inserting "(the "Cash Management Order")" at the end of the sentence;

(b)     Paragraph 4 is amended by inserting the following after the sentence "The Ad
        Hoc Secured Group hereby consents to the repayment, to LightSquared Inc., of
        any costs and expenses paid on behalf of the LP Obligors' estates since the
        Petition Date.":  "To the extent the Debtors are required to give notice to any
        party as set forth in the Cash Management Order, such notice shall also be given

4

to Willkie Farr & Gallagher LLP and White & Case LLP (whom shall reasonably promptly forward such information to each of the LP DIP Lenders (with each LP DIP Lender being delivered such information at substantially the same time as all other LP DIP Lenders)).”

4.    Paragraph 7(d) of the Amended Cash Collateral Order is hereby amended by replacing the words “December 31, 2013” with the words “April 15, 2014.”

5.    Paragraph 14 of the Amended Cash Collateral Order is hereby amended as follows:

(a)    The first sentence of paragraph 14 is hereby amended by deleting the words “subparagraph (o)” and inserting the words “subparagraph (n)”;

(b)    The first sentence of section (f) of paragraph 14 is hereby amended by inserting “, the *Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay* [Docket No. __] (the “LP DIP Order”),” following the clause “Except as expressly allowed in this Amended Final Order”;

(c)    Section (h) of paragraph 14 is hereby amended by inserting “(i)” between the words “with” and “financing” and by inserting the following at the end of the sentence: “, or (ii) financing provided to the LP DIP Obligors (as defined in the LP DIP Order) in connection with the LP DIP Order”;

(d)    The first sentence of section (k) of paragraph 14 is hereby amended by inserting the following at the beginning of the sentence: “Other than the LP DIP Facility Motion (as defined in the LP DIP Order),”;

(e)    The first sentence of section (l) of paragraph 14 is hereby amended by inserting the following at the beginning of the sentence: “Other than the LP DIP Facility Motion,”; and

(f)    Section (n) of paragraph 14 is hereby amended by deleting the words “January 31, 2014.” and inserting the words “April 15, 2014.”[3]

---

[3]    The Ad Hoc LP Secured Group has requested that paragraph 7(c) of the Amended Cash Collateral Order be amended by deleting the following sentence therefrom: “Such amount shall be applied to the LP Professional Fees in any given month only so long as the Ad Hoc LP Secured Group is the largest (by dollar amount) group of Prepetition LP Lenders organized and jointly represented (as evidenced by a Rule 2019 statement) in the Chapter 11 Cases.”  SPSO objects to the deletion of such sentence.

6.      The Budget attached as <u>Schedule 1</u> to the Cash Collateral Extension Order is hereby replaced in its entirety by the Budget attached hereto as <u>Schedule 1</u>.  Notwithstanding anything to the contrary in the Amended Cash Collateral Order or the Cash Collateral Extension Order, failure to comply with the Budget shall not constitute an LP Termination Event.

7.      For the avoidance of doubt, as set forth in paragraph 7(c) of the Amended Cash Collateral Order, the LP Obligors shall pay the LP Adequate Protection Payment to the Prepetition LP Agent, for the benefit of the Prepetition LP Lenders, on the first Business Day of February 2014 and March 2014, but shall not be required do so in April 2014; <u>provided</u>, <u>however</u>, that payment of the April 2014 LP Adequate Protection Payment shall not be deemed waived in the event that the Amended Cash Collateral Order is further extended.

8.      Paragraph 3 of the Cash Collateral Extension Order shall have no further force and effect.

9.      Any objections to the entry of this Order, to the extent not withdrawn or resolved, are hereby overruled.

10.     This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately upon execution thereof.

11.     This Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated:  February __, 2014
New York, New York

_____

HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

---

SPSO has requested that paragraph 25 of the Amended Cash Collateral Order be amended by inserting the words "SP Special Opportunities, LLP," after "the Ad Hoc LP Secured Group,".  The Ad Hoc LP Secured Group objects to such insertion.

6

## **SCHEDULE 1**

### **BUDGET**

Dollars in thousands

| | Quarter | 1Q14 | | |
|---|---|---|---|---|
| | Month | Jan-14 | Feb-14 | Mar-14 |
| | Beginning Cash Balance | 13,490 | 311 | (6,993) |
| | **Sources** | | | |
| | Satellite Revenue | 1,233 | 1,343 | 1,259 |
| | Terrestrial Revenue | - | - | - |
| | Interest Income | 2 | 0 | - |
| | Equity Financing | - | - | - |
| | Debt Financing | - | - | - |
| | Financing Fees | - | - | - |
| | Other | - | - | - |
| | **Total Sources** | **1,235** | **1,343** | **1,259** |
| Uses (OPEX) | In-Orbit / Launch Insurance | - | - | - |
| | ISAT Coop Agmt | - | - | 5,000 |
| | L-Band network infrastructure | 12 | 12 | 12 |
| | ERP | 22 | 88 | 22 |
| | Spectrum Management | - | - | - |
| | Staffing Related (entire company) | 2,137 | 5,777 | 1,766 |
| | Legal / Regulatory / Lobbying / International | 1,248 | 1,508 | 1,015 |
| | Facilities/Telecom | 658 | 658 | 658 |
| | G&A | 336 | 666 | 4,706 |
| | Travel Expenses (entire company) | 50 | 50 | 50 |
| | Other Items | 1,330 | 948 | 1,076 |
| | **Subtotal - USES (OPEX)** | **5,792** | **9,706** | **14,304** |
| Uses (CAPEX) | Boeing Payments | - | - | 2,025 |
| | Qualcomm | - | - | - |
| | Alcatel Lucent S-BTS | - | - | - |
| | Current Network Maintenance/Capex | - | 150 | - |
| | BandRich | - | - | - |
| | **Subtotal - USES (CAPEX)** | **-** | **150** | **2,025** |
| Debt Service | Cash Interest | - | - | - |
| Restructuring Related | Restructuring Prof exclud W&C / Blackstone | 2,372 | 4,000 | 2,104 |
| | LP Adequate Protection Payments | 6,250 | 6,250 | 6,250 |
| | **Total Uses** | **14,414** | **20,106** | **24,683** |
| | **LP Group Ending Cash Balance** | **311** | **-** | **-** |
| | TMI Beginning Cash Balance | 11,459 | 11,459 | - |
| | Use of TMI Cash | - | (11,459) | - |
| | **TMI Ending Cash Balance** | **11,459** | **-** | **-** |
| | **LP Group Ending Cash Balance including Cash at TMI** | **11,770** | **(6,993)** | **(30,417)** |



## Exhibit B-1

**Blackline of Second Revised LP DIP Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTSQUARED INC., *et al.*,, | ) Case No. 12-12080 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

### FINAL ORDER (A) AUTHORIZING LP DIP OBLIGORS TO OBTAIN SUPERPRIORITY SENIOR SECURED PRIMING POSTPETITION FINANCING, (B) GRANTING SUPERPRIORITY LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (C) GRANTING ADEQUATE PROTECTION, AND (D) MODIFYING AUTOMATIC STAY

Upon the motion, dated January 17, 2014 [Docket No. 1237] (the "Motion"),[2] of

LightSquared Inc. and certain of its affiliates, as debtors and debtors in possession (collectively,

the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), for entry of an

order pursuant to sections 105, 361, 362, 363(c), 364(d), and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

[2]    Terms used but not otherwise defined herein shall have the meanings given them, as applicable, in (a) Annex A hereto and (b) the *Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 544] (as amended and modified by (i) the *Order Amending Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 1118] (the "First Order Amending First Cash Collateral Order")**, and** (ii) the *Order Further Amending Amended Agreed Final Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. __] (the "Second Order Amending First Cash Collateral Order"), and, as so amended, the "Final Cash Collateral Order").

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2

of the Local Rules for the United States Bankruptcy Court for the Southern District of New York

(the "Local Rules"), *inter alia*:

   (i)  authorizing LightSquared LP (the "LP DIP Borrower") to obtain, and each

existing and future, direct or indirect, subsidiary of the LP DIP Borrower (collectively,

the "LP DIP Guarantors" and, together with the LP DIP Borrower, the "LP DIP

Obligors") to unconditionally guarantee, jointly and severally, the LP DIP Borrower's

obligations in respect of senior secured, priming, superpriority postpetition financing (the

"LP DIP Facility" and, the loans made thereunder, the "LP DIP Loans") made available

by certain members of the ad hoc group of Prepetition LP Lenders (the "Ad Hoc LP

Secured Group"), including Capital Research and Management Company, Cyrus Capital

Partners, L.P., Fir Tree Capital Opportunity Master Fund, L.P., and Intermarket Corp., as

well as by Solus Alternative Asset Management LP, Fortress Credit Corp., on behalf of

its affiliates' managed funds and/or accounts**[,]** [and**]** fund entities managed by Aurelius

Capital Management, LP **[and** SP Special Opportunities, LLC]** (each of the foregoing, an

"LP DIP Lender" and, collectively, the "LP DIP Lenders"), pursuant to the terms and

conditions of this order (this "Order"), including (i) the terms and conditions set forth

in Annex A hereto, ~~and~~ (ii) the budget prepared by the Debtors and annexed hereto

as Annex B (as updated from time to time pursuant to, and in accordance with, the terms

of this Order, the "LP DIP Budget")**, and (iii) the other LP DIP Credit Documents (as

defined below)**;

   (ii)  authorizing and directing the LP DIP Obligors to execute and deliver, and

perform under, (A) the terms of the LP DIP Facility as set forth in this Order, (B) the

related Notes (as defined below), substantially in the form annexed hereto as <u>Annex C</u>, to be issued in favor of each LP DIP Lender by the LP DIP Borrower, each in the original principal amount equal to the LP DIP Loan made by such LP DIP Lender as set forth in the "LP DIP Loan Allocation Schedule" set forth on <u>Schedule 1</u> to <u>Annex A</u>, **and** (C) the related "LP DIP Obligor Guaranty," substantially in the form annexed hereto as <u>Annex D</u>, ~~and (D) any other related document, agreement, or instrument that the LP DIP Lenders may determine in their reasonable discretion must be executed and delivered by the LP DIP Obligors in connection with the entry of this Order to evidence the LP DIP Obligations, including, without limitation, the LP DIP Superpriority Claims (each as defined below), or to evidence, create, perfect, or enforce the LP DIP Liens~~ ( **(this Order, the Notes, and** each LP DIP **Obligor Guaranty,** collectiv~~ely with this~~ <u>Order</u>, th<u>e "LP DIP Credit Doc</u>uments"), and to perform such other acts as may be necessary or desirable in connection with the LP DIP Facility;

(iii)    granting to the LP DIP Lenders allowed superpriority administrative expense claims (the "<u>LP DIP Superpriority Claims</u>") with priority over all other allowed chapter 11 and chapter 7 administrative expense claims, including the expenses of any chapter 7 trustee or chapter 11 trustee and the adequate protection claims and liens granted to the Prepetition LP Secured Parties (as defined below) under the Final Cash Collateral Order, in each of the LP DIP Obligors' Chapter 11 Cases in respect of the LP DIP Obligations;

(iv)    granting to the LP DIP Lenders automatically perfected first priority priming security interests in, and liens on, all of the LP DIP Collateral (as defined below) in accordance with the terms set forth herein;

(v)    authorizing the LP DIP Obligors to pay the principal, interest (including, without limit, interest paid in kind), fees, expenses, and other liabilities and amounts payable, as set forth herein, including, without limitation, under each of the LP DIP Credit Documents, as they become due, all to the extent provided by, and in accordance with, the terms of this Order and the LP DIP Credit Documents, as applicable;

(vi)    reaffirming and confirming the adequate protection to the Prepetition LP Secured Parties for any Diminution in Value of their respective interests in the Prepetition LP Collateral (as defined below) through April 15, 2014 as provided in the Final Cash Collateral Order;

(vii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the LP DIP Facility and this Order.

The Court (as defined below) having considered the Motion, the terms of the LP DIP Facility, the Second Order Amending First Cash Collateral Order, and the evidence submitted at the hearing held before this Court on ~~January 31~~**February 4**, 2014 (the "Hearing"), and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules, due and proper notice of the Motion and the Hearing having been given; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, and their estates and essential for the continued maintenance and preservation of the Debtors' assets and property; and~~, subject to the terms hereof, the Court having determined that there is adequate protection of the liens and interests of the Prepetition LP Secured Parties; and~~ all objections, if any, to the entry of this Order having been withdrawn,

resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.  On May 14, 2012 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

B.    **Debtors in Possession**.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Chapter 11 Cases and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**.  As of the date hereof, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed a statutory committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

E.    **Notice**.  Notice of the Hearing and the relief requested in the Motion has been provided by the Debtors, by telecopy, email, overnight courier and/or hand delivery, to (a) the U.S. Trustee, (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), (c) counsel to the agents under the Debtors' prepetition credit facilities, (d) counsel to U.S. Bank National Association and MAST Capital Management, LLC, (e) counsel to Harbinger Capital Partners, LLC, (f) the Internal

5

Revenue Service, (g) the United States Attorney for the Southern District of New York, (h) the Federal Communications Commission, (i) Industry Canada, and (j) all parties having filed a request for notice under Bankruptcy Rule 2002.  Under the circumstances, such notice of the Hearing and the relief requested in the Motion constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and the Local Rules.

F.     **Amended Final Cash Collateral Order**.  On February 19, 2013, the Court entered the Amended Final Cash Collateral Order, and, on December 20, 2013, the Court entered the First Order Amending First Cash Collateral Order, which together provide for, among other things, the Debtors' continued use of the Prepetition LP Collateral, including Cash Collateral, subject to the terms contained therein, through January 31, 2014.  Substantially simultaneously with entry of this Order, and as a prerequisite to the effectiveness of this Order, the Court will enter the **Second** Order Amending Final Cash Collateral Order, which, among other things, amends the Amended Final Cash Collateral Order by (i) permitting the LP Debtors[3] to continue to use the Prepetition LP Collateral, including Cash Collateral, through and including April 15, 2014, (ii) permitting the LP Debtors to continue to make the Adequate Protection Payments **on the terms set forth herein**, (iii) allowing entry of this Order and approval of the LP DIP Facility, and

(iv) preserving for the benefit of the Prepetition LP Secured Parties the LP Adequate Protection Liens and the LP Section 507(b) Claims.

