**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| LIGHTSQUARED INC., _et al.,_, | ) |
| | ) Case No. 12-12080 (SCC) |
| Debtors.[1] | ) |
| | ) Jointly Administered |
| | ) |
| | ) |

_____

### FINAL ORDER (A) AUTHORIZING LP DIP OBLIGORS TO OBTAIN SUPERPRIORITY SENIOR SECURED PRIMING POSTPETITION FINANCING, (B) GRANTING SUPERPRIORITY LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (C) GRANTING ADEQUATE PROTECTION, AND (D) MODIFYING AUTOMATIC STAY

Upon the motion, dated January 17, 2014 [Docket No. 1237] (the "Motion"),[2] of

LightSquared Inc. and certain of its affiliates, as debtors and debtors in possession (collectively,

the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), for entry of an

order pursuant to sections 105, 361, 362, 363(c), 364(d), and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are:  LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

[2]     Terms used but not otherwise defined herein shall have the meanings given them, as applicable, in (a) Annex A hereto and (b) the _Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay_ [Docket No. 544] (the "First Cash Collateral Order" and, as amended and modified by (i) the _Order Amending Amended Agreed Final Order (A) Authorizing Debtors To Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay_ [Docket No. 1118] (the "First Order Amending First Cash Collateral Order"), and (ii) the _Order Further Amending Amended Agreed Final Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and (C) Modifying Automatic Stay_ (the "Second Order Amending First Cash Collateral Order") and, as so amended, the "Final Cash Collateral Order").

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), *inter alia*:

   (i)  authorizing LightSquared LP (the "LP DIP Borrower") to obtain, and each existing and future, direct or indirect, subsidiary of the LP DIP Borrower (collectively, the "LP DIP Guarantors" and, together with the LP DIP Borrower, the "LP DIP Obligors") to unconditionally guarantee, jointly and severally, the LP DIP Borrower's obligations in respect of senior secured, priming, superpriority postpetition financing (the "LP DIP Facility" and, the loans made thereunder, the "LP DIP Loans") made available by certain members of the ad hoc group of Prepetition LP Lenders (the "Ad Hoc LP Secured Group"), including Capital Research and Management Company, Cyrus Capital Partners, L.P., on behalf of its affiliates' managed funds and/or accounts, and Intermarket Corp., as well as by Solus Alternative Asset Management LP, Fortress Credit Corp., on behalf of its affiliates' managed funds and/or accounts, fund entities managed by Aurelius Capital Management, LP, and SP Special Opportunities, LLC (each of the foregoing, an "LP DIP Lender" and, collectively, the "LP DIP Lenders"), pursuant to the terms and conditions of this order (this "Order"), including (i) the terms and conditions set forth in Annex A hereto, (ii) the budget prepared by the Debtors and annexed hereto as Annex B (as updated from time to time pursuant to, and in accordance with, the terms of this Order, the "LP DIP Budget"), and (iii) the other LP DIP Credit Documents (as defined below);

   (ii)  authorizing and directing the LP DIP Obligors to execute and deliver, and perform under, (A) the terms of the LP DIP Facility as set forth in this Order, (B) the

related Notes (as defined below), substantially in the form annexed hereto as <u>Annex C</u>, to be issued in favor of each LP DIP Lender by the LP DIP Borrower, each in the original principal amount equal to the LP DIP Loan made by such LP DIP Lender as set forth in the "LP DIP Loan Allocation Schedule" set forth on <u>Schedule 1</u> to <u>Annex A</u>, and (C) the related "LP DIP Obligor Guaranty," substantially in the form annexed hereto as <u>Annex D</u> (this Order, the Notes, and each LP DIP Obligor Guaranty, collectively, the "<u>LP DIP Credit Documents</u>"), and to perform such other acts as may be necessary or desirable in connection with the LP DIP Facility;

(iii)    granting to the LP DIP Lenders allowed superpriority administrative expense claims (the "<u>LP DIP Superpriority Claims</u>") with priority over all other allowed chapter 11 and chapter 7 administrative expense claims, including the expenses of any chapter 7 trustee or chapter 11 trustee and the adequate protection claims and liens granted to the Prepetition LP Secured Parties under the Final Cash Collateral Order, in each of the LP DIP Obligors' Chapter 11 Cases in respect of the LP DIP Obligations;

(iv)    granting to the LP DIP Lenders automatically perfected first priority priming security interests in, and liens on, all of the LP DIP Collateral (as defined below) in accordance with the terms set forth herein;

(v)    authorizing the LP DIP Obligors to pay the principal, interest (including, without limit, interest paid in kind), fees, expenses, and other liabilities and amounts payable, as set forth herein, including, without limitation, under each of the LP DIP Credit Documents, as they become due, all to the extent provided by, and in accordance with, the terms of this Order and the LP DIP Credit Documents, as applicable;

3

(vi)    reaffirming and confirming the adequate protection to the Prepetition LP Secured Parties for any Diminution in Value of their respective interests in the Prepetition LP Collateral (as defined in Annex A) through April 15, 2014 as provided in the Final Cash Collateral Order; and

(vii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the LP DIP Facility and this Order.

The Court (as defined below) having considered the Motion, the terms of the LP DIP Facility, the Second Order Amending First Cash Collateral Order, and the evidence submitted at the hearing held before this Court on February 4, 2014 (the "Hearing"), and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules, due and proper notice of the Motion and the Hearing having been given; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, and their estates and essential for the continued maintenance and preservation of the Debtors' assets and property; and all objections, if any, to the entry of this Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.  On May 14, 2012 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").

4

B.    **Debtors in Possession**.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Chapter 11 Cases and property affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**.  As of the date hereof, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed a statutory committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

E.    **Notice**.  Notice of the Hearing and the relief requested in the Motion has been provided by the Debtors, by telecopy, email, overnight courier and/or hand delivery, to (a) the U.S. Trustee, (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), (c) counsel to the agents under the Debtors' prepetition credit facilities, (d) counsel to U.S. Bank National Association and MAST Capital Management, LLC, (e) counsel to Harbinger Capital Partners, LLC, (f) the Internal Revenue Service, (g) the United States Attorney for the Southern District of New York, (h) the Federal Communications Commission, (i) Industry Canada, and (j) all parties having filed a request for notice under Bankruptcy Rule 2002.  Under the circumstances, such notice of the Hearing and the relief requested in the Motion constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and the Local Rules.

F.    **Final Cash Collateral Order**.  On February 19, 2013, the Court entered the First

Cash Collateral Order, and, on December 20, 2013, the Court entered the First Order Amending

First Cash Collateral Order, which together provide for, among other things, the Debtors'

continued use of the Prepetition LP Collateral, including Cash Collateral, subject to the terms

contained therein, through January 31, 2014.  Substantially simultaneously with entry of this

Order, and as a prerequisite to the effectiveness of this Order, the Court will enter the Second

Order Amending First Cash Collateral Order, which, among other things, amends the First Cash

Collateral Order (as amended by the First Order Amending First Cash Collateral Order) by (i)

permitting the LP Debtors[3] to continue to use the Prepetition LP Collateral, including Cash

Collateral, through and including April 15, 2014, (ii) permitting the LP Debtors to continue to

make the Adequate Protection Payments on the terms set forth herein, (iii) allowing entry of this

Order and approval of the LP DIP Facility, and (iv) preserving for the benefit of the Prepetition

LP Secured Parties the LP Adequate Protection Liens and the LP Section 507(b) Claims.

G.    **Immediate Need for Postpetition Financing**.    The Debtors have requested

immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Good cause

has been shown for entry of this Order.  Since the Petition Date, the Debtors have been funding

their businesses and the Chapter 11 Cases through the use of, among other things, the Prepetition

LP Collateral, including Cash Collateral.  The Prepetition LP Lenders' Cash Collateral is largely

depleted.  In the absence of the availability of the LP DIP Facility in accordance with the terms

hereof, serious and irreparable harm to the LP Debtors and their estates and creditors would

---

[3]      "LP Debtors" means, collectively, LightSquared LP, ATC Technologies, LLC, LightSquared Corp.,
LightSquared Finance Co., LightSquared Network LLC, LightSquared Inc. of Virginia, LightSquared
Subsidiary LLC, SkyTerra Holdings (Canada) Inc., SkyTerra (Canada) Inc., Lightsquared Bermuda Ltd.,
LightSquared Investors Holdings Inc., TMI Communications Delaware, Limited Partnership, and
LightSquared GP Inc.

occur.  Further, any remaining possibility for confirmation of a chapter 11 plan would be at severe risk in the absence of the availability of funds in accordance with the terms of this Order.

H.    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain, on more favorable terms and conditions than those provided in this Order, (a) adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien.  The Debtors are unable to obtain credit for borrowed money without granting the LP DIP Liens and the LP DIP Superpriority Claim to (or for the benefit of) the LP DIP Lenders.

