# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel:  212 728 8000
Fax: 212 728 8111

**VIA ECF**

February 28, 2014

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York  10004

Re:    *In re LightSquared Inc., et al*, No. 12-12080 (SCC)

Dear Judge Chapman:

We submit this letter response on behalf of SP Special Opportunities, LLC ("SPSO") and Charles W. Ergen (collectively, the "Ergen Defendants"), in response to the Ad Hoc Secured Group of LightSquared LP Lenders' (the "Ad Hoc Group") Emergency Motion to Compel Discovery (the "Motion"), filed with the Court yesterday.

The discovery that the Ad Hoc Group seeks from SPSO and Mr. Ergen has already been the subject of extensive discovery and a seven-day bench trial that only recently ended.  For example, their latest round of discovery includes topics such as: "SPSO's, DISH's, and/or Charles W. Ergen's acquisition of the LP Debt" and "the investment strategy or options of Charles W. Ergen or the Lindsay Revocable Trust."  These topics have been the subject of exhaustive discovery, including documents and depositions, and a full trial.  Similarly, the Ad Hoc Group's requests seeking documents concerning: "the Plan Support Agreement,"  "the Asset Purchase Agreement," and "the Bid Procedures Order" all relate to matters that have already been addressed extensively in this Court.  In addition to the hearing and preliminary ruling Your Honor made with respect to LBAC's right to terminate the PSA, after the January 24, 2014 discovery conference among the parties and the Court, SPSO (which wasn't involved so not surprisingly had no relevant documents), DISH and LBAC produced non-privileged documents relating to the termination of the PSA and LBAC's bid.

Indeed, the Ad Hoc Group's February 19, 2014 requests (*see* Exhibit A annexed hereto) are almost identical to requests issued by the Ad Hoc Group on January 15, 2014 (*see* Exhibit B annexed hereto).  Those earlier requests were the subject of both a telephonic conference and a hearing before Your Honor, during which Your Honor made clear that the Ad Hoc Group's requests, which they have now

The Honorable Shelley C. Chapman
February 28, 2014
Page 2

reissued, were a "do-over" of previously litigated issues and were not an appropriate subject for new discovery. Moreover, as the Court made clear at the January 27 conference: "I had previewed this at the pre-trial conference and at the beginning of trial, because at the beginning of trial, if you'll recall, the notice [LBAC's notice terminating the Plan Support Agreement] had been given but had not yet gone effective, and I had inquired of – or I had made a observation that the ad hoc group may find itself switching sides . . . and I said, at that point, *that there aren't going to be any do-overs, with respect to both sides, that we're going to – you know, if we're going to start, we going to start, and there aren't going to be any do-overs*." (1/27/14 Hr. Tr. 16-17) (emphasis added). The new Ad Hoc Group discovery is precisely that:  a do-over.

The Ad Hoc Group was not entitled to a do-over on January 27, and they are not entitled to one now. Indeed, as to the Ad Hoc Group, the only thing that has changed since January 27, 2014 is that LightSquared has filed its Third Amended Plan of Reorganization, pursuant to which LightSquared proposes to pay the Ad Hoc Group's claims in full, including accrued interest, while reclassifying and effectively subordinating SPSO's claim to an inferior third lien or unsecured debt.  As to the two topics in the Ad Hoc Group's subpoena that are actually new, ██████████████████████ and the "objections of SPSO, DISH, LBAC and/or Charles W. Ergen to the Debtors' Plan," SPSO and Mr. Ergen have agreed to search for responsive documents, and to produce any non-privileged documents that they find.

Citing an inapposite case, the Ad Hoc Group also makes a cursory attempt to invade the attorney-client privilege with the nonsensical argument that, because DISH produced a privilege log which included three communications dated December 19, 2013, solely between Rachel Strickland and Charles Ergen, the privilege was somehow waived as to those communications because "neither DISH nor counsel for DISH" participated in them.  This argument ignores the oft-cited fact that Ms. Strickland is LBAC's counsel as well, and that LBAC was a wholly-owned special purpose subsidiary of DISH, through which DISH attempted to purchase LightSquared's LP assets.  There is no requirement that DISH or counsel for DISH participate in a communication with Ms. Strickland for that communication to be privileged with respect to Mr. Ergen.  Although the Ad Hoc Group characterizes Ms. Strickland as SPSO's counsel, it is clear from the context that the communications concern matters exclusively related to LBAC, and there is nothing inappropriate about those communications appearing on a privilege log created by DISH's counsel.

Although SPSO and Mr. Ergen have worked diligently to resolve discovery disputes without letter writing campaigns or court intervention, the Ad Hoc Group's efforts to redo previously litigated issues and, when challenged, paint the Ergen Defendants as obstructionist cannot go unrebutted.  Mr. Ergen's deposition has been requested at least three times in these proceedings and he has made himself available each time, either in his personal capacity or as a Rule 30(b)(6) witness for SPSO.  Moreover, SPSO and Mr. Ergen have produced documents responsive to all but two of the Ad Hoc's requests to the extent such documents actually exist.

As the Court's perception matters a lot to SPSO, we think it is important to note that, although SPSO has been prejudiced by the discovery tactics by its adversaries, we have elected not to escalate these

The Honorable Shelley C. Chapman
February 28, 2014
Page 3

issues because they are expensive, time consuming, and ultimately not a productive use of scarce resources.

Here are a few examples that must be corrected so that we can have a full and fair hearing on March 17.

The Ad Group has refused to produce documents regarding designation, equitable subordination, or their valuation of the Debtors' assets unless they relate to or were prepared in connection with the current version of the Debtors' Plan. (*See* Exhibit C annexed hereto.) Since the Debtors' value and SPSO's conduct will be assessed independent of which plan is proposed, this limitation seems designed to avoid the production of relevant documents in a manner that is prejudicial to SPSO. The Ad Hoc Group has asserted that it seeks to join the Debtors in equitably subordinating SPSO's claim and designating its vote; it cannot then contend that its views on these matters are irrelevant. And it cannot contend that its views on the value of the Debtors' assets are not relevant evidence in the coming plan confirmation trial that will largely center on the value of the Debtors' assets. Having spent almost two years with Blackstone analyzing, and the committee arguing, that the Debtors were significantly overstating the value of their spectrum assets and clamoring for a sale to market test value, the Ad Hoc Group cannot now complain that documents reflecting its valuation analyses are somehow irrelevant.

The Ad Hoc Group is not alone in limiting their responses to what is convenient. Moelis contends that it need not search for any document other than those that contain the terms LightSquared, L2, Angel, or "Light Squared". (*See* Exhibit D annexed hereto.) Milbank has made similar contentions. (*See* Exhibit E annexed hereto.) Such a limitation is insufficient in light of the fact that the teams of professionals that have spent months negotiating and discussing LightSquared no longer need to identify the case they are working on. Matthew Barr does not need to tell Mark Hootnick, Tom Lauria, or representatives of Fortress, Harbinger or JPMorgan that he is referring to "LightSquared". Instead, many emails just refer to "the plan" or "term sheet" or "subordination." They would not be picked up by the searches done by the Debtors or Moelis. SPSO's concern in this regard is not merely speculative; relevant documents are and have been getting inappropriately culled from key parties' productions.[1]

For the foregoing reasons, the Ergen Defendants respectfully request that the Ad Hoc Group's Motion to Compel be denied, and that the Ad Hoc Group be ordered to search for and produce documents relating to plan negotiations, equitable subordination, vote designation, and valuation during the time period beginning April 1, 2013 and ending February 19, 2014.

---

[1]     For example, the small sample of documents annexed hereto as Exhibit F include several to or cc'ing Moelis that Moelis never produced, which do not refer to "LightSquared", "L2" or "Angel". To make matters worse, these documents and many others that are highly probative to disputed issues the adversary proceeding were produced to SPSO in connection with a production made to MAST on January 30, 2014, well after the close of the adversary proceeding.

The Honorable Shelley C. Chapman
February 28, 2014
Page 4

We would also like the opportunity at the conference this afternoon to address the highly deficient search terms used by parties that have been the recipients of discovery requests by the Ergen Defendants so that there is a level playing field in discovery, and that all parties have a meaningful and fair opportunity to address the confirmation issues.

Respectfully Submitted,

/s/ James C. Dugan

James C. Dugan

cc.  All Parties of Record

11393131.5

# EXHIBIT A

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

## Southern District of New York

In re **LightSquared Inc., et al.,**

               Debtor

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

Case No. *  **12-12080 (SCC)**

Chapter **11**

To:  **SP Special Opportunities LLC**
      c/o Rachel C. Strickland
      Willkie Farr & Gallagher LLP
      787 Seventh Avenue
      New York, NY 10019-6099

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **White & Case LLP**<br>**1155 Avenue of the Americas**<br>**New York, NY 10036** | March 4, 2014, at 10:00 a.m. (EST) |

X YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| **White & Case LLP**<br>**1155 Avenue of the Americas**<br>**New York, NY 10036** | February 28, 2014, at 5:00 p.m. (EST) |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Glenn M. Kurtz | February 19, 2014 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Glenn M. Kurtz, White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 (212) 819-2000

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

NEWYORK 9131544

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| SERVED | DATE February 19, 2014 | PLACE New York, New York |
|---|---|---|

| SERVED ON (PRINT NAME) Rachel C. Strickland Willkie Farr & Gallagher LLP 787 Seventh Avenue New York, NY 10019-6099 | MANNER OF SERVICE **E-mail and U.S. Mail** |
|---|---|

| SERVED BY (PRINT NAME) Isaac Glassman, White & Case LLP | TITLE *Counsel to the Ad Hoc Secured Group of LightSquared LP Lenders* |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on __February 19, 2014__
DATE

/s/ Isaac Glassman
SIGNATURE OF SERVER

**Isaac Glassman**
**White & Case LLP, 1155 Avenue of the Americas**
**New York, NY 10036**

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
 (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
 (2) Command to Produce Materials or Permit Inspection.
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
   (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
 (3) Quashing or Modifying a Subpoena.
  (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
   (i) fails to allow a reasonable time to comply;
   (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
   (i) disclosing a trade secret or other confidential research, development, or commercial information;
   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
   (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
 (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
 (2) Claiming Privilege or Protection.
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   (i) expressly make the claim; and
   (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may  promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

NEWYORK 9131544

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The terms and instructions below apply to the Deposition Topics and Document Requests:

1.      This Notice incorporates by reference the Uniform Definitions in Discovery Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as incorporated by Rule 7026-1 of the Local Rules.

