# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

February 28, 2014

Via ECF

The Honorable Shelley C. Chapman,
    United States Bankruptcy Court for the Southern District of New York,
        One Bowling Green,
            New York, New York 10004.

　　　　Re:　*In re LightSquared, Inc.*
　　　　　　(Case No. 12-12080) (SCC)

Dear Judge Chapman:

　　　　We write on behalf of non-party DISH Network Corporation ("DISH") in response to the 18-page "emergency" motion (the "Motion") filed by the Ad Hoc Secured Group ("AHSG") seeking, among other things, to compel the production of reams of documents from DISH in response to a February 19, 2014 Subpoena *Duces Tecum* (the "Subpoena"). The Motion in virtually all respects seeks reconsideration of discovery disputes already addressed by this Court at length and on multiple occasions. The Motion in all events should be denied.

　　　　A.　**Background**

　　　　The Motion marks at least the third time that the AHSG has asked this Court to compel DISH to produce the same universe of irrelevant documents. Near the close of the evidentiary portion of the trial in the related adversary proceeding, the AHSG served discovery requests seeking these same documents. In court conferences on January 24, January 27, and February 4, 2014, this Court rejected the same arguments proffered by the AHSG here. Indeed, there is no dispute at all that this Court already addressed every issue raised in the Motion: The Motion seeks to compel DISH to produce four broadly defined categories of documents, and in respect of each category the AHSG states (inaccurately) that "[t]he Court already directed Defendants to produce

The Honorable Shelley C. Chapman                                                -2-

such documents." (Motion at 8-9.)[1]  To the contrary, this Court already rejected every argument proffered in the Motion seeking irrelevant discovery, and the AHSG seeks improperly to revisit grounds that already have been plowed at length by this Court.

This Court has ruled repeatedly "that there aren't going to be any do-overs." (Jan. 27, 2014 Tr. at 17:6-7.) And, the Court has made clear that, even with respect to events subsequent to the adversary proceeding that might be proper subjects of new discovery, "that's not an indication that . . . it's open season" on those issues. (Jan. 27 Tr. at 17:21-22.) Nevertheless, at every turn, the AHSG group has ignored this Court's rulings and advanced the exact same previously rejected positions. For example, immediately after this Court's January 27 rulings that sharply curtailed the very same discovery sought here, the AHSG insisted that DISH was obligated to produce "documents responsive to the discovery requests served on January 21, 2014," including "documents concerning the auction process or pricing," documents relating to "DISH board meetings held in June and July of 2013," and "communications relating to the LBAC bid." (Letter from J. Winters to B. Glueckstein, dated Feb. 3, 2014 (annexed as Exhibit 5 to the Motion).)

On February 4, 2014, this Court rejected the AHSG's attempt to revisit the January 27 discovery rulings by asserting the discovery was sought only "to use in connection with . . . confirmation of a plan." (Feb. 4, 2014 Tr. 42:3-15.) The Court expressly denied the AHSG's renewed request for production of all DISH documents related to the LBAC bid. (Feb. 4, 2014 Tr. 93:7-21.) Likewise, this Court rejected (again) the request to produce all DISH Board documents that concern "LightSquared," ruling that "neutral" LightSquared discussions by the DISH Board and "routine updates on the LightSquared case, et cetera, those documents don't fall within the scope. I'm focusing on the termination of the bid." (Feb. 4, 2014 Tr. 102:21-24.) Undaunted, these very same, twice rejected arguments are repeated in the Motion.

After at least three prior rulings on these subjects by this Court, these issues should be put to rest. No further production is warranted on these issues.[2]

---

[1]   At the outset, we note that DISH is not a "Defendant," as AHSG erroneously contends (Motion at 1). Indeed, DISH is not a party to this bankruptcy action at all, as the AHSG acknowledged by serving a Rule 45 subpoena on DISH.

[2]   The Subpoena does seek at least one new topic of discovery relating to technical issues surrounding LightSquared spectrum, in response to which DISH will produce documents.

The Honorable Shelley C. Chapman                                                                                     -3-

**B.     The Requests**

   *1.     Documents Relating to the LBAC Bid*

The AHSG seeks "all documents" concerning (a) the "Plan Support Agreement" (Request 2), (b) the "Asset Purchase Agreement" and the "Milestones" (Request 3), (c) the "terms of the Asset Purchase Agreement" (Request 4), (d) the "Bid Procedures Order" (Request 5), and (e) the "releases of affiliates of SPSO and/or Charles W. Ergen pursuant to the Asset Purchase Agreement" (Request 11). The AHSG disingenuously refers to these requests as documents "concerning Defendants' stated reasons for terminating the LBAC bid." (Motion at 8.) Astonishingly, the AHSG states that this Court "ordered" DISH to produce these documents. Not so.

