WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Glenn M. Kurtz
Julia M. Winters

WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Thomas E Lauria (*admitted pro hac vice*)

*Counsel to the Ad Hoc Secured Group of
LightSquared LP Lenders*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

In re:

LIGHTSQUARED INC., *et al.*,

                Debtors.

-------------------------------------------------------------------------:X

: Chapter 11
:
: Case No. 12-12080 (SCC)
:
: Jointly Administered
:

**EMERGENCY MOTION OF THE AD HOC SECURED GROUP OF
LIGHTSQUARED LP LENDERS TO COMPEL DISCOVERY**

The Ad Hoc Secured Group of LightSquared LP Lenders (the "AHSG") hereby files this emergency motion (the "Motion") pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7037 and 9014, for entry of an order, substantially in the form attached hereto as Exhibit "A" (the "Order"), compelling SP Special Opportunities LLC ("SPSO"), DISH Network Corporation ("DISH"), and Charles W. Ergen (collectively the "Defendants") to produce all documents responsive to the plan discovery subpoenas served on February 19, 2014 (the "Subpoenas"), including all documents relating to (i) Defendants' strategy to acquire Debtors' assets at a discount; (ii) the termination of the LBAC bid; (iii) Defendants' plan to exploit Debtors' cash crisis; and (iv) DISH, SPSO and/or LBAC acting in concert at the direction of Charles W. Ergen.

**PRELIMINARY STATEMENT**

SPSO's claims should be equitably subordinated and its vote designated based on the misconduct of SPSO, DISH and Ergen in acquiring a blocking position in the LP debt and based on their concerted "bait and switch" bidding strategy. As to the latter misconduct, DISH, SPSO and Mr. Ergen worked in concert to carry out a scheme to lock-up the AHSG's support for LBAC with a non-contingent big "bag of money" bid that they had no intention of consummating unless there was a higher bid. If the auction was unsuccessful, they intended to terminate the Bid when the Debtors were in a cash crisis. On January 13 and 15, the AHSG sought discovery relating to the bait and switch strategy. In response, DISH made a single document production (the "Production") containing only fifteen documents for a total of fifty-seven pages. Defendants incorrectly contend that: (i) the Production is complete because "[t]his is supposed to be about terminating the bid, and we produced those documents" (Hr'g Tr. 95:23-25 (Feb. 4, 2014)), and (ii) it need not search for documents created prior to July 23, 2013 because any relevant documents would have been included in prior adversary proceeding document productions. On February 19, the AHSG served the Subpoenas, which include additional document requests on these topics.[1] Defendants have refused to produce any additional documents regarding the bidding scheme, and they declined to produce discovery in response to sixteen of the eighteen document requests made in the Subpoenas.[2] The AHSG met and conferred with the Ergen Defendants, but they would not agree to remedy any of their deficiencies.

---

[1] The DISH Subpoena is attached hereto as Exhibit 1.

[2] Defendants have failed to provide formal responses and objections to the Subpoenas. DISH and LBAC's objections were made by letter on February 21 (attached hereto as Exhibit 2). Counsel for SPSO and Mr. Ergen sent a short email on February 24 stating their objections (email attached hereto as Exhibit 3), and a second email on February 26 restating the same (email attached hereto as Exhibit 4). Any objections to the Subpoenas not stated in the letter or emails should be deemed waived.

The issues relevant to the Plan and the adversary proceedings are not limited to termination. Rather, as Defendants well know, the bait and switch scheme is relevant. Defendants cannot avoid providing discovery about their scheme by producing documents relevant only to the termination, the last step of the scheme. Likewise, Defendants' date restriction is improper. The prior document requests in the adversary proceeding were not directed to the bait and switch scheme, or any documents relating to bidding, as the auction was still live at the time. Consequently, the prior document productions are not responsive to the requests at issue. Indeed, Defendants have not even produced responsive documents for the period after July 23, 2013. For example, DISH did not produce or log any communications discussing the December 31, 2013 email to the AHSG proposing a highly contingent alternative bid, the AHSG's response on January 2, 2014, or the meeting held on January 6, 2014 in Denver, each concerning the submission of a reduced bid after the auction produced no other qualified bid.

