Rachel C. Strickland
James C. Dugan
Daniel I. Forman
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000

*Counsel for SP Special Opportunities, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LIGHTSQUARED INC., *et al.,* | : | Case No. 12-12080 (SCC) |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------------------x

**DECLARATION OF RACHEL C. STRICKLAND**
**IN SUPPORT OF POST CONFIRMATION TRIAL**
**BRIEF OF SP SPECIAL OPPORTUNITIES, LLC AND**
**OBJECTION TO CONFIRMATION OF DEBTORS' THIRD**
**AMENDED JOINT PLAN PURSUANT TO CHAPTER 11 OF THE**
**BANKRUPTCY CODE AND POST CONFIRMATION PROPOSED**
**FINDINGS OF FACT OF SP SPECIAL OPPORTUNITIES, LLC**

I, Rachel C. Strickland, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the bar of the State of New York and am admitted to practice before the United States District Court for the Southern District of New York.  I am a partner at Willkie Farr & Gallagher LLP and counsel for SP Special Opportunities, LLC ("SPSO") in the above-captioned proceeding.

2.      I submit this Declaration in support of SPSO's Post-Confirmation Trial Brief and Objection to Confirmation of Debtors' Third Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code and Post Confirmation Proposed Findings of Fact of SPSO.

3.      I base this declaration on my personal knowledge and on information obtained in the course of the above-captioned matter.

11803104.1

4.     Attached hereto are  true and correct copies of the following documents:

| Exhibit | Item |
|---|---|
| A. | 4/2/14 Letter from P. Basta to Judge Chapman regarding Common Interest Privilege |
| B. | 4/2/14 Letter from A. Stone to Judge Chapman regarding Common Interest Privilege |
| C. | 12/2/13 Email from P. Falcone to A. Durmer (HARBPLAN00001846) |
| D. | 10/22/13 Email from J. Abbruzzese to R. Cates |
| E. | SPSO Trading Detail |
| F. | 6/13/13 Email from M. Barr of Milbank Tweed to R. Strickland of Willkie Farr (SPSO-00009064) |
| G. | 10/10/13 Email exchange between M. Olfat and M. Tseytlin of LightSquared |
| H. | FCC Announces NextWave Settlement Agreement, (Apr. 20, 2004) |
| I. | SPSO Ballot |
| J. | *Russia Plan Four GLONASS-M Launches in November, System Nears FOC* (Oct. 31, 2011) and *Russian Proton-M launches three Glonass-M GPS satellites* (Nov. 4, 2011) |

I declare under penalty of perjury that the foregoing is true and correct.


Dated:          New York, New York            By:   /s/ Rachel C. Strickland
                April 26, 2014                     Rachel C. Strickland

**<u>EXHIBIT A</u>**

**REDACTED**

**<u>EXHIBIT B</u>**

**REDACTED**

## EXHIBIT C

## REDACTED

## EXHIBIT D

**REDACTED**

**<u>EXHIBIT E</u>**

**REDACTED**

## **EXHIBIT F**

## **REDACTED**

**<u>EXHIBIT G</u>**

**REDACTED**

# **EXHIBIT H**



*United States Attorney*
*Southern District of New York*

FOR IMMEDIATE RELEASE      CONTACT:      U.S. ATTORNEY'S OFFICE
APRIL 20, 2004                           MARVIN SMILON
                                         HERBERT HADAD
                                         PUBLIC INFORMATION OFFICE
                                         (212) 637-2600


### GOVERNMENT SETTLES NEXTWAVE LITIGATION; BANKRUPT TELECOM TO RETURN OR SELL 90% OF ITS ENCUMBERED SPECTRUM

DAVID N. KELLEY, the United States Attorney for the Southern District of New York, announced today that the bankrupt telecommunications company NextWave Personal Communications, Inc., has settled its six-year dispute with the Federal Communications Commission ("FCC"), agreeing to return to the FCC or sell in the near future 90% of its encumbered spectrum. The return of the encumbered spectrum, based on the original NextWave purchase price, in addition to the anticipated cash payments to the FCC under the settlement, result in a recovery for the Government of at least $4.0 billion.

