Matthew S. Barr
Alan J. Stone
Michael L. Hirschfeld
Andrew M. Leblanc
MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP
28 Liberty Street
New York, NY 10005-1413
(212) 530-5000

*Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LIGHTSQUARED INC., *et al.*, | Case No. 12-12080 (SCC) |
| Debtors.[1] | Jointly Administered |

**LIGHTSQUARED'S MOTION *IN LIMINE*
TO PRECLUDE TESTIMONY OF EXPERT WITNESS JIM MILLSTEIN**

LightSquared Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, "LightSquared") in the above-captioned chapter 11 cases respectfully submit this motion *in limine* for an order pursuant to Rule 702 of the Federal Rules of Evidence precluding any testimony by Jim Millstein, expert witness for SP Special Opportunities, LLC ("SPSO"), regarding technical spectrum-related issues, including any valuation evidence based on the comparability of spectrum bands, during the confirmation hearing (the "Confirmation Hearing")

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are: LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629), and One Dot Six TVCC Corp. (0040). The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

for the *Second Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2035, Ex. A].  LightSquared submits this motion *in limine* to preserve its objection to the admission of Mr. Millstein's testimony, but does not oppose the Court reserving decision on this motion until after the Court hears Mr. Millstein's testimony in full.

## PRELIMINARY STATEMENT

1. Jim Millstein is among the leading restructuring advisors in the nation, having spent decades as a lawyer and a senior banker advising companies in troubled situations.  That he is qualified to perform corporate valuations is beyond question.  That he is not qualified, however, to compare and contrast the technical attributes of different frequencies of radio spectrum is equally beyond question.  He is belatedly trying, nevertheless, to do so here, because his client has left him no alternative.

2. Having tried, but failed, to circumvent the Federal Rules of Evidence and this Court's pretrial scheduling order, SPSO now contrives to impose on Mr. Millstein an impossible burden, given the limitations of his experience and expertise.  SPSO has asked Mr. Millstein to assess the value of LightSquared's spectrum by comparing and contrasting its technical similarity to other spectrum bands, but has not supported him with testimony from a witness competent to testify about spectrum characteristics.  Thus, Mr. Millstein offers in his expert report such esoteric opinions as (i) which bands of unpaired radio spectrum can be paired with other unpaired bands of radio spectrum, (ii) the challenges of integrating small bands of spectrum into a wireless network, and (iii) the advantages of larger contiguous band classes of spectrum from the perspective of smart phone and base station cost.

3. Mr. Millstein has forthrightly admitted that he is not a "spectrum expert."  His denials of spectrum expertise have been consistent and have been made under oath.  In contrast,

SPSO's assertions regarding Mr. Millstein's "spectrum expertise" have been decidedly less forthright. On March 1 and March 2, 2015, faced with LightSquared's motion to strike Tom Peters' submission (Appendix G to Mr. Millstein's report) and those portions of Mr. Millstein's report that recite, refer to, or rely upon Mr. Peters' submission, SPSO stated unequivocally in filed papers and in open court that Mr. Millstein was without spectrum expertise and therefore had relied entirely on Mr. Peters' submission to supply the technical underpinnings for Mr. Millstein's report, including the very detailed assessments of similarities and differences between L-Band spectrum and numerous other spectrum bands on the Federal Communications Commission's spectrum "dashboard."

4. When it became clear that the Court, under the authority of *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002), and the other cases cited by LightSquared, was inclined to grant LightSquared's motion to strike Mr. Peters' submission, SPSO, on March 4, 2015, tried a different, directly contrary approach. Its counsel informed the Court that Mr. Millstein's deposition was being taken concurrently and "as part of that deposition, he is being asked a lot of questions about his reliance on information by Mr. Peters. We believe that that record will show that he is exercising independent judgment, is exactly the type of expert testimony that Dura says can be allowed." (Declaration of Aaron L. Renenger ("Renenger Dec.") Ex. A (Mar. 4, 2015 Hr'g Tr.) at 21:24-22:3.) When the Court observed that this was "the exact opposite" of SPSO's position two days earlier, counsel demurred and insisted (incorrectly) that it had earlier told the Court "we need to await Mr. Millstein's deposition. So let's conclude it, so we have a full record as to exactly what Mr. Millstein relied on under the Dura case." (*Id.* at 22:10-13.)

