**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGHTSQUARED INC., *et al.*, | ) Case No. 12-12080 (SCC) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |

### ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, IF ANY, THROUGH PLAN EFFECTIVE DATE, (B) ESTABLISHING THAT PREPETITION SECURED PARTIES ARE ADEQUATELY PROTECTED, AND (C) MODIFYING AUTOMATIC STAY

Upon the motion (the "Motion")[2] of LightSquared Inc. and certain of its affiliates, as

debtors and debtors in possession (collectively, "LightSquared" or the "Debtors") in the above-

captioned chapter 11 cases (the "Chapter 11 Cases"), at the direction of the special committee of

the boards of directors (the "Special Committee") for LightSquared Inc. and LightSquared GP

Inc., seeking entry of an order (the "Order"), pursuant to sections 105, 361, 362, 363(c), and 507

of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy

Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and rule 4001-2 of the Local Rules for the United States Bankruptcy Court

for the Southern District of New York (the "Local Rules"), *inter alia*:  (a) authorizing

LightSquared to use prepetition collateral, including Cash Collateral (within the meaning of

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal or foreign tax or registration identification number, are: LightSquared Inc. (8845), LightSquared Investors Holdings Inc. (0984), One Dot Four Corp. (8806), One Dot Six Corp. (8763), SkyTerra Rollup LLC (N/A), SkyTerra Rollup Sub LLC (N/A), SkyTerra Investors LLC (N/A), TMI Communications Delaware, Limited Partnership (4456), LightSquared GP Inc. (6190), LightSquared LP (3801), ATC Technologies, LLC (3432), LightSquared Corp. (1361), LightSquared Finance Co. (6962), LightSquared Network LLC (1750), LightSquared Inc. of Virginia (9725), LightSquared Subsidiary LLC (9821), Lightsquared Bermuda Ltd. (7247), SkyTerra Holdings (Canada) Inc. (0631), SkyTerra (Canada) Inc. (0629) and One Dot Six TVCC Corp. (0040).  The location of the debtors' corporate headquarters is 10802 Parkridge Boulevard, Reston, VA 20191.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Eighth Replacement DIP Facility Order (as defined below), as applicable.

section 363(a) of the Bankruptcy Code) of the Prepetition Secured Parties (as defined herein),

through the Effective Date under (and as defined in) the *Modified Second Amended Joint Plan*

*Pursuant to Chapter 11 of Bankruptcy Code* [Docket No. 2238] (as amended, supplemented, or

modified from time to time in accordance with the terms thereof, the "Plan"), (b) establishing

that the Prepetition Secured Parties are, and will remain, adequately protected through the

Effective Date in connection with any diminution in value of their interests in the Prepetition

Collateral pursuant to sections 361, 362, and 363 of the Bankruptcy Code, and (c) modifying the

automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to

implement or effectuate the terms and provisions of this Order; and the Court having considered

the Motion and the evidence submitted at the Hearing; and notice of the Hearing having been

given in accordance with Bankruptcy Rules 4001(b) and (d) and 9014; and the Hearing to

consider the relief requested in the Motion having been held and concluded; and all objections, if

any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the

Court; and it appearing to the Court that entry of this Order is fair and reasonable and in the best

interests of the Debtors, their estates, and their stakeholders, and is essential for the continued

operation of the Debtors' businesses; and adequate protection being provided on account of the

interests in and liens on property of the estates on which liens are granted subject to the full

reservations of rights set forth herein; and after due deliberation and consideration, and for good

and sufficient cause appearing therefor; and

BASED UPON THE CONSENT SET FORTH HEREIN OF CERTAIN OF THE

PREPETITION SECURED PARTIES AND SUBJECT TO THE FULL RESERVATIONS OF

RIGHTS, AND UPON THE RECORD ESTABLISHED AT THE HEARING BY THE

DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND

CONCLUSIONS OF LAW:

A.    <u>Petition Date</u>.  On May 14, 2012 (the "<u>Petition Date</u>"), each of the Debtors filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

B.    <u>Debtors in Possession</u>.  The Debtors continue to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    <u>Jurisdiction/Venue</u>.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b)

and 1334, over the Chapter 11 Cases and property affected hereby.  Consideration of the Motion

constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    <u>Committee Formation</u>.  As of the date hereof, the Office of the United States

Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") has not appointed a statutory

committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the

Bankruptcy Code.

E.    <u>Confirmation of Plan</u>.  On March 27, 2015, the Court confirmed the Plan and

entered the *Order Confirming Modified Second Amended Joint Plan Pursuant to Chapter 11 of

Bankruptcy Code* [Docket No. 2276] (the "<u>Confirmation Order</u>").  As set forth in the

Confirmation Order, the treatment provided to the Prepetition Secured Parties under the Plan

satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy

Code.

F.    <u>Debtors' Debt Structure</u>.

1)    <u>Inc. Debt Structure</u>.  The Debtors acknowledge, admit, represent, stipulate, and

agree that:

      (a)     <u>Prepetition Inc. Credit Facility</u>.  Pursuant to that certain Credit Agreement, dated as of July 1, 2011 (as amended, supplemented, amended and restated, or otherwise modified from time to time, the "<u>Prepetition Inc. Credit Agreement</u>" and, together with all related credit and security documents, the "<u>Prepetition Inc. Credit Documents</u>"), among (i) LightSquared Inc., as borrower, (ii) the subsidiary guarantors party thereto, namely One Dot Four Corp., One Dot Six Corp., and One Dot Six TVCC Corp. (collectively, the "<u>Prepetition Inc. Subsidiary Guarantors</u>" and, together with LightSquared Inc., the "<u>Inc. Obligors</u>"), (iii) the lenders party thereto (collectively, the "<u>Prepetition Inc. Lenders</u>"), and (iv) U.S. Bank National Association, as successor administrative agent to UBS AG, Stamford Branch (in such capacity, the "<u>Prepetition Inc. Agent</u>"), the Prepetition Inc. Lenders provided term loans to or for the benefit of LightSquared Inc. (the "<u>Prepetition Inc. Credit Facility</u>").

      (b)     <u>Prepetition Inc. Obligations</u>. The Prepetition Inc. Credit Facility provided LightSquared Inc. with term loans in the aggregate principal amount of $278,750,000.  As of the Petition Date, an aggregate principal amount of approximately $322,333,494 was outstanding under the Prepetition Inc. Credit Agreement (collectively, with any amounts unpaid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition Inc. Credit Documents (including unpaid principal, accrued, and unpaid interest, any fees, expenses, and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Inc. Obligors' obligations pursuant to the Prepetition Inc. Credit Documents, including all "Obligations" as described in the Prepetition Inc. Credit Agreement, the "<u>Prepetition Inc. Obligations</u>").

(c)    <u>Prepetition Inc. Collateral.</u>  To secure the Prepetition Inc. Obligations, the Inc. Obligors granted to the Prepetition Inc. Agent for the benefit of the Prepetition Inc. Lenders first priority security interests in and liens (the "<u>Prepetition Inc. Liens</u>") on (i) the One Dot Six Lease (as defined in the Prepetition Inc. Credit Documents), (ii) the One Dot Four Lease (as defined in the Prepetition Inc. Credit Documents),[3] (iii) the capital stock of each Prepetition Inc. Subsidiary Guarantor, and (iv) all proceeds and products of each of the foregoing whether obtained prepetition or postpetition (collectively, the "<u>Prepetition Inc. Collateral</u>").  The Prepetition Inc. Collateral does not include cash other than proceeds of the Prepetition Inc. Collateral.

2)    <u>LP Debt Structure</u>.  The Debtors acknowledge, admit, represent, stipulate, and agree that:

(a)    <u>Prepetition LP Credit Facility</u>. Pursuant to that certain Credit Agreement, dated as of October 1, 2010 (as amended, supplemented, amended and restated, or otherwise modified from time to time, the "<u>Prepetition LP Credit Agreement</u>" and, together with all related credit and security documents, the "<u>Prepetition LP Credit Documents</u>" and, together with the Prepetition Inc. Credit Documents, the "<u>Prepetition Credit Documents</u>"), among (i) LightSquared LP, as borrower, (ii) LightSquared Inc. and the other parent guarantors party thereto, namely LightSquared Investors Holdings Inc., LightSquared GP Inc., and TMI Communications Delaware, Limited Partnership (collectively, the "<u>Prepetition LP Parent Guarantors</u>"), (iii) the subsidiary guarantors party thereto, namely ATC Technologies, LLC, LightSquared Corp., LightSquared Inc. of Virginia, LightSquared Subsidiary LLC, SkyTerra Holdings (Canada) Inc., and SkyTerra (Canada) Inc. (collectively, the "<u>Prepetition LP Subsidiary Guarantors</u>" and,

---

[3]    Although the One Dot Four Lease was terminated, the Prepetition Inc. Agent retains a first priority security interest in any remaining collateral.

collectively with the Prepetition LP Parent Guarantors and LightSquared LP, the "LP Obligors"),

(iv) the lenders party thereto (the "Prepetition LP Lenders" and, together with the Prepetition Inc.