---

[3]     "LP Debtors" means, collectively, LightSquared LP, ATC Technologies, LLC, LightSquared Corp., LightSquared Finance Co., LightSquared Network LLC, LightSquared Inc. of Virginia, LightSquared Subsidiary LLC, SkyTerra Holdings (Canada) Inc., SkyTerra (Canada) Inc., Lightsquared Bermuda Ltd., LightSquared Investors Holdings Inc., TMI Communications Delaware, Limited Partnership, and LightSquared GP Inc.

G.    **Immediate Need for Postpetition Financing**.    The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).    Good cause has been shown for entry of this Order.    Since the Petition Date, the Debtors have been funding their businesses and the Chapter 11 Cases through the use of, among other things, the Prepetition LP Collateral, including Cash Collateral.    The Prepetition LP Lenders' Cash Collateral is largely depleted.    In the absence of the availability of the LP DIP Facility in accordance with the terms hereof, serious and irreparable harm to the LP Debtors and their estates and creditors would occur.    Further, any remaining possibility for confirmation of a chapter 11 plan would be at severe risk in the absence of the availability of funds in accordance with the terms of this Order.

H.    **No Credit Available on More Favorable Terms**.    The Debtors have been unable to obtain, on more favorable terms and conditions than those provided in this Order, (a) adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien.    The Debtors are unable to obtain credit for borrowed money without granting the LP DIP Liens and the LP DIP Superpriority Claim to (or for the benefit of) the LP DIP Lenders.

I.    **Use of Proceeds of LP DIP Facility, LP DIP Collateral**.    All proceeds of the LP DIP Facility and the LP DIP Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon (net of any amounts used to pay interest, fees, costs, expenses, and other liabilities payable under this Order or the Final Cash Collateral Order), shall be used and/or applied for the general corporate and working capital purposes of the LP Debtors in

7

accordance with this Order for the types of expenditures set forth in the LP DIP Budget and for no other purpose, and to provide the LP Debtors with sufficient time and liquidity to confirm a chapter 11 plan of reorganization, all in accordance with the terms and conditions of this Order.

J.    **Extension of Financing**.  The LP DIP Lenders have indicated a willingness to provide financing to the LP DIP Obligors in accordance with the terms of this Order and the other LP DIP Credit Documents (as applicable), but only upon (i) the entry of this Order, including, without limitation, approval of the terms of the LP DIP Loans as set forth herein and findings by this Court that the LP DIP Facility is essential to the LP Debtors' estates, that the LP DIP Lenders are good faith financiers, and that their claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Order and the LP DIP Facility (including the LP DIP Superpriority Claim and the LP DIP Liens) will not be affected by any subsequent reversal, modification, vacatur, or amendment of, as the case may be, this Order, the Second Order Amending First Cash Collateral Order, or the Amended Final Cash Collateral Order, as provided in section 364(e) of the Bankruptcy Code, (ii) the entry of the Second Order Amending First Cash Collateral Order, (iii) the execution and delivery of the Notes and the LP DIP Obligor Guaranties by each applicable LP DIP Obligor, (iv) ~~the execution of any LP DIP Credit Documents, (v)~~ delivery of certificates, if any, evidencing equity ownership in the Additional LP Subsidiary Guarantors (as defined below), together with undated stock powers therefor, executed in blank, to the Prepetition LP Collateral Trustee, (~~vi~~**v**) the payment of **LP DIP Professional Fees** (as defined below) as and to the extent provided for herein, and (~~vii~~**vi**) entry of an order in form and substance acceptable to the LP DIP Lenders by the Canadian Court in connection with the Canadian Proceedings recognizing the entry of this Order and authorizing

8

such LP DIP Obligors to enter into the LP DIP Facility and perform its obligations thereunder (the "Canadian Recognition Order").

K.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The terms and conditions of the LP DIP Facility, and the principal, interest (including, without limit, interest paid in kind), fees, expenses, and other liabilities paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)    The LP DIP Facility was negotiated in good faith and at arm's length among the Debtors and the LP DIP Lenders; and

(iii)    The proceeds of the LP DIP Loans shall be so extended in good faith and for valid business purposes and uses, as a consequence of which the LP DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

L.    **Other Findings and Conclusions Regarding LP DIP Lenders**.

(i)    Indemnity.    The LP DIP Lenders have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with, or related in any way to, negotiating, implementing, documenting, or obtaining requisite approvals of the LP DIP Facility, including in respect of the granting of the LP DIP Liens, any challenges or objections to the LP DIP Facility, and all documents related to and all transactions contemplated by the foregoing.    Accordingly, the LP DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto.    No exception or defense in contract, law, or equity exists as to any obligation (contractual or legal) to indemnify and/or hold harmless

any of the LP DIP Lenders, and any such defenses are hereby waived, except to the extent resulting from the applicable LP DIP Lender's gross negligence or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction.

(ii)    No Control.  None of the LP DIP Lenders are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the LP DIP Facility and/or the LP DIP Credit Documents.

(iii)    No Claims, Causes of Action.  As of the date hereof, there exist no claims or causes of action against any of the LP DIP Lenders with respect to, in connection with, related to, or arising from the LP DIP ~~Credit Documents~~**Facility** that may be asserted by the Debtors or any other person or entity.

(iv)    Release.  The LP DIP Obligors forever and irrevocably release, discharge, and acquit each of the LP DIP Lenders, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, in each case arising out of, in connection with, or relating to the LP DIP Facility and/or the LP DIP Credit Documents, including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses with respect to or relating to the LP DIP Obligations, LP DIP Liens, or LP DIP Facility, as applicable, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims

with respect to the validity, priority, perfection, or avoidability of the liens or secured claims of the LP DIP Lenders.

M. **Relief Essential; Best Interests**.  The relief requested in the Motion (and provided in this Order) is necessary, essential, and appropriate for the continued management and preservation of the Debtors' assets and property and to preserve any remaining possibility of confirming a chapter 11 plan.  It is in the best interest of the Debtors' estates that the LP DIP Obligors be allowed to enter into the LP DIP Facility and incur the LP DIP Obligations.

N. **Adequate Protection for Prepetition LP Secured Parties**.  The Prepetition LP Agent and the other Prepetition LP Secured Parties are entitled to adequate protection for the priming of their liens and the other rights granted to the LP DIP Lenders hereunder.  The adequate protection provided to the Prepetition LP Secured Parties in the Final Cash Collateral Order is sufficient adequate protection of the interests of the Prepetition LP Secured Parties, and is fair, reasonable, and sufficiently reflects that the Debtors have exercised prudent business judgment in agreeing to this Order and entering into the LP DIP Facility.  Nothing in this Order shall be construed as a consent by any Prepetition LP Secured Party that it would be adequately protected in the event of any alternative debtor in possession financing **or for any purposes in the Chapter 11 Cases other than entry of this Order**.

NOW, THEREFORE, on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Hearing, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Order.  Any objections to the Motion, to the extent not withdrawn, waived, or otherwise resolved, are hereby denied and overruled.

2.    **LP DIP Facility**.

(a)    **LP DIP Obligations; Availability and ~~Termination~~Final Maturity Date, etc.**  The LP DIP Obligors are hereby expressly and immediately authorized and directed to enter into the LP DIP Facility, to borrow the LP DIP Loans, and to incur and to perform the LP DIP Obligations in accordance with and subject to this Order and, as applicable, any other LP DIP Credit Documents, to execute and/or deliver any LP DIP Credit Documents and, as provided herein, all other instruments, certificates, agreements, and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the LP DIP Obligors under the LP DIP Facility, including the creation and perfection of the LP DIP Liens described and provided for herein.  The LP DIP Obligors are hereby authorized and directed to pay all principal of the LP DIP Loans, interest thereon (including, without limitation, accrued but unpaid interest and interest paid in kind), fees and expenses, indemnities, and other amounts described herein and, as applicable, in the other LP DIP Credit Documents, as such shall accrue and become due hereunder or thereunder, including, without limitation, the **LP** DIP Professional Fees, as and to the extent provided for herein (collectively, all loans, advances, extensions of credit, financial accommodations, interest, fees (including the **LP** DIP Professional Fees as and to the extent provided for herein), expenses, and other liabilities and obligations (including indemnities and similar obligations) in respect of the LP DIP Facility and the LP DIP Credit Documents, the "LP DIP Obligations").  Interest on the LP DIP Loans shall accrue at the rates

12

and be paid ~~on the dates~~ as set forth in <u>Annex A</u> hereto.  The LP DIP Credit Documents and all LP DIP Obligations are hereby, and shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the LP DIP Obligors, enforceable against the LP DIP Obligors, their estates, and any successors thereto in accordance with their terms.  The term of the LP DIP Facility shall commence on the date all of the conditions precedent set forth in subparagraph (c) of this paragraph 2 are satisfied and end on ~~the earliest to occur of (i)~~ April 15, 2014 **or, if sooner, the effective date of any plan of reorganization confirmed in the LP Debtors' Chapter 11 Cases** (the "<u>Final Maturity</u> ~~Date</u>"), (ii) if the Ad Hoc Secured Group Plan[4] is confirmed, the occurrence of the Funding Date (as defined therein), (iii) if the Debtors' Standalone Plan is confirmed, fifteen (15) days after the entry of an order confirming the Debtors' Standalone Plan, (iv) the occurrence of an Event of Default (as defined herein and provided in the LP DIP Credit Documents) (subject to this Order), and (v) this Order ceasing to be in full force and effect for any reason (any of the foregoing, the "Termination~~ <u>Date</u>"), subject to the terms and conditions set forth herein and in the other LP DIP Credit Documents, including the protections afforded a party acting in good faith under section 364(e) of the Bankruptcy Code.  On the ~~Termination~~**Final Maturity** Date, all LP DIP Obligations shall be paid in full and in cash in U.S. dollars, and to each LP DIP Lender in accordance with their Relevant Percentage in accordance with payment instructions provided by each LP DIP Lender.

    (b)  **Authorization To Borrow; Guarantees, etc**.  Subject to the terms and conditions of this Order and the other LP DIP Credit Documents (including the LP DIP Budget),

---

[4] ~~As referenced herein, (a) the "Ad Hoc Secured Group Plan" means *First Amended Joint Chapter 11 Plan for LightSquared LP, ATC Technologies, LLC, LightSquared Corp., LightSquared Inc. of Virginia, LightSquared Subsidiary LLC, LightSquared Finance Co., LightSquared Network LLC, Lightsquared Bermuda Ltd., SkyTerra Holdings (Canada) Inc., and SkyTerra (Canada) Inc. Proposed by the Ad Hoc Secured Group of Prepetition LP Lenders* (as amended, restated, supplemented, or otherwise modified from time to time) [Docket No. 970], and (b) the "Debtors' Standalone Plan" means the *Debtors' Revised Second Amended Joint Plan pursuant to Chapter 11 of Bankruptcy Code* (as amended, restated, supplemented, or otherwise modified from time to time) [Docket No. 1166].~~

the LP DIP Borrower is hereby authorized and directed to borrow the LP DIP Loans under the LP DIP Facility, and the LP DIP Borrower and such other LP DIP Obligors ~~set forth in the LP DIP Credit Documents~~ are authorized and are hereby deemed to, and shall, guarantee repayment of the LP DIP Loans and all other LP DIP Obligations, up to an aggregate principal amount of $33,000,000, <u>plus</u> all interest (including, without limitation, interest paid in kind), fees, expenses, and all other liabilities and obligations constituting LP DIP Obligations under the LP DIP Credit Agreement, in each case, without any right of notice, presentment, setoff, or waiver.

(c)    **Conditions Precedent**.    ~~The~~**No** LP DIP Lenders shall have ~~no~~**any** obligation to make ~~any~~**its** LP DIP Loan or any other financial accommodation hereunder or under the other LP DIP Credit Documents (and the LP DIP Borrower shall not make any request therefor) unless all of the following conditions precedent to making LP DIP Loan have been satisfied: (i) the entry of this Order, including, without limitation, approval of the terms of the LP DIP Loans as set forth herein, (ii) the entry of the Second Order Amending First Cash Collateral Order, (iii) the execution and delivery of the Notes and the LP DIP Obligor Guaranties by each applicable LP DIP Obligor, (iv) the execution of any LP DIP Credit Documents, (v) delivery of certificates, if any, evidencing equity ownership in the Additional LP Subsidiary Guarantors, together with undated stock powers therefor, executed in blank, to the Prepetition LP Collateral Trustee, (vi) the payment of the **LP** DIP Professional Fees, as and to the extent provided for herein, and (vii) the entry of the Canadian Recognition Order.

(d)    **LP DIP Collateral**.    As used herein, "<u>LP DIP Collateral</u>" shall mean all Prepetition LP Collateral (as defined in <u>Annex A</u>), including Cash Collateral of the Prepetition LP Secured Parties, of any LP DIP Obligor together with (i) all equity interests of any LP Debtor in LightSquared Finance Co., LightSquared Network LLC, and Lightsquared Bermuda Ltd.

14

(together, the "Additional LP DIP Subsidiary Guarantors"), and (ii) all now owned or hereafter acquired assets and property, whether real or personal, tangible or intangible, of each of the Additional LP DIP Subsidiary Guarantors; provided, however, that the LP DIP Collateral shall not include any permit or license issued by a Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security interest in such permit, license, or other agreement.