I.    **Use of Proceeds of LP DIP Facility, LP DIP Collateral**.  All proceeds of the LP DIP Facility and the LP DIP Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon (net of any amounts used to pay interest, fees, costs, expenses, and other liabilities payable under this Order or the Final Cash Collateral Order), shall be used and/or applied for the general corporate and working capital purposes of the LP Debtors in accordance with this Order for the types of expenditures set forth in the LP DIP Budget and for no other purpose, and to provide the LP Debtors with sufficient time and liquidity to confirm a chapter 11 plan of reorganization, all in accordance with the terms and conditions of this Order.

J.    **Extension of Financing**.  The LP DIP Lenders have indicated a willingness to provide financing to the LP DIP Obligors in accordance with the terms of this Order and the other LP DIP Credit Documents (as applicable), but only upon (i) the entry of this Order, including, without limitation, approval of the terms of the LP DIP Loans as set forth herein and

7

findings by this Court that the LP DIP Facility is essential to the LP Debtors' estates, that the LP

DIP Lenders are good faith financiers, and that their claims, superpriority claims, security

interests and liens, and other protections granted pursuant to this Order and the LP DIP Facility

(including the LP DIP Superpriority Claim and the LP DIP Liens) will not be affected by any

subsequent reversal, modification, vacatur, or amendment of, as the case may be, this Order, the

Second Order Amending First Cash Collateral Order, or the Final Cash Collateral Order, as

provided in section 364(e) of the Bankruptcy Code, (ii) the entry of the Second Order Amending

First Cash Collateral Order, (iii) the execution and delivery of the Notes and the LP DIP Obligor

Guaranties by each applicable LP DIP Obligor, (iv) delivery of certificates, if any, evidencing

equity ownership in the Additional LP Subsidiary Guarantors (as defined below), together with

undated stock powers therefor, executed in blank, to the Prepetition LP Collateral Trustee, (v)

the payment of LP DIP Professional Fees (as defined below) as and to the extent provided for

herein, and (vi) entry of an order in form and substance acceptable to the LP DIP Lenders by the

Canadian Court in connection with the Canadian Proceedings recognizing the entry of this Order

and authorizing such LP DIP Obligors to enter into the LP DIP Facility and perform its

obligations thereunder (the "Canadian Recognition Order").

K.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)      The terms and conditions of the LP DIP Facility, and the principal, interest

(including, without limit, interest paid in kind), fees, expenses, and other liabilities paid and to be

paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are

supported by reasonably equivalent value and consideration;

(ii)    The LP DIP Facility was negotiated in good faith and at arm's length among the Debtors and the LP DIP Lenders; and

(iii)    The proceeds of the LP DIP Loans shall be so extended in good faith and for valid business purposes and uses, as a consequence of which the LP DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

L.    **Other Findings and Conclusions Regarding LP DIP Lenders**.

(i)    <u>Indemnity</u>.  The LP DIP Lenders have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with, or related in any way to, negotiating, implementing, documenting, or obtaining requisite approvals of the LP DIP Facility, including in respect of the granting of the LP DIP Liens, any challenges or objections to the LP DIP Facility, and all documents related to and all transactions contemplated by the foregoing.  Accordingly, the LP DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto.  No exception or defense in contract, law, or equity exists as to any obligation (contractual or legal) to indemnify and/or hold harmless any of the LP DIP Lenders, and any such defenses are hereby waived, except to the extent resulting from the applicable LP DIP Lender's gross negligence or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction.

(ii)    <u>No Control</u>.  None of the LP DIP Lenders are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the LP DIP Facility and/or the LP DIP Credit Documents.

(iii)    <u>No Claims, Causes of Action</u>.  As of the date hereof, there exist no claims or causes of action against any of the LP DIP Lenders with respect to, in connection with, related to, or arising from the LP DIP Facility that may be asserted by the Debtors or any other person or entity.

(iv)    <u>Release</u>.  The LP DIP Obligors forever and irrevocably release, discharge, and acquit each of the LP DIP Lenders, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, in each case arising out of, in connection with, or relating to the LP DIP Facility and/or the LP DIP Credit Documents, including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses with respect to or relating to the LP DIP Obligations, LP DIP Liens, or LP DIP Facility, as applicable, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims with respect to the validity, priority, perfection, or avoidability of the liens or secured claims of the LP DIP Lenders.

M.    **Relief Essential; Best Interests**.  The relief requested in the Motion (and provided in this Order) is necessary, essential, and appropriate for the continued management and preservation of the Debtors' assets and property and to preserve any remaining possibility of confirming a chapter 11 plan.  It is in the best interest of the Debtors' estates that the LP DIP Obligors be allowed to enter into the LP DIP Facility and incur the LP DIP Obligations.

N.  **Adequate Protection for Prepetition LP Secured Parties**.  The Prepetition LP

Agent and the other Prepetition LP Secured Parties are entitled to adequate protection for the

priming of their liens and the other rights granted to the LP DIP Lenders hereunder.  The

adequate protection provided to the Prepetition LP Secured Parties in the Final Cash Collateral

Order is sufficient adequate protection of the interests of the Prepetition LP Secured Parties, and

is fair, reasonable, and sufficiently reflects that the Debtors have exercised prudent business

judgment in agreeing to this Order and entering into the LP DIP Facility.  Nothing in this Order

shall be construed as a consent by any Prepetition LP Secured Party that it would be adequately

protected in the event of any alternative debtor in possession financing or for any purposes in the

Chapter 11 Cases other than entry of this Order.

NOW, THEREFORE, on the Motion of the Debtors and the record before this

Court with respect to the Motion, including the record made during the Hearing, and good and

sufficient cause appearing therefor,

IT IS ORDERED that:

1.  **Motion Granted**.  The Motion is granted on a final basis in accordance with the

terms and conditions set forth in this Order.  Any objections to the Motion, to the extent not

withdrawn, waived, or otherwise resolved, are hereby denied and overruled.

2.  **LP DIP Facility**.

(a)  **LP DIP Obligations; Availability and Final Maturity Date, etc.**  The

LP DIP Obligors are hereby expressly and immediately authorized and directed to enter into the

LP DIP Facility, to borrow the LP DIP Loans, and to incur and to perform the LP DIP

Obligations in accordance with and subject to this Order and, as applicable, any other LP DIP

Credit Documents, to execute and/or deliver any LP DIP Credit Documents and, as provided

herein, all other instruments, certificates, agreements, and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the LP DIP Obligors under the LP DIP Facility, including the creation and perfection of the LP DIP Liens described and provided for herein.  The LP DIP Obligors are hereby authorized and directed to pay all principal of the LP DIP Loans, interest thereon (including, without limitation, accrued but unpaid interest and interest paid in kind), fees and expenses, indemnities, and other amounts described herein and, as applicable, in the other LP DIP Credit Documents, as such shall accrue and become due hereunder or thereunder, including, without limitation, the LP DIP Professional Fees, as and to the extent provided for herein (collectively, all loans, advances, extensions of credit, financial accommodations, interest, fees (including the LP DIP Professional Fees as and to the extent provided for herein), expenses, and other liabilities and obligations (including indemnities and similar obligations) in respect of the LP DIP Facility and the LP DIP Credit Documents, the "LP DIP Obligations").  Interest on the LP DIP Loans shall accrue at the rates and be paid as set forth in Annex A hereto.  The LP DIP Credit Documents and all LP DIP Obligations are hereby, and shall represent, constitute, and evidence, as the case may be, valid and binding obligations of the LP DIP Obligors, enforceable against the LP DIP Obligors, their estates, and any successors thereto in accordance with their terms.  The term of the LP DIP Facility shall commence on the date all of the conditions precedent set forth in subparagraph (c) of this paragraph 2 are satisfied and end on April 15, 2014 or, if sooner, the effective date of any plan of reorganization confirmed in the LP Debtors' Chapter 11 Cases (the "Final Maturity Date"), subject to the terms and conditions set forth herein and in the other LP DIP Credit Documents, including the protections afforded a party acting in good faith under section 364(e) of the Bankruptcy Code.  On the Final Maturity Date, all LP DIP Obligations shall be paid in full

and in cash in U.S. dollars, and to each LP DIP Lender in accordance with its Relevant

Percentage in accordance with payment instructions provided by each LP DIP Lender.

(b)    **Authorization To Borrow; Guarantees, etc**.  Subject to the terms and

conditions of this Order and the other LP DIP Credit Documents (including the LP DIP Budget),

the LP DIP Borrower is hereby authorized and directed to borrow the LP DIP Loans under the

LP DIP Facility, and the LP DIP Borrower and such other LP DIP Obligors are authorized and

are hereby deemed to, and shall, guarantee repayment of the LP DIP Loans and all other LP DIP

Obligations, up to an aggregate principal amount of $33,000,000, plus all interest (including,

without limitation, interest paid in kind), fees, expenses, and all other liabilities and obligations

constituting LP DIP Obligations under the LP DIP Credit Agreement, in each case, without any

right of notice, presentment, setoff, or waiver.