2.      Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other legal or fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, and any other person who acted on its behalf.

3.      Each reference to a natural person shall be deemed to include that person's agents, attorneys, and any other person who acted on that person's behalf.

4.      References to the singular shall include the plural and references to the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

5.      "Ad Hoc Secured Group of LightSquared LP Lenders Plan" means the amended plan of reorganization proposed by the Ad Hoc Secured Group of LightSquared LP Lenders [Docket No. 970], and any modifications, amendments, or further amended or modified plans filed before the Court.

6.      "Affiliate" of any specified Person means any other Person that directly, or indirectly, or through one or more intermediaries, controls, is controlled by, or is under common control with, the Person specified.

7.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.      "Any," "all" and "each" shall be construed broadly, and shall mean each, any and all as necessary to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

9.      "Asset" means movable, immovable or real property of any kind.

10.     "Asset Purchase Agreement" means that certain Purchase Agreement by and among certain of the Debtors, L-Band Acquisition, LLC, and Parent Entity, attached to the Disclosure Statement for the Ad Hoc Secured Group of LightSquared LP Lenders Plan as Exhibit F [Docket No. 765-6].

11.     "AWS" means the wireless telecommunications spectrum band known as Advanced Wireless Service, including but not limited to the microwave frequencies located between 1710 MHz and 1755 MHz and 2110 MHz and 2155 MHz.

12.     "Bid Procedures Order" means the Order (A) Establishing Bid Procedures, (B) Scheduling Date and Time for Auction, (C) Approving Assumption and Assignment Procedures, (D) Approving Form of Notice, and (E) Granting Related Relief, entered by the Bankruptcy Court in the LightSquared Cases on October 1, 2013 [Docket No. 892].

13.    "Charles W. Ergen" means Charles W. Ergen, as well as his Affiliates, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other Persons acting on his behalf.

14.    "Concerning" means comprising, consisting of, referring to, reflecting, regarding, supporting, evidencing, relating to, prepared in connection with, used in preparation for, or being in any way legally, logically or factually concerned with the matter or Document described, referred to or discussed.

15.    "Court" means the United States Bankruptcy Court for the Southern District of New York.

16.    "Debtors" means, collectively, LightSquared Inc., LightSquared Investors Holdings Inc., One Dot Four Corp., One Dot Six Corp., SkyTerra Rollup LLC, SkyTerra Rollup Sub LLC, SkyTerra Investors LLC, TMI Communications Delaware, Limited Partnership, LightSquared GP Inc., LightSquared LP, ATC Technologies, LLC, LightSquared Corp., LightSquared Finance Co., LightSquared Network LLC, LightSquared Inc. of Virginia, LightSquared Subsidiary LLC, LightSquared Bermuda Ltd., SkyTerra Holdings (Canada) Inc., SkyTerra (Canada) Inc., and One Dot Six TVCC Corp., as well as their divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other persons acting on their behalf.

17.    "Debtors' Plan" means the Debtors' Third Amended Joint Plan Pursuant To Chapter 11 of Bankruptcy Code [Docket No. 1308].

18.    "DISH" means DISH Network Corporation, as well as its divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other persons acting on its behalf.

19.    "DISH Board of Directors Minutes" means any Document containing a written record of the actions and proceedings of DISH's board of directors and any committees, special committees, or sub-committees thereof.

20.    "Document" is used in its broadest sense and means any written, typed, printed, recorded or graphic matter of any kind, however produced or reproduced, and all non-identical copies thereof, whether different because of notes made thereon or otherwise, including, but not limited to, and by way of example only:  letters or other correspondence, messages, telegrams, telexes, memoranda, notations, reports, analyses, summaries, charts, graphs, studies, tabulations, statements, notes, notebooks, work papers, telephone toll records, invoices, books, pamphlets, brochures, press releases, diaries, minutes of meetings or conferences, transcripts of telephone conversations, transcripts of testimony, cost sheets, financial reports, accountants' work papers, opinions or reports of consultants, checks (front and back), check stubs, receipts, ledgers, purchase orders, pictures, photographs, contracts, agreements, advertisements, motion picture films, tapes, tape recordings, videotapes, indices, microfilm, other data compilations, including computer data, computer diskettes or the memory units containing such data from which information can be obtained or translated into usable form, drafts of any of the foregoing, English translations or summaries of foreign language documents and all similar documents.

21.    "GPS" means the Global Positioning System comprising certain space-based satellite navigation systems and corresponding receivers.

22.    "Including" means including but not limited to the referenced subject.

23.    "January 7 Letter" means the letter dated January 7, 2014 wherein L-Band Acquisition, LLC, among other things, purports to terminate the Plan Support Agreement.

24.    "LBAC" means L-Band Acquisition, LLC, as well as its Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other Persons acting on its behalf.

25.    "LBAC Bid" has the meaning ascribed to it in the Bid Procedures Order.

26.    "Lindsey Revocable Trust" means that certain trust account at Charles Schwab & Co., Inc., of which Charles W. Ergen is a trustee.

27.    "LP Debt" means any debt arising under or related to that certain Credit Agreement, dated as of October 1, 2010 (as amended, restated, supplemented and/or modified from time to time), by and among LightSquared LP, as borrower, its affiliate guarantors, the lenders party thereto, UBS AG, Stamford Branch as administrative agent, and UBS Securities LLC, as arranger, syndication agent, and documentation agent.

28.    "LP Estates" means the bankruptcy estates, consistent with 11 U.S.C. § 541, comprising the Assets of LightSquared LP.

29.    "Milestones" means the milestones set forth in Exhibit C to the Plan Support Agreement.

30.    "Person" means all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

31.    "Plan Support Agreement" means that certain Plan Support Agreement dated as of July 23, 2013, by and among (i) SP Special Opportunities, LLC, (ii) L-Band Acquisition, LLC, (iii) certain other members of the Ad Hoc Secured Group of LightSquared LP Lenders exclusive of SP Special Opportunities, LLC, and (iv) solely for the purposes of Section 7.11 thereof, DISH Network Corporation, attached to the Ad Hoc Secured Group of LightSquared LP Lenders Plan as Exhibit B-1 [Docket No. 970-2].

32.    ████████████████████████████████████████

███████████████████████████████████████

33.    "SPSO" means SP Special Opportunities LLC, as well as its Affiliates, divisions,

subdivisions, departments, predecessors, successors, partners, principals, officers, directors,

attorneys, accountants, agents, employees, representatives and other Persons acting on its behalf.

34.    <u>Production Obligations</u>.  You are required to produce all responsive Documents

that are in your possession, custody or control, which includes, without limitation, any

responsive Document that was or is prepared, kept, or maintained for personal use, in the

personal files, or as the personal property of any of SPSO's Affiliates or representatives and any

non-privileged Documents in the possession, custody or control of SPSO's present and former

attorneys, agents, or any other persons currently acting or who previously acted on SPSO's

behalf, including, without limitation, Willkie Farr & Gallagher LLP.

35.    <u>Redaction</u>.  Each request for Documents seeks production of the Document in its

entirety, without abbreviation, modification, or redaction, including, but not limited to, all

attachments, actual, proposed or contemplated envelopes, transmittal sheets, cover letters,

exhibits, enclosures, or other matters affixed thereto.

36.    <u>Drafts</u>.  A request for Documents shall be deemed to include a request for all

actual, proposed, or contemplated drafts or mark-ups thereof, revisions, modifications, or

amendments thereto, and non-identical copies thereof, in addition to the Document itself.

37.    <u>Continuing Requests</u>.  These requests are continuing.  If, after producing the

requested Documents, SPSO obtains or becomes aware of any further Documents responsive to

these requests, SPSO is required to produce such additional Documents.

38.    <u>Privileged or Proprietary Matter</u>.  In the event that SPSO withholds any

Document on the basis of any legal objection or privilege, SPSO shall indicate the following

information for each such withheld Document;

    a)    date of Document;

    b)    general character or type of Document (i.e. letter, memorandum, notes of meeting, etc.);

    c)    the identity of the person in possession of the Document;

    d)    the identity of the author of the Document;

    e)    the identity of the original recipient or holder of the Document;

    f)    relationship of the author, addressee and any other recipient;

    g)    the general subject matter of the Document; and

    h)    the legal basis, including, but not limited to, any legal objection or privilege for withholding the Document.

39.    <u>Lost or Destroyed Documents</u>.  If any Document that is the subject of these

requests was at one time in existence, but was subsequently lost, discarded or destroyed, SPSO

shall identify such Document as completely as possible, including the following information:  (a)

type of Document, (b) date of Document, (c) date when the Document became lost, discarded or

destroyed, (d) circumstances under which the Document was lost, discarded or destroyed and (e)

identity of all persons having knowledge of the contents of the Document.

40.    <u>Partial Production</u>.  If any Document cannot be produced in full, produce it to the

extent possible, stating the reasons for SPSO's inability to produce the remainder, as well as any

information, knowledge or belief it has concerning the unproduced portion.

41.    <u>No Responsive Documents</u>.  If there are no Documents responsive to a particular

request, state so in writing.

42.    Unless otherwise indicated in a particular request, the time period covered by these requests is from April 1, 2013, to the present date.

## DEPOSITION TOPICS

1.    ███████████████████████████

2.    The January 7 Letter.

3.    The Plan Support Agreement, including the Milestones.

4.    The Bid Procedures Order, including the provisions concerning the irrevocability of the LBAC Bid.

5.    The Asset Purchase Agreement, including any alleged missing terms.

6.    The LBAC Bid.

7.    Charles W. Ergen's, DISH's, LBAC's and/or SPSO's intent to acquire or not acquire the Debtors' Assets.

8.    Charles W. Ergen's, DISH's, LBAC's and/or SPSO's strategy concerning the LBAC Bid or any other potential acquisition of the Debtors' Assets

9.    Charles W. Ergen's, DISH's, LBAC's and/or SPSO's intent, consideration, or analysis of potentially purchasing the Debtors' Assets at a price lower than the LBAC Bid.

10.    The value of any of the Debtors' Assets.

11.    Any analysis, or consideration of, or comment on the Debtors' present and prospective cash needs and any potential distress, harm, or other consequences to the LP Estates caused by the failure of LBAC or DISH to consummate the LBAC Bid.