On February 4, this Court noted that DISH was "correct" in its position that it need not produce these documents. (Feb. 4, 2014 Tr. 93:7-21.) This Court ruled previously that the AHSG was entitled to only "limited discovery from defendants and Mr. Ergen related to the termination." (Jan. 27 Tr. 17:18-20.) The Court noted that LBAC "could have terminated [its bid] because . . . it's too cold out." (Jan. 27 Tr. at 21:21-23.) Thus, the "stated reasons for terminating the LBAC bid" — and, to be clear, DISH has not stated its reasons for terminating the LBAC bid — are irrelevant here.

By any measure, these requests simply seek a do-over of the now completed adversary proceeding discovery, to which the AHSG was a participant. Any conceivable argument concerning these at least six month-old events was or should have been raised in the adversary proceeding, and many of them lie at the heart of the issues in the adversary proceeding. These requests are plainly improper.

   *2.     DISH's "Strategy" to Acquire LightSquared Assets*

The AHSG seeks "all document" concerning (a) any "intent or strategy to acquire or not acquire the Debtors' Assets" (Request 7), (b) "any intent, consideration or analysis of potentially purchasing the Debtors' Assets at a price lower than the LBAC bid or submitting a false bid" (Request 8), (c) "a potential interest in purchasing or bidding for any of the Debtors' Assets" (Request 12), and (d) "SPSO's, DISH's and/or Charles W. Ergen's role in the LBAC Bid" (Request 17). These Requests in most respects overlap with the AHSG's Requests concerning the LBAC bid. To the extent that there is not overlap, DISH already has complied with this Court's rulings regarding the discoverability of documents relating to any potential termination of the LBAC bid, and DISH confirmed the absence of any documents relating to any supposed strategy to submit and later terminate a bid.

The AHSG's repetition of its fictional tale regarding some pre-ordained "strategy" to spend eight months and many millions of dollars to pursue and later

The Honorable Shelley C. Chapman                                                                      -4-

abandon a bid for LightSquared assets does not make that yarn plausible, nor does it suggest that documents might exist to support it, and for good reason. As the AHSG is well aware from documents that are in its possession, depositions it attended, and negotiations in which it participated, the decision as to whether or not DISH would participate at all in any bid for LightSquared assets was made by a committee of independent directors on the DISH Board, upon the advice of independent counsel and independent financial advisors. After that committee made its independent recommendation (as reflected in minutes and resolutions in the AHSG's possession, and in deposition transcripts of the two committee members), and the DISH Board (in the absence of Mr. and Mrs. Ergen) approved the recommendation (as reflected in minutes and resolutions in the AHSG's possession), DISH acquired LBAC (through transaction documents in the AHSG's possession), and LBAC agreed to a proposed form of Asset Purchase Agreement and entered into the Plan Support Agreement, which gave the parties to that agreement whatever rights and obligations that they bargained for in the document. Dreaming up a conspiracy theory does not make it so, nor make it possible for documents to exist that are utterly inconsistent with history. It should surprise no one that no such documents were located in our search.

3.     *Documents Relating to the "Debtors' Cash Crisis"*

The AHSG seeks "all documents" concerning (a) the "value of the Debtors' Assets" (Request 6), (b) "the Debtors' present and prospective cash needs" (Request 9), and (c) "potential distress, harm or other consequences to the LP Estates and their stakeholders caused by a failure of LBAC or DISH to consummate the LBAC Bid" (Request 10). The Motion nowhere offers any argument as to the relevance of these documents. There is none.

This Court already has ruled that LBAC had an unconditional right to terminate the Plan Support Agreement, and the particular reason or reasons that it elected to invoke that right are irrelevant. Put simply, "it doesn't matter" what reason or reasons, if any, motivated LBAC to invoke a right that it bargained for. (Jan. 27 Tr. at 30.) Indeed, it is difficult to imagine how the AHSG group might propose to argue — in connection with confirmation of a proposed Chapter 11 plan in which the proponents must prove affirmatively that LightSquared is worth far in excess of the $2.22 billion that LBAC previously bid — the relevance to confirmation of documents concerning some "potential distress, harm or other consequences to the LP Estates and their stakeholders" as a result of the termination of the LBAC bid.

4.     *Debt Trades and DISH "Acting in Concert" With Ergen*

The AHSG repeats a broad request for "all documents" (a) concerning the "acquisition of the LP Debt" (Request 14), and (b) "concerning DISH, SPSO and/or LBAC acting in concert with Charles W. Ergen," supposedly dating back to January 1,

The Honorable Shelley C. Chapman                                                                        -5-

2012. (Request 16.) Of course, these claims were and are the central issues in the adversary proceeding. DISH already has provided all conceivably relevant documents on these topics.

This Court permitted discovery in respect of termination-related documents only because that was a new issue that parties had a right to explore as potential additional evidence of subsequent events that might bear upon the already litigated issue concerning the separateness of DISH, SPSO and Mr. Ergen. (*See* Jan 27 Tr. 31-32.) As with every other aspect of discovery, it is not "open season" to revisit claims at issue in the adversary proceeding, or to seek "do-overs" of discovery already had, and discovery issues already raised and decided. (Jan. 27 Tr. at 17.) The AHSG nowhere argues that it seeks anything new or different here.