Unless otherwise specified in the Subpoenas, Defendants should be compelled to produce documents from April 1, 2013 through the present relating to their bidding scheme, which culminated with LBAC's termination of the LBAC Bid. As set forth below, the discovery sought here is relevant to the confirmation of the Debtors' Third Amended Joint Plan and it is not unduly burdensome.[3]

## BACKGROUND

The AHSG first served discovery requests relating to Defendants' scheme and the LBAC bid termination on January 13 and 15, 2014. On January 24, 2014 and January 27, 2014 the Court held discovery conferences during which the Requests were narrowed to three categories:

---

[3] See Specific Disclosure Statement For Debtors' Third Amended Joint Plan Pursuant To Chapter 11 Of Bankruptcy Code, Art. IV(C) at 14-18. ("Third Amended Joint Plan Disclosure Statement")

3

(1) Defendants' intent to acquire or not to acquire the LightSquared assets; (2) any scheme to submit a false bid or any scheme designed to acquire the LightSquared assets at a lower price; and (3) the LBAC bid termination. (Hr'g Tr. 39:22-43:6 (Jan. 27, 2014)) Defendants agreed to search the files of Mr. Thomas Cullen, Mr. Charles Ergen and Mr. Jason Kiser, as well as all DISH Board of Director documents. (Hr'g Tr. 39:17-21 (Jan. 27, 2014)) The Court also directed that, "to the extent that there are documents that are subject to attorney-client privilege, they needed to be identified and placed on a privilege log." (Hr'g Tr. 44:8-11 (Jan. 27, 2014))

On January 30, Defendants produced a mere fifteen files, which consisted of: (1) draft board minutes dated December 13, 2013 and December 23, 2013; (2) miscellaneous files including only an e-signature logo image; (3) two copies of a two-slide presentation dated December 23, 2013; (4) correspondence from Andrew Sorkin to counsel to the AHSG, forwarded by Rachel Strickland; and (5) correspondence from counsel to the AHSG to Rachel Strickland, forwarded by Rachel Strickland. The documents were produced in PDF format and did not include metadata. Defendants also produced a privilege log and a supplemental privilege log identifying a total of 58 communications with counsel. The privilege logs do not contain a single document dated earlier than September 17, 2013.

On February 3, 2014, counsel for the AHSG sent a letter to counsel for Defendants highlighting the inadequacy of the Production and requesting a list of the search terms and date ranges used to create the Production and privilege logs.[4] Defendants refused to provide search terms. Defendants responded incorrectly that the Court limited the discovery to documents "related to the termination," and that the production and privilege logs included all responsive

---

[4] Feb. 3, 2014 letter from the AHSG to Defendants is attached hereto as Exhibit 5.

4

documents.[5] Defendants also stated that the asserted privilege belonged to DISH and LBAC. Defendants agreed to provide the Production in TIFF format to resolve the metadata issue.

On February 4, the Court heard argument regarding the Production and directed Defendants to provide the AHSG with the search terms and the time period searched. (Hr'g Tr. 99:8-17 (Feb. 4, 2014)) In an email sent later that day, Defendants stated that their files were searched for the period subsequent to July 23, 2013 using the following list of search terms[6]:

> "Lightsquared"
> "L2"
> "Harbinger"
> "Sound Point"
> "Soundpointcap"
> "Ketch*"
> "Brass"
> "SP Special"
> "Ad Hoc"
> "L-Band"
> "LBAC"
> "Falcone"
> "harbingergroupinc"
> "bankruptcy plan"
> "plan of reorganization"
> "stalking horse"
> "SPSO"
> "Lauria"
> "Daigle"
> "Cyrus"
> "Qualcomm"

The time period used is incorrect, as the bait and switch scheme started before July 23, 2013. Moreover, the search terms were insufficient. Accordingly, on February 5, the AHSG asked Defendants to run the search of the custodians' records for the period April 1, 2013 to the

---

[5] Feb. 3, 2014 letter from Defendants to the AHSG is attached hereto as Exhibit 6.

[6] Feb. 4, 2014 email from Defendants to the AHSG is attached hereto as Exhibit 7.