The dispute has had a long and complicated history. NextWave originally purchased 95 licenses for wireless spectrum, broadly described as a range of frequencies on the public airwaves, at auctions conducted by the FCC in 1996 and 1997. In 1998, however, after making its down payment of approximately

$500 million, NextWave filed for bankruptcy and refused to make additional payments.

Litigation concerning the licenses proceeded from the bankruptcy court to the Court of Appeals for the Second Circuit, in New York, to the Court of Appeals for the D.C. Circuit in Washington, D.C., and the United States Supreme Court. In late 2001, while the Government's appeal to the Supreme Court was pending, the Government and NextWave reached a tentative settlement. Because of the amount of the proposed settlement, Congress was required to approve the settlement, but did not do so. Since that time, the value of the licenses has dramatically decreased. In January 2003, the United States Supreme Court ruled in NextWave's favor, returning the case to the bankruptcy court.

As a result of the settlement, which is subject to approval by the Bankruptcy Court, NextWave agrees to return the Government 72% of its encumbered spectrum. In addition, NextWave this month sold 17% of its encumbered spectrum to Cingular Wireless LLC and paid the Government $714 million from the sale proceeds. Combined with the spectrum placed into short term escrow, at least 90% of the encumbered spectrum once held by NextWave can now be put to productive use, leaving NextWave with no more than 10% of the spectrum at issue.

Under the settlement, the FCC anticipates a cash recovery of at least $1.6 billion in addition to the returned

2

licenses.  The FCC has already received the $714 million cash payment upon closing of the Cingular transaction earlier this month, the FCC will retain NextWave's original down payment of approximately $500 million, and NextWave has agreed to pay $386 million in cash from other potential near-term sales or return additional licenses.

In total, the return of the encumbered spectrum, based on the original NextWave purchase price, plus the cash settlement payment, result in a recovery for the Government of at least $4.0 billion.

NextWave has also agreed to pay the FCC a portion of the proceeds from the sale of certain of NextWave's retained licenses in the next few years if there is a dramatic increase in value. Finally, in addition to the returned licenses and cash payments, NextWave agreed to release the FCC from any additional claims or liability based on the Supreme Court's ruling in NextWave's favor.

Assistant United States Attorneys DAVID S. JONES, DAVID J. KENNEDY, and JEANNETTE VARGAS are in charge of the case.

04-79                          ###

3

**<u>EXHIBIT I</u>**

Matthew S. Barr
Steven Z. Szanzer
Karen Gartenberg
MILBANK, TWEED, HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTSQUARED INC., *et al.*, | ) Case No. 12-12080 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

## BALLOT FOR PREPETITION LP FACILITY SPSO CLAIMS (CLASS 7B) WITH RESPECT TO DEBTORS' THIRD AMENDED JOINT PLAN

### PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE BALLOT

      LightSquared Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, "LightSquared" or the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), are soliciting votes with respect to the *Debtors' Third Amended Joint Plan Pursuant to Chapter 11 of Bankruptcy Code*, dated February 22, 2014 [Docket No. 1336] (as may be further amended or supplemented from time to time, and including all exhibits and supplements thereto, the "Plan"). All capitalized terms used but not otherwise defined herein or in the enclosed voting instructions (the "Voting Instructions") shall have the meanings ascribed to such terms in (1) the Plan, (2) the *Order (I) Approving Disclosure Statements, (II) Approving Solicitation and Notice Procedures with Respect to Confirmation of Competing Plans, (III) Approving Forms of Various Ballots and Notices in Connection Therewith, (IV) Approving*

---

[1]    The debtors in these Chapter 11 Cases (as defined below), along with the last four digits of each debtor's federal or foreign tax or registration identification number, are: LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040). The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.



1212081140221125744000001

*Scheduling of Certain Dates in Connection with Confirmation of Competing Plans, and (V) Granting Related Relief*, dated October 10, 2013 [Docket No. 936] (the "Disclosure Statement Order"), or (3) the *Order Approving (A) Third Amended Specific Disclosure Statement and (B) Shortened Time To Object to Confirmation of LightSquared's Third Amended Plan and Streamlined Resolicitation Thereof*, dated February 24, 2014 [Docket No. 1343] (the "Global Resolicitation Order"), as applicable.