- 3 -

5.   Not being a spectrum expert, Mr. Millstein is not qualified to offer the technical opinions and conclusions that are found throughout his report. The problem with Mr. Millstein's valuation is not merely that his report includes opinions on technical attributes of LightSquared's spectrum. Were that the case, the Court could simply ignore and exclude those portions of Mr. Millstein's report that offer technical conclusions. The problem, and it is a fatal one, is that without such technical opinions, Mr. Millstein's valuation conclusions cannot stand at all.

6.   Mr. Millstein's valuation conclusions are driven *entirely* by opinions regarding the technical characteristics of LightSquared's spectrum, and these are opinions Mr. Millstein is simply not qualified to offer. For example, Mr. Millstein opines that valuation of LightSquared's spectrum "should focus on the unpaired A1 and B1 blocks" of spectrum sold in Auction 97, and then concludes, based on the pairing options he opines are available to each of LightSquared's spectrum, AWS-3 A1, and AWS-3 B1, that "the A1 block is more comparable to [LightSquared's spectrum] than the B1 block." (Renenger Dec. Ex. B (Expert Report of Jim Millstein dated February 25, 2015 (the "Millstein Report")) at 15-16.) Given his opinion that the value of the B1 block is six times that of the A1 block, this (grossly flawed) technical conclusion alone has a dramatic downward impact on his valuation conclusions. Mr. Millstein also criticizes the "Alternative Spectrum Use Approach" to valuation put forward by LightSquared's expert, Moelis & Company, Inc. ("Moelis"), on the purported basis that Moelis does not adjust for the "significant disadvantages attributable to LightSquared's spectrum" or incorporate "the extensive costs required to bring LightSquared's spectrum to AWS-3 usability." (*Id.* at 23.) In other words, as with the selection of comparables he uses for his valuation, Mr. Millstein's criticism of Moelis' "Alternative Spectrum Use Approach" is based wholly on an evaluation of technical characteristics of spectrum for which he is unqualified. Indeed, the only portions of

Mr. Millstein's report that are not impermissibly based on expertise he does not have are pages 9-14, certain portions of pages 17-19 (all of which contain certain criticisms of Moelis' valuation methodology), and pages 34-39 (which discuss certain provisions of the United States Bankruptcy Code).

7. The true "valuation" portion of Mr. Millstein's report is just math (albeit with certain errors that will be explored on cross examination and would go to the weight the Court should afford to his testimony if admitted). The central issue that drives that math is whether the spectrum sold in Auction 97 is comparable to LightSquared's spectrum. Although he tries, Mr. Millstein is not qualified to help the Court decide this issue.

## RELEVANT FACTUAL BACKGROUND

8. Jim Millstein is an expert on issues related to financial restructuring and has provided valuation opinions in several cases. (*See* Renenger Dec. Ex. B (Millstein Report) at 55.) Mr. Millstein's valuation report in this case, however, is based on, and inseparable from, a highly technical comparison of different attributes of radio spectrum. That comparison does not merely list and weigh the merits of observable qualities of various spectrum bands, but purports (among other things) to assess the identity of potential buyers for and potential transactions involving LightSquared's spectrum, all stemming from comparative assessment of the spectrum at issue as well as the possible counterparties' other spectrum holdings.

9. Mr. Millstein's report contains numerous statements, analyses, and opinions regarding technical spectrum issues. To cite just a handful of examples:

- He repeatedly asserts throughout his report that certain technical characteristics of LightSquared's spectrum make it less valuable than other spectrum considered by Mr. Millstein.

- He makes the technical assertion that "[w]hile the frequency of the AWS-3 bands is close in range to LightSquared's spectrum, the AWS-3 paired bands have other significant unique attributes …." (*Id.* at 20.)