Lenders, the "Prepetition Lenders"), and (v) Wilmington Savings Fund Society, FSB, as

successor administrative agent to UBS AG, Stamford Branch (in such capacity, and together with

Wilmington Trust FSB,[4] the "Prepetition LP Agent" and, together with the Prepetition LP

Lenders, the "Prepetition LP Secured Parties")[5], and other parties thereto, the Prepetition LP

Lenders provided term loans to or for the benefit of LightSquared LP (the "Prepetition LP Credit

Facility" and, together with the Prepetition Inc. Facility, the "Prepetition Facilities").

> (b)     Prepetition LP Obligations.  The Prepetition LP Credit Facility provided

LightSquared LP with term loans in the aggregate principal amount of $1,500,000,000.  As of the

Petition Date, an aggregate principal amount of approximately $1,700,571,106 was outstanding

under the Prepetition LP Credit Agreement (collectively, with any amounts unpaid, incurred, or

accrued prior to the Petition Date in accordance with the Prepetition LP Credit Documents

(including unpaid principal, accrued and unpaid interest, any fees, expenses, and disbursements),

indemnification obligations, and other charges, amounts, and costs of whatever nature owing,

whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in

respect of any of the LP Obligors' obligations pursuant to the Prepetition LP Credit Documents,

including all "Obligations" as described in the Prepetition LP Credit Agreement, the "Prepetition

LP Obligations" and, together with the Prepetition Inc. Obligations, the "Prepetition

Obligations").

---

[4]        Wilmington Trust FSB serves as collateral trustee (in such capacity, the "Prepetition LP Collateral
Trustee") pursuant to that certain Collateral Trust Agreement, dated as of October 1, 2010 (as amended,
supplemented, amended and restated or otherwise modified from time to time, the "LP Collateral Trust
Agreement"), between LightSquared LP, Wilmington Savings Fund Society, FSB, as successor
administrative agent to UBS AG, Stamford Branch, and Wilmington Trust FSB.

[5]        The Prepetition LP Agent, together with the Prepetition Inc. Agent, are the "Prepetition Agents" and,
together with the Prepetition Lenders, the "Prepetition Secured Parties."

(c)    <u>Prepetition LP Collateral</u>. To secure the Prepetition LP Obligations, the LP

Obligors granted to the Prepetition LP Agent for the benefit of the Prepetition LP Lenders first

priority security interests in and liens (the "<u>Prepetition LP Liens</u>" and, together with the

Prepetition Inc. Liens, the "<u>Prepetition Liens</u>") on (i) substantially all of the assets of

LightSquared LP and the Prepetition LP Subsidiary Guarantors, (ii) the equity interests of

LightSquared LP and the Prepetition LP Parent Guarantors (except LightSquared Inc.),

(iii) certain equity interests owned by the Pledgors (as defined in the applicable Prepetition LP

Loan Document), (iv) the Intercompany Notes (as defined in the Prepetition LP Loan

Documents), and (v) the rights of LightSquared Inc. under and arising out of that certain

Amended and Restated Cooperation Agreement, dated as of August 6, 2010 (as amended,

supplemented, amended and restated or otherwise modified from time to time, the "<u>Inmarsat</u>

<u>Cooperation Agreement</u>"), by and among LightSquared LP, SkyTerra (Canada) Inc.,

LightSquared Inc., and Inmarsat Global Limited (collectively, the "<u>Prepetition LP Collateral</u>"

and, together with the Prepetition Inc. Collateral, the "<u>Prepetition Collateral</u>").  For the

avoidance of doubt, the Prepetition LP Collateral includes any proceeds, substitutions or

replacements of any of the foregoing (unless such proceeds, substitutions or replacements would

constitute Excluded Property (as defined in Prepetition LP Credit Documents)).[6]

---

[6]    The Prepetition LP Collateral does not include the following: (a) any permit or license issued by a
Governmental Authority (as defined in the Prepetition LP Credit Agreement) or other agreement to the
extent and for so long as the terms thereof validly prohibit the creation by the pledgor thereof of a security
interest in such permit, license, or other agreement; (b) property subject to any Purchase Money Obligation,
Vendor Financing Indebtedness, or Capital Lease Obligations (in each case, as such term is defined in the
Prepetition LP Credit Agreement) if the contract or other agreement in which such lien is granted validly
prohibits the creation of any other lien on such property; (c) the SkyTerra-2 satellite, while title remains
with Boeing Satellite Systems, Inc. ("<u>BSSI</u>"), and those ground segment assets related to the SkyTerra-2
satellite, while title remains with BSSI; (d) any intent-to-use trademark application to the extent and for so
long as a security interest therein would result in the loss by the pledgor thereof of any material rights
therein; (e) certain deposit and securities accounts securing currency hedging or credit card vendor
programs or letters of credit provided to vendors in the ordinary course of business; (f) equity interests in
(i) excess of 66% in non-U. S. subsidiaries (other than the Canadian Subsidiaries (as defined in the
Prepetition LP Credit Agreement)) held by a US subsidiary, (ii) LightSquared Network LLC, and (iii) any

G.    Findings Regarding the Use of Prepetition Collateral, Including Cash Collateral.

1)    Need for Use of Prepetition Collateral, Including Cash Collateral.  The Debtors' use of Prepetition Collateral, including Cash Collateral of the Prepetition LP Lenders, is critical to enable the Debtors to continue operations and to administer and preserve the value of their estates until the Plan is consummated.  The ability of the Debtors to engage in ongoing discussions with the Federal Communications Commission ("FCC") regarding the deployment of the Debtors' network, seek the governmental approvals required to consummate the Plan, to maintain business relationships with their vendors, suppliers and customers, including public safety agencies, to pay their employees, and to otherwise finance their operations requires the use of Prepetition Collateral, including Cash Collateral of the Prepetition Secured Parties, the absence of which would result in immediate and irreparable loss or damage to the Debtors, their estates, and their stakeholders.  The Debtors do not have sufficient available sources of unencumbered cash to operate their businesses or maintain their properties in the ordinary course of business without the authorized use of the Prepetition Collateral, including Cash Collateral.

2)    Use of Cash Collateral.  The Debtors have agreed to use the Prepetition LP Lenders' Cash Collateral in a manner consistent with the expenditure line items (which, for the avoidance of doubt, do not include restructuring professional fees and amounts paid to Prepetition Agents) in the budget (the "Budget," which is attached hereto as Schedule 1), for (a) working capital and other general corporate purposes, (b) permitted payment of costs of administration of the Chapter 11 Cases, (c) payments required to be made pursuant to the Plan or the Confirmation Order, (d) payments required to be made pursuant to the KEIP Order (as

---

joint venture or similar entity to the extent and for so long as the terms of such investment restrict such security interest; and (g) any consumer goods subject to the Canadian Security Agreement (as defined in the Prepetition LP Credit Agreement).  For the avoidance of doubt, the Prepetition LP Collateral includes any proceeds, substitutions, or replacements of any of the foregoing (unless such proceeds, substitutions, or replacements would constitute Excluded Property (as defined in Prepetition LP Credit Documents)).

defined in the Confirmation Order) or the Commitment Letters Order, (e) payments required to

be made pursuant to the Eighth Replacement DIP Order, and (f) payment of such prepetition

expenses as approved by this Court.[7]  The Debtors may use the Prepetition LP Lenders' Cash

Collateral in excess of the amount set forth in the Budget for any particular expenditure line item

so long as the percentage deviation for all operating expenditure line items during any two-

month period[8] shall not exceed fifteen percent (15%) (the "Permitted Variance"), in the

aggregate, of the amount set forth in the Budget for all operating expenditure line items for such

two-month period (or such shorter period commencing on the date of entry of this Order);

provided, that (i) no payments (e.g., bonuses, severance payments, or critical vendor payments)

which require the Court's approval or as otherwise contemplated by the Plan or Confirmation

Order shall be included in the Permitted Variance calculus in determining compliance with the

Budget until such payments are approved, and (ii) restructuring professional fees and amounts

paid to Prepetition Agents shall be excluded from the Permitted Variance calculus (all other

professional fees shall be included in determining compliance with the Budget).

Notwithstanding anything to the contrary in this Order, capital expenditure line items totalling

$40 million may be used on an aggregate basis at any time until the earlier of the Effective Date

and December 30, 2015; provided that, notwithstanding anything to the contrary in this Order,

failure to comply with the Budget shall not constitute an LP Termination Event or an Inc.

Withdrawal Event.