(e)     **LP DIP Liens**.  Effective immediately upon the entry of this Order, and subject only to the LP Carve-Out (as defined in the Final Cash Collateral Order and as set forth more fully in this Order), the LP DIP Lenders are hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected, continuing, enforceable, and non-avoidable (all such liens and security interests granted hereby, the "LP DIP Liens"):

(I)     pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable first priority liens on and security interests in all LP DIP Collateral that was not encumbered by valid, enforceable, perfected, and non-avoidable liens as of the Petition Date;

(II)     pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable liens on and security interests in (x) all LP DIP Collateral which is unencumbered by the Prepetition LP Liens but on which a third party, i.e., not the Prepetition LP Secured Parties (a "Third Party Lienholder"), had a pre-existing lien on the Petition Date and (y) all LP DIP Collateral encumbered by the Prepetition LP

Liens and LP Adequate Protection Liens on which a Third Party

Lienholder had a pre-existing lien on the Petition Date that was senior to

the Prepetition LP Liens, in each case junior only to any such liens and

security interests of Third Party Lienholders, but solely to the extent that

such liens and security interests of Third Party Lienholders were in each

case valid, enforceable, perfected, and non-avoidable as of the Petition

Date and were permitted by the terms of the Prepetition LP Credit

Documents (the "Senior Third Party Liens"); and

(III)    pursuant to section 364(d) of the Bankruptcy Code, valid,

enforceable, perfected, and non-avoidable liens on and security interests in

all Prepetition LP Collateral of the LP DIP Obligors, which liens and

security interests shall be senior to and prime the Prepetition LP Liens and

any LP Adequate Protection Liens.

(f)    **Other Provisions Relating to LP DIP Liens**.  The LP DIP Liens shall

secure all of the LP DIP Obligations.  The LP DIP Liens shall not, without the consent of each of

the LP DIP Lenders, be made subject to, or *pari passu* with, any other lien or security interest,

other than to the extent expressly provided herein and to the LP Carve-Out, by any court order

heretofore or hereafter entered in the Chapter 11 Cases of any of the LP DIP Obligors, and shall

be valid and enforceable against any trustee appointed in the Chapter 11 Cases of any of the LP

DIP Obligors, upon the conversion of any of the Chapter 11 Cases of any of the LP DIP Obligors

to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of

the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any

of the Chapter 11 Cases of any of the LP DIP Obligors.  The LP DIP Liens shall not be subject to

sections 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of

section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code.

(g)    **Superpriority Administrative Claim Status**.  The LP DIP Obligations

shall, pursuant to section 364(c)(1) of the Bankruptcy Code, at all times constitute an LP DIP

Superpriority Claim, and be payable from and have recourse to all LP DIP Collateral.  The LP

DIP Superpriority Claim shall be subject and subordinate only to the LP Carve-Out.  Other than

as**to the extent** expressly provided herein, including in paragraph 10 and with respect to the LP

Carve-Out, no costs or expenses of administration, including, without limitation, any LP Section

507(b) Claim granted under the Final Cash Collateral Order or hereunder or any professional

fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that

have been or may be incurred in these proceedings or in any Successor Cases, and no priority

claims are, or will be, senior to, prior to, or *pari passu* with the LP DIP Superpriority Claim or

any of the LP DIP Obligations, or with any other claims of the LP DIP Lenders arising

hereunder, under the other LP DIP Credit Documents, or otherwise in connection with the LP

DIP Facility.

3.    **Authorization and Approval To Use Proceeds of LP DIP Facility**.

(a)    Subject to the terms and conditions of this Order and the other LP DIP

Credit Documents, and to the adequate protection granted to or for the benefit of the Prepetition

LP Secured Parties as hereinafter set forth, each LP DIP Obligor is authorized to request and use

proceeds of the LP DIP Loans, in each case only for the purposes specifically set forth in this

Order and for the types of expenditures set forth in the LP DIP Budget, for (a) working capital

and other general corporate purposes and (b) permitted payment of costs of administration of the

LP Debtors' Chapter 11 Cases in order to provide the LP Debtors with sufficient time and

liquidity to confirm a plan of reorganization; provided, that variations in the amount of expenditures from the amounts set forth in the line items of the LP DIP Budget shall not constitute an Event of Default.

(b) The LP DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the LP DIP Credit Documents and the prior written consent of the Required LP DIP Lenders (as defined below).

**(b)**    (c) Notwithstanding anything herein to the contrary, subject only to the LP Debtors' rights under paragraph 16, the LP DIP Obligors' right to use proceeds of LP DIP Loans shall terminate on the Termination**Final Maturity** Date.

**(c)**    (d) Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

**(d)    Except as permitted by the this Order and** the LP DIP **Budget,** the LP DIP Obligors shall **not make any payment on any prepetition indebtedness or obligations other than those authorized by the Court in accordance with orders entered into, on, or prior to the date hereof.**

4.    **Adequate Protection for Prepetition Secured Parties**.  Pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LP Agent and the Prepetition LP Secured Parties in the Prepetition LP Collateral (including Cash Collateral) against any Diminution in Value, the Prepetition LP Agent, for the benefit of the Prepetition LP Secured Parties, shall continue to receive adequate protection in the form of the LP Adequate Protection Liens, the LP Section 507(b) Claims, and the LP Adequate

Protection Payments (including payment of the LP Professional Fees), in each case, pursuant to and as more fully set forth in the Final Cash Collateral Order.

     5.    **Monitoring of Collateral**.  The LP DIP Lenders, by their respective consultants and advisors, shall, consistent with past practices, be given reasonable access to the Debtors' books, records, assets, and properties for purposes of monitoring the LP Debtors' businesses and the value of the LP DIP Collateral, and shall be granted reasonable access to the Debtors' senior management.

     6.    **Financial and Other Reporting**.

On Wednesday (or in the event such Wednesday is not a business day, the first business day thereafter) of each week, the LP Debtors will provide **Willkie Farr & Gallagaher LLP,** Blackstone**,** and White & Case LLP (~~whom~~**who** shall reasonably promptly forward such information to each of the LP DIP Lenders **at substantially the same time**) with (a) cash balances as of the last day of the prior week and (b) a summary of material or key expenditures by category during the prior week.  On the tenth (10th) day of each month or the first business day thereafter, the LP Debtors will provide **Willkie Farr & Gallagaher LLP,** Blackstone**,** and White & Case LLP (~~whom~~**who** shall reasonably promptly forward such information to each of the LP DIP Lenders **at substantially the same time**) with (x) a reconciliation of revenues generated and expenditures made during the prior month and cumulatively during the Chapter 11 Cases, together with a comparison of such amounts to the amounts projected in the LP DIP Budget and (y) an update of the LP DIP Budget through April 2014 (for forecasting and informational purposes only).  In addition, the Debtors shall provide Blackstone and White & Case LLP with any and all other financial information made available to the Prepetition LP Agent or Ad Hoc LP Secured Group pursuant to the Final Cash Collateral Order.

7.    **LP DIP Lien Perfection**.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the LP DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the LP DIP Liens or to entitle the LP DIP Liens to the priorities granted herein. ~~Notwithstanding the foregoing, the LP DIP Lenders may, in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens, and other similar documents and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  The Debtors shall execute and deliver to the LP DIP Lenders all such financing statements, mortgages, security agreements, notices, and other documents as the LP DIP Lenders may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the LP DIP Liens.  The LP DIP Lenders, in their sole discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any LP DIP Obligor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.~~  To the extent that the Prepetition LP Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any LP DIP Credit Document, the LP DIP Lenders are also deemed to be secured parties under such account control agreements, loss payees under the Debtors' insurance policies, and the secured parties under each such LP DIP

Credit Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Order and the other LP DIP Credit Documents.  The Prepetition LP Collateral Trustee shall serve as the agent for the LP DIP Lenders for the purpose of perfecting their respective security interests and liens on all LP DIP Collateral that is of a type whereby perfection of a security interest therein may be accomplished only by possession or control by a secured party.

8.    **LP Carve-Out**.  Subject to the terms and conditions contained in this paragraph, upon the occurrence of the ~~Termination~~**Final Maturity** Date, the LP DIP Liens and the LP DIP Superpriority Claim, which have the relative lien and payment priorities as set forth herein, shall, in any event, be subject and subordinate to the LP Carve-Out, without duplication.  No portion of the LP Carve-Out and no proceeds of the LP DIP Facility or LP DIP Loans may be used for the payment of the fees and expenses of any person incurred ~~(a)~~ in challenging, or in relation to the challenge of, any of the ~~Prepetition LP Secured Parties' (other than SP Special Opportunities, LLC ("SPSO")) or the LP DIP Lenders'~~ liens or claims, including any ~~Prepetition LP Obligations (other than those owing to SPSO), LP DIP Obligations, Prepetition LP Liens (other than those securing the Prepetition LP Obligations owing to SPSO), Adequate Protection Liens (other than those securing the Prepetition LP Obligations owing to SPSO), or~~ LP DIP Liens~~, or the initiation or prosecution of any claim or action against any of the Prepetition LP Secured Parties (other than SPSO) or LP DIP Lenders, including, without limitation, any claim under chapter 5 of the Bankruptcy Code, or any state law or foreign law, in respect of the Prepetition LP Obligations or the LP DIP Facility, or in preventing the enforcement of the rights of the LP DIP Lenders under this Order or any other LP DIP Credit Document~~ (which, for the avoidance of

doubt, shall be consistent with and incorporate, *mutatis mutandis* to make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents), (b) in requesting authorization, or supporting any request for authorization, to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (i) from the LP DIP Lenders or (ii) if such financing is sufficient to indefeasibly pay and satisfy all LP DIP Obligations in full in cash and such financing is immediately so used; provided, however, that the rights of the Prepetition LP Secured Parties to object to such postpetition financing is fully preserved, or (c) in connection with any claims or causes of actions against the Releasees, including formal or informal discovery proceedings in anticipation thereof. For the avoidance of doubt, the LP DIP Liens and the LP DIP Superiority Claim shall not be subject to any other carve-out or charge unless specified in this Order.

9.    **Payment of Compensation**.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or shall limit or otherwise affect the right of the LP DIP Lenders and/or the Prepetition LP Secured Parties to object to the allowance and payment of any such fees and expenses. So long as no Event of Default exists that has not been waived in writing, the**The** LP Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code and in accordance with the LP DIP Budget (provided, that variations in the amount of expenditures from the amounts set forth in the line items of the LP DIP Budget shall not constitute an Event of Default), as the same may be due and payable and the same shall not reduce the LP Carve-Out.

10.    **Section 506(c) Claims**.  Except to the extent of the LP Carve-Out, no expenses of the administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the LP DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the LP DIP Lenders, and no such consent shall be implied from any other action or inaction by the LP DIP Lenders.

11.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders**. Without limiting, and subject to, any other provisions of this Order, there shall not be entered in the Chapter 11 Cases of any LP DIP Obligor, or in any Successor Case, any order which authorizes (a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the LP DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Order to or for the benefit of the LP DIP Lenders or the Prepetition LP Secured Parties, or; (b) the use of Cash Collateral for any purpose other than as set forth in the **Final Cash Collateral Order or the** LP DIP Budget; **(c) any LP DIP Obligor to incur, create, assume, guarantee, or permit to exist, directly or indirectly, any additional indebtedness, except (i) indebtedness incurred under this Order and the other LP DIP Credit Documents, (ii) indebtedness existing on the date of this Order and additional indebtedness accrued thereon in accordance with the terms of such indebtedness, or (iii)** indebtedness incurred in the ordinary course and not for borrowed money, which would not be senior in right of payment of security to the LP DIP Obligations; or **(d) any LP DIP Obligor to** create, incur, assume, or permit to exist, directly or indirectly, any lien on any property now

23

owned or hereafter acquired by it or on any income or revenues or rights in respect of any thereof, except **(i)** liens granted pursuant to this Order or the other LP DIP Credit Documents**, (ii) any lien in existence on the date of this Order, and (iii) liens incurred in the ordinary course and not for borrowed money, which would be junior to the LP DIP Liens.**

12.      **Proceeds of Subsequent Financing**.   Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all LP DIP Obligations, the LP DIP Obligors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt in violation of this Order or the other LP DIP Credit Documents, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the LP DIP Lenders for application in accordance with ~~paragraph 16 of~~ this Order.

13.      **Cash Management**.   Until the payment in full in cash of all LP DIP Obligations, the LP DIP Obligors shall maintain the cash management system as set forth in the *Final Order (A) Authorizing Debtors To (I) Continue Using Existing Cash Management Systems, Bank Accounts and Business Forms and (II) Continue Intercompany Transactions, (B) Providing Postpetition Intercompany Claims Administrative Expense Priority, (C) Authorizing Debtors' Banks To Honor All Related Payment Requests, and (D) Waiving Investment Guidelines of Section 345(b) of Bankruptcy Code* [Docket No. 115] (the "Cash Management Order"), or as otherwise required by the LP DIP Credit Documents.  To the extent the Debtors are required to give notice to any party as set forth in the Cash Management Order, such notice shall also be given to each of counsel to the LP DIP Lenders and the Ad Hoc LP Secured Group.  The LP DIP Lenders shall be deemed to have "control" over the LP DIP Obligors' cash management accounts for all purposes of perfection under the Uniform Commercial Code.   ~~Until the~~

occurrence of an Event of Default, all**All** amounts collected in the cash collection accounts of the LP DIP Obligors may be used **and applied** in accordance with this Order and for the expenditures set forth in the LP DIP Budget; after the occurrence and during the continuance of an Event of Default, subject only to the Debtors' rights under paragraph 15(a), all such amounts shall be applied in accordance with paragraph 16.**.**

14.    **Disposition of LP DIP Collateral**.   The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the LP DIP Collateral outside of the ordinary course of business unless approved by the Court, subject to the right of any party in interest to object.

15.    **Termination of Automatic Stay;** ~~Events of Default;~~ **Rights and Remedies** ~~Upon Event of Default~~**Following Final Maturity Date**.