(c)    **Conditions Precedent**.  No LP DIP Lender shall have any obligation to

make its LP DIP Loan or any other financial accommodation hereunder or under the other LP

DIP Credit Documents (and the LP DIP Borrower shall not make any request therefor) unless all

of the following conditions precedent to making LP DIP Loan have been satisfied: (i) the entry

of this Order, including, without limitation, approval of the terms of the LP DIP Loans as set

forth herein, (ii) the entry of the Second Order Amending First Cash Collateral Order, (iii) the

execution and delivery of the Notes and the LP DIP Obligor Guaranties by each applicable LP

DIP Obligor, (iv) delivery of certificates, if any, evidencing equity ownership in the Additional

LP Subsidiary Guarantors, together with undated stock powers therefor, executed in blank, to the

Prepetition LP Collateral Trustee, (v) the payment of the LP DIP Professional Fees, as and to the

extent provided for herein, and (vi) the entry of the Canadian Recognition Order.

(d)    **LP DIP Collateral**.  As used herein, "LP DIP Collateral" shall mean all Prepetition LP Collateral (as defined in Annex A), including Cash Collateral of the Prepetition LP Secured Parties, of any LP DIP Obligor together with (i) all equity interests of any LP Debtor in LightSquared Finance Co., LightSquared Network LLC, and Lightsquared Bermuda Ltd. (together, the "Additional LP DIP Subsidiary Guarantors"), and (ii) all now owned or hereafter acquired assets and property, whether real or personal, tangible or intangible, of each of the Additional LP DIP Subsidiary Guarantors; provided, however, that the LP DIP Collateral shall not include any permit or license issued by a Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security interest in such permit, license, or other agreement.

(e)    **LP DIP Liens**.  Effective immediately upon the entry of this Order, and subject only to the LP Carve-Out (as defined in the Final Cash Collateral Order and as set forth more fully in this Order), the LP DIP Lenders are hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected, continuing, enforceable, and non-avoidable (all such liens and security interests granted hereby, the "LP DIP Liens"):

(I)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable first priority liens on and security interests in all LP DIP Collateral that was not encumbered by valid, enforceable, perfected, and non-avoidable liens as of the Petition Date;

(II)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable liens on and security interests in

14

(x) all LP DIP Collateral which is unencumbered by the Prepetition LP Liens but on which a third party, _i.e._, not the Prepetition LP Secured Parties (a "Third Party Lienholder"), had a pre-existing lien on the Petition Date and (y) all LP DIP Collateral encumbered by the Prepetition LP Liens and LP Adequate Protection Liens on which a Third Party Lienholder had a pre-existing lien on the Petition Date that was senior to the Prepetition LP Liens, in each case junior only to any such liens and security interests of Third Party Lienholders, but solely to the extent that such liens and security interests of Third Party Lienholders were in each case valid, enforceable, perfected, and non-avoidable as of the Petition Date and were permitted by the terms of the Prepetition LP Credit Documents (the "Senior Third Party Liens"); and

(III)   pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, perfected, and non-avoidable liens on and security interests in all Prepetition LP Collateral of the LP DIP Obligors, which liens and security interests shall be senior to and prime the Prepetition LP Liens and any LP Adequate Protection Liens.

(f)   **Other Provisions Relating to LP DIP Liens**.  The LP DIP Liens shall secure all of the LP DIP Obligations.  The LP DIP Liens shall not, without the consent of each of the LP DIP Lenders, be made subject to, or _pari passu_ with, any other lien or security interest, other than to the extent expressly provided herein and to the LP Carve-Out, by any court order heretofore or hereafter entered in the Chapter 11 Cases of any of the LP DIP Obligors, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases of any of the LP

DIP Obligors, upon the conversion of any of the Chapter 11 Cases of any of the LP DIP Obligors

to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of

the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any

of the Chapter 11 Cases of any of the LP DIP Obligors.  The LP DIP Liens shall not be subject to

sections 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of

section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code.

(g)     **Superpriority Administrative Claim Status**.  The LP DIP Obligations

shall, pursuant to section 364(c)(1) of the Bankruptcy Code, at all times constitute an LP DIP

Superpriority Claim, and be payable from and have recourse to all LP DIP Collateral.  The LP

DIP Superpriority Claim shall be subject and subordinate only to the LP Carve-Out.  Other than

to the extent expressly provided herein, and with respect to the LP Carve-Out, no costs or

expenses of administration, including, without limitation, any LP Section 507(b) Claim granted

under the Final Cash Collateral Order or hereunder or any professional fees allowed and payable

under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be

incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be,

senior to, prior to, or *pari passu* with the LP DIP Superpriority Claim or any of the LP DIP

Obligations, or with any other claims of the LP DIP Lenders arising hereunder, under the other

LP DIP Credit Documents, or otherwise in connection with the LP DIP Facility.

3.     **Authorization and Approval To Use Proceeds of LP DIP Facility**.

(a)     Subject to the terms and conditions of this Order and the other LP DIP

Credit Documents, and to the adequate protection granted to or for the benefit of the Prepetition

LP Secured Parties as hereinafter set forth, each LP DIP Obligor is authorized to request and use

proceeds of the LP DIP Loans, in each case only for the purposes specifically set forth in this

Order and for the types of expenditures set forth in the LP DIP Budget, for (a) working capital and other general corporate purposes and (b) permitted payment of costs of administration of the LP Debtors' Chapter 11 Cases in order to provide the LP Debtors with sufficient time and liquidity to confirm a plan of reorganization.

(b)    Notwithstanding anything herein to the contrary, the LP DIP Obligors' right to use proceeds of LP DIP Loans shall terminate on the Final Maturity Date.

(c)    Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

(d)    Except as permitted by this Order and the LP DIP Budget, the LP DIP Obligors shall not make any payment on any prepetition indebtedness or obligations other than those authorized by the Court in accordance with orders entered into, on, or prior to the date hereof.

4.    **Adequate Protection for Prepetition Secured Parties**.  Pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LP Agent and the Prepetition LP Secured Parties in the Prepetition LP Collateral (including Cash Collateral) against any Diminution in Value, the Prepetition LP Agent, for the benefit of the Prepetition LP Secured Parties, shall continue to receive adequate protection in the form of the LP Adequate Protection Liens, the LP Section 507(b) Claims, and the LP Adequate Protection Payments (including payment of the LP Professional Fees), in each case, pursuant to and as more fully set forth in the Final Cash Collateral Order.

5.    **Monitoring of Collateral**.  The LP DIP Lenders, by their respective consultants and advisors, shall, consistent with past practices, be given reasonable access to the Debtors'

books, records, assets, and properties for purposes of monitoring the LP Debtors' businesses and the value of the LP DIP Collateral, and shall be granted reasonable access to the Debtors' senior management.

6.      **Financial and Other Reporting**.

On Wednesday (or in the event such Wednesday is not a business day, the first business day thereafter) of each week, the LP Debtors will provide Willkie Farr & Gallagher LLP, Blackstone, and White & Case LLP (who shall reasonably promptly forward such information to each of the LP DIP Lenders at substantially the same time) with (a) cash balances as of the last day of the prior week and (b) a summary of material or key expenditures by category during the prior week.  On the tenth (10th) day of each month or the first business day thereafter, the LP Debtors will provide Willkie Farr & Gallagher LLP, Blackstone, and White & Case LLP (who shall reasonably promptly forward such information to each of the LP DIP Lenders at substantially the same time) with (x) a reconciliation of revenues generated and expenditures made during the prior month and cumulatively during the Chapter 11 Cases, together with a comparison of such amounts to the amounts projected in the LP DIP Budget and (y) an update of the LP DIP Budget through April 2014 (for forecasting and informational purposes only).  In addition, the Debtors shall provide Blackstone and White & Case LLP with any and all other financial information made available to the Prepetition LP Agent or Ad Hoc LP Secured Group pursuant to the Final Cash Collateral Order.

7.      **LP DIP Lien Perfection**.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the LP DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other

18

action to validate or perfect the LP DIP Liens or to entitle the LP DIP Liens to the priorities granted herein. To the extent that the Prepetition LP Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any LP DIP Credit Document, the LP DIP Lenders are also deemed to be secured parties under such account control agreements, loss payees under the Debtors' insurance policies, and the secured parties under each such LP DIP Credit Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Order and the other LP DIP Credit Documents. The Prepetition LP Collateral Trustee shall serve as the agent for the LP DIP Lenders for the purpose of perfecting their respective security interests and liens on all LP DIP Collateral that is of a type whereby perfection of a security interest therein may be accomplished only by possession or control by a secured party.

8. **LP Carve-Out**. Subject to the terms and conditions contained in this paragraph, upon the occurrence of the Final Maturity Date, the LP DIP Liens and the LP DIP Superpriority Claim, which have the relative lien and payment priorities as set forth herein, shall, in any event, be subject and subordinate to the LP Carve-Out, without duplication. No portion of the LP Carve-Out and no proceeds of the LP DIP Facility or LP DIP Loans may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the challenge of, any of the LP DIP Liens or the LP DIP Superpriority Claim.

9. **Payment of Compensation**. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or shall limit or otherwise affect the right of the LP DIP Lenders and/or the Prepetition LP Secured Parties to

19

object to the allowance and payment of any such fees and expenses.  The LP Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code and in accordance with the LP DIP Budget, as the same may be due and payable and the same shall not reduce the LP Carve-Out.