12.    Releases of Affiliates of DISH, LBAC, SPSO, or Charles W. Ergen pursuant to any plan of reorganization for the Debtors' cases, including but not limited to the Ad Hoc Secured Group of LightSquared LP Lenders Plan.

13.    SPSO's acquisition of the LP Debt, including but not limited to SPSO's, DISH's, and/or Charles W. Ergen's strategies, intentions, options, analyses, evaluations, or potential consequences concerning the acquisition of the LP Debt.

14.    DISH, SPSO, and/or LBAC acting in concert or at the direction of Charles W. Ergen.

15.    Any objections of SPSO, DISH, LBAC and/or Charles W. Ergen to the Debtors' Plan, including but not limited to the basis for any contention that the Debtors' Plan is not feasible.

## DOCUMENT REQUESTS

1.    ███████████████████████████████████

████████████████████████████████████████

██████████████████████████████

2.    All Documents concerning the Plan Support Agreement, including but not limited to the Milestones.

3.    All Documents concerning the Asset Purchase Agreement, including but not limited to the negotiation and consideration of the language contained in section 7.11(a) thereto.

4.    All Documents concerning the terms of the Asset Purchase Agreement, including but not limited to any terms that Charles W. Ergen, SPSO, LBAC, and/or DISH alleges to be missing or incomplete.

5.    All Documents concerning the Bid Procedures Order, including but not limited to the irrevocability of the LBAC Bid until February 15, 2014.

6.    All Documents concerning the value of the Debtors' Assets, including but not limited to the value to SPSO, DISH, LBAC and/or Charles W. Ergen.

NEWYORK 9131544

7.    All Documents concerning LBAC's, SPSO's, DISH's and/or Charles W. Ergen's intent or strategy to acquire or not acquire the Debtors' Assets, including but not limited to all DISH Board of Directors Minutes reflecting discussions concerning such an intent.

8.    All Documents concerning any intent, consideration or analysis of potentially purchasing the Debtors' Assets at a price lower than the LBAC Bid or submitting a false bid, including but not limited to a potential renegotiation of the LBAC Bid.

9.    All Documents concerning the Debtors' present and prospective cash needs, including but not limited to any analysis or evaluation of the potential that the Debtors may become administratively insolvent.

10.    All Documents concerning potential distress, harm, or other consequences to the LP Estates and their stakeholders caused by a failure of LBAC or DISH to consummate the LBAC Bid.

11.    All Documents concerning releases of affiliates of SPSO and/or Charles W. Ergen pursuant to the Asset Purchase Agreement or any plan of reorganization in the Debtors' cases.

12.    All Documents concerning a potential interest in purchasing or bidding for any of the Debtors' Assets.

13.    All Documents concerning the investment strategy or options of Charles W. Ergen or the Lindsey Revocable Trust, including any advice concerning such matters.

14.    All Documents concerning SPSO's, DISH's, and/or Charles W. Ergen's acquisition of the LP Debt, including but not limited to SPSO's, DISH's, and/or Charles W. Ergen's strategies, intentions, options, analyses, evaluations, or potential consequences concerning the acquisition of the LP Debt, during the period of January 1, 2012 through and including the date of production.

15.    All Documents concerning the possibility that DISH could use its AWS spectrum as downlink and the potential opportunities and consequences of doing so.

16.    All Documents concerning DISH, SPSO, and/or LBAC acting in concert or at the direction of Charles W. Ergen, including but not limited to the capitalization of LBAC, during the period of January 1, 2012 through and including the date of production.

17.    All Documents concerning SPSO's, DISH's and/or Charles W. Ergen's role in the LBAC Bid, including but not limited to the letter sent on May 15, 2013, from Willkie Farr & Gallagher LLP, on behalf of LBAC, to LightSquared LP, care of Moelis & Company.

18.    All Documents concerning any objections of SPSO, DISH, LBAC and/or Charles W. Ergen to the Debtors' Plan, including but not limited to the basis for any contention that the Debtors' Plan is not feasible.

# EXHIBIT B

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

## Southern District of New York

| | |
|---|---|
| In re **LightSquared Inc., et al.,** | **SUBPOENA IN A CASE UNDER** |
| Debtor | **THE BANKRUPTCY CODE** |

Case No. * **12-12080 (SCC)**

To:   SP Special Opportunities LLC
      c/o Rachel C. Strickland
      Willkie Farr & Gallagher LLP
      787 Seventh Avenue
      New York, NY 10019-6099

Chapter **11**

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

X YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036 | DATE AND TIME<br>**January 22, 2014, at 10:00 a.m. (EST)** |
|---|---|

X   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See Exhibit A.**

| PLACE<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036 | DATE AND TIME<br>**January 20, 2014, at 5:00 p.m. (EST)** |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| /s/ Glenn M. Kurtz | January 15, 2014 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Glenn M. Kurtz, White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 (212) 819-2000

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| | DATE **January 15, 2014** | PLACE **New York, New York** |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME)<br>Rachel C. Strickland<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019-6099 | MANNER OF SERVICE<br>**E-mail and U.S. Mail** |
|---|---|
| SERVED BY (PRINT NAME)<br>Julia Winters, White & Case LLP | TITLE<br>*Counsel to the Ad Hoc Secured Group of LightSquared LP Lenders* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___**January 15, 2014**___
　　　　　　　　　　　DATE

/s/ Julia M. Winters
SIGNATURE OF SERVER

**Julia M. Winters**
**White & Case LLP, 1155 Avenue of the Americas**
**New York, NY  10036**

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
　(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
　(2) Command to Produce Materials or Permit Inspection.
　　(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　　(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　　(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
　　　(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
　(3) Quashing or Modifying a Subpoena.
　　(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
　　　(i) fails to allow a reasonable time to comply;
　　　(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
　　　(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　　(iv) subjects a person to undue burden.
　　(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
　　　(i) disclosing a trade secret or other confidential research, development, or commercial information;
　　　(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
　　　(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
　　　(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　　(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　　(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
　(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
　　(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　　(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　　(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
　　(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
　(2) Claiming Privilege or Protection.
　　(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　　(i) expressly make the claim; and
　　　(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　　(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

The terms and instructions below apply to the Deposition Topics and Document Requests:

1.       This Notice incorporates by reference the Uniform Definitions in Discovery Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as incorporated by Rule 7026-1 of the Local Rules.

2.       Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other legal or fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, and any other person who acted on its behalf.

3.       Each reference to a natural person shall be deemed to include that person's agents, attorneys, and any other person who acted on that person's behalf.

4.       References to the singular shall include the plural and references to the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

5.       "Ad Hoc Secured Group of LightSquared LP Lenders Plan" means the amended plan of reorganization proposed by the Ad Hoc Secured Group of LightSquared LP Lenders [Docket No. 970], and any modifications, amendments, or further amended or modified plans filed before the Court.

6.      "Affiliate" of any specified Person means any other Person that directly, or indirectly, or through one or more intermediaries, controls, is controlled by, or is under common control with, the Person specified.

7.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8.      "Any," "all" and "each" shall be construed broadly, and shall mean each, any and all as necessary to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

9.      "Asset" means movable, immovable or real property of any kind.

10.     "Asset Purchase Agreement" means that certain Purchase Agreement by and among certain of the Debtors, L-Band Acquisition, LLC, and Parent Entity, attached to the Disclosure Statement for the Ad Hoc Secured Group of LightSquared LP Lenders Plan as Exhibit F [Docket No. 765-6].

11.     "AWS" means the wireless telecommunications spectrum band known as Advanced Wireless Service, including but not limited to the microwave frequencies located between 1710 MHz and 1755 MHz and 2110 MHz and 2155 MHz.

12.     "Bid Procedures Order" means the Order (A) Establishing Bid Procedures, (B) Scheduling Date and Time for Auction, (C) Approving Assumption and Assignment Procedures, (D) Approving Form of Notice, and (E) Granting Related Relief, entered by the Bankruptcy Court in the LightSquared Cases on October 1, 2013 [Docket No. 892].

13.     "Charles W. Ergen" means Charles W. Ergen, as well as his Affiliates, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other Persons acting on his behalf.

14.     "Concerning" means comprising, consisting of, referring to, reflecting, regarding, supporting, evidencing, relating to, prepared in connection with, used in preparation for, or being in any way legally, logically or factually concerned with the matter or Document described, referred to or discussed.

15.     "Court" means the United States Bankruptcy Court for the Southern District of New York.

16.     "Debtors" means, collectively, LightSquared Inc., LightSquared Investors Holdings Inc., One Dot Four Corp., One Dot Six Corp., SkyTerra Rollup LLC, SkyTerra Rollup Sub LLC, SkyTerra Investors LLC, TMI Communications Delaware, Limited Partnership, LightSquared GP Inc., LightSquared LP, ATC Technologies, LLC, LightSquared Corp., LightSquared Finance Co., LightSquared Network LLC, LightSquared Inc. of Virginia, LightSquared Subsidiary LLC, LightSquared Bermuda Ltd., SkyTerra Holdings (Canada) Inc., SkyTerra (Canada) Inc., and One Dot Six TVCC Corp., as well as their divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other persons acting on their behalf.

17.     "DISH" means DISH Network Corporation, as well as its divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other persons acting on its behalf.

18.     "Document" is used in its broadest sense and means any written, typed, printed, recorded or graphic matter of any kind, however produced or reproduced, and all non-identical

copies thereof, whether different because of notes made thereon or otherwise, including, but not limited to, and by way of example only: letters or other correspondence, messages, telegrams, telexes, memoranda, notations, reports, analyses, summaries, charts, graphs, studies, tabulations, statements, notes, notebooks, work papers, telephone toll records, invoices, books, pamphlets, brochures, press releases, diaries, minutes of meetings or conferences, transcripts of telephone conversations, transcripts of testimony, cost sheets, financial reports, accountants' work papers, opinions or reports of consultants, checks (front and back), check stubs, receipts, ledgers, purchase orders, pictures, photographs, contracts, agreements, advertisements, motion picture films, tapes, tape recordings, videotapes, indices, microfilm, other data compilations, including computer data, computer diskettes or the memory units containing such data from which information can be obtained or translated into usable form, drafts of any of the foregoing, English translations or summaries of foreign language documents and all similar documents.

19.    "FCC" means the Federal Communications Commission.