### C.    The Time Period and the Search Terms.

Indicative of the fact that the Motion seeks nothing more than a "do-over," the AHSG seeks to compel DISH to (a) re-do its entire document production dating back to nearly a year ago, April 1, 2013, and (b) employ search terms arbitrarily (and non-sensically) selected by the AHSG.

The AHSG bases its entire argument that DISH should re-do its entire document production on the peculiar premise that DISH supposedly *failed to produce* one document. Of course, the AHSG only knows about that document because the document, *in fact, already was produced.* (Motion at 12.) In other words, the sole argument in favor of entirely revisiting DISH's document production is inaccurate and defies logic. There is no dispute that DISH produced reams of documents covering in all relevant respects the facts relating to LightSquared. The observation that prior discovery about the same historical facts was "in support of a different theory" (Motion at 13) does not change the facts, or warrant an even more burdensome and pointless search for documents about the same events. Moreover, the *only* topics of permissible, additive discovery here relate to events not already covered in the adversary proceeding. No topic upon which the AHSG seeks discovery here in respect of dates prior to the July 23, 2013 LBAC bid qualifies. Thus, there is no basis to revisit the discovery about events that occurred at least six months before the start of trial in the adversary proceeding.

Similarly, there are no grounds to require DISH, which is a non-party to the plan confirmation dispute, to redo its document search based upon the AHSG's preferred search terms. DISH disclosed its search terms, despite the fact that no other party or non-party (including the AHSG) has done so here, at the Court's request solely in order to "see if [the AHSG] can get a higher level of comfort" with respect to the universe of documents reviewed for potential production. (Feb. 4, 2014 Tr. 103:22-23.) This exercise was not an invitation to revisit months-old discovery. The unilateral disclosure of DISH's search terms was not a license for the AHSG to engage in a fishing

The Honorable Shelley C. Chapman                                                                                                        -6-

expedition, illogically citing documents that *were* in fact produced as evidence that different or broader search terms might yield additional documents that were overlooked.

      Indeed, the additional search terms relating to LightSquared now requested by the AHSG to re-search the same subjects previously searched are more generic than the search terms that DISH applied, and cannot be reasonably expected to yield additional responsive documents. The search terms DISH used were intended to return an overly broad set of documents relating in any manner to LightSquared or the LBAC bid, and, in fact, captured more than 4,500 non-duplicative documents *solely for the period subsequent to July 23, 2013* that were manually reviewed by attorneys. Adding additional search terms — *and* potentially applying those terms to documents dating back to April 2013 — is unlikely to yield discoverable documents and plainly would pose immense and potentially insurmountable burdens on DISH on the extraordinarily truncated schedule here. Indeed, the laundry list of generic search terms that the AHSG now proposes after the fact — including such non-specific terms as "decrease," "lower," "market," "price" and "sale" — are entirely untethered to LightSquared, and the proposed search is vastly overbroad and unduly burdensome. In any event, these search terms all appear designed to identify documents concerning the LBAC offer, which is not at all a proper subject of additional discovery.

      The AHSG has it backwards when arguing that DISH must prove irrelevance or some undue burden associated with the wholesale re-doing of its document production. "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd.* v. *Briarpatch Ltd, LP*, 2003 WL 23018833 at *8 (S.D.N.Y. Dec. 23, 2003). And, as the proponent of the Subpoena, "[a] party or its attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena," and this Court "must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). This third attempt by the AHSG to get discovery of the same documents does not remotely comply with Rule 45. "Rule 45(d)(3)(A) instructs a district court to quash or modify a subpoena that . . . '[1] fails to allow a reasonable time to comply; . . . or [4] subjects a person to undue burden.'" *Wultz* v. *Bank of China Ltd.*, 2014 WL 572527, *2 (S.D.N.Y. Feb. 13, 2014).

### D.    Privilege Log

      After having negotiated directly with lawyers from Willkie Farr representing LBAC for more than six months, the AHSG has the temerity to suggest that Willkie Farr does not represent LBAC, and thus communications between Willkie Farr lawyers and LBAC are not privileged. (Motion at 16-17.) It is at this point beyond dispute that communications between Willkie Farr and its client relating to the LBAC bid are privileged.

The Honorable Shelley C. Chapman                                                                                    -7-

*  *  *  *

       The breadth and timing of the discovery sought in aid of the Debtor's long-promised "global" reorganization plan appears to reflect little more than litigation strategy designed to distract DISH from the tasks at hand in the adversary proceeding. The evidentiary trial in the adversary proceeding before this Court concluded on January 17, 2014. On February 24 — five uninterrupted weeks after the close of testimony — LightSquared filed its 68-page post-trial brief, together with 94-pages of argument offered under the rubric of proposed "findings of fact," to which DISH must respond by March 10. With two precious weeks to respond to LightSquared's 162-page submission, there is little time and no reason for DISH or this Court to revisit past discovery disputes. The Motion should be denied.

                                                                           Respectfully submitted,

                                                                           /s/ Brian T. Frawley

                                                                           Brian T. Frawley

cc:     Counsel of Record