5

present adding the following terms necessary to identify documents relevant to the bait and switch scheme:[7]

> "LS" (shorthand used by Mr. Ergen to refer to LightSquared)
> "auction"
> "bid!"
> "decreas!"
> "interfer!"
> "lower"
> "market"
> "offer"
> "terminat!"
> "plan support"
> "price"
> "PSA"
> "reduce"
> "revoke"
> "sale"

Consistent with the Court's description of material to be produced in response to the Requests, the AHSG also asked that Defendants produce all DISH Board of Directors (or Special Committee) minutes from April 1, 2013 to the present that discuss LightSquared. Additionally, the AHSG analyzed the TIFF files provided by Defendants and found that the metadata "date created" field for each file in the Supplemental Production contained only "00/00/0000" and the "last date modified" information for the December 13 and December 23 board minutes was January 31, 2014, the day after these documents were produced to the AHSG in PDF form. The AHSG asked Defendants to explain these discrepancies and to provide the missing metadata.

On February 7, counsel for DISH and LBAC responded by letter that they would not further produce DISH documents related to the LBAC bid or DISH board documents related to

---

[7] Feb. 5, 2014 letter from the AHSG to Defendants is attached hereto as Exhibit 8. Contrary to DISH's contention, the AHSG never "acknowledg[ed]" that the AHSG's requested search terms "not yield additional responsive documents." (Feb. 7, 2014 letter from Defendants to the AHSG at 2 attached hereto as Exhibit 9). Rather, the AHSG merely requested that DISH "advise" if, after running the additional searches, no additional responsive documents were identified. (Exhibit 8, Feb. 5 letter from the AHSG to Defendants at 2).

6

LightSquared because the Court had not ordered them to do so.[8]  Defendants also refused to run a document search using a single one of the terms provided by the AHSG, speculating that the search would generate an overly broad and burdensome set of documents without yielding any additional responsive documents, and then, inconsistently, that the AHSG's search terms were "more narrow" than the terms earlier applied to arrive at the Production.  Defendants had no basis whatsoever for their statement as they failed actually to run any searches with the terms, much less identify any non-responsive documents.  DISH and LBAC agreed to inquire with an e-discovery vendor regarding the metadata for certain documents but as of February 26, 2014, have not provided any further explanation for the discrepancies in the metadata.

The AHSG served the Subpoenas on DISH, SPSO, LBAC and Mr. Ergen in connection with plan discovery on February 19.  Most of the requests seek documents for the time period April 1, 2013 to the present, although a longer period was necessary to capture all relevant documents for certain requests.[9]  In response to the requests, SPSO and Mr. Ergen agreed to search their files only for documents concerning the Qualcomm issue and Defendants' objections to the Debtors' plan, and only for the period November 1, 2013 through February 19, 2014.  DISH and LBAC committed only to search for documents relating to the technical issue for the period November 1, 2013 through January 7, 2014.  Defendants have refused to respond to the remaining sixteen document requests, claiming that the requests are overly broad, unduly burdensome, vague, not calculated to lead to discovery of admissible evidence and redundant of

---

[8] Exhibit 9, Feb. 7, 2014 letter from Defendants to the AHSG.

[9] Longer time periods were necessary for requests concerning (1) Defendants' acquisition of LP debt and (2) SPSO, DISH and/or LBAC acting in concert at the direction of Mr. Ergen.

7

previous discovery.[10] These requests generally concern Defendants' "bait and switch" bidding scheme and they fall into the following four categories:

(i) <u>Defendants' strategy to acquire Debtors' assets at a discount</u>: Documents responsive to these requests concern Defendants' strategy to acquire Debtors' assets at a price lower than the LBAC bid and Defendants' role in developing the LBAC Bid. <u>See</u> Exhibit 1 at Request Nos. 7, 8, 12, 14 and 17. The Court already directed Defendants to produce such documents. The requests also seek background documents regarding Mr. Ergen's previous investment strategies and the AWS spectrum as downlink. <u>See</u> Exhibit 1 at Request Nos. 13, 15.

(ii) <u>The termination of the LBAC bid</u>: These requests seek documents concerning Defendants' stated reasons for terminating the LBAC bid, including the Plan Support Agreement milestones, the Asset Purchase Agreement and its allegedly incomplete terms, and the Bid Procedures Order and the revocability of the LBAC bid. <u>See</u> Exhibit 1 at Request Nos. 2-5. The Court already directed Defendants to produce such documents.

(iii) <u>Defendants' plan to exploit of Debtors' cash crisis</u>: These requests seek discovery regarding Defendants' consideration of the value of Debtors' assets, Debtors' cash needs, and the potential distress on the LP Estates if the LBAC bid was not consummated. <u>See</u> Exhibit 1 at Request Nos. 6, 9, 10. The Court already directed Defendants to produce such documents.