        The Debtors are soliciting votes through Kurtzman Carson Consultants LLC, the notice, claims, solicitation, and balloting agent retained by the Debtors in these Chapter 11 Cases (the "Claims and Solicitation Agent"), with respect to the Plan from the holders of certain impaired claims against, or equity interests in, the Debtors or certain of the Debtors, as applicable. Please refer to the Voting Instructions. If you have any questions on how to properly complete this ballot, please call the Claims and Solicitation Agent at (877) 499-4509.

        This ballot (the "Ballot") is being sent to all persons or entities that hold Prepetition LP Facility SPSO Claims. This Ballot is to be used for voting to accept or reject the Plan. If you hold more than one type of claim or equity interest, you will receive a Ballot for each claim or equity interest that you hold and for which you are entitled to vote. This Ballot shall supersede and revoke any prior dated Ballot used to vote on the Plan.

        Before you vote, you should review the Plan, the *First Amended General Disclosure Statement*, dated October 7, 2013 [Docket No. 918] (as may be further amended or supplemented from time to time, and including all exhibits and supplements thereto, the "General Disclosure Statement"), and the *Specific Disclosure Statement for Debtors' Third Amended Joint Plan Pursuant to Chapter 11 of Bankruptcy Code*, dated February 22, 2014 [Docket No. 1336] (as may be further amended or supplemented from time to time, and including all exhibits and supplements thereto, the "Third Amended Disclosure Statement" and, together with the General Disclosure Statement, the "Disclosure Statements"). If the Plan is confirmed by the Bankruptcy Court, it shall be binding on you whether or not you vote.

        This Ballot may not be used for any purpose other than for (a) casting votes to accept or reject the Plan or (b) electing to opt out of the third-party release provisions set forth in Article VIII.F of the Plan (the "Third-Party Releases").

---

**THIS BALLOT MUST BE RECEIVED BY THE CLAIMS AND SOLICITATION AGENT NO LATER THAN 4:00 P.M. (PREVAILING PACIFIC TIME) ON MARCH 3, 2014 (THE "VOTING DEADLINE").**

**IF THIS BALLOT IS NOT COMPLETED, SIGNED, AND TIMELY RECEIVED BY THE CLAIMS AND SOLICITATION AGENT BY THE VOTING DEADLINE, YOUR VOTE SHALL NOT BE COUNTED WITH RESPECT TO THE PLAN AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES WILL NOT BE VALID. IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER OR NOT YOU VOTE.**

**PLEASE COMPLETE THE APPLICABLE ITEMS.**

---



1212081140221125744000001

## IMPORTANT

## YOU SHOULD REVIEW THE DISCLOSURE STATEMENTS AND PLAN BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND CLASSIFICATION AND TREATMENT THEREUNDER.

**Item 1.        Amount of Claim.**

The undersigned is the record holder of a Prepetition LP Facility SPSO Claim in the outstanding amount of

_____ $920,202,281.19 _____ .

**Item 2.        Votes.**

The holder of the Prepetition LP Facility SPSO Claim set forth in Item 1 votes to accept or reject the Plan as indicated below:

| Accept | Reject |
|--------|--------|
| ☐ | ✓ |

*SPSO does not consent to, and does not grant, any releases under the Plan.*

Any Ballot that is executed by the holder of a claim or equity interest but that indicates both an acceptance and a rejection of the Plan, or does not indicate either an acceptance or rejection of the Plan, will not be counted as a vote with respect to the Plan.

If you choose to abstain from voting on the Plan, please see Item 3 below.