- He addresses the purported advantages of a larger contiguous band class and the purported disadvantages of a "small, isolated, 'island' band class." (*Id.*)

- He makes the technical assertion that "certain characteristics that increase the value of the paired AWS-3 spectrum [that was sold in Auction 97] will be impossible for LightSquared to emulate given the current FCC spectrum allocations." (*Id.* at 26.)

10. As this Court has already recognized and Mr. Millstein agrees,"Mr. Millstein . . . is not a spectrum expert." (Renenger Dec. Ex. A (Mar. 4, 2015 Hr'g Tr.) at 35:17-20; *accord* Renenger Dec. Ex. C (Millstein Depo. Tr.) at 25:14-15 ("I wouldn't hold myself out as a spectrum expert.").) In preparing his valuation report here, therefore, Mr. Millstein "retained Tom Peters . . . as a consultant with spectrum experience to provide industry-specific input for his valuation analysis." (*[SPSO]'s Opposition to LightSquared's Motion in Limine (I) to Exclude (a) a Report by Non-Witness Tom Peters, and (B) All Testimony of SPSO Expert Witness Jim Millstein Based Thereon; and (II) to Strike Portions of the Declaration of James C. Dugan in Support of SPSO's Objection to Confirmation of Second Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2159], at 1.) Mr. Peters provided to Mr. Millstein an 84-page, single-spaced report comparing and contrasting the various technical aspects of different spectrum bands (the "Peters Submission").

11. Mr. Peters, however, will not be testifying in this case. And on March 5, 2015, this Court entered an order granting LightSquared's motion to strike any portions of Mr. Millstein's report that "recite, refer to, or rely upon" the Peters Submission. (*See Order Granting LightSquared's Motion in Limine (I) to Exclude (a) a Report by Non-Witness Tom Peters, and (B) All Testimony of SPSO Expert Witness Jim Millstein Based Thereon; and (II) to Strike Portions of the Declaration of James C. Dugan in Support of SPSO's Objection to*

*Confirmation of Second Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2183].) Thus, if Mr. Millstein is to testify as to valuation in this case, he himself must have the necessary expertise to compare and contrast the technical aspects of different spectrum bands.

12. That he lacks such expertise should not be in dispute. But after admitting that "I'm not an engineer. I'm not trained as an engineer . . . I wouldn't hold myself out as a spectrum expert,"[2] Mr. Millstein—confronted by the impending, and then completed, exclusion of his technical source—attempted to establish that, notwithstanding the arguments of SPSO cited above, he in fact did not rely on Mr. Peters. (*See, e.g.,* Renenger Dec. Ex. C (Millstein Depo Tr.) at 258:15-259:3 (Mr. Millstein testifying that the Peters Submission was only "part of the information that we absorbed and tried to draw comparisons between the precedence and LightSquared"); *id.* at 251:23-253:14 (Mr. Millstein testifying that his conclusion that "the A1 Block is more comparable to both the L-Band and 1.6 than the B1 Block" was "informed by, but not entirely reliant on, Peters").) Mr. Millstein asserted that he could not separate out which portions of his report were from the Peters Submission because it was like "very scrambled egg" (*id.* at 248:12-20), but he nonetheless contended that he had the expertise to reach each of the conclusions contained therein.

13. Mr. Millstein's belated attempts to salvage his expert opinion are insufficient. Without relying on Mr. Peters, Mr. Millstein clearly lacks the expertise necessary to have rendered his valuation conclusions. This fact became unmistakably clear during his deposition, when, by way of example, Mr. Millstein testified that:

- He first learned of certain conclusions that would be included in his report when he read the first draft of the report that his team prepared. (*See id.* at 359:16-360:7, 376:15-377:4.)

---

[2] Renenger Dec. Ex. C (Millstein Depo Tr.) at 25:2-15.

- 7 -

- He only spent 60 hours on preparing his report. (*See id.* at 255:3-7.)