      H.    New Investor Consent to Eighth Replacement DIP Facility.  On March 17, 2015,

the New Investors provided their written consent for the incurrence of the Tranche B Loans in

---

[7]     Notwithstanding such authorization, all rights of all parties in interest to seek to allocate overhead among the Debtors' estates shall be fully preserved.

[8]     Or such shorter period commencing on the date of entry of this Order.

accordance with the Eighth Replacement DIP Order, subject to certain modifications to the

Eighth Replacement DIP Order (including, among other things, an intercompany financing

arrangement).  On April 1, 2015, LightSquared filed that certain *Notice of Presentment of Order*

*Amending Final Order (A) Authorizing DIP Obligors To Obtain Eighth Replacement*

*Superpriority Senior Secured Priming Postpetition Financing, (B) Granting Superpriority Liens*

*And Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection,*

*And (D) Modifying Automatic Stay* [Docket No. 2292], by which LightSquared submitted a

proposed amendment to the Eighth Replacement DIP Order (the "DIP Amendment Order").

Subject to the entry of the DIP Amendment Order, the New Investors consent to the incurrence of

the Tranche B Loans.

        I.      Adequate Protection.  As a result of the use of the Prepetition Collateral, including

Cash Collateral, authorized herein, the Prepetition Secured Parties are entitled to receive

adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any

diminution in the value ("Diminution in Value") of their respective interests in the Prepetition

Collateral, including Cash Collateral, resulting from the Debtors' use, sale, or lease of the

Prepetition Collateral during the Debtors' Chapter 11 Cases and as a result of the imposition of

the automatic stay.   All Prepetition Secured Parties have consented to the Debtors' continued use

of the Prepetition Collateral, including Cash Collateral, on the terms set forth in this Order.

        J.      Bankruptcy Code Sections 506(c) and 552(b).  In light of (1) the Prepetition Inc.

Agent's agreement to subordinate and the absence of an objection by the Prepetition Inc. Lenders

to the subordination of their liens and the Inc. Section 507(b) Claim (as defined herein) to the

Inc. Carve-Out (as defined herein) and (2) the agreement of certain holders of the Prepetition LP

Obligations which formed an Ad Hoc Working Group of Prepetition LP Secured Parties (the "Ad

Hoc LP Secured Group") and the Prepetition LP Agent to subordinate the Prepetition LP Agent's

and the Prepetition LP Lenders' liens and the LP Section 507(b) Claim (as defined herein) to the

LP Carve-Out (as defined herein), the Prepetition Secured Parties are entitled to a waiver of the

provisions of Bankruptcy Code sections 506(c) and 552(b), to the extent set forth below.

K.      Good Cause; Immediate Entry.  The relief requested in the Motion is necessary,

essential, and appropriate, and is in the best interests of, and will benefit, the Debtors, their

estates, their creditors, and their equity holders, as its implementation will, *inter alia*, provide the

Debtors with the necessary liquidity to (1) minimize the disruption to the Debtors' businesses

and ongoing operations, (2) preserve and maximize the value of the Debtors' estates for the

benefit of all the Debtors' creditors and equity holders, (3) avoid immediate and irreparable harm

to the Debtors, their estates, their creditors and equity holders, their businesses, their employees,

and their assets, and (4) make payments required to be made pursuant to the Plan, the

Confirmation Order, the KEIP Order, or the Commitment Letters Order, in each case to ensure

consummation of the Plan.

L.      Notice.  Good and sufficient notice of the Order has been provided by the Debtors

to (1) the U.S. Trustee, (2) the entities listed on the Consolidated List of Creditors Holding the 20

Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), (3) counsel to the Special

Committee, (4) counsel to the Prepetition Agents, (5) counsel to the Ad Hoc LP Secured Group,

(6) counsel to SP Special Opportunities, LLC, (7) counsel to the Plan Support Parties (as defined

in the Plan), (8) counsel to the Existing DIP Agent and Existing DIP Lenders, (i) the Internal

Revenue Service, (9) the United States Attorney for the Southern District of New York, (k) the

Federal Communications Commission, (10) Industry Canada, and (11) all parties who have filed

a notice of appearance in the Chapter 11 Cases (collectively, the "Notice Parties").  The Debtors

have made reasonable efforts to afford the best notice possible under the circumstances, and such

notice is good and sufficient to permit the relief set forth in this Order.

Based upon the foregoing findings and conclusions, the Motion and record before the

Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Relief Granted.  This Order is granted to the extent set forth herein and the

use of Prepetition Collateral, including Cash Collateral, of the Prepetition Secured Parties, is

authorized, subject to the terms and conditions and to the full reservations of rights set forth in

this Order.[9]

2.      Objections Overruled.  Any objection to this Order, to the extent not

withdrawn or resolved, is hereby overruled.

**Authorization To Use Prepetition Collateral, Including Cash Collateral**

3.      Use of Prepetition Collateral, Including Cash Collateral.  Subject to the

terms and conditions of this Order, and in accordance with the Budget (subject to the Permitted

Variance), the Debtors are authorized to use the Prepetition Collateral, including Cash Collateral,

until the occurrence of an LP Termination Event (as defined herein) or as otherwise ordered by

the Court (the "Termination Date").  Nothing in this Order shall authorize the disposition of any

---

[9]    For the avoidance of doubt, the *Final Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, (A) Authorizing Inc. Obligors To Obtain Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic Stay* [Docket No. 224] (as amended, supplemented, restated, or otherwise modified) governs the (a) Inc. Obligors' use of Cash Collateral of the Prepetition Inc. Lenders and (b) any and all forms of adequate protection provided to the Prepetition Inc. Agent and/or the Prepetition Inc. Lenders, including the Adequate Protection Liens, Section 507(b) Claims, and Adequate Protection Payments unless and until (i) the occurrence of the Inc. Facilities Claims Purchase Closing Date, (ii) the indefeasible repayment in full, in cash of all DIP Inc. Claims that are not JPM Acquired DIP Inc. Claims either (A) from the proceeds of the Third Party New Inc. DIP Facility or (B) as contemplated by the New Investor Commitment Documents, (iii) the consummation of the transactions contemplated by the JPM Inc. Facilities Claims Purchase Agreement, and (iv) the payment of all accrued and unpaid DIP Inc. Fee Claims and Prepetition Inc. Fee Claims, including, if necessary, estimates of such DIP Inc. Fee Claims and Prepetition Inc. Fee Claims through and including the Inc. Facilities Claims Purchase Closing Date.

assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use

of any Prepetition Collateral, including Cash Collateral, or proceeds resulting therefrom, except

as permitted in this Order and in accordance with the Budget.

4.    Cash Management System.  The Debtors shall maintain their cash

management system as approved by the Court pursuant to the *Final Order (A) Authorizing*

*Debtors to (I) Continue Using Existing Cash Management Systems, Bank Accounts and Business*

*Forms and (II) Continue Intercompany Transactions, (B) Providing Postpetition Intercompany*

*Claims Administrative Expense Priority, (C) Authorizing Debtors' Banks to Honor All Related*

*Payment Requests, and (D) Waiving Investment Guidelines of Section 345(b) of Bankruptcy*

*Code* [Docket No. 115] (the "Cash Management Order").  The Ad Hoc LP Secured Group

hereby consents to the repayment, to LightSquared Inc., of any costs and expenses paid on behalf

of the LP Obligors' estates since the Petition Date.  To the extent that the Debtors are required to

give notice to any party as set forth in the Cash Management Order, such notice shall also be

given to Willkie Farr & Gallagher LLP and White & Case LLP (whom shall reasonably

promptly forward such information to each of the LP DIP Lenders (with each LP DIP Lender

being delivered such information at substantially the same time as all other LP DIP Lenders)).

5.    Adequate Protection Liens.

(a)    Inc. Adequate Protection Liens.  Pursuant to sections 361, 362, and 363(e)

of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Inc. Agent and

the Prepetition Inc. Lenders in the Prepetition Inc. Collateral against any Diminution in Value of

their interests in the Prepetition Inc. Collateral, the Debtors hereby grant to the Prepetition Inc.

Agent, for the benefit of itself and the Prepetition Inc. Lenders, effective and perfected as of the

Petition Date and without the necessity of the execution by the Debtors of security agreements,

pledge agreements, mortgages, financing statements, or other agreements, valid, binding,

enforceable, and perfected postpetition security interests in and liens on the Prepetition Inc.

Collateral (the "Inc. Adequate Protection Liens").  For avoidance of doubt, the Prepetition Inc.

Agent and the Prepetition Inc. Lenders shall not have an Inc. Adequate Protection Lien on (i) any

claims or causes of action under chapter 5 of the Bankruptcy Code or proceeds therefrom, (ii) the

assets of the Prepetition LP Subsidiary Guarantors, or (iii) the unencumbered assets of

LightSquared Inc.