(a)    The authorization of the LP DIP Obligors to use the proceeds of the LP DIP Facility under this Order shall terminate upon seven days' prior written notice by the LP DIP Lenders to the LP DIP Obligors of the occurrence of any of the "Events of Default" set forth in Annex A hereto; provided, however, that nothing herein shall preclude the LP DIP Lenders from seeking an order from the Court, upon written notice (electronically (including via facsimile) in a manner that generates a receipt for delivery, or via overnight mail) to the U.S. Trustee and counsel to the Debtors, terminating the LP DIP Obligors' authorization to use the proceeds of the LP DIP Facility under this Order on less than seven days' notice, or the Debtors' right to contest such relief.**on the Final Maturity Date.**

(b) Nothing included herein shall prejudice, impair, or otherwise affect the LP DIP Lenders' rights to seek (on behalf of the LP DIP Lenders, respectively) any other or supplemental relief in respect of the Debtors (including, as the case may be, other or additional

~~adequate protection) nor the LP DIP Lenders' rights to suspend or terminate the making of LP~~

~~DIP Loans.~~

        **(b)**    ~~(c)~~ Any automatic stay otherwise applicable to the LP DIP Lenders in connection with the LP DIP Facility is hereby modified so that, ~~upon and after the occurrence of~~**following** the Final Maturity Date, the LP DIP Lenders shall be immediately entitled to exercise all of their rights and remedies in respect of the LP DIP Collateral, in accordance with this Order and/or the other LP DIP Credit Documents, as applicable.

        **(c)**    ~~(d)~~ Following the occurrence of the Final Maturity Date, if the LP DIP Obligations have not been **indefeasibly** paid in full in cash, the LP DIP Lenders are authorized to exercise all remedies and proceed under or pursuant to the applicable LP DIP Credit Documents (which, for the avoidance of doubt, shall be consistent with and incorporate, *mutatis mutandis* to make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents) or under applicable law, including the Uniform Commercial Code.  All proceeds realized in connection with the exercise of the rights and remedies of the applicable LP DIP Lenders shall be turned over and applied in accordance with this Order.

        **(d)**    ~~(e)~~ The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the LP DIP Credit Documents as necessary to (i) permit the LP DIP Obligors to grant LP DIP Liens and to incur all LP DIP Obligations and all liabilities and obligations to the LP DIP Lenders hereunder and under the other LP DIP Credit Documents, as the case may be, and (ii) authorize the LP DIP Lenders to retain and apply payments and otherwise enforce their respective rights and remedies hereunder.

**(e)**    ~~(f)~~ Notwithstanding anything in this Order to the contrary, the Prepetition LP Agent shall not be permitted to exercise any rights or remedies for itself or the Prepetition LP Secured Parties unless and until the LP DIP Obligations are indefeasibly paid and satisfied in full in cash.

16.    **Applications of Proceeds of Collateral, Payments, and Collections**.

Subject to the LP Carve-Out, upon and after the occurrence of the ~~Termination~~**Final Maturity** Date, each LP DIP Obligor has agreed that proceeds of any LP DIP Collateral, any amounts held on account of the LP DIP Collateral, and all payments and collections received by the LP DIP Obligors with respect to all proceeds of LP DIP Collateral and all unexpended proceeds of the LP DIP Loans, shall be used and applied to permanently and indefeasibly repay and reduce all LP DIP Obligations then due and owing in accordance with the LP DIP Credit Documents, until paid and satisfied in full in cash.  No asset or property of the LP DIP Obligors may be sold, leased, or otherwise disposed of by any Debtor outside the ordinary course of business absent an order of the Court (and subject to the right to object of any party in interest), and in any event, all proceeds of such sale, lease, or disposition shall be indefeasibly applied to repay the LP DIP Obligations as provided herein.

17.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Order**.  Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the LP DIP Facility as approved by this Order, in the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the LP DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code,

and no such appeal, modification, amendment, or vacatur shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment, or vacatur, any claim granted to the LP DIP Lenders hereunder arising prior to the effective date of such modification, amendment, or vacatur of any LP DIP Liens or of the LP DIP Superpriority Claim granted to or for the benefit of the LP DIP Lenders shall be governed in all respects by the original provisions of this Order, and the LP DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits, including the LP DIP Liens and the LP DIP Superpriority Claim granted herein, with respect to any such claim.  Because the LP DIP Loans are made in reliance on this Order, the LP DIP Obligations incurred by the LP DIP Obligors or owed the LP DIP Lenders prior to the effective date of any stay, modification, or vacatur of this Order shall not, as a result of any subsequent order in the Chapter 11 Cases of any LP DIP Obligor or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the LP DIP Lenders under this Order.

(b)     **Expenses**.  The LP DIP Obligors shall pay all expenses incurred by the LP DIP Lenders (including, without limitation, the reasonable and documented fees and disbursements of their counsel, any other local or foreign counsel that they shall retain, and any internal or third party appraisers, consultants, financial, restructuring, or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding, and administration of the LP DIP Credit Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the LP DIP Credit Documents, (ii) the administration of the LP DIP Credit Documents, (iii) the Chapter 11 Cases or

28

any Successor Cases, or (iv) enforcement of any rights or remedies under this Order or the LP DIP Credit Documents, in each case whether or not the transactions contemplated hereby are fully consummated (collectively, the "DIP Professional Fees").[54] The LP DIP Lenders, and their advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted, if necessary, for privileged, confidential, or otherwise sensitive information) to the Office of the U.S. Trustee and counsel for the Debtors.  Within ten (10) days of presentment of and further statements, if no written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made, the LP DIP Obligors shall promptly pay in cash all such fees and expenses of the LP DIP Lenders and their advisors and professionals, subject to the limitations set forth in this Order.  Any objection to the payment of such fees or expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection.  To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to

---

[54] Nothing herein shall impact the payment of the LP Professional Fees (which, for the avoidance of doubt, shall include, without duplication, all of the **SPSO has requested the insertion of the following language, which is disputed** by the Ad Hoc **LP** Secured Group**: "The LP Debtors** shall pay all expenses incurred by the LP DIP Lenders (including, without limitation, the reasonable and documented fees and disbursements of their counsel, any other local or foreign counsel that they shall retain, and any internal or third-party appraisers, consultants, financial, restructuring, or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding, and administration of the LP DIP Credit Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the LP DIP Credit Documents **and all court-related fees incurred or sustained in connection with the prosecution** of the LP DIP Facility, (ii) the administration of the LP DIP Credit Documents, **or (iii)** enforcement of any rights or remedies under this Order or the LP DIP Credit Documents, in each case whether or not the transactions contemplated hereby are fully consummated (collectively, the "**LP** DIP Professional Fees"**)**, **which shall not exceed $200,000 in the aggregate**; provided, however, that**, to the extent** the LP DIP **Professional Fees exceed $200,000 in the aggregate, such excess amounts shall be paid as LP Professional Fees** under, and in accordance with, the Final Cash Collateral Order. Nothing herein shall impact the payment of the LP Professional Fees **under, and in accordance with,** the Final Cash Collateral Order**."**

the Court for a determination as to the reasonableness of the relevant disputed fees and expenses

set forth in the invoice.  This Court shall resolve any dispute as to the reasonableness of any fees

and expenses.  For the avoidance of doubt, and without limiting any of the foregoing or any other

provision of this Order, all fees and expenses are, upon entry of this Order and irrespective of

any subsequent order approving or denying the LP DIP Facility or any other financing pursuant

to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the

Bankruptcy Code and are deemed fully earned, indefeasibly paid, non-refundable, irrevocable,

and non-avoidable as of the date of this Order.

       (c)    **Binding Effect**.  The provisions of this Order shall be binding upon and

inure to the benefit of the LP DIP Lenders, the Debtors, and their respective successors and

assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of

the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter

11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

       (d)    **No Waiver**.  The failure of the LP DIP Lenders to seek relief or otherwise

exercise their rights and remedies under this Order or any other LP DIP Credit Documents or

under applicable law or otherwise, as applicable, shall not constitute a waiver of any of the LP

DIP Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the

entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses, or

remedies of the LP DIP Lenders under the Bankruptcy Code or under non-bankruptcy law

against any other person or entity in any court, including without limitation, the rights of the LP

DIP Lenders to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal

of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose,

subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) on behalf of the LP DIP Lenders.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party, or incidental beneficiary.

(f)    **No Marshaling**.  The LP DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the LP DIP Collateral.

(g)    **Section 552(b)**.  The LP DIP Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the LP DIP Lenders or the Prepetition LP Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition LP Collateral or the LP DIP Collateral.

(h)    **Credit Bid Rights.**  The LP DIP Lenders shall have the right to "credit bid" the LP DIP Obligations during any sale of any of the LP DIP Collateral or Prepetition LP Collateral of the LP DIP Obligors, as applicable, including, without limitation, in connection with sales occurring pursuant to Bankruptcy Code section 363 or included as part of any plan subject to confirmation under Bankruptcy Code section 1129~~, including, without limitation, the Ad Hoc Secured Group Plan~~.

~~(i) **Amendment**.  Subject to Section 6 of Annex A, the LP DIP Obligors, with the consent of the LP DIP Lenders holding at least 66 2/3%  of the outstanding principal amount of the LP DIP Obligations (the "Required LP DIP Lenders"), may amend, modify, supplement, or~~

31

~~waive any provision of the LP DIP Credit Documents without further notice to or approval of the Court, unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate) or fees charged in connection with the LP DIP Facility, (ii) increases or provides for further LP DIP Loans, or (iii) changes the Termination Date.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the LP DIP Obligors and the Required LP DIP Lenders and approved by the Court after notice to parties in interest.~~

**(i)      Amendment.  No provision of the** LP DIP **Credit Documents may be amended, modified, supplemented, altered, or waived without** approval of the Court.

(j)      **Priority of Terms**.  To the extent of any conflict between or among (i) the express terms or provisions of any of the Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the express terms and provisions of this Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" another order of this Court or agreement, the terms and provisions of this Order shall govern.

(k)      **Survival of Order**.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Chapter 11 Cases of any LP DIP Obligor, (ii) converting any of the Chapter 11 Cases of any LP DIP Obligor to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases of any LP DIP Obligor, (iv) withdrawing of the reference of any of the Chapter 11 Cases of any LP DIP Obligor from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases of any LP DIP Obligor in this Court.  The terms and provisions of this Order,

including the LP DIP Liens and LP DIP Superpriority Claim granted pursuant to this Order, and any protections granted to or for the benefit of the LP DIP Lenders, shall continue in full force and effect notwithstanding the entry of such order, and such LP DIP Liens and LP DIP Superpriority Claims shall maintain their priority as provided by this Order and the other LP DIP Credit Documents until all of the LP DIP Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

(l)    **Enforceability**.    This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m)    **No Waivers or Modification of Order**.    The Debtors irrevocably waive any right to seek any modification or extension of this Order ~~without the prior written consent of the LP DIP Lenders~~, and no such consent shall be implied by any other action, inaction, or acquiescence of the LP DIP Lenders. ~~This Order may not be modified to alter the relative lien priority of the LP DIP Liens, the Prepetition LP Liens, and the Adequate Protection Liens.~~

(n)    **Waiver of any Applicable Stay**.    Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Order.

(o)    **Retention of Jurisdiction**.    The Court has and will retain jurisdiction to enforce this Order according to its terms.

~~Dated: _____~~
**Dated: February __, 2014**
New York, New York

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

# ANNEX A

## LP DIP FACILITY TERMS AND CONDITIONS

This Annex A is the "Annex A" referenced in the Order to which it is attached and shall constitute, and form a part of, the Order.

**1.** Terms of Borrowing.

(a)    Subject to the terms and conditions of this Order, the LP DIP Lenders agree, severally and not jointly, to make LP DIP Loans to LP DIP Borrower upon the satisfaction of the conditions precedent set forth in paragraph 2(a) of this Order, in an aggregate principal amount not to exceed its Relevant Percentage of $33,000,000; provided, that ~~the failure of any LP DIP Lender to make its LP DIP Loan shall not in itself relieve any other LP DIP Lender of any obligation to lend hereunder (it being understood, however, that~~ no LP DIP Lender shall be responsible for the failure of any other LP DIP Lender to make any LP DIP Loan required to be made by such other LP DIP Lender).  ~~Amounts paid or prepaid in respect of LP DIP Loans may not be reborrowed.~~

(b)    Each LP DIP Lender shall make each LP DIP Loan to be made by it hereunder by wire transfer of immediately available funds to an account directed by LP DIP Borrower in writing.

(c)    The LP DIP Loans shall be prepayable at any time without make-whole or premium. Amounts paid or prepaid in respect of LP DIP Loans may not be reborrowed.

**2.** Interest on LP DIP Loans.

(a)    Subject to the provisions of Section 2(b) below, the LP DIP Loans shall bear interest at a rate *per annum* equal to 15.0%, payable in kind (the "PIK Interest"), by adding such accrued and unpaid interest to the unpaid principal amount of the LP DIP Loans on a monthly basis (whereupon from and after such date such additional amounts shall also accrue interest pursuant to this Section 2).  All such PIK Interest so added shall be treated as principal of the LP DIP Loans for all purposes of this Order.  The obligation of LP DIP Borrower to pay all such PIK Interest so added shall be automatically evidenced by this Order, and, if applicable, any applicable Notes.

(b)    Default Rate.  Notwithstanding the foregoing, ~~if there is an Event of Default~~**after the Final Maturity Date**, the LP DIP Obligations shall, to the extent permitted by applicable law, bear interest, after as well as before judgment, at a rate per annum equal to 2% *plus* the rate otherwise applicable to the LP DIP Loans as provided in Section 2(a).

(c)        Interest Payment Dates.  Accrued interest on each LP DIP Loan shall be payable ~~monthly in arrears~~**on the Final Maturity Date** for such LP DIP Loan; provided, that (i) interest accrued pursuant to Section 2(b) shall be payable on demand and (ii) in the event of any repayment or prepayment of any LP DIP Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment.

(d)        Interest Calculation.  All interest hereunder shall be computed on the basis of a year of 360 days and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

(e)        *Interest Act* (Canada).  For the purposes of the *Interest Act* (Canada) and disclosure thereunder, in any case in which an interest or fee rate is stated in this Order to be calculated on the basis of a number of days that is other than the number in a calendar year, the yearly rate to which such interest or fee rate is equivalent is equal to such interest or fee rate multiplied by the actual number of days in the year in which the relevant interest or fee payment accrues and divided by the number of days used as the basis for such calculation.