10.    **Section 506(c) Claims**.  Except to the extent of the LP Carve-Out, no expenses of the administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the LP DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the LP DIP Lenders, and no such consent shall be implied from any other action or inaction by the LP DIP Lenders.

11.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders**. Without limiting, and subject to, any other provisions of this Order, there shall not be entered in the Chapter 11 Cases of any LP DIP Obligor, or in any Successor Case, any order which authorizes (a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the LP DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Order to or for the benefit of the LP DIP Lenders or the Prepetition LP Secured Parties; (b) the use of Cash Collateral for any purpose other than as set forth in the Final Cash Collateral Order or the LP DIP Budget; (c) any LP DIP Obligor to incur, create, assume, guarantee, or permit to exist, directly or indirectly, any additional indebtedness, except (i) indebtedness incurred under this Order and the other LP DIP Credit Documents, (ii) indebtedness existing on the date of this Order and additional indebtedness accrued thereon in

20

accordance with the terms of such indebtedness, or (iii) indebtedness incurred in the ordinary

course and not for borrowed money, which would not be senior in right of payment to the LP

DIP Obligations; or (d) any LP DIP Obligor to create, incur, assume, or permit to exist, directly

or indirectly, any lien on any property now owned or hereafter acquired by it or on any income

or revenues or rights in respect of any thereof, except (i) liens granted pursuant to this Order or

the other LP DIP Credit Documents, (ii) any lien in existence on the date of this Order, and

(iii) liens incurred in the ordinary course and which do not secure indebtedness for borrowed

money, which would be junior to the LP DIP Liens.

12.    **Proceeds of Subsequent Financing**.    Without limiting the provisions and

protections of paragraph 11 above, if at any time prior to the indefeasible repayment and

satisfaction in full in cash of all LP DIP Obligations, the LP DIP Obligors' estates, any trustee,

any examiner with enlarged powers, or any responsible officer subsequently appointed shall

obtain credit or incur debt in violation of this Order or the other LP DIP Credit Documents, then

all of the cash proceeds derived from such credit or debt shall immediately be turned over to the

LP DIP Lenders for application in accordance with this Order.

13.    **Cash Management**.    Until the payment in full in cash of all LP DIP Obligations,

the LP DIP Obligors shall maintain the cash management system as set forth in the *Final Order

(A) Authorizing Debtors To (I) Continue Using Existing Cash Management Systems, Bank

Accounts and Business Forms and (II) Continue Intercompany Transactions, (B) Providing

Postpetition Intercompany Claims Administrative Expense Priority, (C) Authorizing Debtors'

Banks To Honor All Related Payment Requests, and (D) Waiving Investment Guidelines of

Section 345(b) of Bankruptcy Code* [Docket No. 115] (the "Cash Management Order"), or as

otherwise required by the LP DIP Credit Documents.    To the extent the Debtors are required to

give notice to any party as set forth in the Cash Management Order, such notice shall also be given to each of counsel to the LP DIP Lenders and the Ad Hoc LP Secured Group. The LP DIP Lenders shall be deemed to have "control" over the LP DIP Obligors' cash management accounts for all purposes of perfection under the Uniform Commercial Code. All amounts collected in the cash collection accounts of the LP DIP Obligors may be used and applied in accordance with this Order.

14.    **Disposition of LP DIP Collateral**. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the LP DIP Collateral outside of the ordinary course of business unless approved by the Court, subject to the right of any party in interest to object.

15.    **Termination of Automatic Stay; Rights and Remedies Following Final Maturity Date**.

(a)    The authorization of the LP DIP Obligors to use the proceeds of the LP DIP Facility under this Order shall terminate on the Final Maturity Date.

(b)    Any automatic stay otherwise applicable to the LP DIP Lenders in connection with the LP DIP Facility is hereby modified so that, following the Final Maturity Date, the LP DIP Lenders shall be immediately entitled to exercise all of their rights and remedies in respect of the LP DIP Collateral, in accordance with this Order and/or the other LP DIP Credit Documents, as applicable.

(c)    Following the occurrence of the Final Maturity Date, if the LP DIP Obligations have not been indefeasibly paid in full in cash, the LP DIP Lenders are authorized to exercise all remedies and proceed under or pursuant to the applicable LP DIP Credit Documents (which, for the avoidance of doubt, shall be consistent with and incorporate, *mutatis mutandis* to

22

make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents) or under applicable law, including the Uniform Commercial Code. All proceeds realized in connection with the exercise of the rights and remedies of the applicable LP DIP Lenders shall be turned over and applied in accordance with this Order.

(d)    The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the LP DIP Credit Documents as necessary to (i) permit the LP DIP Obligors to grant LP DIP Liens and to incur all LP DIP Obligations and all liabilities and obligations to the LP DIP Lenders hereunder and under the other LP DIP Credit Documents, as the case may be, and (ii) authorize the LP DIP Lenders to retain and apply payments and otherwise enforce their respective rights and remedies hereunder.

(e)    Notwithstanding anything in this Order to the contrary, the Prepetition LP Agent shall not be permitted to exercise any rights or remedies for itself or the Prepetition LP Secured Parties unless and until the LP DIP Obligations are indefeasibly paid and satisfied in full in cash.

16.    **Applications of Proceeds of Collateral, Payments, and Collections**.

Subject to the LP Carve-Out, upon and after the occurrence of the Final Maturity Date, each LP DIP Obligor has agreed that proceeds of any LP DIP Collateral, any amounts held on account of the LP DIP Collateral, and all payments and collections received by the LP DIP Obligors with respect to all proceeds of LP DIP Collateral and all unexpended proceeds of the LP DIP Loans, shall be used and applied to permanently and indefeasibly repay and reduce all LP DIP Obligations then due and owing in accordance with the LP DIP Credit Documents, until paid and satisfied in full in cash. No asset or property of the LP DIP Obligors may be sold,

leased, or otherwise disposed of by any Debtor outside the ordinary course of business absent an order of the Court (and subject to the right to object of any party in interest), and in any event, all proceeds of such sale, lease, or disposition shall be indefeasibly applied to repay the LP DIP Obligations as provided herein.

17.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of Order**.  Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the LP DIP Facility as approved by this Order, in the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the LP DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment, or vacatur shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment, or vacatur, any claim granted to the LP DIP Lenders hereunder arising prior to the effective date of such modification, amendment, or vacatur of any LP DIP Liens or of the LP DIP Superpriority Claim granted to or for the benefit of the LP DIP Lenders shall be governed in all respects by the original provisions of this Order, and the LP DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits, including the LP DIP Liens and the LP DIP Superpriority Claim granted herein, with respect to any such claim.  Because the LP DIP Loans are made in reliance on this Order, the LP DIP Obligations incurred by the LP DIP Obligors or owed the LP DIP Lenders prior to the effective date of any stay, modification, or vacatur of this Order shall not, as a result of any subsequent order in the Chapter 11 Cases of any LP DIP Obligor or in any Successor Cases, be

24

subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the LP DIP Lenders under this Order.

          (b)     **Expenses**.  The LP DIP Obligors shall pay all expenses incurred by the LP DIP Lenders (including, without limitation, the reasonable and documented fees and disbursements of their counsel, any other local or foreign counsel that they shall retain, and any internal or third-party appraisers, consultants, financial, restructuring, or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding, and administration of the LP DIP Credit Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the LP DIP Credit Documents and all expenses of the LP DIP Lenders directly arising from the Motion (including, without limitation, expenses and attorney's fees associated with the preparation and filing of objections and other responsive pleadings relating to the Motion and preparation for, and attendance at, any depositions taken in connection therewith), (ii) the administration of the LP DIP Credit Documents, or (iii) enforcement of any rights or remedies under this Order or the LP DIP Credit Documents, in each case whether or not the transactions contemplated hereby are fully consummated (collectively, the "LP DIP Professional Fees"), which shall not exceed $250,000 in the aggregate; provided, however, that, to the extent the LP DIP Professional Fees exceed $250,000 in the aggregate, such excess amounts shall be paid as LP Professional Fees under, and in accordance with, the Final Cash Collateral Order.[4]  The LP DIP Lenders, and their advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted, if necessary, for privileged,

---

[4]     Nothing herein shall impact the payment of the LP Professional Fees under, and in accordance with, the Final Cash Collateral Order.

confidential, or otherwise sensitive information) to the Office of the U.S. Trustee and counsel for

the Debtors.   Within ten (10) days of presentment of and further statements, if no written

objections to the reasonableness of the fees and expenses charged in any such invoice (or portion

thereof) is made, the LP DIP Obligors shall promptly pay in cash all such fees and expenses of

the LP DIP Lenders and their advisors and professionals, subject to the limitations set forth in

this Order.   Any objection to the payment of such fees or expenses shall be made only on the

basis of "reasonableness," and shall specify in writing the amount of the contested fees and

expenses and the detailed basis for such objection.   To the extent an objection only contests a

portion of an invoice, the undisputed portion thereof shall be promptly paid.   If any such

objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the

Debtors or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to

the Court for a determination as to the reasonableness of the relevant disputed fees and expenses

set forth in the invoice.   This Court shall resolve any dispute as to the reasonableness of any fees

and expenses.   For the avoidance of doubt, and without limiting any of the foregoing or any other

provision of this Order, all fees and expenses are, upon entry of this Order and irrespective of

any subsequent order approving or denying the LP DIP Facility or any other financing pursuant

to section 364 of the Bankruptcy Code, fully entitled to all protections of section 364(e) of the

Bankruptcy Code and are deemed fully earned, indefeasibly paid, non-refundable, irrevocable,

and non-avoidable as of the date of this Order.