20.    "GPS" means the Global Positioning System comprising certain space-based satellite navigation systems and corresponding receivers.

21.    "Including" means including but not limited to the referenced subject.

22.    "January 7 Letter" means the letter dated January 7, 2014 wherein L-Band Acquisition, LLC, among other things, purports to terminate the Plan Support Agreement.

23.    "LBAC" means L-Band Acquisition, LLC, as well as its Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other Persons acting on its behalf.

24.    "LBAC Bid" has the meaning ascribed to it in the Bid Procedures Order.

25.    "Lindsey Revocable Trust" means that certain trust account at Charles Schwab & Co., Inc., of which Charles W. Ergen is a trustee.

26.    "LP Estates" means the bankruptcy estates, consistent with 11 U.S.C. § 541, comprising the Assets of LightSquared LP.

27.    "Milestones" means the milestones set forth in Exhibit C to the Plan Support Agreement.

28.    "Person" means all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

29.    "Plan Support Agreement" means that certain Plan Support Agreement dated as of July 23, 2013, by and among (i) SP Special Opportunities, LLC, (ii) L-Band Acquisition, LLC, (iii) certain other members of the Ad Hoc Secured Group of LightSquared LP Lenders exclusive of SP Special Opportunities, LLC, and (iv) solely for the purposes of Section 7.11 thereof, DISH Network Corporation, attached to the Ad Hoc Secured Group of LightSquared LP Lenders Plan as Exhibit B-1 [Docket No. 970-2].

30.    ███████████████████████████████████

████████████████████████████████████████

31.    "SPSO" means SP Special Opportunities LLC, as well as its Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives and other Persons acting on its behalf.

32.    Production Obligations.  You are required to produce all responsive Documents that are in your possession, custody or control, which includes, without limitation, any responsive Document that was or is prepared, kept, or maintained for personal use, in the personal files, or as the personal property of any of SPSO's Affiliates or representatives and any

non-privileged Documents in the possession, custody or control of SPSO's present and former

attorneys, agents, or any other persons currently acting or who previously acted on SPSO's

behalf, including, without limitation, Willkie Farr & Gallagher LLP.

33.    Redaction. Each request for Documents seeks production of the Document in its

entirety, without abbreviation, modification, or redaction, including, but not limited to, all

attachments, actual, proposed or contemplated envelopes, transmittal sheets, cover letters,

exhibits, enclosures, or other matters affixed thereto.

34.    Drafts. A request for Documents shall be deemed to include a request for all

actual, proposed, or contemplated drafts or mark-ups thereof, revisions, modifications, or

amendments thereto, and non-identical copies thereof, in addition to the Document itself.

35.    Continuing Requests. These requests are continuing. If, after producing the

requested Documents, SPSO obtains or becomes aware of any further Documents responsive to

these requests, SPSO is required to produce such additional Documents.

36.    Privileged or Proprietary Matter. In the event that SPSO withholds any

Document on the basis of any legal objection or privilege, SPSO shall indicate the following

information for each such withheld Document;

    a)    date of Document;

    b)    general character or type of Document (i.e. letter, memorandum, notes of meeting, etc.);

    c)    the identity of the person in possession of the Document;

    d)    the identity of the author of the Document;

    e)    the identity of the original recipient or holder of the Document;

    f)    relationship of the author, addressee and any other recipient;

    g)    the general subject matter of the Document; and

h)    the legal basis, including, but not limited to, any legal objection or privilege for withholding the Document.

37.    <u>Lost or Destroyed Documents</u>.  If any Document that is the subject of these requests was at one time in existence, but was subsequently lost, discarded or destroyed, SPSO shall identify such Document as completely as possible, including the following information:  (a) type of Document, (b) date of Document, (c) date when the Document became lost, discarded or destroyed, (d) circumstances under which the Document was lost, discarded or destroyed and (e) identity of all persons having knowledge of the contents of the Document.

38.    <u>Partial Production</u>.  If any Document cannot be produced in full, produce it to the extent possible, stating the reasons for SPSO's inability to produce the remainder, as well as any information, knowledge or belief it has concerning the unproduced portion.

39.    <u>No Responsive Documents</u>.  If there are no Documents responsive to a particular request, state so in writing.

40.    Unless otherwise indicated in a particular request, the time period covered by these requests is from May 14, 2012, to the present date.

## DEPOSITION TOPICS

1.    ████████████████████████████

2.    The January 7 Letter.

3.    The Plan Support Agreement, including the Milestones.

4.    The Bid Procedures Order, including the provisions concerning the irrevocability of the LBAC Bid.

5.    The Asset Purchase Agreement, including any alleged missing terms.

6.    The LBAC Bid.

7.    Charles W. Ergen's or SPSO's intent to acquire or not acquire the Debtors' Assets.

8.    Charles W. Ergen's or SPSO's intent, consideration, or analysis of potentially purchasing the Debtors' Assets at a price lower than the LBAC Bid.

9.    Value of the Debtors' Assets.

10.    The Debtors' present and prospective cash needs.

11.    The potential distress or harm to the LP Estates caused by a failure of LBAC or DISH to consummate the LBAC Bid.

12.    Releases of Affiliates of DISH, LBAC, SPSO or Charles W. Ergen pursuant to any plan of reorganization for the Debtors' cases, including but not limited to the Ad Hoc Secured Group of LightSquared LP Lenders Plan.

## DOCUMENT REQUESTS

1.    ████████████████████████████████████████████

████████████████████████████████████████

2.    All Documents concerning the Plan Support Agreement, including but not limited to the Milestones.

3.    All Documents concerning the Asset Purchase Agreement, including but not limited to the negotiation and consideration of the language contained in section 7.11(a) thereto.

4.    All Documents concerning the Bid Procedures Order, including but not limited to the irrevocability of the LBAC Bid until February 15, 2014.

5.    All Documents concerning the value of the Debtors' Assets, including but not limited to the value to SPSO or Charles W. Ergen.

6.      All Documents concerning LBAC's, SPSO's or Charles W. Ergen's intent to acquire or not acquire the Debtors' Assets.

7.      All Documents concerning the terms of the Asset Purchase Agreement, including but not limited to any alleged missing terms and any potential completion of any missing terms.

8.      All Documents concerning the Debtors' present and prospective cash needs, including but not limited to any analysis or evaluation of the potential that the Debtors may become administratively insolvent.

9.      All Documents concerning any intent, consideration or analysis of potentially purchasing the Debtors' Assets at a price lower than the LBAC Bid, including but not limited to a potential renegotiation of the LBAC Bid.

10.     All Documents concerning potential distress or harm to the LP Estates caused by a failure of LBAC or DISH to consummate the LBAC Bid.

11.     All Documents concerning releases of affiliates of SPSO or Charles W. Ergen pursuant to the Asset Purchase Agreement or any plan of reorganization in the Debtors' cases.

12.     All Documents concerning a potential interest in purchasing or bidding for any of the Debtors' Assets.

13.     All Documents concerning the investment strategy or options of Charles W. Ergen or the Lindsey Revocable Trust.

14.     All Documents concerning the investment strategy of Charles W. Ergen for the Lindsey Revocable Trust.

15.     All Documents concerning the possibility that DISH could use its AWS spectrum as downlink and the potential opportunities and consequences of doing so.

16.    All Documents concerning SPSO's or Charles W. Ergen's role in the LBAC Bid,

including but not limited to the letter sent on May 15, 2013, from Willkie Farr & Gallagher LLP,

on behalf of LBAC, to LightSquared LP, care of Moelis & Company.

# EXHIBIT C

**From:**               Ostrove, Norman
**Sent:**              Wednesday, February 26, 2014 5:14 PM
**To:**                   'Winters, Julia'; Dugan, James
**Cc:**                   'Glueckstein, Brian D.'; 'Kurtz, Glenn'
**Subject:**          RE: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)

Julia,
SPSO will not be searching for documents responsive to Requests 2 through 17. Requests 2 through 17 are duplicative of your requests 2 through 16 in your subpoena dated January 15, 2014. These issues have already been brought before the judge on January 24, 2014 and again on January 27, 2014. As we discussed on the call earlier today, we do not plan on revisiting these issues again.

I know we didn't talk about depositions earlier, but if you all are inclined to take Mr. Ergen's deposition, he is available on 3/7 in Colorado.

Thanks,
Norm

**From:** Winters, Julia [mailto:jwinters@whitecase.com]
**Sent:** Wednesday, February 26, 2014 2:32 PM
**To:** Ostrove, Norman; Dugan, James
**Cc:** 'Glueckstein, Brian D.'; Kurtz, Glenn
**Subject:** RE: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)

Norm:

I will get back to you on your first two points after you respond to my question regarding whether SPSO (including Willkie) will search for responsive documents in response to Requests #2 through 17. It would be most helpful if you provide a request-by-request response as we did for SPSO's requests to the Ad Hoc Group this morning. If we come to a mutual agreement to search lawyers' emails (W&C and Willkie respectively), we agree that purely internal or purely client/FA communications need not be searched.

Regarding Blackstone documents we are not searching or producing Blackstone documents in response to the subpoena to the Ad Hoc Secured Group. As we have done in our responses and objections to prior subpoenas (including prior subpoenas sent by Willkie), we object to your broad definition of "the Ad Hoc Secured Group," "you," and "your" as overly broad and unduly burdensome. We will provide you with formal responses and objections to the subpoenas to the Ad Hoc Secured Group and Cyrus by Friday.

Best,
Julia

**Julia M. Winters** | Associate
T +1 212 819 8541    E jwinters@whitecase.com

White & Case LLP | 1155 Avenue of the Americas | New York, NY 10036-2787

**From:** Ostrove, Norman [mailto:NOstrove@willkie.com]
**Sent:** Wednesday, February 26, 2014 2:07 PM
**To:** Winters, Julia; Dugan, James
**Cc:** 'Glueckstein, Brian D.'
**Subject:** RE: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)

Julia,
Further to our conversation earlier today, SPSO would like the Ad Hoc Group to search and produce emails from White & Case. We'd be interested in the following custodians: Lauria, Kurtz, Pryor, Ambruosio, Matt Brown, and Andrew Zatz. We propose that internal emails need not be reviewed and emails with clients need not be reviewed and produced, except to the extent they include third-parties. Willkie will do the same.

Regarding Requests 2 and 3 concerning subordination and valuation, these topics are highly relevant to SPSO's treatment and confirmability of the plan and should not be limited to discussions concerning the current plan only. If the Ad Hoc group is not willing to produce these documents we will take it up with the judge.