(iv) <u>DISH, SPSO and/or LBAC acting in concert at the direction of Charles W. Ergen</u>: In addition to documents concerning DISH, SPSO and/or LBAC acting at the

---

[10] <u>See</u> Exhibit 3, Feb. 24, 2014 email from SPSO to the AHSG.

direction of Mr. Ergen, these requests seek documents regarding the releases of affiliates SPSO and Mr. Ergen pursuant to the Asset Purchase Agreement. See Exhibit 1 at Request Nos. 11, 16. The Court has repeatedly recognized the relevance of such documents.

**ARGUMENT**

The AHSG seeks to compel discovery pursuant to Federal Rules of Civil Procedure 37(a)(3)(A) and 37(4), which allow a party to move for an order compelling additional discovery where an incomplete disclosure has been made. It is well established that Federal Rule of Civil Procedure 26 embodies a liberal policy, which permits discovery regarding any matter, not privileged, that is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1); Eisenberg v. Finer (In re Ahead by a Length, Inc.), 78 B.R. 708, 710 (Bankr. S.D.N.Y. 1987); Beneficial Fin. Co. of N.Y., Inc. v. Fontaine (In re Fontaine), 402 F. Supp. 1219, 1221 (Bankr. E.D.N.Y. 1975); see also Xpedior Creditor Trust v. Credit Suisse First Boston Inc., 309 F.Supp.2d 459, 461, 464 (S.D.N.Y. 2003); Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("The scope of discovery in federal civil litigation is broad . . . . '[t]he information sought need not be admissible at the trial if the information sought appears calculated to lead to the discovery of admissible evidence.'") (citing FED. R. CIV. P. 26(b)(1)); Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y.1988) ("This Court has interpreted 'reasonably calculated' as meaning 'any possibility that the information sought may be relevant to the subject matter of the action.'") (internal citations and emphasis omitted). On a motion to compel discovery of electronically stored information, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B); see In re Musicland Holding Corp., 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) ("The party resisting

9

discovery bears the burden of demonstrating that discovery of otherwise relevant evidence should be limited."). Thus, the Ergen Defendants must demonstrate that it would be unduly burdensome for it to respond to the AHSG's discovery requests. Given the narrow search parameters and the short time period at issue, Defendants cannot meet their burden and they should be compelled to produce all documents responsive to the Subpoenas for the period April 1, 2013 through the present.[11]

### I.   The Defendants Should Be Compelled To Produce All Documents Relating To Their Bait And Switch Scheme And Not Only Documents Concerning The Last Step Terminating The Bid

DISH contended that the Production and privilege logs complied with the AHSG's January 13 and 15 requests because the Production includes "all documents relating to the termination or contemplated termination of the LBAC bid."[12] Now Defendants claim that the requests contained in the Subpoenas "are duplicative of [the] requests . . . dated January 15" and that they "cover ground already subject to discovery in these actions and further discovery is unnecessary and unwarranted."[13] The termination of the LBAC bid, however, is only the last step of the "bait and switch" bidding strategy.

The strategy, which is outlined in a May 2, 2013 presentation to the DISH board,[14] began when Mr. Ergen acquired a blocking position in the bank debt and preferred stock in an effort to control the LightSquared Chapter 11 cases. In the next stage of the strategy, Defendants structured the LBAC bid to obtain the support of the AHSG by offering to pay the secured lenders in full and by making the bid not contingent on FCC approval. With the support of the AHSG, Defendants gained the competitive advantage of being a stalking horse and received

---

[11] Longer periods should apply for the categories of documents described infra at 13.

[12] Exhibit 9, Feb. 7 letter from Defendants to the AHSG.

[13] Exhibit 4, Feb. 26 email from SPSO to the AHSG; Exhibit 3, Feb. 24 email from SPSO to the AHSG.

[14] May 2013 Slide Deck (SPSO-0001823) is attached hereto as Exhibit 10.

10

certain bid protections. Defendants repeatedly represented that they were committed to closing the transaction on the terms negotiated. That was not true. To the contrary, Defendants had an undisclosed plan to consummate the transaction on the terms negotiated only if they were bidders at or above their price. Otherwise, Defendants intended to walk away from their commitment and use the estate's evaporating liquidity to leverage other terms. Thus, when the auction did not produce another successful bid, Defendants expressed their pleasure and asked if "the auction was as good for [the AHSG] as it was for [us]?"[15] In keeping with their bait and switch strategy, however, the Defendants then promptly disclosed their refusal to consummate the transaction, and later submitted a substantially less favorable offer, one that was highly contingent and severely discounted. (See generally Third Amended Joint Plan Disclosure Statement at 14-18.) The AHSG is entitled to all documents concerning the Defendants' bidding strategy and not only documents relating to the termination of the bid, only the last step of the scheme.