**Item 3.        Releases.**

**The settlement, release, exculpation, and injunction provisions of the Plan are attached to the *Notice of Filing of Specific Disclosure Statement for Debtors' Third Amended Joint Plan Pursuant to Chapter 11 of Bankruptcy Code* [Docket No. 1308]. All entities are advised to carefully review and consider the Plan, including the settlement, release, exculpation, and injunction provisions, as their rights may be affected.**

**COMPLETE THIS ITEM ONLY IF YOU ARE ENTITLED TO VOTE ON THE PLAN IN ITEM 2 ABOVE AND DID NOT DO SO.** If you do not cast a vote with respect to the Plan, you may check the applicable box below to reject the Third-Party Release provisions contained in the Plan.

The holder of the Prepetition LP Facility SPSO Claim set forth in Item 1 elects to:

☐        Reject the Third-Party Releases contained in the Plan.

3

**Item 4.**         **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors under the penalty of perjury that:

(a)      either (i) such person or entity is the holder of the Prepetition LP Facility SPSO Claim being voted or (ii) such person or entity is an authorized signatory for a person or entity which is the holder of the Prepetition LP Facility SPSO Claim being voted;

(b)      such person or entity has received copies of the Disclosure Statements and other materials from the Solicitation Materials;

(c)      such person or entity acknowledges that the solicitation of votes is being made pursuant, and is subject, to all the terms and conditions set forth in the Disclosure Statements;

(d)      such person or entity has cast the same vote on every Ballot completed by such person or entity with respect to the Prepetition LP Facility SPSO Claim under the Plan;

(e)      no other Ballots with respect to the Prepetition LP Facility SPSO Claim identified in Item 1 have been cast under the Plan or, if any other Ballots have been cast with respect to such Prepetition LP Facility SPSO Claim under the Plan, such earlier Ballots are hereby revoked with respect to the Plan; and

(f)      such person or entity is to be treated as the record holder of the Prepetition LP Facility SPSO Claim for the purposes of voting on the Plan.

Dated: February 27 , 2014          Name of Voter: SP Special Opportunities, LLC
                                                              (Print or Type)



**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN
IT PROMPTLY.**

4

1212081140221125744000001

**PLEASE DELIVER THIS BALLOT TO THE CLAIMS AND SOLICITATION AGENT BY (I) E-MAIL TO LIGHTSQUAREDBALLOTS@KCCLLC.COM, (II) FACSIMILE TO (310) 776-8379, OR (III) FIRST CLASS MAIL, OVERNIGHT COURIER, OR PERSONAL DELIVERY TO:**

**LIGHTSQUARED BALLOT PROCESSING
c/o KURTZMAN CARSON CONSULTANTS LLC
2335 ALASKA AVENUE
EL SEGUNDO, CA  90245**

**SO AS TO BE RECEIVED NO LATER THAN 4:00 P.M. (PREVAILING PACIFIC TIME) ON MARCH 3, 2014, OR YOUR VOTE SHALL NOT BE COUNTED AND ANY ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES WILL NOT BE VALID.**

**PLEASE MAKE SURE YOU HAVE PROVIDED ALL OF THE INFORMATION REQUESTED BY THIS BALLOT.**

1212081140221125744000001

## VOTING INSTRUCTIONS

1.  The Debtors have filed the Plan and Disclosure Statements. The Bankruptcy Court has (a) approved the Disclosure Statements and (b) directed the solicitation of votes with regard to the approval or rejection of the Plan.

2.  All capitalized terms used in the Ballot or these Voting Instructions but not otherwise defined herein shall have the meanings ascribed to them (a) the Plan, (b) the *Order (I) Approving Disclosure Statements, (II) Approving Solicitation and Notice Procedures with Respect To Confirmation of Competing Plans, (III) Approving Forms of Various Ballots and Notices in Connection Therewith, (IV) Approving Scheduling of Certain Dates in Connection with Confirmation of Competing Plans, and (V) Granting Related Relief,* dated October 10, 2013 [Docket No. 936], or (c) the *Order Approving (A) Third Amended Specific Disclosure Statement and (B) Shortened Time To Object to Confirmation of LightSquared's Third Amended Plan and Streamlined Resolicitation Thereof,* dated February 24, 2014 [Docket No. 1343], as applicable.