- He had not even reviewed the portion of this Court's decision that was filed under seal dealing with certain technical aspects of LightSquared's spectrum. (*See id.* at 210:22-211:21.)

- He does not know how to calculate the relative build-out costs associated with LightSquared's spectrum as compared to AWS-3 spectrum. (*See id* at 238:24-245:7.)

- He does not know the process by which spectrum bands become approved by 3GPP. (*See id.* at 224:9-19.)

- He does not know which or how many spectrum bands are aggregated in current handset devices. (*See id.* at 212:13-215:10.)

## ARGUMENT

**MR. MILLSTEIN CANNOT TESTIFY REGARDING TECHNICAL SPECTRUM-RELATED ISSUES**

14. In circumstances such as this, where an expert seeks to testify about an issue he has no expertise regarding, it is black letter law that his testimony must be precluded. *See Davis v. Carroll*, 937 F. Supp. 2d 930, 413 (S.D.N.Y. 2013) (Rule 702 of the Federal Rules of Evidence "mandates that experts stay within the reasonable confines of their subject area, and [not] render [an] expert opinion on an entirely different field or discipline"); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) ("[T]he trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline.") (internal quotation omitted); *Dura Auto Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (Posner, J.) (expert generally may not testify on issues he has no expertise regarding); *523 IP LLC v. CureMD.Com*, No. 11-CV-9697, 2014 U.S. Dist. LEXIS 134756, 105-06, 2014 WL 4746140, at *35 (S.D.N.Y. Sept. 24, 2014) (precluding expert from testifying on issues he had no expertise regarding).

15. Judge Lifland's decision in *In re Citadel Broadcasting Corp.*, No. 09-17442 (BRL), 2010 Bankr. LEXIS 1606, 2010 WL 2010808 (Bankr. S.D.N.Y. May. 19, 2010), is particularly instructive. There, Judge Lifland held that an expert's qualifications on general valuation principles, regardless of how extensive they may be, did not qualify him to opine on the valuation of a specific company within a specific industry about which he had no expertise. *See* 2010 Bankr. LEXIS 1606 at *16-17, 2010 WL 2010808 at *5 ("[T]he Court finds that the Objectors did not carry their burden of establishing that [the expert] was qualified to opine on the valuation of a radio broadcasting company, as opposed to general valuation principles, and thus that there was no 'nexus between his credentials and the subject matter of his testimony.'").

16. Mr. Millstein has absolutely no independent basis for the technical spectrum-related statements, analyses, and opinions expressed in his report. As reflected in his curriculum vitae, Mr. Millstein's post-secondary education focused on law and political science and his work experience is concentrated in the fields of financial restructuring, law, and securities. (*See* Renenger Dec. Ex. B (Millstein Report) at 53-55.) He has expressly disclaimed being a spectrum expert and has not even claimed to be an expert in a related field. He "is not an engineer" nor is he a "spectrum expert." (Renenger Dec. Ex. C (Millstein Depo. Tr.) at 25:2-15.) Mr. Millstein has no training, education, or background that would allow him to testify as an expert on technical spectrum-related issues. (*See* Renenger Dec. Ex. B (Millstein Report) at 53-55.)

17. Mr. Millstein is not competent to testify on the technical attributes of spectrum, and is therefore not able to opine that LightSquared's valuation should be based on those technical attributes. The Court, therefore, should preclude Mr. Millstein from testifying regarding technical spectrum-related issues.

## **CONCLUSION**

For the foregoing reasons, LightSquared respectfully requests that the Court enter an order barring any testimony by Jim Millstein during the Confirmation Hearing regarding technical spectrum-related issues.

                              Respectfully submitted,

New York, New York  
Dated: March 10, 2015

*/s/ Alan J. Stone*  
Matthew S. Barr  
Alan J. Stone  
Michael L. Hirschfeld  
Andrew M. Leblanc  
MILBANK, TWEED, HADLEY & M$^C$CLOY LLP  
28 Liberty Street  
New York, NY 10005-1413  
(212) 530-5000

*Counsel to Debtors and Debtors in Possession*