        (b)      LP Adequate Protection Liens.  Pursuant to sections 361, 362, and 363(e)

of the Bankruptcy Code, as adequate protection of the interests of the Prepetition LP Agent and

the Prepetition LP Lenders in the Prepetition LP Collateral against any Diminution in Value of

their interests in the Prepetition LP Collateral, including for use of Cash Collateral, the Debtors

hereby grant to the Prepetition LP Agent, for the benefit of itself and the Prepetition LP Lenders,

effective and perfected as of the Petition Date and without the necessity of the execution by the

Debtors of security agreements, pledge agreements, mortgages, financing statements, or other

agreements, valid, binding, enforceable, and perfected postpetition security interest in and liens

on the Prepetition LP Collateral (the "LP Adequate Protection Liens" and, together with the Inc.

Adequate Protection Liens, the "Adequate Protection Liens").  For avoidance of doubt, the

Prepetition LP Lenders shall not have an LP Adequate Protection Lien on (i) any claims or

causes of action under chapter 5 of the Bankruptcy Code or proceeds therefrom, (ii) the assets of

the Prepetition Inc. Subsidiary Guarantors, (iii) the unencumbered assets of LightSquared Inc., or

(iv) the SkyTerra-2 satellite while title remains with BSSI or those ground segment assets related to the SkyTerra-2 satellite while title remains with BSSI.[10]

(c)    <u>Priority of Adequate Protection Liens</u>.  The Inc. Adequate Protection Liens shall be junior only to the Inc. Permitted Liens,[11] the Inc. Carve-Out, and the liens securing each of the LP Intercompany Claims and the Eighth Replacement DIP Obligations.  The LP Adequate Protection Liens shall be junior only to the LP Permitted Liens,[12] the LP Carve-Out, and the liens securing each of the Inc. Intercompany Claims and the Eighth Replacement DIP Obligations.

(d)    The Adequate Protection Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon conversion of any of the Chapter 11 Cases (each, a "<u>Successor Case</u>" and collectively, the "<u>Successor Cases</u>"), or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate

---

[10]    For the avoidance of doubt, the Prepetition LP Collateral includes all General Intangibles (as defined in the Prepetition LP Credit Documents) to include, among other things, contract rights relating to that certain Amendment 4 to the Amended and Restated Contract between LightSquared and BSSI, dated November 10, 2010 (as amended, modified, supplemented, or amended and restated through the date hereof).

[11]    The Inc. Permitted Liens are liens otherwise permitted by the Prepetition Inc. Credit Documents, to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Inc. Liens as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such Inc.  Permitted Liens are valid, senior, perfected and non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the Prepetition Inc. Agent, and the Prepetition Inc. Lenders, to challenge the validity, priority, perfection or extent of any such Inc. Permitted Lien and/or security interest.

[12]    The LP Permitted Liens are liens otherwise permitted by the Prepetition LP Credit Documents, to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition LP Liens as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such LP Permitted Liens are valid, senior, perfected and non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the Prepetition LP Agent, and the Prepetition LP Lenders, to challenge the validity, priority, perfection or extent of any such LP Permitted Lien and/or security interest.

Protection Liens.

           6.      <u>Section 507(b) Claims</u>.

           (a)      <u>Inc. Section 507(b) Claim</u>.  As further adequate protection of the interests of the Prepetition Inc. Agent and the Prepetition Inc. Lenders (collectively, the "<u>Prepetition Inc. Secured Parties</u>") in the Prepetition Inc. Collateral against any Diminution in Value of such interests in the Prepetition Inc. Collateral, the Prepetition Inc. Agent and the Prepetition Inc. Lenders are each hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Inc. Obligors' Chapter 11 Cases and Successor Cases (the "<u>Inc. Section 507(b) Claim</u>"); <u>provided</u>, that the Inc. Section 507(b) Claim against LightSquared Inc. shall be *pari passu* with the LP Section 507(b) Claim against LightSquared Inc.

           (b)      <u>LP Section 507(b) Claim</u>.  As further adequate protection of the interests of the Prepetition LP Agent and the Prepetition LP Lenders in the Prepetition LP Collateral against any Diminution in Value of such interests in the Prepetition LP Collateral, the Prepetition LP Agent and the Prepetition LP Lenders are each hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the LP Obligors' Chapter 11 Cases and Successor Cases (the "<u>LP Section 507(b) Claim</u>" and, together with the Inc. Section 507(b) Claim, the "<u>Section 507(b) Claims</u>"); <u>provided</u>, that the LP Section 507(b) Claim against LightSquared Inc. shall be *pari passu* with the Inc. Section 507(b) Claim against LightSquared Inc.

           (c)      <u>Priority of the Section 507(b) Claims</u>.  Except as set forth herein, the Section 507(b) Claims shall have priority over all administrative expense claims and unsecured

claims against the Inc. Obligors and the LP Obligors, as applicable, or their estates, now existing

or hereafter arising, of any kind or nature whatsoever, including, without limitation,

administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code

sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the

extent permitted by law), 1113, and 1114; provided, however, that each of the Section 507(b)

Claims shall be junior to the respective Carve-Outs, the Inc. Intercompany Claims and the LP

Intercompany Claims, as applicable, and the Eighth Replacement DIP Obligations.

7.      Adequate Protection Payments.  As used in this Order, "Adequate

Protection Payments" means the payments as described in this paragraph 7.

(a)      Inc. Agent Professional Fees.  As further adequate protection, the Debtors are

authorized and directed to provide adequate protection in the form of payment of all reasonable,

actual, and documented fees and expenses incurred or accrued by the Prepetition Inc. Agent

under and pursuant to the Prepetition Inc. Agreement, including, without limitation, the

reasonable, actual, and documented fees and disbursements of counsel to and financial advisor to

the Prepetition Inc. Agent, whether incurred or accrued prior to or after the Petition Date without

limiting the rights of parties in interest pursuant to section 506(b) of the Bankruptcy Code.  None

of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval

by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees

and expenses), and no recipient of any such payment shall be required to file any interim or final

fee application with respect thereto.  Subject to any bona fide dispute as to the reasonableness of

such fees and expenses, the Debtors shall pay the reasonable, actual, and documented fees and

expenses provided for in this section promptly (but no later than ten (10) business days) after

invoices for such fees and expenses shall have been submitted to the Debtors, and the Debtors

shall promptly provide copies of such invoices to the U.S. Trustee.  Any and all payments or

proceeds remitted to or for the benefit of the Prepetition Inc. Agent pursuant to the provisions of

this Order or any subsequent order of this Court shall be received free and clear of any claim,

charge, assessment, or other liability.

(b)     <u>LP Adequate Protection Payments</u>.  As further adequate protection:

(i)     The LP Obligors paid to the Prepetition LP Agent for the benefit of the

Prepetition LP Lenders on the first Business Day of each month, from July 1, 2012 to June 1,

2014, an amount equal to $6,250,000 (the "<u>Initial LP Adequate Protection Payments</u>"), inclusive

of interest and payment of all reasonable, actual, and documented fees and expenses incurred or

accrued by the Prepetition LP Agent and the Ad Hoc LP Secured Group, including, without

limitation, the reasonable, actual, and documented fees and disbursements (collectively, the "<u>LP

Professional Fees</u>") of White & Case LLP and The Blackstone Group L.P. ("<u>Blackstone</u>"),

whether incurred or accrued prior to or after the Petition Date.  Such amounts have been applied

first, to the non-professional fees and expenses of the Prepetition LP Agent, second, to the LP

Professional Fees, and third to interest on the Prepetition LP Obligations, and the Ad Hoc LP

Secured Group has advised the LP Obligors, on a monthly basis, of how such amount was to be

allocated among the non-professional fees and expenses of the Prepetition LP Agent, the LP

Professional Fees, and interest on the Prepetition LP Obligations.  The LP Obligors were

temporarily not required to pay the Initial LP Adequate Protection Payments to the Prepetition

LP Agent, for the benefit of the Prepetition LP Lenders, for the months of July 2014, August

2014, September 2014, October 2014, November 2014, December 2014 and January 2015 (the

"<u>Deferred LP Adequate Protection Payments</u>"); <u>provided</u>, that the LP Obligors paid the

following for the benefit of the Prepetition LP Lenders:  (A) LP Professional Fees in such

months; and (B) all outstanding reasonable, actual, and documented fees and expenses to date of (1) Bennett Jones LLP, as Canadian counsel to the Ad Hoc LP Secured Group, (2) McDermott Will & Emery LLP, as counsel to the Prepetition LP Agent, and (3) Pillsbury Winthrop Shaw Pittman LLP, as counsel to the Prepetition LP Collateral Trustee, in each case on the first Business Day of each such month; provided, further, that pursuant to the *Eleventh Order Amending Amended Agreed Final Order (A) Authorizing Debtors to Use Cash Collateral, (B) Granting Adequate Protection to Prepetition Secured Parties, and Modifying Automatic Stay* [Docket No. 2052], the LP Obligors paid (Y) to the Prepetition LP Agent for the benefit of the Prepetition LP Lenders on the first Business Day of the months of February 2015, March 2015, and April 2015, an amount in cash equal to $6,250,000, and (Z) on the first Business Day of each month, from February 1, 2015 to April 1, 2015, all reasonable, actual, and documented fees and expenses incurred by the Prepetition LP Agent, including the reasonable, actual, and documented fees and disbursements of McDermott Will & Emery LLP, as counsel to the Prepetition LP Agent, and Pillsbury Winthrop Shaw Pittman LLP, as counsel to the Prepetition LP Collateral Trustee.