(f)        No Criminal Rate of Interest.  If any provision of this Order would oblige a Canadian LP DIP Obligor to make any payment of interest or other amount payable to any LP DIP Lender in an amount or calculated at a rate which would be prohibited by any applicable law or would result in a receipt by that LP DIP Lender of "interest" at a "criminal rate" (as such terms are construed under the *Criminal Code* (Canada)), then, notwithstanding such provision, such amount or rate shall be deemed to have been adjusted with retroactive effect to the maximum amount or rate of interest, as the case may be, as would not be so prohibited by applicable law or so result in a receipt by that LP DIP Lender of "interest" at a "criminal rate," such adjustment to be effected, to the extent necessary (but only to the extent necessary), as follows:

      i.        first, by reducing the amount or rate of interest required to be paid to the affected LP DIP Lender; and

      ii.        thereafter, by reducing any fees, commissions, costs, expenses, premiums and other amounts required to be paid to the affected LP DIP Lender which would constitute interest for purposes of section 347 of the *Criminal Code* (Canada).

~~**3.**~~ ~~Covenants.~~

~~LP DIP Borrower and each other LP DIP Obligor warrants, covenants, and agrees with each LP DIP Lender that, until the principal of and interest on each LP DIP Loan and all fees and all other expenses or amounts payable under any LP DIP Credit Document have been paid in full, unless the Required LP DIP Lenders shall otherwise consent in writing, it will not, nor will it cause or permit any subsidiaries to:~~
~~(a) incur, create, assume, guarantee, or permit to exist, directly or indirectly, any indebtedness, except:~~

i. indebtedness incurred under this Order and the other LP DIP Credit Documents;

ii. indebtedness outstanding on the Closing Date and additional indebtedness accrued thereon in accordance with the terms of such indebtedness; or

iii. indebtedness incurred in the ordinary course and not for borrowed money, which would not be senior in right of payment of security to the LP DIP Obligations; or

(b) create, incur, assume, or permit to exist, directly or indirectly, any lien on any property now owned or hereafter acquired by it or on any income or revenues or rights in respect of any thereof, except the following:

i. liens granted pursuant to this Order or the other LP DIP Credit Documents;

ii. any lien in existence on the Closing Date; and

iii. liens incurred in the ordinary course and not for borrowed money, which would be junior to the LP DIP Liens.

**4.** Events of Default.

Upon the occurrence, and during the continuance, of the following events (each, an "Event of Default"):

(a) If a default shall be made in the payment of (i) any principal (including any PIK Interest) of any LP DIP Loan or (ii) any other LP DIP Obligations, in each case, when due (whether at stated maturity, by acceleration, or otherwise);

(b) If default shall be made in the due observance or performance by any LP DIP Obligor of any covenant, condition, or agreement contained in this Order or in any other LP DIP Credit Document;

(c) If any of the Chapter 11 Cases of any of the LP DIP Obligors shall be dismissed (which dismissal does not require as a condition to such dismissal the payment in full in cash of all LP DIP Obligations) or converted to a case under chapter 7 of the Bankruptcy Code or the LP DIP Obligors shall file a motion or other pleading seeking the dismissal or conversion of the Chapter 11 Cases of any LP DIP Obligor under section 1112 of the Bankruptcy Code or otherwise without the consent of the LP DIP Lenders; a trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a responsible officer, or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed in the Chapter 11 Cases of any of the LP DIP Obligors; the board of directors of one or more of the LP DIP Obligors shall authorize a liquidation of any LP DIP Obligor's business; or an application shall be filed

by the LP DIP Obligors for the approval of any other superpriority administrative claim or expense (other than the LP Carve Out) in the Chapter 11 Cases of any of the LP DIP Obligors which is senior to the claims of the LP DIP Lenders against the LP DIP Obligors hereunder or under any of the other LP DIP Credit Document if it is not used to repay the LP DIP Obligations in full in cash;

(d) If the Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code (other than as provided in this Order) pertaining to the LP DIP Collateral or any Prepetition LP Collateral, including Cash Collateral of the Prepetition LP Secured Parties, to the holder or holders of any security interest to (i) permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtors or (ii) permit other actions that would have a Material Adverse Effect;

(e) If (i) an order of a court of competent jurisdiction shall be entered reversing, amending, supplementing, staying for a period of five (5) days or more, vacating, or otherwise amending, supplementing, or modifying this Order without the prior written consent of each LP DIP Lender, or any LP DIP Obligor shall apply for authority to do so, without the prior written consent of (x) the Required LP DIP Lenders, to the extent provided under paragraph 17(h) of this Order, (y) each affected LP DIP Lender or each LP DIP Lender, to the extent provided under Section 6 of this Annex A, or (z) in all other cases, each LP DIP Lender, (ii) an order with respect to the Chapter 11 Cases of any LP DIP Obligor shall be entered by the Court without the express prior written consent of the LP DIP Lenders to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to such LP DIP Obligor equal or superior to the priority of the LP DIP Lenders in respect of the LP DIP Obligations except as otherwise provided in this Order or the Canadian Recognition Order, (iii) an order of the Court shall be entered permitting the grant of a lien on the LP DIP Collateral (other than liens permitted by the LP DIP Credit Documents), (iv) this Order or the Canadian Recognition Order shall cease to create a valid and perfected first priority lien (subject to Senior Third Party Liens) on the LP DIP Collateral or otherwise cease to be valid and binding and in full force and effect, (v) any of the LP DIP Obligors shall fail to comply with any material provision (or any provision in such a way as is materially adverse to the interests of the LP DIP Lenders) of this Order, the Final Cash Collateral Order, or the Canadian Recognition Order, (vi) any LP DIP Obligor shall seek any modification of this Order, the Final Cash Collateral Order, or the Canadian Recognition Order, or assert in any pleading filed in any court that any material provision of this Order, the Final Cash Collateral Order, or the Canadian Recognition Order is not valid and binding for any reason, or otherwise modifying this Order, the Final Cash Collateral Order, or the Canadian Recognition Order in a manner adverse to the LP DIP Lenders, in each case without the prior written consent of the Required LP DIP Lenders, or (vii) if any LP DIP Obligor is enjoined, restrained, or in any way prevented by court order from continuing or conducting all or any material part of its business or affairs;

(f) If, except as permitted by this Order and the LP DIP Budget or as otherwise agreed to by the Required LP DIP Lenders, any LP DIP Obligor shall make (or shall have

made) any prepetition payment other than those authorized by the Court in accordance with orders entered into, on, or prior to the date hereof or other orders of the Court entered with the consent of (or non-objection by) the Required LP DIP Lenders;

(g) If the Court shall enter an order avoiding or requiring disgorgement by the LP DIP Lenders of any amounts received in respect of the LP DIP Obligations;

(h) If the Court shall enter an order or orders to sell, transfer, lease, exchange, alienate, or otherwise dispose of all or substantially all of the assets, properties, or equity interests of any LP DIP Obligor pursuant to section 363 of the Bankruptcy Code without the consent of the LP DIP Lenders unless such order or orders contemplate the repayment in full in cash of all LP DIP Obligations;

(i) If any of the LP DIP Obligors shall take any action in support of any matter set forth in the preceding clauses (b), (c), (d), (e), (f), or (g), or any other person shall do so and such application is not contested in good faith by the LP DIP Obligors;

(j) If an LP Termination Event shall have occurred as set forth in the Final Cash Collateral Order; or

(k) If the Canadian Court or any other court of competent jurisdiction in respect of the CCAA Proceedings shall make any order in respect of any of the LP DIP Obligors or any LP DIP Collateral situated in Canada, which would constitute an Event of Default if a similar order had been made by the Court, *mutatis mutandis*, under or in respect of the Chapter 11 Cases of any LP DIP Obligor, including, without limitation, pursuant to Sections 4(c), (d), (g), or (h) hereof;

then, the authorization of the LP DIP Obligors to use the proceeds of the LP DIP Facility under this Order shall terminate upon seven days' prior written notice by the LP DIP Lenders to the LP DIP Obligors of the occurrence of any of the "Events of Default" set forth in this Section 4; provided, however, that nothing herein shall preclude the LP DIP Lenders from seeking an order from the Court, upon written notice (electronically (including via facsimile) in a manner that generates a receipt for delivery, or via overnight mail) to the U.S. Trustee and counsel to the Debtors, terminating the LP DIP Obligors' authorization to use the proceeds of the LP DIP Facility under this Order on less than seven days' notice, or the Debtors' right to contest such relief.

**3.    Final Maturity Date.**    Following the Final Maturity Date, if the LP DIP Obligations have not been **indefeasibly** paid in full in cash, the Required LP DIP Lenders, without any action or approval of the Court (but subject to the terms and conditions of this Order), may declare the LP DIP Loans then outstanding to be forthwith due and payable in whole or in part, whereupon the**full** principal **amount** of the LP DIP Loans so declared to be due and payable, together with accrued interest thereon and any unpaid accrued fees and all other LP DIP Obligations of LP DIP Obligors accrued hereunder and under any other LP DIP Credit Document, shall become forthwith due and payable, without presentment, demand, protest, or any other notice of any kind, all of which are hereby expressly waived by the LP DIP Obligors, anything contained herein or in any other LP

DIP Credit Document to the contrary notwithstanding.  In addition, subject to paragraph 15 of this Order, the automatic stay provided in section 362 of the Bankruptcy Code in connection with the LP DIP Facility shall be deemed automatically vacated without further action or order of the Court, and the LP DIP Lenders, shall be entitled, in their sole discretion, to enforce and exercise all of their respective rights and remedies under this Order and the other LP DIP Credit Documents (which, for the avoidance of doubt, shall be consistent with and incorporate, *mutatis mutandis* to make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents).

**4.**  **5.** Application of Proceeds.

The proceeds received by the LP DIP Lenders in respect of any sale of, collection from, or other realization upon all or any part of the LP DIP Collateral pursuant to the exercise by LP DIP Lenders of their remedies in accordance with this Order shall be applied, in full or in part, promptly by such LP DIP Lenders as follows:

(a)    First, to the payment of that portion of the LP DIP Obligations constituting fees, indemnities, costs, expenses (other than principal and interest but including the fees, costs, and disbursements of counsel) payable to the LP DIP Lenders under this Order (including the LP DIP Obligor Guaranty), ratably among them in proportion to the amounts described in this clause (a) payable to them;

(b)    Second, without duplication of amounts applied pursuant to clause (a) above, to the indefeasible payment in full in cash of that portion of the LP DIP Obligations constituting accrued and unpaid interest (excluding, for the avoidance of doubt, any PIK Interest) on the LP DIP Loans,, ratably among the LP DIP Lenders in proportion to the amounts described in this clause (b) payable to them;

(c)    Third, to the indefeasible payment in full in cash of that portion of the LP DIP Obligations constituting unpaid principal of the LP DIP Loans, ratably among the LP DIP Lenders in proportion to the amounts described in this clause (c) payable to them;

(d)    Fourth, to the indefeasible payment in full in cash of all other LP DIP Obligations that are due and payable to the LP DIP Lenders, ratably based upon the respective aggregate amounts of all such LP DIP Obligations owing to the LP DIP Lenders on such date; and

(e)    Fifth, the balance, if any, after all of the LP DIP Obligations then due and payable have been indefeasibly paid in full in cash, to the person lawfully entitled thereto (including the applicable LP DIP Obligor or its successors or assigns) or as a court of competent jurisdiction may direct.

In the event that any such proceeds are insufficient to pay in full the items described in clauses (a) through (d) of this Section 5, the LP DIP Obligors shall remain liable, jointly and severally, for any deficiency.

**5.**  **6.** Amendments.

The Annexes to this Order and any other LP DIP Credit Documents (including this Order) may ~~only~~**not** be amended, ~~waived,~~ modified, ~~or~~ supplemented ~~in writing in accordance with the terms and provisions of this Order; provided, that no such amendment, waiver, modification, or supplement shall be effective if the effect thereof would:~~**, altered, or waived without approval of the Court.**

~~(a) reduce the principal amount or premium, if any, of any LP DIP Loan or reduce the rate of interest thereon (other than interest pursuant to Section 2(b), or reduce any fees payable hereunder, or change the form or currency of payment of any Obligation, without the written consent of each LP DIP Lender directly affected thereby;~~

~~(b) (i) change the scheduled final maturity of any LP DIP Loan, (ii) postpone the date for payment of any interest, premium, or fees payable hereunder, or (iii) reduce the amount of, waive, or excuse any such payment (other than waiver of any increase in the interest rate pursuant to Section 2(b)), in any case, without the written consent of each LP DIP Lender directly affected thereby;~~

~~(c) permit the assignment or delegation by any LP DIP Obligor of any of its rights or obligations under any LP DIP Credit Document, without the written consent of each LP DIP Lender;~~

~~(d) release any LP DIP Guarantors from their Guarantee, or limit their liability in respect of such Guarantee, without the written consent of each LP DIP Lender;~~

~~(e) release any of the LP DIP Collateral from the liens created pursuant to the LP DIP Credit Documents or alter the relative priorities of the LP DIP Obligations entitled to such liens, in each case without the written consent of each LP DIP Lender;~~

~~(f) change this Order in a manner that would alter the *pro rata* sharing of payments or setoffs contemplated hereby or any other provision in a manner that would alter the *pro rata* allocation among the LP DIP Lenders of LP DIP Loan disbursements, including the requirements of Section 1(a), without the written consent of each LP DIP Lender directly affected thereby;~~

~~(g) change any provision of this Section 6, without the written consent of each LP DIP Lender directly affected thereby;~~

~~(h) change the percentage set forth in the definition of "Required LP DIP Lenders" or any other provision of any LP DIP Credit Document (including this Section) specifying the number or percentage of LP DIP Lenders required to waive, amend, or modify any rights thereunder or make any determination or grant any consent thereunder, without the written consent of each LP DIP Lender, other than to increase such percentage or number or to give any additional LP DIP Lender or group of LP DIP Lenders such right to waive, amend, or modify or make any such determination or grant any such consent; or~~

~~(i) subordinate the LP DIP Obligations to any other obligation (including any administrative claims) or permit the incurrence of any indebtedness, claims, or~~

obligations that would be senior in right of payment and/or security to the LP DIP Obligations, in each case, without the written consent of each LP DIP Lender.