> (c)   **Binding Effect**.   The provisions of this Order shall be binding upon and

inure to the benefit of the LP DIP Lenders, the Debtors, and their respective successors and

assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of

the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

(d)    **No Waiver**.  The failure of the LP DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Order or any other LP DIP Credit Documents or under applicable law or otherwise, as applicable, shall not constitute a waiver of any of the LP DIP Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses, or remedies of the LP DIP Lenders under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the LP DIP Lenders to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) on behalf of the LP DIP Lenders.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party, or incidental beneficiary.

(f)    **No Marshaling**.  The LP DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the LP DIP Collateral.

(g)    **Section 552(b)**.  The LP DIP Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case"

27

exception under section 552(b) of the Bankruptcy Code shall not apply to the LP DIP Lenders or

the Prepetition LP Secured Parties with respect to proceeds, product, offspring, or profits of any

of the Prepetition LP Collateral or the LP DIP Collateral.

(h)    **Credit Bid Rights.**  The LP DIP Lenders shall have the right to "credit

bid" the LP DIP Obligations during any sale of any of the LP DIP Collateral or Prepetition LP

Collateral of the LP DIP Obligors, as applicable, including, without limitation, in connection

with sales occurring pursuant to Bankruptcy Code section 363 or included as part of any plan

subject to confirmation under Bankruptcy Code section 1129.

(i)    **Amendment**.  No provision of the LP DIP Credit Documents may be

amended, modified, supplemented, altered, or waived.

(j)    **Priority of Terms**.  To the extent of any conflict between or among (i) the

express terms or provisions of any of the Motion, any other order of this Court, or any other

agreements, on the one hand, and (ii) the express terms and provisions of this Order, on the other

hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in"

another order of this Court or agreement, the terms and provisions of this Order shall govern.

(k)    **Survival of Order**.  The provisions of this Order and any actions taken

pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in

the Chapter 11 Cases of any LP DIP Obligor, (ii) converting any of the Chapter 11 Cases of any

LP DIP Obligor to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized

by applicable law, dismissing any of the Chapter 11 Cases of any LP DIP Obligor, (iv)

withdrawing of the reference of any of the Chapter 11 Cases of any LP DIP Obligor from this

Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the

Chapter 11 Cases of any LP DIP Obligor in this Court.  The terms and provisions of this Order,

including the LP DIP Liens and LP DIP Superpriority Claim granted pursuant to this Order, and any protections granted to or for the benefit of the LP DIP Lenders, shall continue in full force and effect notwithstanding the entry of such order, and such LP DIP Liens and LP DIP Superpriority Claims shall maintain their priority as provided by this Order and the other LP DIP Credit Documents until all of the LP DIP Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

(l)    **Enforceability**.    This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m)    **No Waivers or Modification of Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Order.

(n)    **Waiver of any Applicable Stay**.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Order.

(o)    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: February 4, 2014
New York, New York

*/s/ Shelley C. Chapman*
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

## ANNEX A

## LP DIP FACILITY TERMS AND CONDITIONS

This Annex A is the "Annex A" referenced in the Order to which it is attached and shall constitute, and form a part of, the Order.

**1.** Terms of Borrowing.

(a)    Subject to the terms and conditions of this Order, the LP DIP Lenders agree, severally and not jointly, to make LP DIP Loans to LP DIP Borrower upon the satisfaction of the conditions precedent set forth in paragraph 2(a) of this Order, in an aggregate principal amount not to exceed its Relevant Percentage of $33,000,000; provided, that no LP DIP Lender shall be responsible for the failure of any other LP DIP Lender to make any LP DIP Loan required to be made by such other LP DIP Lender).

(b)    Each LP DIP Lender shall make each LP DIP Loan to be made by it hereunder by wire transfer of immediately available funds to an account directed by LP DIP Borrower in writing.

(c)    The LP DIP Loans shall be prepayable at any time without make-whole or premium.  Amounts paid or prepaid in respect of LP DIP Loans may not be reborrowed.

**2.** Interest on LP DIP Loans.

(a)    Subject to the provisions of Section 2(b) below, the LP DIP Loans shall bear interest at a rate *per annum* equal to 15.0%, payable in kind (the "PIK Interest"), by adding such accrued and unpaid interest to the unpaid principal amount of the LP DIP Loans on a monthly basis (whereupon from and after such date such additional amounts shall also accrue interest pursuant to this Section 2).  All such PIK Interest so added shall be treated as principal of the LP DIP Loans for all purposes of this Order.  The obligation of LP DIP Borrower to pay all such PIK Interest so added shall be automatically evidenced by this Order, and, if applicable, any applicable Notes.

(b)    Default Rate.  Notwithstanding the foregoing, after the Final Maturity Date, the LP DIP Obligations shall, to the extent permitted by applicable law, bear interest, after as well as before judgment, at a rate per annum equal to 2% *plus* the rate otherwise applicable to the LP DIP Loans as provided in Section 2(a).

(c)    Interest Payment Dates.  Accrued interest on each LP DIP Loan shall be payable on the Final Maturity Date for such LP DIP Loan; provided, that (i) interest accrued pursuant to Section 2(b) shall be payable on demand and (ii) in the event of any repayment or prepayment of any LP DIP Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment.

(d)    <u>Interest Calculation</u>.  All interest hereunder shall be computed on the basis of a year of 360 days and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

(e)    <u>*Interest Act* (Canada)</u>.  For the purposes of the *Interest Act* (Canada) and disclosure thereunder, in any case in which an interest or fee rate is stated in this Order to be calculated on the basis of a number of days that is other than the number in a calendar year, the yearly rate to which such interest or fee rate is equivalent is equal to such interest or fee rate multiplied by the actual number of days in the year in which the relevant interest or fee payment accrues and divided by the number of days used as the basis for such calculation.

(f)    <u>No Criminal Rate of Interest</u>.  If any provision of this Order would oblige a Canadian LP DIP Obligor to make any payment of interest or other amount payable to any LP DIP Lender in an amount or calculated at a rate which would be prohibited by any applicable law or would result in a receipt by that LP DIP Lender of "interest" at a "criminal rate" (as such terms are construed under the *Criminal Code* (Canada)), then, notwithstanding such provision, such amount or rate shall be deemed to have been adjusted with retroactive effect to the maximum amount or rate of interest, as the case may be, as would not be so prohibited by applicable law or so result in a receipt by that LP DIP Lender of "interest" at a "criminal rate," such adjustment to be effected, to the extent necessary (but only to the extent necessary), as follows:

i.    first, by reducing the amount or rate of interest required to be paid to the affected LP DIP Lender; and

ii.    thereafter, by reducing any fees, commissions, costs, expenses, premiums and other amounts required to be paid to the affected LP DIP Lender which would constitute interest for purposes of section 347 of the *Criminal Code* (Canada).

**3.**    <u>Final Maturity Date</u>.

Following the Final Maturity Date, if the LP DIP Obligations have not been indefeasibly paid in full in cash, the full principal amount of the LP DIP Loans, together with accrued interest thereon and any unpaid accrued fees and all other LP DIP Obligations of LP DIP Obligors accrued hereunder and under any other LP DIP Credit Document, shall become forthwith due and payable, without presentment, demand, protest, or any other notice of any kind, all of which are hereby expressly waived by the LP DIP Obligors, anything contained herein or in any other LP DIP Credit Document to the contrary notwithstanding.  In addition, the automatic stay provided in section 362 of the Bankruptcy Code in connection with the LP DIP Facility shall be deemed automatically vacated without further action or order of the Court, and the LP DIP Lenders, shall be entitled, in their sole discretion, to enforce and exercise all of their respective rights and remedies under this Order and the other LP DIP Credit Documents (which, for the avoidance of doubt, shall be consistent with and incorporate, *mutatis mutandis* to make applicable to the LP DIP Lenders, the remedies available to the Prepetition LP Secured Parties under the Prepetition LP Credit Documents).