Finally, it was not clear on the call this morning, so I wanted to confirm that you will be producing documents from Blackstone, specifically Steve Zelin. The definition of Ad Hoc Secured Group in our subpoena includes not only White & Case, but also Blackstone.

As discussed, SPSO requests a copy of your list of search terms.


Thanks,
Norm

**From:** Winters, Julia [mailto:jwinters@whitecase.com]
**Sent:** Tuesday, February 25, 2014 6:31 PM
**To:** Dugan, James
**Cc:** 'Glueckstein, Brian D.'; Ostrove, Norman
**Subject:** RE: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)


Norm: does 10:30 tomorrow work for you? If so we can use the following dial in:

Dial In: 877-716-2582 PIN: 12795536


Thanks,
Julia




Julia M. Winters
White & Case LLP
(212) 819-8541

-----Original Message-----
**From:** Dugan, James [jdugan@willkie.com]
**Sent:** Tuesday, February 25, 2014 04:06 PM Eastern Standard Time
**To:** Winters, Julia
**Cc:** Glueckstein, Brian D.; Ostrove, Norman
**Subject:** RE: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)


I can do 4:30. Probably makes sense for both of us to be on the call. I should be back from court tomorrow afternoon, or Norm can handle tomorrow morning if the timing works better for Brian or you.

**From:** Winters, Julia [mailto:jwinters@whitecase.com]
**Sent:** Tuesday, February 25, 2014 3:47 PM
**To:** Dugan, James
**Cc:** Glueckstein, Brian D.
**Subject:** RE: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)

2

Thanks Jim, the letter had not made its way to me. Brian are you available at 4:30pm today? Otherwise, Jim, up to you whether you want to talk this afternoon or wait until a time tomorrow when both of you are available.

Best,
Julia

**Julia M. Winters** | Associate
**T** +1 212 819 8541   **E** jwinters@whitecase.com
White & Case LLP | 1155 Avenue of the Americas | New York, NY 10036-2787

**From:** Dugan, James [mailto:jdugan@willkie.com]
**Sent:** Tuesday, February 25, 2014 3:07 PM
**To:** Winters, Julia
**Cc:** Glueckstein, Brian D.
**Subject:** FW: In re LightSquared Inc., et al., Case No. 12-12080 (SCC)

It went to Glenn.

**From:** Glueckstein, Brian D. [mailto:gluecksteinb@sullcrom.com]
**Sent:** Friday, February 21, 2014 7:41 PM
**To:** 'gkurtz@whitecase.com' (gkurtz@whitecase.com); 'AStone@milbank.com' (AStone@milbank.com)
**Cc:** Giuffra Jr., Robert J.; Frawley, Brian T.; 'mbarr@milbank.com' (mbarr@milbank.com); Basta, Paul M (pbasta@kirkland.com); Sussberg, Josh (jsussberg@kirkland.com); 'tlauria@whitecase.com' (tlauria@whitecase.com); Mundiya, Tariq; Strickland, Rachel; Dugan, James
**Subject:** In re LightSquared Inc., et al., Case No. 12-12080 (SCC)

Please see the attached letter.

Regards,
Brian

Brian D. Glueckstein
Sullivan & Cromwell LLP | 125 Broad Street |
    New York, NY 10004-2498
T: (212) 558-1635 | F: (212) 291-9305 |
gluecksb@sullcrom.com

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IMPORTANT NOTICE:  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

====================================================================================

*******************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
*******************************************************************

====================================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

====================================================================================

*******************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
*******************************************************************

====================================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

# EXHIBIT D

**From:**        Freimuth, Matthew
**Sent:**        Tuesday, February 25, 2014 10:37 PM
**To:**          'Renenger, Aaron'; Ostrove, Norman; Imoisili, Aluyah; McNamara, Andrea; 'Abid Qureshi (aqureshi@akingump.com)'; 'Adam Shiff (ashiff@kasowitz.com)'; Stone, Alan; 'Alan Strasser (astrasser@robbinsrussell.com)'; Leblanc, Andrew; 'Ashley Beane (abeane@akingump.com)'; Forde, Bianca; 'Brian Carney (bcarney@akingump.com)'; 'Christine Montenegro (cmontenegro@kasowitz.com)'; 'Dan Fliman (dfliman@kasowitz.com)'; 'Dan Ginsberg (dginsberg@stroock.com)'; 'Dan Lerman (dlerman@robbinsrussell.com)'; Cohen, David S.; 'David Friedman (DFriedman@kasowitz.com)'; 'Debbie Newman (djnewman@akingump.com)'; 'Donald Burke (dburke@robbinsrussell.com)'; 'Frank Merola (fmerola@stroock.com)'; 'George Wang (gwang@stblaw.com)'; 'Glenn Kurtz (gkurtz@whitecase.com)'; 'Hiral Mehta (hmehta@stblaw.com)'; 'Jamie Sprayregen (james.sprayregen@kirkland.com)'; 'Jayme Goldstein (jgoldstein@stroock.com)'; 'Jed Bergman (jbergman@kasowitz.com)'; 'Jeff Roether (jroether@stblaw.com)'; 'Jeffrey Sabin (jeffrey.sabin@bingham.com)'; 'Jenny Woodson (jwoodson@akingump.com)'; 'Jessica Fitts (jfitts@akingump.com)'; 'Joe McLaughlin (jmclaughlin@stblaw.com)'; 'Joseph Serino (jserino@kirkland.com)'; 'Joshua Sussberg (jsussberg@kirkland.com)'; 'Julia Frost-Davies (julia.frost-davies@bingham.com)'; 'Julia Winters (jwinters@whitecase.com)'; Gartenberg, Karen; 'Ken Pasquale (kpasquale@stroock.com)'; Bassett, Nick; 'Kim Conroy (kconroy@kasowitz.com)'; 'Kristopher Hansen (khansen@stroock.com)'; 'Lawrence Robbins (lrobbins@robbinsrussell.com)'; Barr, Matthew; 'Matthew Stein (mstein@kasowitz.com)'; 'Meredith Lahaie (mlahaie@akingump.com)'; Hirschfeld, Michael; 'Michael Stamer (mstamer@akingump.com)'; 'Patrick Strawbridge (patrick.strawbridge@bingham.com)'; 'Paul Basta (pbasta@kirkland.com)'; 'Paul Burgo (pburgo@kasowitz.com)'; 'Paul Sirkis (psirkis@sbtlaw.com)'; 'Phil Dublin (pdublin@akingump.com)'; 'Ryan    Donohue'; 'Sandy Qusba (squsba@stblaw.com)'; 'Spencer Willig (swillig@whitecase.com)'; Mundiya, Tariq; Gallup, Taryn; 'Tom Lauria (tlauria@whitecase.com)'; 'Warren Haskel (warren.haskel@kirkland.com)'; Arriola, Christian; Pojunas, Rachel; "gluecksteinb@sullcrom.com' (gluecksteinb@sullcrom.com)'; 'millersc@sullcrom.com'; Barr, Matthew; 'AOlejnik@jenner.com'; 'arwolf@wlrk.com'
**Subject:**    Search Term List (In re LightSquared Inc., et al., Case No. 12-12080 (SCC))
**Attachments:**  L2_ Search Terms.DOCX

We are concerned that some of the parties we've subpoenaed in connection with plan confirmation are taking a very narrow and restrictive approach with respect to the use of search terms to identify potentially responsive documents. To guide the collection of responsive documents, we're attaching list of terms that we would expect all subpoenaed parties to run, with the following exception.  To the extent the list includes a proper name or a party name, we would not expect that party to run its own name.  For example, we're not asking that Milbank search L2's documents for "Smith" or that Kasowitz search Harbinger's documents for "Falcone."

Please let us know if you have any objections to the attached by noon so that we can raise the search term issue with the Court as soon as possible if necessary.

**Matthew Freimuth**
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8183

**SEARCH TERM LIST TO BE USED
IN CONNECTION WITH SPSO PLAN CONFIRMATION SUBPOENAS**

1122
1126
1129
3GPP
510
accept
Ad Hoc
Ad Hoc Secured Group
Adequate protection
adversary
agent
Bingham
Blackstone
board
Cap Re
CapRe
Centaurus
Chapman
Charlie
class!
confirm
control
cram
Cyrus
Daigle
designat!
DIP
discrimin!
Dish
DOD
DOT
E.D.
Echo
Echo Star
EchoStar
effective
equitable
equity
Ergen
exit
Falcone

11383145.2

FCC
feasib!
Fortress
Friedman
GNSS
Good faith
govern!
GPS
Harbinger
impair!
indubitable
Inmarsat
interest
JPM
junior
Kasowitz
Kurtz
Lauria
Lazard
LBAC
L-Band
liquidat!
Liquidity
Milbank
Moelis
Melody
Murgio
new money
NOAA
NTIA
OOBE
PAF
Phil
plan
pref!
project!
protect!

Rachel
recover!
regulatory
reject
SATs
settl!
SIG
Simpson

11383145.2

Smith
SPSO
Steve
Strickland
Stroock
subordin!
technical
UBS
unimpair!
US Bank
valu!
Voting
W&C
White & Case
Willkie
Zelin

| | |
|---|---|
| **From:** | Olejnik, Andrew J. [AOlejnik@jenner.com] |
| **Sent:** | Wednesday, February 26, 2014 4:27 PM |
| **To:** | Dugan, James; Freimuth, Matthew |
| **Cc:** | Ostrove, Norman; Wedoff, Carl N. |
| **Subject:** | RE: Search Term List (In re LightSquared Inc., et al., Case No. 12-12080 (SCC)) |
| **Attachments:** | RE: LightSquared: Hootnick Deposition and Moelis Discovery |

Jim,

I am able to confirm that Moelis is reviewing for responsiveness all of Mark Hootnick's emails from September 16, 2013 through the date of the subpoena that hit on any of the following terms: LightSquared, Angel, L2, "Light Squared," Ergen, ████ NOAA, 3GPP, NTIA, DOD, DOT, OOBE, GPS, GNSS, or Falcone – the last eleven of which we added in response to Willkie's request on Tuesday morning (see attached). Moelis is also reviewing for responsiveness the documents in its LightSquared deal folder. We are working with Milbank to deliver to you responsive, non-privileged materials by your requested deadline of Friday, February 28, 2014.