The documents requested in the Subpoenas are directly relevant to the scheme described above. Certain requests seek discovery concerning the early phase of the scheme, when Defendants began to acquire Debtors' assets and when the LBAC bid was formulated. See Exhibit 1 at Request Nos. 6, 17. Others seek documents regarding Defendants' strategy to terminate the LBAC bid. See Exhibit 1 at Request Nos. 2-5. Additional requests target the final stage in the scheme, whereby Defendants sought to exploit the Debtors' cash crisis to consummate a substantially discounted offer. See Exhibit 1 at Request Nos. 6, 9, 10. Defendants should be compelled to produce documents regarding all aspects of the scheme, as requested in the Subpoenas.

---

[15] Id.

Defendants have the burden to demonstrate that producing documents responsive to the Subpoenas would be unduly burdensome. In re Musicland Holding Corp., 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010). Defendants cannot make any such showing. The requests cover a relatively short time period and courts regularly compel parties to produce documents covering periods much longer than the eleven-month period at issue for most of the requests in the Subpoenas. See, e.g., Go v. Rockefeller Univ., 280 F.R.D. 165, 180-81 (S.D.N.Y. 2012) (requiring production of documents covering a span of nearly five years). Moreover, the document requests are narrowly tailored and seek relevant documents. The Federal Rules of Civil Procedure allow for broad discovery, and Defendants should be compelled to produce the requested documents. In re Ahead by a Length, Inc., 78 B.R. 708, 710 (Bankr. S.D.N.Y. 1987).

### A. Defendants Should Be Compelled To Produce Documents From April 1, 2013 Unless Otherwise Specified in the Subpoenas

As described above, the LBAC bidding strategy was a "bait and switch" scheme developed over many months that culminated in the termination of the LBAC Bid. Defendants' strategy was formulated before May 2, 2013, when it was presented to the DISH Board. This presentation is precisely the smoking gun that is sought in discovery, yet this document would not be identified if the July 23 date restriction Defendants adopted for the Production were to apply. Moreover, the fact that Defendants did not produce the precisely on point document demonstrates that Defendants' efforts in response to the first document requests were totally deficient. The period November 1, 2013 through February 19, 2014, which Defendants appear to have unilaterally implemented in response to the Subpoenas, is even more egregious.[16] Defendants are required to search for documents responsive to the Subpoenas, and cannot avoid producing material discovery by adopting a time period that avoids the discovery sought. The

---

[16] See Exhibit 3, February 24 email from SPSO to the AHSG.

12

AHSG does not know when the bait and switch scheme was first hatched, but the time period certainly should start no later than April 1, 2013, in advance of the May 2 meeting was held. See United States v. Int'l Business Machines Corp., 83 F.R.D. 97, 107 (S.D.N.Y. 1979) ("[W]hen relevance and need have been demonstrated, '(t)he fact that the materials requested cover an extended period of time and are voluminous will not render the subpoenas invalid.'" (quoting Democratic Nat'l Comm. v. McCord, 356 F.Supp. 1394, 1396 (D.D.C. 1973))); see also In re Fosamax Prods. Liability Litig., No. 1:06-md-1789, 2008 WL 2345877, at *9 (S.D.N.Y. June 5, 2008) (permitting discovery of earlier-in-time documents where the purported factual scenarios, even though speculative, met relevance threshold).

Two categories of documents require a longer time period. One, Defendants should be compelled to produce documents regarding Defendants' acquisition of LP debt from January 1, 2012 to the present because Defendants' strategy to achieve a blocking position was developed earlier in time. Two, Defendants should produce documents concerning DISH, SPSO and/or LBAC acting in concert at the direction of Mr. Ergen from January 1, 2012 to the present because Mr. Ergen's influence and the resulting coordination among Defendants was evident well before the LBAC bid was made.

Unable to dispute relevance, Defendants argued in response to the earlier discovery requests that searching these files would be duplicative because all responsive documents dated prior to July 23 were included in productions made in the adversary proceedings. DISH's prior productions, however, were made in response to different document requests, seeking different documents, in support of a different theory. The productions made in the adversary proceedings did not include any documents relating to Defendants' LBAC bidding strategy. Indeed, because the auction was ongoing, documents describing bidding strategies were excluded as proprietary.