3.  This Ballot shall supersede and revoke any prior dated Ballot used to vote on the Plan.

4.  If the Bankruptcy Court confirms the Plan, it will bind the holders of claims against, and holders of equity interests in, the applicable Debtors in accordance with the terms thereof. Please review the Disclosure Statements for more information. These Voting Instructions apply to the holders of claims or equity interests wherever located, including, without limitation, those located in Canada.

5.  The Bankruptcy Court has approved October 9, 2013, as the voting record date (the "Voting Record Date") for purposes of determining (a) which holders of claims or equity interests are entitled to vote on the Plan and (b) whether claims or equity interests have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of the claim or equity interest.

6.  To ensure that your vote is counted, you must (a) complete the Ballot, (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot, and (c) sign, date, and timely return the Ballot to the Claims and Solicitation Agent.

7.  If you are entitled to vote on the Plan and do not do so but wish to elect to withhold consent to the third-party release provisions set forth in Article VIII.F of the Plan (the "Third-Party Releases"), then to ensure that your election is recorded you must (a) complete Item 3 of the Ballot and (b) sign, date, and timely return the Ballot to the Claims and Solicitation Agent. If you indicate a decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot and complete Item 3 of the Ballot, your election in Item 3 with respect to the Third-Party Releases will be disregarded.



12120811402211257440000001

8.  To have your vote counted with respect to the Plan, your properly completed Ballot must actually be received by the Claims and Solicitation Agent no later than 4:00 p.m. (prevailing Pacific time) on March 3, 2014 (the "Voting Deadline").

9.  Except as otherwise provided in the Solicitation Procedures, or unless waived by the Debtors or permitted by order of the Bankruptcy Court, the Debtors may reject the Ballot as invalid if it is not timely received on or prior to the Voting Deadline, and, therefore, decline to count it in connection with confirmation. The method of delivery of Ballots to be sent to the Claims and Solicitation Agent is at the election and risk of each holder of a claim or equity interest, but, except as otherwise provided in the Solicitation Procedures, such delivery shall be deemed made only when the executed Ballot is actually received by the Claims and Solicitation Agent.

10. Unless specifically instructed by the Claims and Solicitation Agent to do so, no Ballot should be sent to the Debtors, the Debtors' agents (other than the Claims and Solicitation Agent), or the Debtors' financial or legal advisors. If so sent, the Ballot will not be counted in connection with confirmation of the Plan.

11. The Debtors expressly reserve the right to make non-substantive or immaterial changes to the Plan and related documents without further order of the Bankruptcy Court (subject to compliance with the requirements of section 1127 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and the terms of the Plan regarding modifications). The Bankruptcy Code requires the Debtors to disseminate additional solicitation materials if the Debtors make material changes to the terms of the Plan or if the Debtors waive a material condition to confirmation of the Plan. In that event, the solicitation may be extended to the extent directed by the Bankruptcy Court.

12. The Ballot is not a letter of transmittal and may not be used for any purpose other than transmitting your vote to accept or reject the Plan or electing to opt out of the Third-Party Releases. Accordingly, you should not surrender instruments or certificates representing or evidencing your Prepetition LP Facility SPSO Claim, and neither the Debtors nor the Claims and Solicitation Agent shall accept delivery of such instruments or certificates surrendered together with a Ballot.

13. If multiple Ballots are received by the Claims and Solicitation Agent from the same holder of a Prepetition LP Facility SPSO Claim with respect to the same Prepetition LP Facility SPSO Claim prior to the Voting Deadline, the last dated valid Ballot received prior to the Voting Deadline will supersede and revoke any prior dated Ballot.

14. Separate Ballots received by the Claims and Solicitation Agent from the same holder of Prepetition LP Facility SPSO Claims with respect to the Plan shall be counted separately for purposes of determining acceptances or rejections of the Plan pursuant to section 1126(c) of the Bankruptcy Code; provided, however, to the extent that a holder has multiple Prepetition LP Facility SPSO Claims within the same class under the Plan, the Debtors may, in their discretion, aggregate and count as a single vote the Prepetition

LP Facility SPSO Claims of such holder for the purpose of counting the number of votes.