(ii)       The LP Obligors shall pay, (A) on April 30, 2015, to the Prepetition LP Agent for the benefit of the Prepetition LP Lenders, the Deferred LP Adequate Protection Payments in full in cash; provided, however, that an affected Prepetition LP Lender may agree to different treatment in lieu of cash for its pro rata share of the Deferred LP Adequate Protection Payments, and (B) on the first Business Day of each month from May 2015 through the earlier of (1) December 30, 2015 and (2) the Effective Date, all reasonable, actual, and documented fees and expenses incurred by the Prepetition LP Agent, including the reasonable, actual, and documented fees and disbursements of McDermott Will & Emery LLP, as counsel to the

19

Prepetition LP Agent, and Pillsbury Winthrop Shaw Pittman LLP, as counsel to the Prepetition

LP Collateral Trustee; <u>provided</u>, that the LP Obligors shall, on the earlier of (1) December 30,

2015 and (2) the Effective Date, pay any such fees and expenses that remain outstanding as of

such date.

(iii)    Nothing in this Order shall prejudice any rights of the Prepetition LP

Lenders to accrue interest (including at the default rate), fees, expenses, or charges to the fullest

extent permitted under section 506(b) of the Bankruptcy Code.  All parties reserve all rights to

assert that any such payments of interest, LP Professional Fees, or any other fees made by the LP

Obligors constitute and may be reallocated or recharacterized as principal repayments of the

Prepetition LP Obligations.

(c)    <u>Financial and Other Reporting</u>.

(i)    On Wednesday or (in the event such Wednesday is not a business day, the

first business day thereafter) of each week, the Debtors will provide the Prepetition LP Agent,

Blackstone, and Houlihan Lokey (as financial advisor to the Prepetition Inc. Agent) with cash

balances as of the last day of the prior week.  On the tenth (10th) day of each month or the first

business day thereafter, the Debtors will provide the Prepetition LP Agent, Blackstone, and

Houlihan Lokey with (A) a reconciliation of revenues generated and expenditures made during

the prior month and cumulatively during the Chapter 11 Cases, together with a comparison of

such amounts to the amounts projected in the Budget and (B) an update of the Budget through

December 30, 2015 (for forecasting and informational purposes only).

(ii)    The Debtors shall provide certain professionals (the "<u>Agreed</u>

<u>Professionals</u>") from White & Case LLP and Blackstone (each of whom shall be previously

identified by name to, and agreed to by, the Debtors and each of whom shall individually sign

mutually acceptable confidentiality agreements) with periodic updates and reasonably detailed information regarding any significant meetings, discussions, or proposals with respect to the material assets of the Debtors, including, without limitation, meetings with the FCC and/or federal agencies, in all cases regarding its ATC authorization for L-band spectrum or alternative spectrum for its terrestrial network, and matters reasonably related thereto, as well as reasonable advance notice, to the extent reasonably practicable, of any significant meetings, discussions, or proposals with respect to the material assets of the Debtors, including, without limitation, meetings with the FCC and/or federal agencies, in all cases regarding its ATC authorization for L-band spectrum or alternative spectrum for its terrestrial network, and matters reasonably related thereto, and in any case reasonably promptly report the substance thereof to the Agreed Professionals.  The Debtors, upon the reasonable request of the Agreed Professionals, shall make their professionals and advisors reasonably available to such Agreed Professionals generally, and reasonably in advance of all such meetings to the extent reasonably practicable.  All parties that enter into a confidentiality agreement shall be bound by, and comply with, the terms thereof.  For the avoidance of doubt, the intention of this provision is to provide the Ad Hoc LP Secured Group with reasonable information and, to the extent reasonably practicable, reasonable time to consider the impact of all FCC and related matters on its interests, without unreasonable interference with the Debtors' implementation and conduct of their business plan.  Such Agreed Professionals shall not disclose to any Prepetition LP Lender or any other person, without the consent of the Debtors or the approval of the Court, any information provided by the Debtors in accordance with this paragraph.  This provision is an integral element and basis of the Ad Hoc LP Secured Group's consent to the use of its Prepetition Collateral.

**Provisions Common to Use of Prepetition Collateral Authorizations**

        8.      Perfection of Adequate Protection Liens.

        (a)      The Prepetition Agents are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the Prepetition Agents, on behalf of the Prepetition Inc. Lenders and the Prepetition LP Lenders, as applicable, shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the Petition Date.

        (b)      A certified copy of this Order may, in the discretion of the Prepetition Agents, respectively, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

        (c)      The Debtors are authorized and directed to execute and deliver to the Prepetition Agents all such agreements, financing statements, instruments, and other documents as such Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to do and perform all acts to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder.

9.     Carve-Out. As used in this Order, "Carve-Outs" shall mean the Inc. Carve-Out and the LP Carve-Out.

(a)     Inc. Carve-Out. As used in this Order, the "Inc. Carve-Out" shall mean, upon the occurrence of the Termination Date, the following expenses:  (i) all statutory fees payable to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) for the Inc. Obligors; (ii) all reasonable fees and expenses incurred by a trustee for the Inc. Obligors under section 726(b) of the Bankruptcy Code not to exceed $50,000; and (iii) the allowed and unpaid professional fees, expenses, and disbursements allocable to the Inc. Obligors incurred on or after the Termination Date by the Debtors for any professionals retained by final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated) by the Debtors under sections 327, 328, or 1103(a) of the Bankruptcy Code (the "Chapter 11 Case Professionals") in an aggregate amount not to exceed $1.5 million plus such allowed fees, expenses, and disbursements allocable to the Inc. Obligors incurred prior to the Termination Date, but which remain unpaid as of the Termination Date, whether approved by the Court before or after the Termination Date  (collectively, the "Allowed Inc. Professional Fees").

(b)     LP Carve-Out.  As used in this Order, the "LP Carve-Out" shall mean, upon the occurrence of the Termination Date, the following expenses:  (i) all statutory fees payable to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. §1930(a) for the LP Obligors; (ii) with respect to the information officer (the "Information Officer") appointed by

23

the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the
"Canadian Court") in connection with the proceedings commenced pursuant to the Companies'
Creditors Arrangement Act (Canada) R.S.C. 1985, c. C-36, as amended, in the Canadian Court
(the "Canadian Proceedings"), all fees and expenses required to be paid to the Information
Officer and its counsel in connection with the Canadian Proceedings, which fees and expenses
may be secured by a charging lien granted by the Canadian Court over the Debtors' assets in
Canada, in the maximum amount of CDN $200,000; (iii) all reasonable fees and expenses
incurred by a trustee for the LP Obligors under section 726(b) of the Bankruptcy Code not to
exceed $50,000; and (iv) the allowed and unpaid professional fees, expenses, and disbursements
allocable to the LP Obligors incurred on or after the Termination Date by the Debtors for any
Chapter 11 Case Professionals (which are restructuring professionals) in an aggregate amount
not to exceed $4 million, plus such allowed fees, expenses, and disbursements allocable to the
LP Obligors incurred prior to the Termination Date, but which remain unpaid as of the
Termination Date, whether approved by the Court before or after the Termination Date (the
"Allowed LP Professional Fees" and, together with the Allowed Inc. Professional Fees, the
"Allowed Professional Fees").

        (c)      Payment of Allowed Professional Fees Prior to the Termination Date.
Prior to the occurrence of the Termination Date, the Debtors shall be permitted to pay Allowed
Professional Fees.  The amounts paid shall not reduce the Carve-Outs.

        10.      Payment of Compensation.  Nothing in this Order shall be construed as
consent to the allowance of any professional fees or expenses of any Chapter 11 Case
Professionals or shall affect the rights of the Prepetition Agents and/or the Prepetition Lenders to
object to the allowance and payment of such fees and expenses.

24

           11.     <u>Restrictions on Investigations and Causes of Action</u>.