**6.** **7.** Assignments.

No LP DIP Lender may assign or otherwise transfer any of its rights or obligations hereunder (including, without limitation, by granting participations in LP DIP Loans) (a) without the prior written consent of each other LP DIP Lender and (b) to a Disqualified Company (as defined in the Prepetition LP Credit Agreement) or an Affiliate (as defined in the Prepetition LP Credit Agreement) thereof that is not a financial institution, private equity firm, bona fide debt fund, or hedge fund. Any attempted assignment or participation in violation of the preceding sentence shall be null and void. [Notwithstanding the foregoing, any LP DIP Lender may at any time, without the consent of, or notice to, LP DIP Borrower or any other LP DIP Lender, sell participations to any person (other than a natural person, the LP DIP Borrower or any of its Affiliates, or any Disqualified Company or an Affiliate thereof that is not a financial institution, private equity firm, bona fide debt fund, or hedge fund) (each, a "Participant") in all or a portion of such LP DIP Lender's rights and/or obligations under this Order (including all or a portion of the LP DIP Loans owing to it); provided, that (a) such LP DIP Lender's obligations under this Order shall remain unchanged, (b) such LP DIP Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, and (c) the LP DIP Borrower and the other LP DIP Lenders shall continue to deal solely and directly with such LP DIP Lender in connection with such LP DIP Lender's rights and obligations under this Order. Any agreement or instrument pursuant to which a DIP LP Lender sells such a participation shall provide that the relevant participant shall not be permitted to sell sub-participations to any natural person, the LP DIP Borrower or any of its Affiliates or any Disqualified Company or an Affiliate thereof that is not a financial institution, private equity firm, bona fide debt fund, or hedge fund.]

**7.** **8.** Integration.

This Order, the other LP DIP Credit Documents, and the Amended Final Cash Collateral Order constitute the entire contract among the LP DIP Obligors and the LP DIP Lenders relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

**8.** **9.** Governing Law; Jurisdiction; Venue.

(a)       Governing Law.  This Order and each other LP DIP Credit Document, and the transactions contemplated hereby and thereby, and all disputes between the LP DIP Obligors and the LP DIP Lenders under or relating to this Order or any other LP DIP Credit Document or the facts or circumstances leading to its or their execution, whether in contract, tort or otherwise, shall be construed in accordance with, and governed by, the laws (including statutes of limitation) of the State of New York (and, to the extent applicable, the Bankruptcy Code).

(b)    <u>Submission to Jurisdiction</u>.  Each LP DIP Obligor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Court, or to the extent that the Court does not have or does not exercise jurisdiction, the Supreme Court of the State of New York sitting in New York County and the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to any LP DIP Credit Document, or for recognition or enforcement of any judgment, and each of the LP DIP Obligors and LP DIP Lenders hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such Federal court.  Each of the LP DIP Obligors and LP DIP Lenders agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Order or any other LP DIP Credit Document shall affect any right that any LP DIP Lender may otherwise have to bring any action or proceeding relating to this Order or any other LP DIP Credit Document against any LP DIP Obligor or its properties in the courts of any jurisdiction.

(c)    <u>Venue</u>.  Subject to the jurisdiction of the Court, each LP DIP Obligor hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable requirements of law, any objection which it may now or hereafter have to the laying of venue of any suit, action, or proceeding arising out of or relating to this Order or any other LP DIP Credit Document in any court referred to in <u>Section 9(b)</u>.  Each of the LP DIP Obligors and LP DIP Lenders hereby irrevocably waives, to the fullest extent permitted by applicable requirements of law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

**9.**  ~~10.~~ Waiver of Jury Trial.

Each LP DIP Obligor hereby waives, to the fullest extent permitted by applicable requirements of law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Order, any other LP DIP Credit Document, or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each LP DIP Obligor and LP DIP Lender (a) certifies that no representative, agent, or attorney of any other such person has represented, expressly or otherwise, that such other person would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and all other such persons have been induced to become bound by this Order and the other LP DIP Credit Documents by, among other things, the mutual waivers and certifications in this Section.

**10.**  ~~11.~~ Interest Rate Limitation.

Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any LP DIP Loan, together with all fees, charges, and other amounts which are treated as interest on such LP DIP Loan under applicable requirements of law (collectively, the "<u>Charges</u>"), shall exceed the maximum lawful rate (the "<u>Maximum Rate</u>") which may be contracted for, charged, taken, received, or reserved by the LP DIP Lender holding such LP DIP Loan in accordance with applicable requirements of law, the rate of interest payable in respect of such LP DIP Loan

hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate, and, to the extent lawful, the interest and Charges that would have been payable in respect of such LP DIP Loan but were not payable as a result of the operation of this Section shall be cumulated and the interest and Charges payable to such LP DIP Lender in respect of other LP DIP Loans or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the weighted average of the rates on overnight federal funds transactions with members of the Federal Reserve System of the United States arranged by federal funds brokers (as determined by the Required LP DIP Lenders) to the date of repayment, shall have been received by such LP DIP Lender.

**11.** 12. Currency Indemnity**Due**.

If, for the purposes of obtaining judgment in any court in any jurisdiction with respect to this Order or any other LP DIP Credit Document, it becomes necessary to convert into a particular currency (the "Judgment Currency") any amount due under this Order or under any other LP DIP Credit Document in any currency other than the Judgment Currency (the "Currency Due"), then conversion shall be made at the rate of exchange prevailing on the Business Day before the day on which judgment is given.  For this purpose "rate of exchange" means the rate at which the Designated LP DIP Lender is able, on the relevant date, to purchase the Currency Due with the Judgment Currency in accordance with customary banking practices in New York, New York.  In the event that there is a change in the rate of exchange prevailing between the Business Day before the day on which the judgment is given and the date of receipt by the LP DIP Lenders of the amount due, the LP DIP Borrower will, on the date of receipt by the LP DIP Lenders, pay such additional amounts, if any, or be entitled to receive reimbursement of such amount, if any, as may be necessary to ensure that the amount received by the LP DIP Lenders on such date is the amount in the Judgment Currency which when converted at the rate of exchange prevailing on the date of receipt by the LP DIP Lenders is the amount then due under this Order or such other LP DIP Credit Document in the Currency Due.  If the amount of the Currency Due which the Designated LP DIP Lender is so able to purchase is less than the amount of the Currency Due originally due to it, the LP DIP Borrower shall indemnify and save the LP DIP Lenders harmless from and against all loss or damage arising as a result of such deficiency.  This indemnity shall constitute an obligation separate and independent from the other obligations contained in this Order and the other LP DIP Credit Documents shall give rise to a separate and independent cause of action, shall apply irrespective of any indulgence granted by the LP DIP Lenders from time to time, and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of an amount due under this Order or any other LP DIP Credit Document or under any judgment or order.

**If, for the purpose of obtaining a judgment in any court in any jurisdiction, it is necessary to convert a sum due under this Order or any other LP DIP Credit Document in on currency into another currency, then such amount shall be converted using the rate of exchange in effect on the Business Day immediately preceding that on which final judgment is given.  The obligation of the LP DIP Borrower in respect of any amount due from the LP DIP Lenders under this Order or any other LP DIP Credit Document shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than that in which such amount is denominated in accordance with the applicable provisions of this Order (the "Order Currency"), be discharged only to the extent that on the Business Day**

**following receipt by** the LP DIP Lenders **of any amount adjudged to be so due in the Judgment Currency**, the LP DIP Lenders may **purchase the Order Currency with the Judgment Currency. If the amount of the Order Currency so purchased is less than the amount originally due** to the LP DIP Lenders **from the LP DIP Borrower on the Order Currency, the LP DIP Borrower agrees, as a separate obligation and notwithstanding any such judgment,** the LP DIP Lenders **against such deficiency**. For this purpose "rate of exchange" means the rate **published by the Wall Street Journal on the date of such conversion or, if no such rate is published in the Wall Street Journal on such day as the Wall Street ceases to publish such rate for any reason, then the "rate of exchange" shall mean the rate quoted by the Reuters World Company Page at 11:00 a.m. (New York time) on such day (or, in the event such rate does not appear on any Reuters World Currency Page on such day, by reference to such other publicly available service for displaying exchange rates as may be agreed upon by** the LP DIP **Borrower and the** LP DIP Lenders, **or, in the absence of such agreement, by reference to such other publicly available service for displaying exchange rates as may be determined by the** LP DIP **Lenders), the rate published by Bloomberg foreign exchange and world currencies page on the date of such conversion.**

**12.** ~~13.~~ Additional Defined Terms.

~~"Closing Date" shall mean the date on which all conditions precedent to the making of LP DIP Loans shall have been satisfied and the LP DIP Loans shall have been funded.~~

"Business Day" shall mean any day other than a Saturday, Sunday, or other day on which banks in New York City are authorized or required by law to close.

~~"Designated LP DIP Lender" shall mean the LP DIP Lender designated in writing by the Required LP DIP Lenders from time to time to act as the Designated LP DIP Lender for purposes of Section 12 of Annex A to this Order.~~

~~"Material Adverse Effect" shall mean (a) a material adverse effect on the business, property, results of operations, or condition, financial or otherwise, of LP DIP Obligors, taken as a whole; (b) material impairment of the ability of the LP DIP Obligors to fully and timely perform any of their LP DIP Obligations under any LP DIP Credit Document; (c) material impairment of the rights of, or benefits or remedies available to, the LP DIP Lenders under any LP DIP Credit Document; or (d) a material adverse effect on a material portion of the LP DIP Collateral, the Prepetition LP Collateral, the LP DIP Liens in favor of the LP DIP Lenders on the LP DIP Collateral, or the priority of such LP DIP Liens; provided, that the continuation of the Chapter 11 Cases shall not constitute a Material Adverse Effect under clause (a) above.~~

"Notes" shall mean any promissory note(s) evidencing the LP DIP Loans in the form set forth in Annex C hereto.

"Prepetition LP Collateral" shall mean (a) substantially all of the assets of LightSquared LP and the Prepetition LP Subsidiary Guarantors, (b) the equity interests of LightSquared LP and the Prepetition LP Parent Guarantors (except LightSquared Inc.), (c) certain equity interests owned by the Pledgors (as defined in the applicable Prepetition LP Security Agreement (as defined herein)), (d) the Intercompany Notes (as defined in the Prepetition LP Security Agreements) and

(e) the rights of LightSquared Inc. under and arising out of the Inmarsat Cooperation Agreement, by and between LightSquared LP, SkyTerra (Canada) Inc., LightSquared Inc., and Inmarsat Global Limited.  For the avoidance of doubt, the Prepetition LP Collateral includes any proceeds, substitutions or replacements of any of the forgoing (unless such proceeds, substitutions or replacements would constitute Excluded Property (as defined in Prepetition LP Credit Documents)).  The Prepetition LP Collateral does not include the following: (a) any permit or license issued by a Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security interest in such permit, license, or other agreement; (b) property subject to any Purchase Money Obligation, Vendor Financing Indebtedness, or Capital Lease Obligations (in each case, as such term is defined in the Prepetition LP Credit Agreement) if the contract or other agreement in which such lien is granted validly prohibits the creation of any other lien on such property; (c) the SkyTerra-2 satellite, while title remains with BSSI, and those ground segment assets related to the SkyTerra-2 satellite, while title remains with BSSI; (d) any intent-to-use trademark application to the extent and for so long as a security interest therein would result in the loss by the pledgor thereof of any material rights therein; (e) certain deposit and securities accounts securing currency hedging or credit card vendor programs or letters of credit provided to vendors in the ordinary course of business; (f) equity interests in (i) excess of 66% in non-U. S. subsidiaries (other than the Canadian Subsidiaries (as defined in the Prepetition LP Credit Agreement)) held by a US subsidiary, (ii) LightSquared Network LLC, and (iii) any joint venture or similar entity to the extent and for so long as the terms of such investment restrict such security interest; and (g) any consumer goods subject to the Canadian Security Agreement (as defined in the Prepetition LP Credit Agreement).

"Relevant Percentage" shall mean, as to any LP DIP Lender, the percentage set forth opposite such LP DIP Lender's name in the table set forth in Schedule I to this Annex A.