**4.** Application of Proceeds.

The proceeds received by the LP DIP Lenders in respect of any sale of, collection from, or other realization upon all or any part of the LP DIP Collateral pursuant to the exercise by such LP DIP Lenders of their remedies in accordance with this Order shall be applied, in full or in part, promptly by such LP DIP Lenders as follows:

 (a) First, to the payment of that portion of the LP DIP Obligations constituting fees, indemnities, costs, expenses (other than principal and interest but including the fees, costs, and disbursements of counsel) payable to the LP DIP Lenders under this Order (including the LP DIP Obligor Guaranty), ratably among them in proportion to the amounts described in this clause (a) payable to them;

 (b) Second, without duplication of amounts applied pursuant to clause (a) above, to the indefeasible payment in full in cash of that portion of the LP DIP Obligations constituting accrued and unpaid interest (excluding, for the avoidance of doubt, any PIK Interest) on the LP DIP Loans,, ratably among the LP DIP Lenders in proportion to the amounts described in this clause (b) payable to them;

 (c) Third, to the indefeasible payment in full in cash of that portion of the LP DIP Obligations constituting unpaid principal of the LP DIP Loans, ratably among the LP DIP Lenders in proportion to the amounts described in this clause (c) payable to them;

 (d) Fourth, to the indefeasible payment in full in cash of all other LP DIP Obligations that are due and payable to the LP DIP Lenders, ratably based upon the respective aggregate amounts of all such LP DIP Obligations owing to the LP DIP Lenders on such date; and

 (e) Fifth, the balance, if any, after all of the LP DIP Obligations then due and payable have been indefeasibly paid in full in cash, to the person lawfully entitled thereto (including the applicable LP DIP Obligor or its successors or assigns) or as a court of competent jurisdiction may direct.

In the event that any such proceeds are insufficient to pay in full the items described in clauses (a) through (d) of this Section 5, the LP DIP Obligors shall remain liable, jointly and severally, for any deficiency.

**5.** Amendments.

The Annexes to this Order and any other LP DIP Credit Documents (including this Order) may not be amended, modified, supplemented, altered, or waived.

**6.** Assignments.

No LP DIP Lender may assign or otherwise transfer any of its rights or obligations hereunder (including, without limitation, by granting participations in LP DIP Loans other than as set forth below).  Any attempted assignment or participation in violation of the preceding sentence shall be null and void.  Notwithstanding the foregoing, any LP DIP Lender may at any time, without

the consent of, or notice to, LP DIP Borrower or any other LP DIP Lender, sell participations to any person (other than a natural person, the LP DIP Borrower, or any of its Affiliates, or any Disqualified Company or an Affiliate thereof that is not a financial institution, private equity firm, bona fide debt fund, or hedge fund) (each, a "Participant") in all or a portion of such LP DIP Lender's rights and/or obligations under this Order (including all or a portion of the LP DIP Loans owing to it); provided, that (a) such LP DIP Lender's obligations under this Order shall remain unchanged, (b) such LP DIP Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, and (c) the LP DIP Borrower and the other LP DIP Lenders shall continue to deal solely and directly with such LP DIP Lender in connection with such LP DIP Lender's rights and obligations under this Order.   Any agreement or instrument pursuant to which a DIP LP Lender sells such a participation shall provide that the relevant participant shall not be permitted to sell sub-participations to any natural person, the LP DIP Borrower or any of its Affiliates or any Disqualified Company or an Affiliate thereof that is not a financial institution, private equity firm, bona fide debt fund, or hedge fund.

7.   Integration.

This Order, the other LP DIP Credit Documents, and the Final Cash Collateral Order constitute the entire contract among the LP DIP Obligors and the LP DIP Lenders relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

8.   Governing Law; Jurisdiction; Venue.

(a)     Governing Law.  This Order and each other LP DIP Credit Document, and the transactions contemplated hereby and thereby, and all disputes between the LP DIP Obligors and the LP DIP Lenders under or relating to this Order or any other LP DIP Credit Document or the facts or circumstances leading to its or their execution, whether in contract, tort or otherwise, shall be construed in accordance with, and governed by, the laws (including statutes of limitation) of the State of New York (and, to the extent applicable, the Bankruptcy Code).

(b)     Submission to Jurisdiction.  Each LP DIP Obligor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Court, or to the extent that the Court does not have or does not exercise jurisdiction, the Supreme Court of the State of New York sitting in New York County and the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to any LP DIP Credit Document, or for recognition or enforcement of any judgment, and each of the LP DIP Obligors and LP DIP Lenders hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such Federal court.  Each of the LP DIP Obligors and LP DIP Lenders agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Order or any other LP DIP Credit Document shall affect any right that any LP DIP Lender may otherwise have to bring any action or proceeding relating to this

Order or any other LP DIP Credit Document against any LP DIP Obligor or its properties in the courts of any jurisdiction.

(c)      Venue.  Subject to the jurisdiction of the Court, each LP DIP Obligor hereby irrevocably and unconditionally waives, to the fullest extent permitted by applicable requirements of law, any objection which it may now or hereafter have to the laying of venue of any suit, action, or proceeding arising out of or relating to this Order or any other LP DIP Credit Document in any court referred to in Section 9(b).  Each of the LP DIP Obligors and LP DIP Lenders hereby irrevocably waives, to the fullest extent permitted by applicable requirements of law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

9.  Waiver of Jury Trial.

Each LP DIP Obligor hereby waives, to the fullest extent permitted by applicable requirements of law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this Order, any other LP DIP Credit Document, or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each LP DIP Obligor and LP DIP Lender (a) certifies that no representative, agent, or attorney of any other such person has represented, expressly or otherwise, that such other person would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and all other such persons have been induced to become bound by this Order and the other LP DIP Credit Documents by, among other things, the mutual waivers and certifications in this Section.

10.  Interest Rate Limitation.

Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to any LP DIP Loan, together with all fees, charges, and other amounts which are treated as interest on such LP DIP Loan under applicable requirements of law (collectively, the "Charges"), shall exceed the maximum lawful rate (the "Maximum Rate") which may be contracted for, charged, taken, received, or reserved by the LP DIP Lender holding such LP DIP Loan in accordance with applicable requirements of law, the rate of interest payable in respect of such LP DIP Loan hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate, and, to the extent lawful, the interest and Charges that would have been payable in respect of such LP DIP Loan but were not payable as a result of the operation of this Section shall be cumulated and the interest and Charges payable to such LP DIP Lender in respect of other LP DIP Loans or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the weighted average of the rates on overnight federal funds transactions with members of the Federal Reserve System of the United States arranged by federal funds brokers to the date of repayment, shall have been received by such LP DIP Lender.

11.  Currency Due.

If, for the purpose of obtaining a judgment in any court in any jurisdiction, it is necessary to convert a sum due under this Order or any other LP DIP Credit Document in one currency into another currency, then such amount shall be converted using the rate of exchange in effect on the

Business Day immediately preceding that on which final judgment is given.  The obligation of the LP DIP Borrower in respect of any amount due from the LP DIP Lenders under this Order or any other LP DIP Credit Document shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than that in which such amount is denominated in accordance with the applicable provisions of this Order (the "Order Currency"), be discharged only to the extent that on the Business Day following receipt by the LP DIP Lenders of any amount adjudged to be so due in the Judgment Currency, the LP DIP Lenders may purchase the Order Currency with the Judgment Currency.  If the amount of the Order Currency so purchased is less than the amount originally due to the LP DIP Lenders from the LP DIP Borrower on the Order Currency, the LP DIP Borrower agrees, as a separate obligation and notwithstanding any such judgment, to indemnify the LP DIP Lenders against such deficiency.  For this purpose "rate of exchange" means the rate published by the Wall Street Journal on the date of such conversion or, if no such rate is published in the Wall Street Journal on such day as the Wall Street Journal ceases to publish such rate for any reason, then the "rate of exchange" shall mean the rate quoted by the Reuters World Company Page at 11:00 a.m. (New York time) on such day or, in the event such rate does not appear on any Reuters World Currency Page on such day, by reference to the rate published by Bloomberg foreign exchange and world currencies page on the date of such conversion.

**12.** Additional Defined Terms.

"Business Day" shall mean any day other than a Saturday, Sunday, or other day on which banks in New York City are authorized or required by law to close.

 "Notes" shall mean any promissory note(s) evidencing the LP DIP Loans in the form set forth in Annex C hereto.