Adding the 100 or so search terms that you requested last night, even if limited to the domains you identify below, would be unduly burdensome and unlikely to result in any relevant, unique documents related to the LightSquared case that are not otherwise identified by any of the following broad, LightSquared-specific terms – L2, LightSquared, Angel (Moelis' project name for the engagement), or "Light Squared." We have made a substantial and good faith effort to identify documents responsive to SPSO's subpoena and are willing to discuss with you any concerns you may have after you have the opportunity to review Moelis' production and the documents from the Debtors and other principal parties in the LightSquared bankruptcy cases.

Drew

---

**From:** Dugan, James [mailto:jdugan@willkie.com]
**Sent:** Wednesday, February 26, 2014 11:49 AM
**To:** Olejnik, Andrew J.; Freimuth, Matthew
**Cc:** Ostrove, Norman; Wedoff, Carl N.
**Subject:** RE: Search Term List (In re LightSquared Inc., et al., Case No. 12-12080 (SCC))

Andrew,

The problem with your proposal is that we know from documents that have been produced by other parties, which included correspondence with Mr. Hootnick, that not there are highly relevant documents that would not have been identified (and have not been identified) by using the terms (LightSquared or Angel or L2 or LightSquared). Rather than overly restricting the emails to be reviewed by using a narrow gating search, we would be OK with searching the broader number of terms (which we circulated last night) but limiting the domains searched. As an example, the following domains were searched in connection with the adversary proceeding:

1. Domain Limitation (To and From): Moelis will apply the search terms set forth below to Mark Hootnick's and Ryan Cech's emails sent to or received from the following email domains: '*@jefferies.com' OR '*@melodypartners.com' OR '*@barclays.com' OR '*@gs.com' OR '*@morganstanley.com' OR '*@jpmorgan.com' OR '*@blackstone.com' OR '*@hl.com' OR '*@lazard.com' OR '*@willkie.com' OR '*@whitecase.com' OR '*@ny.whitecase.com' OR '*@akingump.com' OR '*@kasowitz.com' OR '*@weil.com' OR '*@bingham.com' OR '*@skadden.com' OR '*@sullcrom.com' OR '*@omm.com' OR '*@lw.com' OR '*@fortress.com' OR '*@provequity.com' OR '*@redwoodcap.com' OR '*@silverpointcapital.com' OR '*@amlp.com' OR '*@capgroup.com' OR

'*@soluslp.com' OR '*@cyruscapital.com' OR '*@centaurusenergy.com' OR '*@harbingercapital.com'
OR '*@aol.com' OR '*@mastcapllc.com' OR '*@boeing.com' OR '*@inmarsat.com' OR '*@moelis.com'

Please let me know if this is agreeable, or we may need to go before Judge Chapman.

Jim

**From:** Olejnik, Andrew J. [mailto:AOlejnik@jenner.com]
**Sent:** Wednesday, February 26, 2014 11:35 AM
**To:** Freimuth, Matthew
**Cc:** Ostrove, Norman; Dugan, James; Wedoff, Carl N.
**Subject:** RE: Search Term List (In re LightSquared Inc., et al., Case No. 12-12080 (SCC))

Matt,

Moelis objects to using the list of search terms you sent last night. As I have communicated to Norm and Jim in the attached correspondence, we are reviewing for responsiveness and privilege all of Mark Hootnick's emails from September 16, 2013 through the date of the subpoena that hit on (LightSquared or Angel or L2 or "Light Squared"). Those terms are reasonably tailored to identify documents in the LightSquared case that may be responsive to SPSO's subpoena. Moelis also is reviewing its LightSquared deal folder for documents responsive to SPSO's subpoena. We are working expeditiously with Milbank to ensure that you have these documents by this Friday.

Moelis is still considering your request to expand the list of search terms for Mark's emails during this period using the 11 terms in Norm's email to me yesterday morning. I am optimistic that we will be able to reach an understanding with respect to those terms, but I do not yet have an answer for you yet. I hope to have an answer very soon.

Best,
Drew


**Andrew J. Olejnik**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
(312) 840-7629 | TEL
(312) 840-7729 | FAX
AOlejnik@jenner.com
Download V-Card | View Biography



JENNER&BLOCK
100 YEARS
CELEBRATING A CENTURY

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Freimuth, Matthew [mailto:mfreimuth@willkie.com]
**Sent:** Tuesday, February 25, 2014 9:37 PM
**To:** 'Renenger, Aaron'; Ostrove, Norman; Imoisili, Aluyah; McNamara, Andrea; 'Abid Qureshi (aqureshi@akingump.com)'; 'Adam Shiff (ashiff@kasowitz.com)'; Stone, Alan; 'Alan Strasser (astrasser@robbinsrussell.com)'; Leblanc, Andrew; 'Ashley Beane (abeane@akingump.com)'; Forde, Bianca; 'Brian Carney (bcarney@akingump.com)'; 'Christine Montenegro (cmontenegro@kasowitz.com)'; 'Dan Fliman (dfliman@kasowitz.com)'; 'Dan Ginsberg (dginsberg@stroock.com)'; 'Dan Lerman (dlerman@robbinsrussell.com)'; Cohen, David S.; 'David Friedman (DFriedman@kasowitz.com)'; 'Debbie Newman

(djnewman@akingump.com)'; 'Donald Burke (dburke@robbinsrussell.com)'; 'Frank Merola (fmerola@stroock.com)'; 'George Wang (gwang@stblaw.com)'; 'Glenn Kurtz (gkurtz@whitecase.com)'; 'Hiral Mehta (hmehta@stblaw.com)'; 'Jamie Sprayregen (james.sprayregen@kirkland.com)'; 'Jayme Goldstein (jgoldstein@stroock.com)'; 'Jed Bergman (jbergman@kasowitz.com)'; 'Jeff Roether (jroether@stblaw.com)'; 'Jeffrey Sabin (jeffrey.sabin@bingham.com)'; 'Jenny Woodson (jwoodson@akingump.com)'; 'Jessica Fitts (jfitts@akingump.com)'; 'Joe McLaughlin (jmclaughlin@stblaw.com)'; 'Joseph Serino (jserino@kirkland.com)'; 'Joshua Sussburg (jsussberg@kirkland.com)'; 'Julia Frost-Davies (julia.frost-davies@bingham.com)'; 'Julia Winters (jwinters@whitecase.com)'; Gartenberg, Karen; 'Ken Pasquale (kpasquale@stroock.com)'; Bassett, Nick; 'Kim Conroy (kconroy@kasowitz.com)'; 'Kristopher Hansen (khansen@stroock.com)'; 'Lawrence Robbins (lrobbins@robbinsrussell.com)'; Barr, Matthew; 'Matthew Stein (mstein@kasowitz.com)'; 'Meredith Lahaie (mlahaie@akingump.com)'; Hirschfeld, Michael; 'Michael Stamer (mstamer@akingump.com)'; 'Patrick Strawbridge (patrick.strawbridge@bingham.com)'; 'Paul Basta (pbasta@kirkland.com)'; 'Paul Burgo (pburgo@kasowitz.com)'; 'Paul Sirkis (psirkis@sbtlaw.com)'; 'Phil Dublin (pdublin@akingump.com)'; 'Ryan Donohue'; 'Sandy Qusba (squsba@stblaw.com)'; 'Spencer Willig (swillig@whitecase.com)'; Mundiya, Tariq; Gallup, Taryn; 'Tom Lauria (tlauria@whitecase.com)'; 'Warren Haskel (warren.haskel@kirkland.com)'; Arriola, Christian; Pojunas, Rachel; "gluecksteinb@sullcrom.com' (gluecksteinb@sullcrom.com)'; 'millersc@sullcrom.com'; Barr, Matthew; Olejnik, Andrew J.; 'arwolf@wlrk.com'
**Subject:** Search Term List (In re LightSquared Inc., et al., Case No. 12-12080 (SCC))

We are concerned that some of the parties we've subpoenaed in connection with plan confirmation are taking a very narrow and restrictive approach with respect to the use of search terms to identify potentially responsive documents. To guide the collection of responsive documents, we're attaching list of terms that we would expect all subpoenaed parties to run, with the following exception. To the extent the list includes a proper name or a party name, we would not expect that party to run its own name. For example, we're not asking that Milbank search L2's documents for "Smith" or that Kasowitz search Harbinger's documents for "Falcone."

Please let us know if you have any objections to the attached by noon so that we can raise the search term issue with the Court as soon as possible if necessary.

**Matthew Freimuth**
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
(212) 728-8183


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it

back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**From:**          Ostrove, Norman
**Sent:**          Tuesday, February 25, 2014 10:44 AM
**To:**            Olejnik, Andrew J.
**Cc:**            Dugan, James
**Subject:**       RE: LightSquared: Hootnick Deposition and Moelis Discovery

That you for the email. We were tied up last night or we would have gotten back to you sooner. Searching Mr. Hootnick's emails for only the terms LightSquared, Angel, L2, or Light Squared is too restrictive and can not be reasonably calculated to find responsive documents under these circumstances. We request that you add the following terms, which are calculated to locate documents that are responsive to the issues of this case and specifically to the issues underlying Mr. Hootnick's valuation—namely FCC approval and the overall viability of LightSquared's business:

-    Ergen
-    ████████████
-    NOAA
-    3GPP
-    NTIA
-    DOD
-    DOT
-    OOBE
-    GPS
-    GNSS
-    Falcone

We do not believe these search terms will result in a burdensome number of non-responsive documents to review given how narrowly tailored they are to the specific issues of this case.
Thanks,
Norm

**From:** Olejnik, Andrew J. [mailto:AOlejnik@jenner.com]
**Sent:** Tuesday, February 25, 2014 10:20 AM
**To:** Ostrove, Norman
**Cc:** Dugan, James
**Subject:** RE: LightSquared: Hootnick Deposition and Moelis Discovery

Norm,

I just left you a voicemail message yesterday evening and again this morning but wanted to follow up by email as well. In the interest of time and getting the production done this week, in response to the SPSO subpoena, Moelis will review for responsiveness and privilege Mark Hootnick's emails from September 16, 2013 through the date of the subpoena that hit on (LightSquared or Angel or L2 or "Light Squared"). Although we think it would be reasonable and appropriate to do so, we will not restrict that search based on domain limiters or additional search terms. Moelis also is reviewing its LightSquared deal folder for documents responsive to your February 19, 2014 requests.