13

Now that the auction is over, Defendants' bidding strategies are subject to discovery and the Defendants should be compelled to search their files for any non-duplicative and responsive documents from April 1, 2013 through the present. See Software Rights Archive, LLC v. Google Inc., No. 09-017-JJF, 2009 WL 1438249, at *3 (D. Del. May 21, 2009) (granting motion to compel potentially duplicative discovery).

B. **Defendants Should Be Compelled To Incorporate the AHSG's Search Terms And To Produce All Dish Board Documents Relating To LightSquared**

Defendants should use search terms that will uncover all documents responsive to the Subpoenas. DISH disclosed the search terms it used to search for documents responsive to the first set of document requests. Certain of the terms, such as "plan of reorganization" and "bankruptcy plan," were too narrowly constructed and highly unlikely to elicit all responsive documents. On February 4, the AHSG provided DISH with a list of a mere fifteen additional search terms. The AHSG's list includes certain words that would undoubtedly be used in responsive documents, including "auction," "terminate," and "revoke." The list also adds the shorthand identifier, "LS," specifically used by Mr. Ergen to refer to LightSquared so there is no conceivable basis for refusing to use the term.[17] Defendants contend that the AHSG's additional terms "are more narrow than the search terms that DISH applied and cannot be reasonably expected to yield additional responsive documents."[18] That is incorrect. If that was the case, however, then Defendants cannot show that it would be unduly burdensome to search for these terms, as required. See In re Musicland Holding Corp., 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) ("The party resisting discovery bears the burden of demonstrating that discovery of

---

[17] See May 22, 2013 email from Charlie Ergen. This document was marked Confidential by DISH. To the extent that the Court would like to examine it, the AHSG will request that DISH lift the confidentiality designation or produce the document for *in camera* inspection by the Court.

[18] Exhibit 9, Feb. 7 letter from Defendants to the AHSG.

14

otherwise relevant evidence should be limited."). Defendants' refusal to re-run their search using the fifteen terms provided by the AHSG is particularly unreasonable in light of their recent and belated unsolicited submission of <u>104 search terms</u> that they "expect all subpoenaed parties to run" in response to Defendants' plan discovery requests.[19] In addition to any new search terms Defendants adopt to respond to the Subpoenas, Defendants should be compelled to supplement their initial search terms with those provided by the AHSG on February 4, 2014.[20]

Defendants should also be compelled to produce all board documents relating to LightSquared. At the January 27 discovery conference, the Court aptly theorized:

> "I mean, presumably, you're going to find when you get into the discovery, whatever the process was that led to the termination of the bid, there was a board meeting – I'm guessing; I don't know. There was a board meeting. There were statements made. You're going to be able to ask Mr. Ergen about it. You're going to get documents related to the termination, as opposed to simply, in the hypothetical other extreme world, you're going to – Mr. Ergen's going to have picked up the phone to Sullivan & Cromwell and said, write the letter, with no process. Right? Because that would be strongly suggestive of the fact – of the theory that everything about this is a sham."

(Hr'g Tr. 31:17-32:5 (Jan. 27, 2014))  The Production, however, only included unsigned minutes from two Board meetings.  DISH Board documents are essential in order understand how LBAC went from respectively offering a "big bag of money" starting in May 2013 to terminating its bid in January 2014.  Also, board documents will clarify the role of SPSO, Mr. Ergen and the DISH board in formulating and carrying out that strategy in light of the "different hats" of counsel and Mr. Ergen.  This Court has made clear the relevance of that issue: "Dish is Mr Ergen.  Mr. Ergen

---

[19] February 25 email and attachment from Willkie attached hereto as Exhibit 12.

[20] DISH's contention that it is not customary to provide search terms and that parties have not previously done so in these cases is beside the point and wrong.  DISH already agreed to provide its search terms in response to the Court's request that it do so, and it is customary to share search terms upon request, as the AHSG has done in this case.  (<u>See</u> Oct. 1, 2013 E-mail from J. Winters to M. Freimuth, attached hereto as Exhibit 13).

15

is Dish. Okay? So therefore, with respect to the termination, if you're going to extend that theory, that control theory, through the termination, go for it." (Hr'g Tr. 31:17-32:3 (Jan. 27, 2014)). For these reasons, all DISH board documents relating to LightSquared should be produced.