15. Holders of Prepetition LP Facility SPSO Claims under the Plan must vote all of their Prepetition LP Facility SPSO Claims either to accept or reject the Plan and may not split any such votes with respect to the Plan. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

16. Unless otherwise ordered by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), and revocation or withdrawal of Ballots with respect to the Plan shall be determined by the Debtors, which determination shall be final and binding.

17. A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity must indicate such capacity when signing and, if required or requested by the applicable holder of a Prepetition LP Facility SPSO Claim or its agent, the Claims and Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder of a Prepetition LP Facility SPSO Claim.

18. Any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted; provided, however, the Debtors, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

19. Except as otherwise set forth in the Solicitation Procedures, neither the Debtors nor any other entity will (a) be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report or (b) incur any liability for failure to provide such notification.

20. In the event a designation for lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept or reject the Plan cast with respect to the Prepetition LP Facility SPSO Claim for which designation is requested will be counted for purposes of determining whether the Plan has been accepted or rejected by the holder of such Prepetition LP Facility SPSO Claim.

21. Subject to any contrary order of the Bankruptcy Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which (in the opinion of the Debtors) would not be in accordance with the provisions of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); provided, however, that any such rejections shall be documented in the Voting Report.

3

22. If a Prepetition LP Facility SPSO Claim has been estimated or otherwise allowed for voting purposes by an order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a), such Prepetition LP Facility SPSO Claim shall be temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only and not for purposes of allowance or distribution.

23. If an objection to a Prepetition LP Facility SPSO Claim is filed, such Prepetition LP Facility SPSO Claim shall be treated in accordance with the Solicitation Procedures and the terms of the Plan.

24. The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Prepetition LP Facility SPSO Claim; (b) any Ballot that contains the vote cast by a party that does not hold a Prepetition LP Facility SPSO Claim that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan; or (e) any Ballot submitted by any entity not entitled to vote pursuant to the Solicitation Procedures.

25. Any class of claims or equity interests that does not have a holder of an allowed claim or equity interest, or a claim or equity interest temporarily allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to section 1129(a)(8) of the Bankruptcy Code.

26. If no holders of Prepetition LP Facility SPSO Claims vote to accept or reject the Plan, the Plan shall be deemed accepted by all holders of such Prepetition LP Facility SPSO Claims.

27. If you hold more than one type of claim or equity interest, you may receive more than one ballot, each coded for a different claim or equity interest. Each ballot votes only your claim or equity interest indicated on that ballot. Please complete and return each ballot you received.

28. This Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a claim or equity interest.

29. Each holder of a Prepetition LP Facility SPSO Claim shall be deemed to have voted the full amount of its claim as allowed for voting purposes, notwithstanding anything to the contrary on its Ballot.

30. Please be sure to sign and date your Ballot. In addition, please provide your name and mailing address if different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

4



121208114022112574400000 1

# **EXHIBIT J**



# The NEW GSS9000

# InsideGNSS

### Engineering Solutions from the Global Navigation Satellite System Community

| USA | EUROPE | RUSSIA | CHINA | REGIONAL/AUGMENTATION |
| GPS | GALILEO | GLONASS | BEIDOU | |

HOME   NEWSLETTER   GNSS NEWS   EVENTS   INDUSTRY NEWS   WEBINARS   MAGAZINE   ADVERTISE   SUBSCRIPTIONS   MICROSITE NETWORK   CONTACT

SEARCH WEBSITE

[Search]

**Cutting Edge Test Solutions**
NavX-NCS PRO GNSS RF Signal Generators

www.ifen.com

**NovAtel OEM6 series.**

INSIDE GNSS MAGAZINE

Current issue online

**L3**
Interstate Electronics Corporation

INSIDE GNSS DIGITAL EDITION

Browse or download:

Current Digital Edition

Digital Edition Archive

---

INSIDE GNSS NEWS

Sunrise at the Soyuz launch pad, Baikonur space center (NASA/Bill Ingalls photo 2008) (Click image to enlarge.)