          (a)     The Inc. Adequate Protection Liens, the Inc. Section 507(b) Claim, and the Prepetition Inc. Liens shall be senior to, and no Prepetition Inc. Collateral may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any Successor Cases) or any other party in connection with the assertion of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, investigation, objection, defense, or other contested matter against the Prepetition Inc. Agent or the Prepetition Inc. Lenders in connection with invalidating, setting aside, avoiding, subordinating, recharacterizing, objecting to, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition Inc. Credit Facility, the Prepetition Inc. Obligations, the Prepetition Inc. Liens, or the Prepetition Inc. Collateral.

          (b)     The LP Adequate Protection Liens, the LP Section 507(b) Claim, and the Prepetition LP Liens shall be senior to, and no Prepetition LP Collateral (including any Cash Collateral of the Prepetition LP Lenders or otherwise) may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any Successor Cases) or any other party in connection with the assertion of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, investigation, objection, defense, or other contested matter against the Prepetition LP Agent or the Prepetition LP Lenders in connection with invalidating, setting aside, avoiding, subordinating, recharacterizing, objecting to, or challenging, in whole or in part, any claims or liens arising under or with respect to the Prepetition LP Credit Facility, the Prepetition LP Obligations, the Prepetition LP Liens, or the Prepetition LP Collateral.

(c)     Nothing in this Order vests or confers on any other party standing or

authority to bring, assert, commence, continue, prosecute, or litigate any cause of action

belonging to the Debtors or their estates, including, without limitation, the Claims and Defenses

with respect to the Prepetition Inc. Facility, the Prepetition Inc. Liens, or the Prepetition Inc.

Obligations.

12.     <u>Release</u>.  The Debtors, on behalf of themselves and their estates (including

any successor trustee or other estate representative in the Chapter 11 Cases or Successor Cases)

and any party acting by, through, or under the Debtors or their estates, forever and irrevocably

(a) release, discharge, waive, and acquit (i) the Prepetition Agents and the Prepetition Lenders

(other than SPSO), (ii) each of their respective participants and each of their respective affiliates,

and (iii) each of their respective former, current or future officers, employees, directors, agents,

representatives, owners, members, partners, financial advisors, legal advisors, shareholders,

managers, consultants, accountants, attorneys, affiliates, and predecessors in interest

(collectively, the "<u>Released Parties</u>"), of and from any and all claims, demands, liabilities,

responsibilities, disputes, remedies, causes of action, indebtedness, and obligations existing as of

the Petition Date, including, without limitation, any so-called "lender liability" or equitable

subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the

Prepetition Liens, or the Prepetition Facilities, as applicable, any and all claims and causes of

action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority,

perfection, or avoidability of the liens or secured claims of (i) the Prepetition Inc. Agent and the

Prepetition Inc. Lenders and/or (ii) the Prepetition LP Agent and the Prepetition LP Lenders

(other than SPSO) and (b) waive any and all defenses (including, without limitation, offsets and

26

counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and

non-avoidability of the applicable Prepetition Obligations and the applicable Prepetition Liens.

13.    <u>Termination of Use the Prepetition LP Lenders' Prepetition Collateral,</u>
<u>Including Cash Collateral</u>.  The authorization of the Debtors to use the Prepetition LP Lenders'

Prepetition Collateral, including Cash Collateral, under this Order will terminate upon five (5)

days' prior written notice by the Prepetition LP Agent to the Debtors of the occurrence of any of

the following (except for the event in subparagraph (n) below, upon which event a termination

will occur automatically) (each of the following, an "<u>LP Termination Event</u>"):

(a)    This Court enters an order dismissing any of the Chapter 11 Cases of the

Debtors with material assets or converting any such Chapter 11 Cases to cases under chapter 7 of

the Bankruptcy Code;

(b)    This Court enters an order appointing a chapter 11 trustee in any of the

Chapter 11 Cases of the Debtors with material assets that is not stayed following entry;

(c)    This Court enters an order staying, reversing, or vacating, in a manner

materially adverse to the Prepetition LP Agent or the Prepetition LP Lenders and without prior

consent of the Prepetition LP Agent or the Prepetition LP Lenders, this Order;

(d)    A chapter 11 plan other than the Plan is confirmed and becomes effective

for the LP Obligors;

(e)    An order of this Court shall be entered appointing an examiner with

enlarged powers in any of the Chapter 11 Cases of the LP Obligors, or any LP Obligor shall file

a motion or other pleading seeking the dismissal of its Chapter 11 Case under section 1112 of the

Bankruptcy Code or otherwise;

(f)        Except as expressly allowed in this Order or the *Final Order (A)*

*Authorizing DIP Obligors To Obtain Eighth Replacement Superpriority Senior Secured Priming*

*Postpetition Financing, (B) Granting Superpriority Liens and Providing Superpriority*

*Administrative Expense Status, (C) Granting Adequate Protection, and (D) Modifying Automatic*

*Stay* (as may be amended or modified from time to time, the "Eighth Replacement DIP Order"),

any order of this Court shall be entered granting any lien on, or security interest in, any

Prepetition LP Collateral in favor of any party other than the Prepetition LP Agent or Prepetition

LP Collateral Trustee, as the case may be, on behalf of the Prepetition LP Secured Parties, that is

senior to, or *pari passu* with, the Prepetition LP Liens or the LP Adequate Protection Liens or

granting an administrative claim payable by an LP Obligor to any party other than the Prepetition

LP Agent or Prepetition LP Collateral Trustee, as the case may be, on behalf of the Prepetition

LP Secured Parties, that is senior to, or *pari passu* with, the LP Section 507(b) Claim without the

express written consent of the Prepetition LP Agent;

(g)        An order of this Court shall be entered approving any claims for recovery

of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the

preservation or disposition of any Prepetition LP Collateral;

(h)        An order of this Court shall be entered granting relief from the automatic

stay under section 362 of the Bankruptcy Code with respect to all or any material portion of the

property of the LP Obligors' estates except in connection with (i) financing provided to the Inc.

Obligors in connection with the Inc. DIP Order or the New Inc. DIP Order[13] or (ii) financing

---

[13]        The "New Inc. DIP Order" shall mean the *Final Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, (A) Approving Postpetition Financing, (B) Authorizing Use of Cash Collateral, If Any, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection, and (E) Modifying the Automatic Stay* [Docket No. 2277].

provided to the LP DIP Obligors (as defined in the Eighth Replacement DIP Order) in

connection with the Eighth Replacement DIP Order;

(i)    The Debtors shall make any payment (including "adequate protection"

payments) on or in respect of any prepetition indebtedness or prepetition obligations of an LP

Obligor other than (i) on account of the Prepetition LP Obligations under the Prepetition Credit

Documents, (ii) as permitted under this Order, or (iii) as permitted by any order of this Court;

(j)    The Debtors shall seek to, or shall support (in any such case by way of,

inter alia, any motion or other pleading filed with this Court or any other writing to another party

in interest executed by or on behalf of the Debtors) any other person's motion to, disallow or

subordinate in whole or in part any Prepetition LP Secured Party's claim (other than a claim held

by SPSO) in respect of the Prepetition LP Obligations, or to challenge the validity,

enforceability, perfection, or priority of the liens in favor of the Prepetition LP Agent or the

Prepetition LP Lenders (including, without limitation, any Prepetition LP Liens);

(k)    Other than in connection with the Eighth Replacement DIP Motion (as

defined in the Eighth Replacement DIP Order), the Debtors file a motion seeking to obtain any

credit or incur any financing indebtedness that is secured by a lien on, or security interest in, the

Prepetition LP Collateral which is senior to or *pari passu* with the Prepetition LP Liens or the LP

Adequate Protection Liens, or having administrative priority status which is senior to or *pari

passu* with the LP Section 507(b) Claim, other than the proposed 507(b) claims against

LightSquared Inc. pursuant to the Inc. DIP Order and the New Inc. DIP Order.

(l)    Other than the Eighth Replacement DIP Motion, the Debtors shall file any

pleading seeking, or otherwise consenting to, or shall support or acquiesce in any other person's

29

motion as to, any of the matters set forth in paragraphs (a) through (c) above and paragraphs (e) through (g) above;

        (m)      The Debtors shall fail to comply with the terms of this Order in any material respect, it being understood that failure to comply with the Budget shall not constitute an LP Termination Event; or

        (n)      December 30, 2015.