## SCHEDULE I TO ANNEX A

LP DIP Loan Allocation Schedule

| Name of LP DIP Lender: | Amount: | Relevant Percentage: |
|---|---|---|
| **SP Special Opportunities LLC** | **$17,505,590** | **53.0%** |
| Capital Research and Management Company | $14,624,208**6,866,469** | 44.3**20.8**% |
| Fortress Credit Corp., on behalf of its affiliates' managed funds and/or accounts | $7,126,402**3,346,042** | 21.6**10.1**% |
| Cyrus Capital Partners, L.P. | $5,939,050**2,788,548** | 18.0**8.5**% |
| Fir Tree Capital Opportunity Master Fund, L.P. | $1,677,995**787,865** | 5.1**2.4**% |
| SOLA LTD | $1,226,528**575,889** | 3.7**1.7**% |
| ULTRA MASTER LTD | $284,810**133,726** | 0.9**0.4**% |
| Solus Senior High Income Fund LP | $151,299**71,039** | 0.5**0.2**% |
| Intermarket Corporation | $865,764**406,500** | 2.6**1.2**% |
| Aurelius Capital Master, Ltd. | $568,857**267,094** | 1.7**0.8**% |
| ACP Master, Ltd. | $394,309**185,139** | 1.2**0.6**% |
| Aurelius Convergence Master, Ltd. | $140,777**66,099** | 0.4**0.2**% |
| **Total** | **$33,000,000** | **100.0%** |

## **ANNEX B**

## LP DIP BUDGET

Dollars in thousands

| | | 1Q14 | | |
|---|---|---|---|---|
| | Quarter | | | |
| | Month | Jan-14 | Feb-14 | Mar-14 |
| | Beginning Cash Balance | 13,490 | 311 | (6,993) |
| | **Sources** | | | |
| | Satellite Revenue | 1,233 | 1,343 | 1,259 |
| | Terrestrial Revenue | - | - | - |
| | Interest Income | 2 | 0 | - |
| | Equity Financing | - | - | - |
| | Debt Financing | - | - | - |
| | Financing Fees | - | - | - |
| | Other | - | - | - |
| | **Total Sources** | **1,235** | **1,343** | **1,259** |
| Uses (OPEX) | In-Orbit / Launch Insurance | - | - | - |
| | ISAT Coop Agmt | - | - | 5,000 |
| | L-Band network infrastructure | 12 | 12 | 12 |
| | ERP | 22 | 88 | 22 |
| | Spectrum Management | - | - | - |
| | Staffing Related (entire company) | 2,137 | 5,777 | 1,766 |
| | Legal / Regulatory / Lobbying / International | 1,248 | 1,508 | 1,015 |
| | Facilities/Telecom | 658 | 658 | 658 |
| | G&A | 336 | 666 | 4,706 |
| | Travel Expenses (entire company) | 50 | 50 | 50 |
| | Other Items | 1,330 | 948 | 1,076 |
| | **Subtotal - USES (OPEX)** | **5,792** | **9,706** | **14,304** |
| Uses (CAPEX) | Boeing Payments | - | - | 2,025 |
| | Qualcomm | - | - | - |
| | Alcatel Lucent S-BTS | - | - | - |
| | Current Network Maintenance/Capex | - | 150 | - |
| | BandRich | - | - | - |
| | **Subtotal - USES (CAPEX)** | **-** | **150** | **2,025** |
| Debt Service | Cash Interest | - | - | - |
| Restructuring Related | Restructuring Prof exclud W&C / Blackstone | 2,372 | 4,000 | 2,104 |
| | LP Adequate Protection Payments | 6,250 | 6,250 | 6,250 |
| | **Total Uses** | **14,414** | **20,106** | **24,683** |
| | **LP Group Ending Cash Balance** | **311** | **-** | **-** |
| | TMI Beginning Cash Balance | 11,459 | 11,459 | - |
| | Use of TMI Cash | - | (11,459) | - |
| | **TMI Ending Cash Balance** | **11,459** | **-** | **-** |
| | **LP Group Ending Cash Balance including Cash at TMI** | **11,770** | **(6,993)** | **(30,417)** |



<u>**ANNEX C**</u>

FORM OF TERM NOTE

$_____                                                         New York, New York
                                                                    _____ __, 2014

   FOR VALUE RECEIVED, **LIGHTSQUARED LP**, a Delaware limited partnership, a debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code (the "LP DIP Borrower"), hereby promises to pay to [_____] [or its registered assigns] (the "LP DIP Lender"), in lawful money of the United States of America in immediately available funds the principal sum of _____ DOLLARS ($_____), as such amount may be increased by the addition of interest that has been paid in kind in accordance with the Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay [Docket No. __] (the "LP DIP Order")[1] or, if less, the unpaid principal amount of all LP DIP Loans made by the LP DIP Lender under the LP DIP Facility in accordance with the LP DIP Order, payable at such times and in such amounts as provided for in the LP DIP Order.

   The LP DIP Borrower also promises to pay interest on the unpaid principal amount of each LP DIP Loan made by the LP DIP Lender in kind, from the date hereof until all principal, accrued and unpaid interest, and all other amounts have been **_indefeasibly_** paid in full in cash, at the rates and at the times specified in the LP DIP Order.

   This Note is one of the Notes referred to in <u>Annex A</u> to the LP DIP Order and is entitled to the benefits thereof and of the other LP DIP Credit Documents. This Note is secured by the LP DIP Collateral and is entitled to the benefits of the guaranties from the LP DIP Guarantors. This Note, and any LP DIP Loans and other obligations (including any accrued and unpaid interest) represented hereby, shall be repaid in full in cash upon the occurrence of the ~~Termination~~**_Final Maturity_** Date as set forth in the LP DIP Order.

   ~~In case an Event of Default shall occur and be continuing, the principal of, and accrued interest on, this Note may be declared to be due and payable in the manner and with the effect provided in the LP DIP Order.~~

   The LP DIP Borrower hereby waives presentment, demand, protest, or notice of any kind in connection with this Note.

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the LP DIP Order.

**THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND BE GOVERNED BY, THE LAW OF THE STATE OF NEW YORK AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.**

**LIGHTSQUARED LP**

By:_____
      Name:
      Title:

## ANNEX D

## FORM OF LP DIP OBLIGOR GUARANTY

LP DIP OBLIGOR GUARANTY (as amended, modified, restated, and/or supplemented from time to time, this "Guaranty"), dated as of [_____ __], 201[_], made by and among each of the undersigned guarantors (each, an "LP DIP Guarantor" and, collectively, the "LP DIP Guarantors") in favor of the LP DIP Lenders. Except as otherwise defined herein, all capitalized terms used herein and defined in the LP DIP Order (as defined below) shall be used herein as therein defined.

## W I T N E S S E T H :

WHEREAS, pursuant to that certain Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay [Docket No. __] (including all annexures, exhibits, and schedules thereto, the "LP DIP Order"), the LP DIP Lenders shall make LP DIP Loans to the LP DIP Borrower on the terms and subject to the conditions set forth therein;

WHEREAS, each LP DIP Guarantor is a direct or indirect subsidiary of the LP DIP Borrower;

WHEREAS, the LP DIP Order requires that each LP DIP Guarantor shall have executed and delivered to the LP DIP Lenders this Guaranty; and

WHEREAS, each LP DIP Guarantor will obtain benefits from the incurrence of LP DIP Loans by the LP DIP Borrower and, accordingly, desires to execute this Guaranty in order to satisfy the requirements of the LP DIP Order and to induce the LP DIP Lenders to make LP DIP Loans to the LP DIP Borrower;

NOW, THEREFORE, in consideration of the foregoing and other benefits accruing to each LP DIP Guarantor, the receipt and sufficiency of which are hereby acknowledged, each LP DIP Guarantor hereby covenants and agrees with each other LP DIP Guarantor and the LP DIP Lenders as follows:

1. GUARANTY.    The LP DIP Guarantors hereby jointly and severally guarantee, as a primary obligor and not as a surety, to each LP DIP Lender and their respective successors and assigns, the prompt payment in full when due (whether at stated maturity, by required prepayment, declaration, demand, acceleration, or otherwise) of all LP DIP Obligations. The LP DIP Guarantors hereby jointly and severally agree that if LP DIP Borrower or any other LP DIP Guarantor(s) shall fail to pay in full in cash when due (whether at stated maturity, by acceleration, or otherwise) any of the LP DIP

Obligations, the LP DIP Guarantors will promptly pay the same in cash, without any demand or notice whatsoever, and that in the case of any extension of time of payment or renewal of any of the LP DIP Obligations, the same will be promptly paid in full in cash when due (whether at extended maturity, by acceleration, or otherwise) in accordance with the terms of such extension or renewal.OBLIGATIONS UNCONDITIONAL. The obligations of the LP DIP Guarantors under Section 1 shall constitute a guaranty of payment and, to the fullest extent permitted by applicable requirements of law, are absolute, irrevocable, and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity, or enforceability of the LP DIP Obligations of the LP DIP Borrower under the LP DIP Order, the Notes, if any, or any other LP DIP Credit Documents, or any substitution, release, or exchange of any other guarantee of or security for any of the LP DIP Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or LP DIP Guarantor (except for payment in full). Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not alter or impair the liability of the LP DIP Guarantors hereunder which shall remain absolute, irrevocable, and unconditional under any and all circumstances as described above:

(a)    at any time or from time to time, without notice to any LP DIP Guarantors, the time for any performance of, or compliance with, any of the LP DIP Obligations shall be extended, or such performance or compliance shall be waived;

(b)    any of the acts mentioned in any of the provisions of the LP DIP Order, the Notes, if any, or any other LP DIP Credit Document shall be done or omitted;

(c)    the maturity of any of the LP DIP Obligations shall be accelerated, or any of the LP DIP Obligations shall be amended in any respect, any right under the LP DIP Credit Documents or any other agreement or instrument referred to herein or therein shall be amended or waived in any respect, or any other guarantee of any of the LP DIP Obligations or any security therefor shall be released or exchanged in whole or in part or otherwise dealt with;

(d)    any lien or security interest granted to, or in favor of, any LP DIP Lender as security for any of the LP DIP Obligations shall fail to be perfected; or

(e)    the release of any other LP DIP Guarantor pursuant to the terms of the LP DIP Order.

The LP DIP Guarantors hereby, to the fullest extent permitted by applicable requirements of law, expressly waive diligence, presentment, demand of payment, protest, and all notices whatsoever, and any requirement that any LP DIP Lender exhaust any right, power, or remedy or proceed against the LP DIP Borrower under the LP DIP Order, the Notes, if any, or any other LP DIP Credit Document, or against any other person under any other guarantee of, or security for, any of the LP DIP Obligations. The LP DIP Guarantors waive any and all notice of the creation, renewal, extension, waiver,

termination, or accrual of any of the LP DIP Obligations and notice of, or proof of reliance by any LP DIP Lender upon, this Guaranty or acceptance of this Guaranty, and the LP DIP Obligations, and any of them, shall conclusively be deemed to have been created, contracted, or incurred in reliance upon this Guaranty, and all dealings between LP DIP Borrower and the LP DIP Lenders shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guaranty.  This Guaranty shall be construed as a continuing, absolute, irrevocable, and unconditional guarantee of payment without regard to any right of offset with respect to the LP DIP Obligations at any time or from time to time held by LP DIP Lenders, and the obligations and liabilities of the LP DIP Guarantors hereunder shall not be conditioned or contingent upon the pursuit by the LP DIP Lenders or any other person at any time of any right or remedy against LP DIP Borrower or against any other person which may be or become liable in respect of all or any part of the LP DIP Obligations or against any collateral security or guarantee therefor or right of offset with respect thereto.  This Guaranty shall remain in full force and effect and be binding in accordance with, and to the extent of, its terms upon the LP DIP Guarantors and the successors and assigns thereof, and shall inure to the benefit of the LP DIP Lenders, and their respective successors and assigns, notwithstanding that from time to time during the term of the LP DIP Order there may be no LP DIP Obligations outstanding.

3.  <u>REINSTATEMENT</u>.  The obligations of the LP DIP Guarantors under this Guaranty shall be automatically reinstated if and to the extent that for any reason any payment by, or on behalf of, the LP DIP Borrower or other LP DIP Obligors in respect of the LP DIP Obligations is rescinded or must be otherwise restored by any holder of any of the LP DIP Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

4.  <u>SUBROGATION; SUBORDINATION</u>.  Each LP DIP Guarantor hereby agrees that until the indefeasible payment and satisfaction in full in cash of all LP DIP Obligations, it shall waive any claim and shall not exercise any right or remedy, direct or indirect, arising by reason of any performance by it of its guarantee in <u>Section 1</u>, whether by subrogation or otherwise, against the LP DIP Borrower or any other LP DIP Obligor of any of the LP DIP Obligations or any security for any of the LP DIP Obligations.

5.  <u>REMEDIES</u>.  After the Final Maturity Date, the LP DIP Guarantors jointly and severally agree that, as between the LP DIP Guarantors and the LP DIP Lenders, the obligations of LP DIP Borrower under the LP DIP Order and the Notes, if any, may be declared to be forthwith due and payable as provided in the LP DIP Order for purposes of <u>Section 1</u>, notwithstanding any stay, injunction or other prohibition preventing such declaration (or such obligations from becoming automatically due and payable) as against LP DIP Borrower and that, in the event of such declaration (or such obligations being deemed to have become automatically due and payable), such obligations (whether or not due and payable by LP DIP Borrower) shall forthwith become due and payable by the LP DIP Guarantors for purposes of <u>Section 1</u>.

6. <u>INSTRUMENT FOR THE PAYMENT OF MONEY</u>.  Each LP DIP Guarantor hereby acknowledges that this Guaranty constitutes an instrument for the payment of money, and consents and agrees that any LP DIP Lender, at its sole option, in the event of a dispute by such LP DIP Guarantor in the payment of any moneys due hereunder, shall have the right to bring a motion-action under New York CPLR Section 3213.

7. <u>CONTINUING GUARANTY</u>. The Guaranty is a continuing guarantee of payment and shall apply to all LP DIP Obligations whenever arising.

8. <u>GENERAL LIMITATION ON LP DIP OBLIGATIONS</u>.  In any action or proceeding involving any state corporate limited partnership or limited liability company law, or any applicable state, federal, or foreign bankruptcy, insolvency, reorganization, or other law affecting the rights of creditors generally, if the obligations of any LP DIP Guarantor under <u>Section 1</u> would otherwise be held or determined to be void, voidable, invalid, or unenforceable, or subordinated to the claims of any other creditors, on account of the amount of its liability under <u>Section 1</u>, then, notwithstanding any other provision to the contrary, the amount of such liability shall, without any further action by such LP DIP Guarantor, any other LP DIP Obligor, or any other person, be automatically limited and reduced to the highest amount (after giving effect to the right of contribution established in <u>Section 9</u>) that is valid and enforceable and not subordinated to the claims of other creditors as determined in such action or proceeding.

9. <u>RIGHT OF CONTRIBUTION</u>.  Each LP DIP Guarantor hereby agrees that to the extent that an LP DIP Guarantor shall have paid more than its proportionate share of any payment made hereunder, such LP DIP Guarantor shall be entitled to seek and receive contribution from and against any other LP DIP Guarantor hereunder which has not paid its proportionate share of such payment.  Each LP DIP Guarantor's right of contribution shall be subject to the terms and conditions of <u>Section 4</u>.  The provisions of this <u>Section 9</u> shall in no respect limit the obligations and liabilities of any LP DIP Guarantor to the LP DIP Lenders, and each LP DIP Guarantor shall remain liable to the LP DIP Lenders for the full amount guaranteed by such LP DIP Guarantor hereunder.

10. <u>COUNTERPARTS</u>.  This Guaranty may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.  A set of counterparts executed by all the parties hereto shall be lodged with the LP DIP Borrower and the LP DIP Lenders.