"Prepetition LP Collateral" shall mean (a) substantially all of the assets of LightSquared LP and the Prepetition LP Subsidiary Guarantors, (b) the equity interests of LightSquared LP and the Prepetition LP Parent Guarantors (except LightSquared Inc.), (c) certain equity interests owned by the Pledgors (as defined in the applicable Prepetition LP Security Agreement (as defined herein)), (d) the Intercompany Notes (as defined in the Prepetition LP Security Agreements) and (e) the rights of LightSquared Inc. under and arising out of the Inmarsat Cooperation Agreement, by and between LightSquared LP, SkyTerra (Canada) Inc., LightSquared Inc., and Inmarsat Global Limited.  For the avoidance of doubt, the Prepetition LP Collateral includes any proceeds, substitutions or replacements of any of the forgoing (unless such proceeds, substitutions or replacements would constitute Excluded Property (as defined in Prepetition LP Credit Documents)).  The Prepetition LP Collateral does not include the following: (a) any permit or license issued by a Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security interest in such permit, license, or other agreement; (b) property subject to any Purchase Money Obligation, Vendor Financing Indebtedness, or Capital Lease Obligations (in each case, as such term is defined in the Prepetition LP Credit Agreement) if the contract or other agreement in which such lien is granted validly prohibits the creation of any other lien on such property; (c) the SkyTerra-2 satellite, while title remains with BSSI, and those ground segment assets related to the SkyTerra-2 satellite, while title remains with BSSI; (d) any intent-to-use trademark application to the extent and for so long as a security interest

therein would result in the loss by the pledgor thereof of any material rights therein; (e) certain deposit and securities accounts securing currency hedging or credit card vendor programs or letters of credit provided to vendors in the ordinary course of business; (f) equity interests in (i) excess of 66% in non-U. S. subsidiaries (other than the Canadian Subsidiaries (as defined in the Prepetition LP Credit Agreement)) held by a US subsidiary, (ii) LightSquared Network LLC, and (iii) any joint venture or similar entity to the extent and for so long as the terms of such investment restrict such security interest; and (g) any consumer goods subject to the Canadian Security Agreement (as defined in the Prepetition LP Credit Agreement).

"Relevant Percentage" shall mean, as to any LP DIP Lender, the percentage set forth opposite such LP DIP Lender's name in the table set forth in Schedule I to this Annex A.

### SCHEDULE I TO ANNEX A

LP DIP Loan Allocation Schedule

| Name of LP DIP Lender: | Amount: | Relevant Percentage: |
| --- | --- | --- |
| SP Special Opportunities LLC | $17,505,590 | 53.0% |
| Capital Research and Management Company, on behalf of American High-Income Trust | $6,866,469 | 20.8% |
| Fortress Credit Corp., on behalf of its affiliates' managed funds and/or accounts | $3,346,042 | 10.1% |
| Cyrus Capital Partners, L.P. | $2,788,548 | 8.5% |
| SOLA LTD | $1,181,823 | 3.6% |
| ULTRA MASTER LTD | $315,611 | 1.0% |
| Solus Senior High Income Fund LP | $71,084 | 0.2% |
| Intermarket Corporation, on behalf of Fernwood Associates LLC | $203,250 | 0.6% |
| Intermarket Corporation, on behalf of Fernwood Restructurings Ltd. | $203,250 | 0.6% |
| Aurelius Capital Master, Ltd. | $267,094 | 0.8% |
| ACP Master, Ltd. | $185,139 | 0.6% |
| Aurelius Convergence Master, Ltd. | $66,099 | 0.2% |
| **Total** | **$33,000,000** | **100.0%** |

## **ANNEX B**

LP DIP BUDGET

# LightSquared LP Group DIP Budget: 1Q 2014 Financial Cash Flow Forecast

Dollars in thousands

January 2014

| | Quarter | 1Q14 | | |
| | Month | Jan-14 | Feb-14 | Mar-14 |
|---|---|---|---|---|
| | Beginning Cash Balance | 13,490 | 311 | (6,993) |
| | **Sources** | | | |
| | Satellite Revenue | 1,233 | 1,343 | 1,259 |
| | Terrestrial Revenue | - | - | - |
| | Interest Income | 2 | 0 | - |
| | Equity Financing | - | - | - |
| | Debt Financing | - | - | - |
| | Financing Fees | - | - | - |
| | Other | - | - | - |
| | **Total Sources** | **1,235** | **1,343** | **1,259** |
| | In-Orbit / Launch Insurance | - | - | - |
| | ISAT Coop Agmt | - | - | 5,000 |
| | L-Band network infrastructure | 12 | 12 | 12 |
| | ERP | 22 | 88 | 22 |
| | Spectrum Management | - | - | - |
| Uses (OPEX) | Staffing Related (entire company) | 2,137 | 5,777 | 1,766 |
| | Legal / Regulatory / Lobbying / International | 1,248 | 1,508 | 1,015 |
| | Facilities/Telecom | 658 | 658 | 658 |
| | G&A | 336 | 666 | 4,706 |
| | Travel Expenses (entire company) | 50 | 50 | 50 |
| | Other Items | 1,330 | 948 | 1,076 |
| | **Subtotal - USES (OPEX)** | **5,792** | **9,706** | **14,304** |
| | Boeing Payments | - | - | 2,025 |
| | Qualcomm | - | - | - |
| Uses (CAPEX) | Alcatel Lucent S-BTS | - | - | - |
| | Current Network Maintenance/Capex | - | 150 | - |
| | BandRich | - | - | - |
| | **Subtotal - USES (CAPEX)** | **-** | **150** | **2,025** |
| Debt Service | Cash Interest | - | - | - |
| Restructuring Related | Restructuring Prof exclud W&C / Blackstone | 2,372 | 4,000 | 2,104 |
| | LP Adequate Protection Payments | 6,250 | 6,250 | 6,250 |
| | **Total Uses** | **14,414** | **20,106** | **24,683** |
| | **LP Group Ending Cash Balance** | **311** | **-** | **-** |
| | TMI Beginning Cash Balance | 11,459 | 11,459 | - |
| | Use of TMI Cash | - | (11,459) | - |
| | **TMI Ending Cash Balance** | **11,459** | **-** | **-** |
| | **LP Group Ending Cash Balance including Cash at TMI** | **11,770** | **(6,993)** | **(30,417)** |



LIGHTSQUARED

## ANNEX C

## FORM OF TERM NOTE

$_____                                                              New York, New York
                                                                        _____ __, 2014


         FOR VALUE RECEIVED, **LIGHTSQUARED LP**, a Delaware limited partnership, a debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code (the "LP DIP Borrower"), hereby promises to pay to [_____] [or its registered assigns] (the "LP DIP Lender"), in lawful money of the United States of America in immediately available funds the principal sum of _____ DOLLARS ($_____), as such amount may be increased by the addition of interest that has been paid in kind in accordance with the Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay [Docket No. __] (the "LP DIP Order")[1] or, if less, the unpaid principal amount of all LP DIP Loans made by the LP DIP Lender under the LP DIP Facility in accordance with the LP DIP Order, payable at such times and in such amounts as provided for in the LP DIP Order.

         The LP DIP Borrower also promises to pay interest on the unpaid principal amount of each LP DIP Loan made by the LP DIP Lender in kind, from the date hereof until all principal, accrued and unpaid interest, and all other amounts have been indefeasibly paid in full in cash, at the rates and at the times specified in the LP DIP Order.

         This Note is one of the Notes referred to in Annex A to the LP DIP Order and is entitled to the benefits thereof and of the other LP DIP Credit Documents.  This Note is secured by the LP DIP Collateral and is entitled to the benefits of the guaranties from the LP DIP Guarantors.  This Note, and any LP DIP Loans and other obligations (including any accrued and unpaid interest) represented hereby, shall be repaid in full in cash upon the occurrence of the Final Maturity Date as set forth in the LP DIP Order.

         The LP DIP Borrower hereby waives presentment, demand, protest, or notice of any kind in connection with this Note.

         **THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND BE GOVERNED BY, THE LAW OF THE STATE OF NEW YORK AND, TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.**

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the LP DIP Order.

**LIGHTSQUARED LP**

By:_____
    Name:
    Title:

## ANNEX D

### FORM OF LP DIP OBLIGOR GUARANTY

LP DIP OBLIGOR GUARANTY (as amended, modified, restated, and/or supplemented from time to time, this "Guaranty"), dated as of [_____ __], 201[_], made by and among each of the undersigned guarantors (each, an "LP DIP Guarantor" and, collectively, the "LP DIP Guarantors") in favor of the LP DIP Lenders.  Except as otherwise defined herein, all capitalized terms used herein and defined in the LP DIP Order (as defined below) shall be used herein as therein defined.

### W I T N E S S E T H :

WHEREAS, pursuant to that certain Order (A) Authorizing LP DIP Obligors To Obtain Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay [Docket No. __] (including all annexures, exhibits, and schedules thereto, the "LP DIP Order"), the LP DIP Lenders shall make LP DIP Loans to the LP DIP Borrower on the terms and subject to the conditions set forth therein;

WHEREAS, each LP DIP Guarantor is a direct or indirect subsidiary of the LP DIP Borrower;

WHEREAS, the LP DIP Order requires that each LP DIP Guarantor shall have executed and delivered to the LP DIP Lenders this Guaranty; and

WHEREAS, each LP DIP Guarantor will obtain benefits from the incurrence of LP DIP Loans by the LP DIP Borrower and, accordingly, desires to execute this Guaranty in order to satisfy the requirements of the LP DIP Order and to induce the LP DIP Lenders to make LP DIP Loans to the LP DIP Borrower;

NOW, THEREFORE, in consideration of the foregoing and other benefits accruing to each LP DIP Guarantor, the receipt and sufficiency of which are hereby acknowledged, each LP DIP Guarantor hereby covenants and agrees with each other LP DIP Guarantor and the LP DIP Lenders as follows:

1. GUARANTY.    The LP DIP Guarantors hereby jointly and severally guarantee, as a primary obligor and not as a surety, to each LP DIP Lender and their respective successors and assigns, the prompt payment in full when due (whether at stated maturity, by required prepayment, declaration, demand, acceleration, or otherwise) of all LP DIP Obligations.  The LP DIP Guarantors hereby jointly and severally agree that if LP DIP Borrower or any other LP DIP Guarantor(s) shall fail to pay in full in cash when due (whether at stated maturity, by acceleration, or otherwise) any of the LP DIP

Obligations, the LP DIP Guarantors will promptly pay the same in cash, without any demand or notice whatsoever, and that in the case of any extension of time of payment or renewal of any of the LP DIP Obligations, the same will be promptly paid in full in cash when due (whether at extended maturity, by acceleration, or otherwise) in accordance with the terms of such extension or renewal.