As noted below, we are preparing a more formal letter in response to your requests which will set forth various objections to the requests. Please let me know if you would like to schedule a time to discuss these matters further. Milbank also will be reviewing the Moelis materials and will be the one to actually produce the documents later this week.

Drew

**From:** Olejnik, Andrew J.
**Sent:** Sunday, February 23, 2014 9:47 PM

1

**To:** 'Ostrove, Norman'
**Cc:** Dugan, James
**Subject:** RE: LightSquared: Hootnick Deposition and Moelis Discovery

Norm,

We should discuss this further on Monday.

Best,
Drew

---

**From:** Ostrove, Norman [mailto:NOstrove@willkie.com]
**Sent:** Sunday, February 23, 2014 6:03 PM
**To:** Olejnik, Andrew J.
**Cc:** Dugan, James
**Subject:** RE: LightSquared: Hootnick Deposition and Moelis Discovery

Drew, if I understand your email correctly, you propose to (a) segregate from Mr. Hootnick's emails all those that reference Lightsquared, L2, Angel, or "Light Squared", (b) limit those emails to those that are to or from the domains listed below, and then (c) run search terms against the remaining documents after steps (a) and (b) are completed. This is too restrictive. We would be interested in emails to or from, for example, Phil Falcone whether or not they contain L2, LightSquared, or Angel. We'd also be interested in emails concerning, for example, ████████████, whether or not they were to or from the listed domains and whether or not they contain L2, Lightsquared, etc. It seems to us that your criteria should be disjunctive, so you'll review for responsiveness all those that hit on either (a) or (b) or (c). As to your search terms for the new issues covered in our requests, we'd want you to go back to September since they were not part of your previous search.
Thanks,
Norm

---

**From:** Olejnik, Andrew J. [mailto:AOlejnik@jenner.com]
**Sent:** Sunday, February 23, 2014 4:03 PM
**To:** Ostrove, Norman
**Subject:** FW: LightSquared: Hootnick Deposition and Moelis Discovery

Mr. Ostrove,

Below is a description of steps Moelis took to produce documents in response to the Ad Hoc's plan discovery subpoena in January 2014. To update the previously produced discovery, we are working on search terms that will be more tailored to your February 19, 2014 requests and plan to execute those searches against Mark Hootnick's emails from January 3, 2014 through February 19, 2014, that hit on one of (LightSquared OR L2 OR Angel OR "Light Squared"), and that are to or from one or more of the domains identified below. We will then review those results for responsive, non-privileged materials. We also are working with Moelis to review its LightSquared deal folder for documents responsive to your February 19, 2014 requests.

We will be preparing a more formal letter in response to your requests which will set forth various objections to the requests. Nonetheless, I wanted to follow-up our conversation this afternoon with this information so that we can continue to make progress in an expeditious manner. Please let me know if you would like to schedule a time to discuss these matters further.

Drew

---

**Andrew J. Olejnik**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
(312) 840-7629 | TEL
(312) 840-7729 | FAX
AOlejnik@jenner.com
Download V-Card | View Biography



JENNER&BLOCK
**100** YEARS
CELEBRATING A CENTURY

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Olejnik, Andrew J.
**Sent:** Saturday, January 11, 2014 11:06 AM
**To:** 'Willig, Spencer'; Winters, Julia
**Cc:** Imoisili, Aluyah; Bassett, Nick; 'Renenger, Aaron'
**Subject:** RE: LightSquared: Hootnick Deposition and Moelis Discovery

Mr. Willig and Ms. Winters,

Subject to the objections I sent you in a letter dated January 7, 2014, Moelis expects to complete its production by Wednesday, January 15, 2014, and will produce documents on a rolling basis, as follows:

1. Moelis' documents will be produced through Debtors' counsel to permit Debtors' counsel to identify any documents over which the Debtors might assert privilege. Debtors' counsel will then prepare a privilege log and produce the non-privileged documents to you subject to a confidentiality agreement to be agreed upon by the parties.

2. As indicated in the January 7 letter, Moelis maintains a LightSquared deal folder on its shared drive and has reviewed the files in that folder for documents relating to its LightSquared valuation analysis, to the LightSquared sale process, and to LightSquared's financing matters. Those documents have been transmitted to Debtors' counsel. Moelis has excluded documents that were publicly filed in the bankruptcy case or with the SEC.

3. As indicated in the January 7 letter, Moelis is searching for responsive, non-privileged materials from the Moelis email files of Mark Hootnick. We have conducted the search using the following conditions:
    a. Emails from September 16, 2013 through January 2, 2014
    b. that hit on one of the following search terms: (LightSquared OR L2 OR Angel OR "Light Squared")
    c. to or from one or more of the following domains:
       '*@jefferies.com' OR '*@melodypartners.com' OR '*@barclays.com' OR '*@gs.com' OR '*@morganstanley.com' OR '*@jpmorgan.com' OR '*@blackstone.com' OR '*@hl.com' OR '*@lazard.com' OR '*@willkie.com' OR '*@whitecase.com' OR '*@ny.whitecase.com' OR '*@akingump.com' OR '*@kasowitz.com' OR '*@weil.com' OR '*@bingham.com' OR '*@skadden.com' OR '*@sullcrom.com' OR '*@omm.com' OR '*@lw.com' OR '*@fortress.com' OR '*@provequity.com' OR '*@redwoodcap.com' OR '*@silverpointcapital.com' OR '*@amlp.com' OR '*@capgroup.com' OR '*@soluslp.com' OR '*@cyruscapital.com' OR '*@centaurusenergy.com' OR '*@harbingercapital.com' OR '*@aol.com' OR '*@mastcapllc.com' OR '*@boeing.com' OR '*@inmarsat.com' OR '*@moelis.com'
    d. And, that hit on one or more of the search terms identified in column B of the attached spreadsheet. As you will see, the terms largely track the terms that you sent to the Debtors on January 3, 2014. We made modifications to remove proximity locators and wildcards so that the searches could be run by Moelis and the documents produced as soon as reasonably practical.

3

Please let me know your proposed dates and times for Mr. Hootnick's deposition.

Thanks very much,
Drew Olejnik


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **From:** | Olejnik, Andrew J. [AOlejnik@jenner.com] |
| **Sent:** | Thursday, February 27, 2014 10:19 AM |
| **To:** | Dugan, James |
| **Cc:** | Freimuth, Matthew; Ostrove, Norman |
| **Subject:** | RE: LightSquared Search Terms |

Jim,

We continue to believe that Moelis has conducted a reasonable and appropriate search to identify materials responsive to your February 19, 2014 document requests. We have reviewed all of Mark Hootnick's emails from September 16, 2013 through the date of the subpoena that are identified by one of the following terms: LightSquared, Angel, L2, or "Light Squared." We have not applied any other search term or domain limiters to this set of documents. We also expanded the search to include the 11 terms you requested on Tuesday morning: Ergen, ███████ NOAA, 3GPP, NTIA, DOD, DOT, OOBE, GPS, GNSS, or Falcone. Moelis also reviewed for responsiveness the documents in its LightSquared deal folder, and we expect to deliver to you, through Debtors' counsel, responsive, non-privileged materials by your requested deadline of Friday, February 28, 2014. Adding the terms you identify below is unlikely to produce unique, relevant documents from Moelis that are not otherwise in the possession of the Debtors or other principal parties in the Chapter 11 Cases. As you know, Moelis works with a large number of different clients, including other clients in the telecom industry. Searching the additional terms you identify without narrowing them to LightSquared-related materials would be unduly burdensome, likely yielding a large percentage of non-responsive documents or documents that are otherwise available from the Debtors or other principal parties. The process of extracting and preparing for search all emails from April 1, 2013 through the present, let alone reviewing and producing any additional documents, involves significant time and expense.

Again, Moelis has made a substantial and good faith effort to identify documents responsive to SPSO's subpoena, and we are willing to discuss with you any concerns you may have after you have the opportunity to review Moelis' production and the documents from the Debtors and other principal parties in the LightSquared bankruptcy cases.

Drew

---

**Andrew J. Olejnik**

**Jenner & Block LLP**
353 N. Clark Street, Chicago, IL 60654-3456 | jenner.com
(312) 840-7629 | TEL
(312) 840-7729 | FAX
AOlejnik@jenner.com
Download V-Card | View Biography

JENNER&BLOCK

CELEBRATING A CENTURY

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Dugan, James [mailto:jdugan@willkie.com]
**Sent:** Wednesday, February 26, 2014 10:36 PM
**To:** Olejnik, Andrew J.
**Cc:** Freimuth, Matthew; Ostrove, Norman
**Subject:** FW: LightSquared Search Terms

Andrew,

Thanks for your email of earlier today.  We continue to have concerns that the gating terms used to cull searched emails and documents are too narrow.  To provide context and by way of compromise, the Debtors have agreed to run terms set forth below.  We suggest that Moelis do the same.  We would be willing to revisit the issue if the volume of documents responsive to these terms is excessively large or burdensome to review and/or process.  Please let us know your response since we will likely seek court intervention tomorrow.  Thanks.