      **C.**    **Defendants Should Be Compelled To Produce Documents That Are Not Protected By DISH's Asserted Privilege**

On February 3, counsel for the AHSG asked Defendants to articulate whether the privilege asserted in the privilege log accompanying the Production belonged to SPSO, Mr. Ergen, DISH or LBAC.[21] Defendants responded that "the Supplemental Production was made on behalf of DISH, and the attorney-client privilege asserted thus belongs to DISH and its wholly-owned subsidiary LBAC."[22] Accordingly, only communications between DISH or LBAC and their counsel, Sullivan & Cromwell, should be withheld as privileged.

The privilege log includes the following entries for documents numbered 53, 54 and 57:

| No | Bates Range | Date | Document Type | Author | To | Other Recipient(s) | Basis for Withholding/Redaction | Privilege and/or Immunity | Redacted/Withheld |
|---|---|---|---|---|---|---|---|---|---|
| 53 | N/A | 12/19/2013 | E-mail and e-mail attachment | Rachel Strickland* (Willkie Farr & Gallagher) | Charlie Ergen | N/A | Reflects advice of counsel concerning termination of LBAC bid and strategic alternatives | Attorney/client privilege | Withheld |
| 54 | N/A | 12/19/2013 | E-mail and e-mail attachment | Charlie Ergen | Charlie Ergen | N/A | Reflects advice of Rachel Strickland* (Willkie Farr & Gallagher) concerning termination of LBAC bid and strategic alternatives | Attorney/client privilege | Withheld |
| 57 | N/A | 12/19/2013 | E-mail and e-mail attachment | Charlie Ergen | Charlie Ergen | N/A | Reflects advice of Rachel Strickland* (Willkie Farr & Gallagher) concerning termination of LBAC bid and strategic alternatives | Attorney/client privilege | Withheld |

---

[21] Exhibit 5, Feb. 3, 2014 letter from the AHSG to Defendants.

[22] Exhibit 6, Feb. 3, 2014 letter from Defendants to the AHSG.

16

These communications are relevant because they concern "termination of [the] LBAC bid and strategic alternatives." Document number 53 is an e-mail and e-mail attachment sent from Rachel Strickland of Wilkie Farr & Gallagher, counsel for SPSO, to Mr. Ergen. Numbers 54 and 57 are emails and attachments sent from Mr. Ergen to Mr. Ergen that "reflect[]" Ms. Strickland's advice regarding the LBAC bid termination. It appears from the privilege log that neither DISH nor counsel for DISH (Sullivan & Cromwell) participated in these communications. It is a basic tenet of discovery that a party may not assert privilege over communications in which it does not participate. See Snow Machines Inc. v. Hedco, Inc. (In re Kaplan), 110 F.R.D. 161, 163 (S.D.N.Y. 1986) (privilege protects only confidential communications between clients and their attorneys). Because these emails are not privileged communications between DISH or LBAC and their counsel, Defendants should be compelled to produce the documents numbered 53, 54 and 57 in the privilege log.

## CONCLUSION

Defendants should be compelled to produce all documents responsive to the Subpoenas from April 1, 2013 through the present, unless otherwise specified in the Subpoenas. Defendants must also produce all DISH board documents relating to LightSquared and documents numbered 53, 54 and 57 on DISH's privilege log. As described above, thorough discovery on these topics is relevant to the confirmation-related claims submitted in Debtors' Third Amended Joint Plan and Defendants cannot show that producing these documents would be unduly burdensome. FED. R. CIV. P. 26(b).

17

Dated: February 26, 2014
     New York, New York

                              WHITE & CASE LLP

                      By:   */s/* Glenn M. Kurtz
                               Glenn M. Kurtz
                               Julia M. Winters
                               1155 Avenue of the Americas
                               New York, New York 10036
                               Telephone: (212) 819-8200
                               Facsimile: (212) 354-8113
                               gkurtz@whitecase.com
                               jwinters@whitecase.com

                               Thomas E Lauria
                               Southeast Financial Center, Suite 4900
                               200 South Biscayne Blvd.
                               Miami, FL 33131
                               Telephone: (305) 371-2700
                               Facsimile: (305) 358-5744
                               tlauria@whitecase.com

                               *Counsel to the Ad Hoc Secured Group*