## Russian Plans Four GLONASS-M Launches in November, System Nears FOC

Latest News

October 31, 2011

Share via: Slashdot   Technorati   Twitter   Facebook

Russia plans to add four GLONASS-M satellites to its constellation in November, which should bring the GNSS system to fully operational capability (FOC).

The Russian Federal Space Agency (Roscosmos) website indicates that a launch of three GLONASS-Ms on board a Proton-M rocket will take place this Thursday (November 3, 2011) from the Baikonur space center in Kazakhstan.

According to an October 24 report from the Russian state information agency RIA Novosti, a fourth Glonass-M will be placed into orbit by a Soyuz 2.1b launch vehicle at the end of November from the Plesetsk space center north of Moscow. Other news reports place the date as November 22. The satellite was delivered to Plesetsk last week to undergo pre-launch procedures.

As of today (October 31, 2011) the system had 23 operational satellites in orbit: eight each in planes 2 and 3 and seven in plane 1 where an eighth spacecraft — the prototype next-generation GLONASS-K launched February 11 — is undergoing flight tests. A GLONASS-M launched October 2 and located in plane 1, slot 4, was activated on October 25, replacing

The constellation has a spare satellite in plane 2, as well as two space vehicles (SVs), one each in planes 1 and 3 that are still included in the constellation almanac in "maintenance" status. However, those have been out of service for more than two years and may not return. In an October 28 statement published on the Roscosmos website, the Russian General Staff reports that the accuracy of GLONASS will reach parity with that of GPS by 2015. According to RIA Novosti, Roscosmos head Vladimir Popovkin says that Russia will increase the number of operational satellites in the GLONASS constellation to 30.

Meanwhile, according to an October 16 Izvestia news article, Roscosmos is proposing a 330.5-billion ruble (US$10.9 billion) budget for GLONASS in the 2012–2020 time frame, compared to the 116.9 billion rubles ($10.85 billion) spent on the system since former President Vladimir Putin reactivated the program in 2001.

The Russian GNSS system got a boost with release of the new Apple iPhone 4S smart phone earlier this month that can process GLONASS signals as well as GPS. Reportedly, the Qualcomm MDM6610 chipset is used in the new phone. Chipmakers Samsung Electronics Co. Ltd and Texas Instruments Inc. have also indicated that they will bring out chipsets for smartphones that incorporate GLONASS capability.

---

GNSS spoken here

Trimble

SIMPLY.

AMAZING.

AUVSI's
2014
REGISTER NOW
CONFERENCE 12–15 MAY
TRADE SHOW 13–15 MAY
ORANGE COUNTY CONVENTION CENTER
ORLANDO FLA, USA

NEW! GPS/GNSS
Online Training

Visit Booth #842
AT AUVSI 2014
NavtechGPS

Copyright © 2011 Gibbons Media & Research LLC, all rights reserved.









**WEBSITE FEATURE**



Home • Subscription Services • Advertise • Contact Us


Copyright © Gibbons Media & Research LLC. All rights reserved.
1574 Coburg Road No. 233 • Eugene, Oregon 97401-4802 • United States
Telephone 408-216-7561 • Fax 408-216-7525

Problems viewing this page? Contact our webmaster.

Follow @NASASpaceFlight 9,452 followers    Subscribe to RSS

NASA & littleBits INTRODUCE **THE SPACE KIT**
LEARN MORE ›

**NASA**
**SPACEFLIGHT.COM**

- Home
- Forums
- L2 Sign Up
- ISS
- Commercial
- Shuttle
- SLS/Orion
- Russian
- European
- Chinese
- Unmanned
- Other

A Russian

# Russian Proton-M launches three Glonass-M GPS satellites

November 4, 2011 by Chris Bergin

government Proton-M launch vehicle has successfully launched with three Glonass-M – the Russian Global Positioning System (GPS) – satellites on Friday. Launch was on schedule at 12:52 GMT from the Baikonur Cosmodrome in Kazakhstan, as the Russian fleet of vehicles continue their fight back from recent failures.