        14.      <u>Withdrawal of Consent To Use Prepetition Inc. Collateral</u>.  The consent of the Prepetition Inc. Agent and the Prepetition Inc. Lenders under this Order to use the Prepetition Inc. Collateral will be withdrawn upon any of the following:

        (a)      This Court enters an order dismissing any of the Chapter 11 Cases of the Debtors with material assets or converting any such Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code;

        (b)      This Court enters an order appointing a chapter 11 trustee in any of the Chapter 11 Cases of the Debtors with material assets that is not stayed following entry;

        (c)      This Court enters an order appointing an examiner with expanded powers in any of the Chapter 11 Cases of the Inc. Obligors;

        (d)      This Court enters an order staying, reversing, or vacating, in a manner materially adverse to the Prepetition Inc. Agent or the Prepetition Inc. Lenders and without prior consent of the Prepetition Inc. Agent or the Prepetition Inc. Lenders, this Order;

        (e)      The Debtors fail to make payments under the One Dot Six Lease when due thereunder without the prior written consent of the Prepetition Inc. Agent;

(f)    This Court enters an order approving the sale of all or substantially all of the Prepetition Inc. Collateral that does not provide for the payment in respect thereof to be remitted to the Prepetition Inc. Agent in respect of the Prepetition Inc. Obligations;

(g)    A chapter 11 plan other than the Plan is confirmed and becomes effective for the Inc. Obligors;

(h)    Except as expressly allowed in this Order, the Inc. DIP Order, the New Inc. DIP Order, or the Eighth Replacement DIP Order, an order of this Court shall be entered granting any lien on, or security interest in, any Prepetition Inc. Collateral in favor of any party other than the Prepetition Inc. Agent, on behalf of the Prepetition Inc. Secured Parties, that is senior to, or *pari passu* with, the Prepetition Inc. Liens or the Inc. Adequate Protection Liens or granting an administrative claim payable by an Inc. Obligor (other than LightSquared Inc.) to any party other than the Prepetition Inc. Agent on behalf of the Prepetition Inc. Secured Parties, that is senior to, or *pari passu* with, the Inc. Section 507(b) Claim without the express written consent of the Prepetition Inc. Agent;

(i)    The Debtors file a motion (other than the Eighth Replacement DIP Motion or a motion filed in connection with the approval of the Inc. DIP Order or the New Inc. DIP Order), seeking to obtain any credit or incur any financing indebtedness that is secured by a lien on, or security interest in, the Prepetition Inc. Collateral which is senior to or *pari passu* with the Prepetition Inc. Liens or the Inc. Adequate Protection Liens, or having administrative priority status which is senior to or *pari passu* with the Inc. Section 507(b) Claim;

(j)    The Debtors file a motion challenging the Prepetition Inc. Agent's or the Prepetition Inc. Lenders' claims or liens; or

31

(k)     December 30, 2015 (each of the foregoing, an "Inc. Withdrawal Event").

Upon the occurrence of an Inc. Withdrawal Event, the Prepetition Inc. Agent and the Prepetition

Inc. Lenders may, upon shortened notice and an emergency hearing, request additional adequate

protection from the Court or such other remedy as the Court may deem just and proper, and the

Debtors and other parties in interest reserve all of their rights to object to such request.

15.     No Third Party Rights.  Except as explicitly provided for herein, this

Order does not create any rights for the benefit of any third party, creditor, equity holder, or any

direct, indirect, or incidental beneficiary.

16.     Limitation on Charging Expenses Against Collateral.

(a)     Except to the extent of the Inc. Carve-Out, no expenses of administration

of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation

in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or

recovered from the Prepetition Inc. Collateral pursuant to section 506(c) of the Bankruptcy Code

or any similar principle of law or in equity, without the prior written consent of Prepetition Inc.

Agent, and no such consent shall be implied from any other action or inaction by the Prepetition

Inc. Agent or the Prepetition Inc. Lenders.

(b)     Except to the extent of the LP Carve-Out, no expenses of administration of

the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in

bankruptcy or other proceedings under the Bankruptcy Code, charged or incurred during the

period which the Debtors are authorized to use Cash Collateral under this Order, shall be charged

against or recovered from the Prepetition LP Collateral pursuant to section 506(c) of the

Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of

Prepetition LP Agent, and no such consent shall be implied from any other action or inaction by
the Prepetition LP Agent or the Prepetition LP Lenders.

17.    <u>Equities of the Case</u>.  Effective upon entry of this Order and in light of the
subordination of their liens to the respective Carve-Outs, the Prepetition Secured Parties have
been entitled to all benefits of Bankruptcy Code section 552(b), and the "equities of the case"
exception under Bankruptcy Code section 552(b) does not apply to such parties with respect to
the proceeds, product, offspring, or profits of any of their Prepetition Collateral.

18.    <u>Credit Bid Rights</u>.  The Prepetition Agents shall have the right to "credit
bid" the Prepetition Inc. Obligations under the Prepetition Inc. Credit Agreement or the
Prepetition LP Obligations under the Prepetition LP Credit Agreement, as applicable, during any
sale of any of the Prepetition Inc. Collateral or Prepetition LP Collateral, as applicable,
including, without limitation, in connection with sales occurring pursuant to Bankruptcy Code
section 363 or included as part of any plan subject to confirmation under Bankruptcy Code
section 1129.

19.    <u>Joint and Several Liability</u>.  Nothing in this Order shall be construed to
constitute a substantive consolidation of any of the Debtors' estates, it being understood,
however, that the Inc. Obligors and the LP Obligors shall be jointly and severally liable for their
respective obligations hereunder.  Notwithstanding the foregoing, the Inc. Obligors shall not be
liable for the LP Obligations and the LP Obligors shall not be liable for the Inc. Obligations;
<u>provided</u>, <u>however</u>, that LightSquared Inc. shall be liable for both the Inc. Obligations and the LP
Obligations consistent with the terms of the Prepetition Facilities and this Order.

20.    <u>Reservation of Rights of Prepetition Secured Parties</u>.  Notwithstanding any
other provision hereof, the grant to and acceptance by the Prepetition Secured Parties of adequate

protection pursuant hereto shall in no way be construed as an acknowledgment by the Prepetition

Secured Parties that they are in fact adequately protected.  Except as expressly provided herein,

nothing contained in this Order (including, without limitation, the authorization to use any

Prepetition Collateral, including Cash Collateral) shall impair or modify any rights, claims, or

defenses available in law or equity to the Prepetition Secured Parties, including the Ad Hoc LP

Secured Group.

        21.    <u>Modification of the Automatic Stay</u>.  The automatic stay imposed under

section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the

terms and provisions of this Order, including, without limitation, to (a) permit the Debtors to

grant the Adequate Protection Liens and the Section 507(b) Claims, (b) permit the Debtors to

perform such acts as the Prepetition Agents may request in their sole discretion to assure the

perfection and priority of the liens granted herein, (c) permit the Debtors to incur all liabilities

and obligations to the Prepetition Secured Parties under this Order, and (d) authorize the Debtors

to pay, and the Prepetition Agents to retain and apply, payments made in accordance with the

terms of this Order.

        22.    <u>No Control</u>.  None of the Prepetition LP Secured Parties are control

persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken

with respect to, in connection with, related to, or arising from the Prepetition LP Loan Facility

and/or any of the Prepetition Loan Documents or this Order.  None of the Prepetition Inc.

Secured Parties (excluding the Prepetition Inc. Lenders that are affiliates of the Debtors) are

control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions

taken with respect to, in connection with, related to, or arising from the Prepetition Inc. Credit

Facility and/or any of the Prepetition Inc. Credit Documents or this Order.

23.    <u>Amendment</u>.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors, the Prepetition LP Agent, the Prepetition Inc. Agent, and the Ad Hoc LP Secured Group, and approved by the Court after notice to parties in interest.

24.    <u>Binding Effect of Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Parties, any court-appointed committee in the Chapter 11 Cases, all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon the dismissal of any Chapter 11 Case or Successor Case.

25.    <u>Survival</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.

26.    *Nunc Pro Tunc* <u>Effect of this Order</u>.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution and entry hereof.

27.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

28.    SPSO's Consent.  SPSO consents to the Debtors' use of Cash Collateral

subject to the terms of this paragraph until the earliest of (a) December 30, 2015, (b) any LP

Termination Event in accordance with paragraph 13 hereof, and (c) five (5) days after

termination of the Plan Support Agreement and/or Effective Date Investments (each, as defined

in the Plan); provided, however, that, notwithstanding anything to the contrary

herein:  (i) nothing in this Order shall be deemed or construed to be an acknowledgment by

SPSO, or a finding by the Court, that SPSO is adequately protected; (ii) nothing contained in this

Order (including, without limitation, the authorization to use any Prepetition Collateral,

including Cash Collateral) shall impair or modify any rights, claims, or defenses available in law

or equity to SPSO in connection with any request for adequate protection; and (iii) the *Limited

Objection of SP Special Opportunities, LLC to LightSquared's Motion for Order (A) Authorizing

Use of Cash Collateral, If Any, Through Plan Effective Date, (B) Establishing that Prepetition

Secured Parties Are Adequately Protected, and (C) Modifying Automatic Stay* [Docket No. 2297]

is not overruled, but hereby is deemed withdrawn without prejudice.  For the avoidance of doubt,

upon (x) the termination of SPSO's consent in accordance with the foregoing sentence, (y) any

LP Termination Event, or (z) any Inc. Withdrawal Event, all parties' rights, claims, and defenses

in connection with any-request for adequate protection are fully preserved and nothing contained

in this Order shall shift any burden of proof with respect thereto or be deemed probative of the

extent or existence of adequate protection by any party.  To the extent the Effective Date has not

occurred, a hearing on the continued use of cash collateral, including adequate protection, shall

be held no later than December 10, 2015.