11. <u>HEADINGS DESCRIPTIVE</u>.  The headings of the several Sections of this Guaranty are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Guaranty.

12. <u>GOVERNING LAW, ETC</u>.  This Guaranty and the contents hereof are subject to the governing law, jurisdiction, venue, waiver of jury trial, currency indemnity, indemnification, and expense reimbursement provisions set forth in the LP

DIP Order (including <u>Annex A</u> thereto) and such provisions are hereby incorporated herein by reference, *mutatis mutandis*.

\* \* \*

IN WITNESS WHEREOF, each LP DIP Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

Address:

[_____]                [_____],

[_____]                    as a LP DIP Guarantor

Tel:[_____]

Fax:[_____]                By:_____,

      Name:

      Title:


[Accepted and Agreed to:

[_____],

as LP DIP Lender


By:_____,

      Name:

      Title:

By:_____,

      Name:

      Title:]

## Exhibit B-2

**Blackline of Second Revised Order Amending Cash Collateral Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGHTSQUARED INC., *et al.*, | ) | Case No. 12-12080 (SCC) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**SECOND ORDER AMENDING AMENDED AGREED FINAL ORDER**
**(A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL,**
**(B) GRANTING ADEQUATE PROTECTION TO PREPETITION**
**SECURED PARTIES, AND (C) MODIFYING AUTOMATIC STAY**

Upon the initial motion (the "Initial Motion")[2] of LightSquared Inc. and certain of its

affiliates, as debtors and debtors in possession (collectively, "LightSquared" or the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an interim order and a

final order, under sections 105, 361, 362, 363(c), and 507 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local

Rules"), *inter alia*:

        (a)      authorizing the use of Cash Collateral (within the meaning of section 363(a) of
the Bankruptcy Code) of the Prepetition Secured Parties and providing adequate
protection to the Prepetition Secured Parties for any diminution in value of their

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax
or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc.
(0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra
Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited
Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC
(3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750),
LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd.
(7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC
Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston,
VA 20191.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Initial
Motion and the Amended Cash Collateral Order (as defined below), as applicable.

                    interests in the Prepetition Collateral, pursuant to sections 361, 362, and 363 of the Bankruptcy Code;

(b)        vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Initial Cash Collateral Order (as defined below), as limited pursuant thereto;

(c)        scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing to consider the relief requested in the Motion on an interim basis; and

(d)        scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis.

The Court having considered the Initial Motion, the *Declaration of Marc R. Montagner, Chief Financial Officer and Interim Co-Chief Operating Officer of LightSquared Inc., (A) in Support of First Day Pleadings and (B) Pursuant to Rule 1007-2 of Local Bankruptcy Rules for United States Bankruptcy Court for Southern District of New York* [Docket No. 3], the exhibits and schedules attached thereto, and the evidence submitted at the Final Hearing; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b) and (d) and 9014; and the Final Hearing to consider the relief requested in the Initial Motion having been held and concluded; and all objections, if any, to the relief requested in the Initial Motion having been withdrawn, resolved, or overruled by the Court; and the Court having entered the *Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 136] (the "Initial Cash Collateral Order") on June 13, 2012 upon consent of LightSquared, the Prepetition LP Agent, on behalf of the Prepetition LP Lenders, and the Ad Hoc LP Secured Group; and the Prepetition LP Agent, on behalf of the Prepetition LP Lenders, and the Ad Hoc LP Secured Group having agreed to permit LightSquared to amend the Initial Cash Collateral Order to continue to use the Prepetition LP Lenders' Cash Collateral through and including December 31, 2013 on

2

substantially similar terms as currently set forth in the Initial Cash Collateral Order in connection with that certain *Order Pursuant to 11 U.S.C. § 1121(d) Further Extending LightSquared's Exclusive Periods To File a Plan of Reorganization and Solicit Acceptances Thereof* [Docket No. 522] (the "Second Exclusivity Extension Order"); and the Court having entered the *Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 544] (as amended or modified, the "Amended Cash Collateral Order"); and the Prepetition LP Agent, on behalf of the Prepetition LP Lenders, and the Ad Hoc LP Secured Group having agreed to permit LightSquared to amend the Amended Cash Collateral Order to, among other things, continue to use the Prepetition LP Lenders' Cash Collateral through and including January 31, 2014 on substantially similar terms as currently set forth in the Amended Cash Collateral Order; and the Court having entered the *Order Amending Amended Agreed Final Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay* [Docket No. 1118] (the "Cash Collateral Extension Order"); and the Court having considered the Debtors' subsequent motion, submitted at the direction, and with the support, of the special committee of the boards of directors for LightSquared Inc. and LightSquared GP Inc., for an order (a) authorizing the LP DIP Obligors to obtain superpriority senior secured priming postpetition financing, (b) granting superpriority liens and providing superpriority administrative expense status, (c) granting adequate protection, and (d) modifying automatic stay [Docket No. 1237] (the "LP DIP Facility Motion") seeking, *inter alia*, entry of an order (this "Order") further amending the Amended Cash Collateral Order to, among other things, permit the LP Debtors to continue to use the Prepetition LP Lenders' Cash Collateral through and including April 15, 2014 on substantially similar terms as currently

3

set forth in the Amended Cash Collateral Order; and all objections, if any, to the relief requested

in the LP DIP Facility Motion having been withdrawn, resolved, or overruled by the Court; and

the Court having entered on a date even herewith that *Order (A) Authorizing LP DIP Obligors*

*To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting*

*Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting*

*Adequate Protection, and (D) Modifying Automatic Stay* [Docket No. __] (the "<u>LP DIP Order</u>");

and it appearing to the Court that entry of this Order is fair and reasonable and in the best

interests of the Debtors, their estates, and their stakeholders, and is essential for the continued

management of the Debtors' businesses; and after due deliberation and consideration, and for

good and sufficient cause appearing therefor; it is hereby **ORDERED** that:

1.      All of the terms of the Amended Cash Collateral Order shall remain in full

force and effect pursuant to the terms thereof, except to the extent modified or further modified

by this Order.

2.      The last sentence of paragraph F(ii) of the Amended Cash Collateral Order

is hereby amended in its entirety as follows: "Notwithstanding anything to the contrary in this

Amended Final Order, capital expenditure lines totaling $2.805 million may be used on an

aggregate basis at any time until April 15, 2014."

3.      Paragraph 4 of the Amended Cash Collateral Order is hereby amended as

follows:

(a)     The first sentence of paragraph 4 is amended by replacing "ECF" with "Docket"
        and by inserting "(the "<u>Cash Management Order</u>")" at the end of the sentence;

(b)     Paragraph 4 is amended by inserting the following after the sentence "The Ad
        Hoc Secured Group hereby consents to the repayment, to LightSquared Inc., of
        any costs and expenses paid on behalf of the LP Obligors' estates since the
        Petition Date.":  "To the extent the Debtors are required to give notice to any
        party as set forth in the Cash Management Order, such notice shall also be given

4

to ~~counsel to (i) the Ad Hoc Secured Group and (ii)~~**Willkie Farr & Gallagher LLP and White & Case LLP (whom shall reasonably promptly forward such information to** each of the LP DIP Lenders (~~as defined in the LP DIP Order~~**with each LP DIP Lender being delivered such information at substantially the same time as all other LP DIP Lenders)**)."

~~4. Paragraph 7(c) of the Amended Cash Collateral Order is hereby amended by deleting the following sentence therefrom: "Such amount shall be applied to the LP Professional Fees in any given month only so long as the Ad Hoc LP Secured Group is the largest (by dollar amount) group of Prepetition LP Lenders organized and jointly represented (as evidenced by a Rule 2019 statement) in the Chapter 11 Cases."~~

**4.**    ~~5.~~ Paragraph 7(d) of the Amended Cash Collateral Order is hereby amended by replacing the words "December 31, 2013" with the words "April 15, 2014."

**5.**    ~~6.~~ Paragraph 14 of the Amended Cash Collateral Order is hereby amended as follows:

**(a)**    **The first sentence** of paragraph 14 is hereby amended by deleting the **words "subparagraph (o)" and inserting the words "subparagraph (n)";**

**(b)**    ~~(a)~~ The first sentence of section (f) of paragraph 14 is hereby amended by inserting ", the *Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay* [Docket No. __] (the "LP DIP Order")," following the clause "Except as expressly allowed in this Amended Final Order";

**(c)**    ~~(b)~~ Section (h) of paragraph 14 is hereby amended by inserting "(i)" between the words "with" and "financing" and by inserting the following at the end of the sentence: ", or (ii) financing provided to the LP DIP Obligors (as defined in the LP DIP Order) in connection with the LP DIP Order";

**(d)**    ~~(c)~~ The first sentence of section (k) of paragraph 14 is hereby amended by inserting the following at the beginning of the sentence: "Other than the LP DIP Facility Motion (as defined in the LP DIP Order),";

**(e)** ~~(d)~~ The first sentence of section (l) of paragraph 14 is hereby amended by inserting the following at the beginning of the sentence: "Other than the LP DIP Facility Motion,"; **and**

~~(e) Section (m) of paragraph 14 is hereby amended by deleting the word "or" at the end thereof;~~

(f)    Section (n) of paragraph 14 is hereby amended by deleting the words "January 31, 2014." and inserting the words "April 15, 2014~~; or~~**,**"~~; and~~**³**

~~(g) A new section (o) is hereby inserted in paragraph 14:~~

~~"The occurrence of an "Event of Default" and the subsequent termination of the LP DIP Facility, each as defined and set forth in the LP DIP Order."~~

**6.**    ~~7.~~ The Budget attached as <u>Schedule 1</u> to the Cash Collateral Extension Order is hereby replaced in its entirety by the Budget attached hereto as <u>Schedule 1</u>. Notwithstanding anything to the contrary in the Amended Cash Collateral Order or the Cash Collateral Extension Order, failure to comply with the Budget shall not constitute an LP Termination Event.

**7.**    ~~8.~~ For the avoidance of doubt, as set forth in paragraph 7(c) of the Amended Cash Collateral Order, the LP Obligors shall pay the LP Adequate Protection Payment to the Prepetition LP Agent, for the benefit of the Prepetition LP Lenders, on the first Business Day of February 2014 and March 2014, but shall not be required do so in April 2014; <u>provided</u>, <u>however</u>, that payment of the April 2014 LP Adequate Protection Payment shall not be deemed waived in the event that the Amended Cash Collateral Order is further extended.

---

**³** **The Ad Hoc LP Secured Group has requested that paragraph** 7(c) of the Amended Cash Collateral Order **be** amended by deleting the following sentence therefrom: "Such amount shall be applied to the LP Professional Fees in any given month only so long as the Ad Hoc LP Secured Group is the largest (by dollar amount) group of Prepetition LP Lenders organized and jointly represented (as evidenced by a Rule 2019 statement) in the Chapter 11 Cases." **SPSO objects to the deletion of such sentence.**

**SPSO has requested that paragraph 25 of the Amended Cash Collateral Order be amended by inserting the words "SP Special Opportunities, LLP," after "the Ad Hoc LP Secured Group,".  The Ad Hoc LP Secured Group objects to such insertion.**

6

**8.**   ~~9.~~ Paragraph 3 of the Cash Collateral Extension Order shall have no further force and effect.

**9.**   ~~10.~~ Any objections to the entry of this Order, to the extent not withdrawn or resolved, are hereby overruled.

**10.**   ~~11.~~ This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately upon execution thereof.

**11.**   ~~12.~~ This Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: **February ___, 2014**
New York, New York

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

### BUDGET

Dollars in thousands

| | | 1Q14 | | |
|---|---|---|---|---|
| **Quarter** | | Jan-14 | Feb-14 | Mar-14 |
| **Month** | | | | |
| | Beginning Cash Balance | 13,490 | 311 | (6,993) |
| | **Sources** | | | |
| | Satellite Revenue | 1,233 | 1,343 | 1,259 |
| | Terrestrial Revenue | - | - | - |
| | Interest Income | 2 | 0 | - |
| | Equity Financing | - | - | - |
| | Debt Financing | - | - | - |
| | Financing Fees | - | - | - |
| | Other | - | - | - |
| | **Total Sources** | **1,235** | **1,343** | **1,259** |
| **Uses (OPEX)** | In-Orbit / Launch Insurance | - | - | - |
| | ISAT Coop Agmt | - | - | 5,000 |
| | L-Band network infrastructure | 12 | 12 | 12 |
| | ERP | 22 | 88 | 22 |
| | Spectrum Management | - | - | - |
| | Staffing Related (entire company) | 2,137 | 5,777 | 1,766 |
| | Legal / Regulatory / Lobbying / International | 1,248 | 1,508 | 1,015 |
| | Facilities/Telecom | 658 | 658 | 658 |
| | G&A | 336 | 666 | 4,706 |
| | Travel Expenses (entire company) | 50 | 50 | 50 |
| | Other Items | 1,330 | 948 | 1,076 |
| | **Subtotal - USES (OPEX)** | **5,792** | **9,706** | **14,304** |
| **Uses (CAPEX)** | Boeing Payments | - | - | 2,025 |
| | Qualcomm | - | - | - |
| | Alcatel Lucent S-BTS | - | - | - |
| | Current Network Maintenance/Capex | - | 150 | - |
| | BandRich | - | - | - |
| | **Subtotal - USES (CAPEX)** | **-** | **150** | **2,025** |
| **Debt Service** | Cash Interest | - | - | - |
| **Restructuring Related** | Restructuring Prof exclud W&C / Blackstone | 2,372 | 4,000 | 2,104 |
| | LP Adequate Protection Payments | 6,250 | 6,250 | 6,250 |
| | **Total Uses** | **14,414** | **20,106** | **24,683** |
| | **LP Group Ending Cash Balance** | **311** | **-** | **-** |
| | TMI Beginning Cash Balance | 11,459 | 11,459 | - |
| | Use of TMI Cash | - | (11,459) | - |
| | **TMI Ending Cash Balance** | **11,459** | **-** | **-** |
| | **LP Group Ending Cash Balance including Cash at TMI** | **11,770** | **(6,993)** | **(30,417)** |



January 2014