2. <u>OBLIGATIONS UNCONDITIONAL</u>.  The obligations of the LP DIP Guarantors under <u>Section 1</u> shall constitute a guaranty of payment and, to the fullest extent permitted by applicable requirements of law, are absolute, irrevocable, and unconditional, joint and several, irrespective of the value, genuineness, validity, regularity, or enforceability of the LP DIP Obligations of the LP DIP Borrower under the LP DIP Order, the Notes, if any, or any other LP DIP Credit Documents, or any substitution, release, or exchange of any other guarantee of or security for any of the LP DIP Obligations, and, irrespective of any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge or defense of a surety or LP DIP Guarantor (except for payment in full).  Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not alter or impair the liability of the LP DIP Guarantors hereunder which shall remain absolute, irrevocable, and unconditional under any and all circumstances as described above:

(a)    at any time or from time to time, without notice to any LP DIP Guarantors, the time for any performance of, or compliance with, any of the LP DIP Obligations shall be extended, or such performance or compliance shall be waived;

(b)    any of the acts mentioned in any of the provisions of the LP DIP Order, the Notes, if any, or any other LP DIP Credit Document shall be done or omitted;

(c)    the maturity of any of the LP DIP Obligations shall be accelerated, or any of the LP DIP Obligations shall be amended in any respect, any right under the LP DIP Credit Documents or any other agreement or instrument referred to herein or therein shall be amended or waived in any respect, or any other guarantee of any of the LP DIP Obligations or any security therefor shall be released or exchanged in whole or in part or otherwise dealt with;

(d)    any lien or security interest granted to, or in favor of, any LP DIP Lender as security for any of the LP DIP Obligations shall fail to be perfected; or

(e)    the release of any other LP DIP Guarantor pursuant to the terms of the LP DIP Order.

The LP DIP Guarantors hereby, to the fullest extent permitted by applicable requirements of law, expressly waive diligence, presentment, demand of payment, protest, and all notices whatsoever, and any requirement that any LP DIP Lender exhaust any right, power, or remedy or proceed against the LP DIP Borrower under the LP DIP Order, the Notes, if any, or any other LP DIP Credit Document, or against any other person under any other guarantee of, or security for, any of the LP DIP Obligations.  The LP DIP

Guarantors waive any and all notice of the creation, renewal, extension, waiver, termination, or accrual of any of the LP DIP Obligations and notice of, or proof of reliance by any LP DIP Lender upon, this Guaranty or acceptance of this Guaranty, and the LP DIP Obligations, and any of them, shall conclusively be deemed to have been created, contracted, or incurred in reliance upon this Guaranty, and all dealings between LP DIP Borrower and the LP DIP Lenders shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guaranty.  This Guaranty shall be construed as a continuing, absolute, irrevocable, and unconditional guarantee of payment without regard to any right of offset with respect to the LP DIP Obligations at any time or from time to time held by LP DIP Lenders, and the obligations and liabilities of the LP DIP Guarantors hereunder shall not be conditioned or contingent upon the pursuit by the LP DIP Lenders or any other person at any time of any right or remedy against LP DIP Borrower or against any other person which may be or become liable in respect of all or any part of the LP DIP Obligations or against any collateral security or guarantee therefor or right of offset with respect thereto.  This Guaranty shall remain in full force and effect and be binding in accordance with, and to the extent of, its terms upon the LP DIP Guarantors and the successors and assigns thereof, and shall inure to the benefit of the LP DIP Lenders, and their respective successors and assigns, notwithstanding that from time to time during the term of the LP DIP Order there may be no LP DIP Obligations outstanding.

3.  <u>REINSTATEMENT</u>.  The obligations of the LP DIP Guarantors under this Guaranty shall be automatically reinstated if and to the extent that for any reason any payment by, or on behalf of, the LP DIP Borrower or other LP DIP Obligors in respect of the LP DIP Obligations is rescinded or must be otherwise restored by any holder of any of the LP DIP Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.

4.  <u>SUBROGATION; SUBORDINATION</u>.  Each LP DIP Guarantor hereby agrees that until the indefeasible payment and satisfaction in full in cash of all LP DIP Obligations, it shall waive any claim and shall not exercise any right or remedy, direct or indirect, arising by reason of any performance by it of its guarantee in <u>Section 1</u>, whether by subrogation or otherwise, against the LP DIP Borrower or any other LP DIP Obligor of any of the LP DIP Obligations or any security for any of the LP DIP Obligations.

5.  <u>REMEDIES</u>.  After the Final Maturity Date, the LP DIP Guarantors jointly and severally agree that, as between the LP DIP Guarantors and the LP DIP Lenders, the obligations of LP DIP Borrower under the LP DIP Order and the Notes, if any, shall be due and payable as provided in the LP DIP Order for purposes of <u>Section 1</u>, notwithstanding any stay, injunction, or other prohibition preventing such obligations from becoming automatically due and payable as against LP DIP Borrower and that such obligations (whether or not due and payable by LP DIP Borrower) shall become forthwith due and payable by the LP DIP Guarantors for purposes of <u>Section 1</u>.

6. <u>INSTRUMENT FOR THE PAYMENT OF MONEY</u>.  Each LP DIP Guarantor hereby acknowledges that this Guaranty constitutes an instrument for the payment of money, and consents and agrees that any LP DIP Lender, at its sole option, in the event of a dispute by such LP DIP Guarantor in the payment of any moneys due hereunder, shall have the right to bring a motion-action under New York CPLR Section 3213.

7. <u>CONTINUING GUARANTY</u>. The Guaranty is a continuing guarantee of payment and shall apply to all LP DIP Obligations whenever arising.

8. <u>GENERAL LIMITATION ON LP DIP OBLIGATIONS</u>.  In any action or proceeding involving any state corporate limited partnership or limited liability company law, or any applicable state, federal, or foreign bankruptcy, insolvency, reorganization, or other law affecting the rights of creditors generally, if the obligations of any LP DIP Guarantor under <u>Section 1</u> would otherwise be held or determined to be void, voidable, invalid, or unenforceable, or subordinated to the claims of any other creditors, on account of the amount of its liability under <u>Section 1</u>, then, notwithstanding any other provision to the contrary, the amount of such liability shall, without any further action by such LP DIP Guarantor, any other LP DIP Obligor, or any other person, be automatically limited and reduced to the highest amount (after giving effect to the right of contribution established in <u>Section 9</u>) that is valid and enforceable and not subordinated to the claims of other creditors as determined in such action or proceeding.

9. <u>RIGHT OF CONTRIBUTION</u>.  Each LP DIP Guarantor hereby agrees that to the extent that an LP DIP Guarantor shall have paid more than its proportionate share of any payment made hereunder, such LP DIP Guarantor shall be entitled to seek and receive contribution from and against any other LP DIP Guarantor hereunder which has not paid its proportionate share of such payment.  Each LP DIP Guarantor's right of contribution shall be subject to the terms and conditions of <u>Section 4</u>.  The provisions of this <u>Section 9</u> shall in no respect limit the obligations and liabilities of any LP DIP Guarantor to the LP DIP Lenders, and each LP DIP Guarantor shall remain liable to the LP DIP Lenders for the full amount guaranteed by such LP DIP Guarantor hereunder.

10. <u>COUNTERPARTS</u>.  This Guaranty may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.  A set of counterparts executed by all the parties hereto shall be lodged with the LP DIP Borrower and the LP DIP Lenders.

11. <u>HEADINGS DESCRIPTIVE</u>.  The headings of the several Sections of this Guaranty are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Guaranty.

12. <u>GOVERNING LAW, ETC</u>.  This Guaranty and the contents hereof are subject to the governing law, jurisdiction, venue, waiver of jury trial, currency indemnity, indemnification, and expense reimbursement provisions set forth in the LP

DIP Order (including <u>Annex A</u> thereto) and such provisions are hereby incorporated herein by reference, *mutatis mutandis*.

\* \* \*

IN WITNESS WHEREOF, each LP DIP Guarantor has caused this Guaranty to be executed and delivered as of the date first above written.

Address:

[_____]          [_____],
[_____]             as a LP DIP Guarantor
Tel:[_____]
Fax:[_____]          By:_____,
        Name:
        Title:



        [Accepted and Agreed to:

[_____],
as LP DIP Lender



By:_____,
    Name:
    Title:

By:_____,
    Name:
    Title:]