<u>Search Terms - January 4, 2014 to present</u>
(subordinat* OR designat* OR disallow* OR claim* OR vot* OR distribut*)
(classif* OR impair*)

"post-petition interest"
Exit w/5 (condition* OR facil* OR finan* OR agreement* or agmt)
(DIP OR "debtor-in-possession" OR "debtor in possession")

Debt
SPSO
LBAC
break-up OR "break-up"
COA OR "cause* of action"
(GPS OR "Global Positioning")
Valu*
(Sale OR sell OR auction) w/200 (spectrum OR asset* OR holding* OR right*)
(Good OR Bad) w/5 Faith
(Spectrum OR license)
NOL OR "Net operating loss"

"build-out" OR "build out"
Plan
reimburse*
project*
Ad hoc
Unimpair!
Impair!
discrimin!
designat!
indubitable
feasib!
subordin!
Vot*
Falcone

<u>Search Terms - April 1, 2013 to present</u>
3GPP w/10 (1600 OR spectrum OR *band*)

2

(study OR report OR analysis OR simulation) w/50 (spectrum OR device OR *band*)

power w/10 4G

1670

1675

1680

Ericsson

Isolation

Insertion_loss

Filter

Harris_Simon

Avago

Ericsson

"L-Band transmitter"

GNSS /3 receiver

GPS /3 receiver

GLONASS

BeiDou

Reference /3 design

██████████████████

Location /3 service

NOAA OR "National Oceanic and Atmospheric Administration" (1)

NTIA OR "National Telecommunications and Information Administration" (1)

OMB OR "Office of Management and Budget" (1)

Approv* w/50 regulat* OR government* (1)

FCC OR "Federal Communications Commission" (1)

DOC OR "Department of Commerce" (1)

DOD OR "Department of Defense" (1)

DOT OR "Department of Transportation" (1)

Swap w/50 (spectrum OR NOAA) (2)


**Search Terms September 1, 2013 to January 4, 2014**

("Ad Hoc" OR AHSG OR "LP Lenders" OR "LP Secured") w/50 plan (2)

Admin* w/3 insolven* (2)

Alan w/2 Carr OR Carr (2)

"Alcatel Lucent" (2)

APA OR "asset purchase agreement" OR "purchase agreement" (2)

ATC OR "ancillary terrestrial component" OR "terrestrial" (2)

(Auction OR Sale) w/50 (assets OR spectrum OR rights)

Authorization* (2)

Bandrich (2)

Boeing (2)

Chris* w/2 (Rogers OR Rogers) (2)

Contingen* OR Risk* w/50 (plan OR bid OR offer OR financ* OR FCC OR regulatory) (2)

Delay* w/200 (plan OR FCC OR confirmation) (2)

(DIP OR "debtor-in-possession" OR "debtor in possession") w/5 (finan* OR facil* OR Agent* OR Lender OR Obligor OR Borrower* OR (

DISH OR EchoStar OR "Echo Star" (2)

Alderman (2)

Ergen OR Charlie (2)

Exit w/5 (condition* OR facil* OR finan*)

Goldman (2)

(Good OR Bad) w/5 Faith

GPS OR "Global Positioning" (2)

Inmarsat (2)

Jefferies OR Jeffries (2)

LBAC

"L Band Acquisition" (2)

Preferred OR Prefs (2)

Projection* OR Forecast* (2)

(Sale OR sell) w/200 (spectrum OR asset* OR holding* OR right*)

Spectrum w/50 (rights OR asset* OR price OR license OR value) (2)

(Spectrum OR license) w/50 mod*

SPSO

Subordinat* w/50 (Ergen OR SPSO OR "Sound Point" OR Charlie OR DISH OR EchoStar OR Charles) (2)

Valu* w/50 (assets OR spectrum OR rights OR litig* OR claim* OR "cause* of action" OR COA OR holding* OR approv* OR satellite*)

"T-Mobile" or Verizon or SoftBank (2)

"ATT" or "AT&T"

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE:  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT E

| | |
|---|---|
| **From:** | Renenger, Aaron [ARenenger@milbank.com] |
| **Sent:** | Thursday, February 27, 2014 8:16 AM |
| **To:** | Dugan, James; Stone, Alan |
| **Cc:** | Strickland, Rachel; Freimuth, Matthew; Ostrove, Norman |
| **Subject:** | RE: LightSquared Search Terms |

Jim,

Regarding the below. We have run the additional search terms in blue and they resulted in too many hits. For the Milbank emails, we added the additional filters of (LightSquared or Light Squared or L2 or Angel) to ensure we were only looking at documents relevant to this matter. We of course did not run a similar filter on client emails. To be clear, we have done this for all Milbank emails throughout the last several production cycles as otherwise the searches yield many thousand false positives related to other cases.

One final point—while we ran and are reviewing the terms in blue, we have not done the deletions in yellow. We believe that the modifiers you have proposed that we delete are reasonable and appropriate under the circumstances and there is simply not time to redo searches that were run late last week after we received your document requests.

Again, if after our production is complete there is something you believe is missing, we would be happy to revisit this issue.

Regards,
Aaron

---

Aaron L. Renenger | **Milbank**
1850 K Street, N.W. | Suite 1100 | Washington, DC 20006
T. +1 202.835.7505 | F. +1 202.263.7505
arenenger@milbank.com  www.milbank.com

**From:** Dugan, James [mailto:jdugan@willkie.com]
**Sent:** Wednesday, February 26, 2014 2:17 PM
**To:** Renenger, Aaron; Stone, Alan
**Cc:** Strickland, Rachel; Freimuth, Matthew; Ostrove, Norman
**Subject:** FW: LightSquared Search Terms

Aaron,

Here are our proposed edits to your search terms. We have highlighted what we would propose to delete, and have included a relatively small number of additional terms. We can discuss this at 3.

Jim

Begin forwarded message:

> **From:** "Renenger, Aaron" <ARenenger@milbank.com>
> **Date:** February 26, 2014 at 12:31:41 PM EST
> **To:** "Freimuth, Matthew" <mfreimuth@willkie.com>
> **Subject:** Fw: LightSquared Search Terms
>
> Matt,

1

Per your request, please see the below search terms used by Debtors. Let me know what time works for a call.

Aaron Renenger | Milbank
T: 1.202.835.7505

**From:** McNamara, Andrea
**Sent:** Wednesday, February 26, 2014 12:24 PM
**To:** Renenger, Aaron
**Subject:** LightSquared Search Terms

**Search Terms - January 4, 2014 to present**
(subordinat* OR designat* OR disallow* OR claim* OR vot* OR distribut*) w/50 (Ergen OR Charlie)
(classif* OR impair*) w/50 (claim* OR interest*)
"indubitable equivalent"
"post-petition interest"
Exit w/5 (condition* OR facil* OR finan* OR agreement* or agmt)
(DIP OR "debtor-in-possession" OR "debtor in possession") w/5 (finan* OR facil* OR agreement OR agmt OR Agent* OR Lender OR Ot
(cash OR cashflow OR "Cash flow") w/10 (project* OR position)
Debt
SPSO
LBAC
break-up OR "break-up"
COA OR "cause* of action"
(GPS OR "Global Positioning") w/25 (*suit* OR action OR litigation OR adversary)
Valu* w/50 (asset* OR spectrum OR right* OR satellite* OR Preferred OR Prefs OR Equity OR network)
(Sale OR sell OR auction) w/200 (spectrum OR asset* OR holding* OR right*)
(Good OR Bad) w/5 Faith
(Spectrum OR license) w/50 (mod* OR right* OR asset* OR price)
NOL OR "Net operating loss"
(pay* OR reimburs* w/10 (fee OR expense)
"build-out" OR "build out" w/10 network
Plan
reimburse*
project*
Ad hoc
Unimpair!
Impair!
discrimin!
designat!
indubitable
feasib!
subordin!
Vot*
**Search Terms - April 1, 2013 to present**
3GPP w/10 (1600 OR spectrum OR *band*)
(study OR report OR analysis OR simulation) w/50 (spectrum OR device OR *band*)

2

power w/10 4G
1670
1675
1680
Ericsson
Isolation
Insertion_loss
Filter
Harris_Simon
Avago
Ericsson
"L-Band transmitter"
GNSS /3 receiver
GPS /3 receiver
GLONASS
BeiDou
Reference /3 design

███████████████████

Location /3 service
NOAA OR "National Oceanic and Atmospheric Administration" (1)
NTIA OR "National Telecommunications and Information Administration" (1)
OMB OR "Office of Management and Budget" (1)
Approv* w/50 regulat* OR government* (1)
FCC OR "Federal Communications Commission" (1)
DOC OR "Department of Commerce" (1)
DOD OR "Department of Defense" (1)
DOT OR "Department of Transportation" (1)
Swap w/50 (spectrum OR NOAA) (2)


**Search Terms September 1, 2013 to January 4, 2014**
("Ad Hoc" OR AHSG OR "LP Lenders" OR "LP Secured") w/50 plan (2)
Admin* w/3 insolven* (2)
Alan w/2 Carr OR Carr (2)
"Alcatel Lucent" (2)
APA OR "asset purchase agreement" OR "purchase agreement" (2)
ATC OR "ancillary terrestrial component" OR "terrestrial" (2)
(Auction OR Sale) w/50 (assets OR spectrum OR rights)
Authorization* (2)
Bandrich (2)
Boeing (2)
Chris* w/2 (Rogers OR Rogers) (2)
Contingen* OR Risk* w/50 (plan OR bid OR offer OR financ* OR FCC OR regulatory) (2)
Delay* w/200 (plan OR FCC OR confirmation) (2)
(DIP OR "debtor-in-possession" OR "debtor in possession") w/5 (finan* OR facil* OR Agent* OR Lender OR Obligor OR Borrower* OR
DISH OR EchoStar OR "Echo Star" (2)

Alderman (2)

Ergen OR Charlie (2)

Exit w/5 (condition* OR facil* OR finan*)

Goldman (2)

(Good OR Bad) w/5 Faith

GPS OR "Global Positioning" (2)

Inmarsat (2)

Jefferies OR Jeffries (2)

LBAC

"L Band Acquisition" (2)

Preferred OR Prefs (2)

Projection* OR Forecast* (2)

(Sale OR sell) w/200 (spectrum OR asset* OR holding* OR right*)

Spectrum w/50 (rights OR asset* OR price OR license OR value) (2)

(Spectrum OR license) w/50 mod*

SPSO

Subordinat* w/50 (Ergen OR SPSO OR "Sound Point" OR Charlie OR DISH OR EchoStar OR Charles) (2)

Valu* w/50 (assets OR spectrum OR rights OR litig* OR claim* OR "cause* of action" OR COA OR holding* OR approv* OR satellite*)

"T-Mobile" or Verizon or SoftBank (2)


(1) We ran these search terms against all documents from April 1, 2013 to the present; however, the responsive documents from April 1, 2013 to January 4, 2014 were included in our January production. We did not re-review these documents.

(2) We ran these search terms against all documents from September 1, 2013 to January 4, 2014 in connection with the production we made in January 2014. We did not re-run these searches or re-review these documents.

Andrea M. McNamara · **Milbank**
1850 K Street NW Suite 1100 Washington DC 20006
T +1 202-835-7512 F +1 202-263-7512
amcnamara@milbank.com   www.milbank.com

==========================================================
IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


*******************************************************************

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP

presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *


===========================================================

IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank, Tweed, Hadley & McCloy LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
===========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

# EXHIBIT F

**EXHIBIT F**

**Filed Under Seal Pursuant to the Confidentiality Order Governing Confirmation
Proceedings**