**Glonass-M Launch:**

Glonass is the Russian version to the US Global Positioning System (GPS), which several nations are building for the purpose of independence from the American-controlled system.

Like the US GPS system, Glonass can be used by both military and civilian entities, and is designed for both military and civilian uses.

The three satellites are numbers 43, 44, and 45 – following on from the recent launch of the number 42 Kosmos satellite – a Blok-45S design – which was successfully launched via a Soyuz 2-1B launch vehicle from the Plesetsk Cosmodrome in northern Russia.

**See Also**

UPDATES Proton-M/Glonass
60 Launch Vehicle Manuals (L2)
Click here to Join L2

The latest trio of satellites were individually delivered to Baikonur over a period of a few weeks, starting with number 43 in late September.

The launch was then delayed several times from its original October 30 target, with the latest – a one day delay – relating to an unspecified technical issue. However, lift off on Friday was successful, ahead of what was four planned burns of the Breeze-M upper stage, prior to the release of the new trio around 18:41 GMT.

The Proton booster tasked with the launch of the satellite trio was 4.1 m (13.5 ft) in diameter along its second and third stages, with a first stage diameter of 7.4 m (24.3 ft). Overall height of the three stages of the Proton booster is 42.3 m (138.8 ft).



The first stage consists of a central tank containing the oxidizer surrounded by six outboard fuel tanks. Each fuel tank also carries one of the six RD-276 engines that provide first stage power. Total first stage vacuum-rated level thrust is 11.0 MN (2,500,000 lbf).

Of conventional cylindrical design, the second stage is powered by three RD-0210 engines plus one RD-0211 engine and develops a vacuum thrust of 2.4 MN (540,000 lbf).

Powered by one RD-0213 engine, the third stage develops thrust of 583 kN (131,000 lbf), and a four-nozzle vernier engine that produces thrust of 31 kN (7,000 lbf). Guidance, navigation, and control of the Proton M during operation of the first three stages is carried out by a triple redundant closed-loop digital avionics system mounted in the Proton's third stage.

The Breeze-M upper stage is the Phase III variant, a recent upgrade which utilizes two new high-pressure tanks (80 liters) to replace six smaller tanks, along with the relocation of command instruments towards the centre – in order to mitigate shock loads when the additional propellant tank is being jettisoned.

It was a problem with that upper stage which resulted in the loss of the Ekspress-AM4 communications satellite in August – another Russian government mission – when the stage, otherwise known as the Briz-M, failed to insert the satellite into the correct transfer orbit due to a problem with the last of the mission profile burns.

This failure led to a delay for the ViaSat-1 mission, which was initially scheduled for September, prior to its successful launch – conducted by International Launch Services – on October 19.

With this week's successful launch and docking of the Progress M13M/45P via the Russian Soyuz launch vehicle, paving the way for the next crewed Soyuz TMA launch later this month, the Russian fleet are closing in on a full return to nominal operations.

(Images via Roscosmos).

---

## Related Articles

---

- Russian Proton M launches Luch-5A and AMOS-5 satellites
- Russian Proton-M launches Ekspress-AM5
- Russian government Proton-M launches Raduga-1M
- Russian Soyuz-FG successfully launches five satellites
- Russian Rockot launches with Gonets-M and two Kosmos satellites

**Share This Article**





NASASpaceflight © 2005 - 2013
Website Designed by Dr Nox & Associates

**L2 - What's Popular**



Russian Proton-M launches three Glonass-M GPS satellites | NASASpaceFlight.com                    Page 4 of 5

## Recent Forum Posts

| To Reach Mars |
| --- |

*by chalz*

| SpaceX Texas launch site Discussion and Updates - Thread 2 |
| --- |

*by Dave G*

| NASA Live UStram |
| --- |

*by Lee Jay*

| Important announcement by Musk today (25 Apr) |
| --- |

*by ArbitraryConstant*

| SpaceX FX/FXX/BFR Speculation Thread. |
| --- |

*by QuantumG*

## Archives

| Select Month |  |
| --- | --- |


Professional Web Design Hosting & Email Services
dr-nox.com