New York, New York                          /S/ Shelley C. Chapman
Date: April 8, 2015                          HONORABLE SHELLEY C. CHAPMAN
                                             UNITED STATES BANKRUPTCY JUDGE

## **Schedule 1**

Budget

Dollars in thousands

| Quarter | 2Q15 | | | 3Q15 | | | 4Q15 | | |
|---|---|---|---|---|---|---|---|---|---|
| Month | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 |
| **Beginning Cash Balance** | **87,419** | **182,007** | **146,170** | **129,613** | **118,458** | **90,048** | **78,331** | **66,866** | **40,413** |
| _Sources_ | | | | | | | | | |
| Satellite Revenue | 1,285 | 1,272 | 1,223 | 1,285 | 1,421 | 1,209 | 1,204 | 1,278 | 1,144 |
| Interest Income | 2 | 3 | 4 | 3 | 3 | 3 | 2 | 2 | 1 |
| Equity Financing | - | - | - | - | - | - | - | - | - |
| Net Debt Financing | 155,000 | - | - | - | - | - | - | - | - |
| Financing Fees | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - |
| **Total Sources** | **156,287** | **1,275** | **1,227** | **1,289** | **1,424** | **1,211** | **1,207** | **1,280** | **1,145** |
| **Uses (OPEX)** In-Orbit Insurance | - | - | - | - | - | - | - | 2,056 | - |
| ISAT Coop Agmt | - | 17,500 | - | - | 17,875 | - | - | 17,875 | - |
| Spectrum (NOAA) | - | - | - | - | - | - | - | - | - |
| Staffing Related (entire company) | 2,997 | 1,847 | 1,837 | 2,227 | 1,815 | 2,208 | 1,802 | 1,802 | 3,248 |
| Legal / Regulatory / Lobbying / International | 870 | 870 | 1,440 | 934 | 937 | 1,255 | 1,512 | 934 | 946 |
| Facilities/Telecom | 671 | 671 | 671 | 671 | 671 | 671 | 671 | 671 | 671 |
| G&A | 336 | 4,267 | 1,336 | 1,336 | 1,336 | 1,336 | 1,471 | 336 | 446 |
| Travel Expenses (entire company) | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Boeing Related Expenses | 637 | 212 | 232 | 676 | 239 | 239 | 676 | 239 | 239 |
| Other Items | 1,379 | 1,496 | 665 | 656 | 909 | 1,169 | 1,045 | 955 | 712 |
| **Subtotal - USES (OPEX)** | **6,939** | **26,913** | **6,231** | **6,550** | **23,832** | **6,928** | **7,227** | **24,917** | **6,311** |
| **Uses (CAPEX)** Boeing | - | 3,960 | 2,606 | - | - | 2,653 | - | - | 2,700 |
| Qualcomm | - | - | - | - | - | - | - | - | - |
| Alcatel Lucent S-BTS | - | - | - | - | - | - | - | - | - |
| Current Network Maintenance / Capex | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| **Subtotal - USES (CAPEX)** | **150** | **4,110** | **2,756** | **150** | **150** | **2,803** | **150** | **150** | **2,850** |
| **Debt Service** Cash Interest | | | | | | | | | |
| **Restructuring Related** Restructuring Professionals | 4,610 | 6,088 | 8,797 | 5,744 | 5,852 | 3,198 | 5,295 | 2,666 | 2,648 |
| LP Adequate Protection Payments | 6,250 | - | - | - | - | - | - | - | - |
| LP Adequate Protection Payments Catch-up | 43,750 | - | - | - | - | - | - | - | - |
| **Total Uses** | **61,700** | **37,112** | **17,785** | **12,444** | **29,834** | **12,928** | **12,671** | **27,733** | **11,810** |
| **Net Uses (Total Sources - Total Uses)** | **94,588** | **(35,836)** | **(16,557)** | **(11,155)** | **(28,410)** | **(11,717)** | **(11,465)** | **(26,453)** | **(10,664)** |
| **LP Group Ending Cash Balance (excl. Cash at TMI)** | **182,007** | **146,170** | **129,613** | **118,458** | **90,048** | **78,331** | **66,866** | **40,413** | **29,748** |

Note: Does not include any costs associated with NOAA spectrum; does not include any amounts for employee retention
(1) Forecast does not capture fees that could potentially be incurred in connection with the Working Capital Facility



March 2015

# LightSquared Inc Group DIP Budget through December 2015 [1]

Dollars in thousands

| Quarter | | 2Q15 | | | 3Q15 | | | 4Q15 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Month | | Apr-15 | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 | Nov-15 | Dec-15 |
| **Beginning Cash Balance** | | **11,983** | **54,064** | **45,260** | **36,426** | **29,105** | **23,410** | **21,056** | **10,936** | **8,771** |
| _Sources_ | | | | | | | | | | |
| Satellite Revenue | | - | - | - | - | - | - | - | - | - |
| Interest Income | | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Equity Financing | | - | - | - | - | - | - | - | - | - |
| Net Debt Financing | | 56,600 | - | - | - | - | - | - | - | - |
| Financing Fees | | - | - | - | - | - | - | - | - | - |
| Other | | - | - | - | - | - | - | - | - | - |
| **Total Sources** | | **56,600** | **1** | **1** | **1** | **1** | **1** | **1** | **0** | **0** |
| | In-Orbit / Launch Insurance | - | - | - | - | - | - | - | - | - |
| | ISAT Coop Agmt | - | - | - | - | - | - | - | - | - |
| | 1.6 GHz Spectrum Lease Payments | 7,150 | - | - | - | - | - | 7,150 | - | - |
| | 1.6 GHz Related Payments | 361 | 180 | 75 | 361 | 75 | 75 | 361 | 75 | 75 |
| | 1.6 GHz Additional OpEx for 50% Build | 132 | 556 | 556 | 826 | 826 | 826 | 810 | 837 | 837 |
| **Uses** | Spectrum (NOAA) | - | - | - | - | - | - | - | - | - |
| **(OPEX)** | Staffing Related (entire company) | - | - | - | - | - | - | - | - | - |
| | Legal / Regulatory / Lobbying / International | 64 | 64 | 129 | 64 | 64 | 64 | 129 | 64 | 64 |
| | Facilities/Telecom | - | - | - | - | - | - | - | - | - |
| | G&A | 80 | 597 | 80 | 80 | 111 | 80 | 80 | 112 | 80 |
| | Auditing / Tax Professionals | - | 250 | 250 | 250 | 250 | 250 | - | - | - |
| | Travel Expenses | - | - | - | - | - | - | - | - | - |
| | Other Items | - | - | - | - | - | - | - | - | - |
| | **Subtotal - USES (OPEX)** | **7,788** | **1,648** | **1,090** | **1,581** | **1,326** | **1,295** | **8,529** | **1,088** | **1,056** |
| | Boeing | - | - | - | - | - | - | - | - | - |
| | Qualcomm | - | - | - | - | - | - | - | - | - |
| | Alcatel Lucent S-BTS | - | - | - | - | - | - | - | - | - |
| **Uses** | 1.6 GHz Related (other than spectrum) | - | - | - | - | - | - | - | - | - |
| **(CAPEX)** | 1.6GHz Additional CapEx for 50% Build [2] | 4,365 | 5,746 | 5,746 | 4,367 | 3,004 | - | - | - | - |
| | Current Network Maintenance/CapEx | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| | BandRich | - | - | - | - | - | - | - | - | - |
| | **Subtotal - USES (CAPEX)** | **4,395** | **5,776** | **5,776** | **4,397** | **3,034** | **30** | **30** | **30** | **30** |
| **Debt Service** | Cash Interest | | | | | | | | | |
| **Restructuring Related** | Restructuring Professionals | 2,337 | 1,381 | 1,969 | 1,343 | 1,336 | 1,030 | 1,561 | 1,048 | 1,055 |
| | **Total Uses** | **14,519** | **8,805** | **8,835** | **7,322** | **5,696** | **2,355** | **10,120** | **2,166** | **2,141** |
| | **Inc Group Ending Cash Balance (excl. Cash at TMI)** | **54,064** | **45,260** | **36,426** | **29,105** | **23,410** | **21,056** | **10,936** | **8,771** | **6,630** |

Note:  Does not include any costs associated with NOAA spectrum
(1)     Forecast does not capture fees that could potentially be incurred in connection with Working Capital Facility
(2)     CapEx for build-out of 1.6GHz network to cover 50% of PoPs by 9/30/2015



March 2015